**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

---

RON BROWN, *et al.*,

                                    Plaintiffs,

v.

JBS USA FOOD COMPANY, *et al.*,

                                    Defendants.

---

CIVIL ACTION NO. 1:22-CV-02946

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH PERDUE FARMS, INC., CERTIFICATION OF SETTLEMENT CLASS, AND <u>APPOINTMENT OF SETTLEMENT CLASS COUNSEL</u>**

## I.    INTRODUCTION

Plaintiffs Ron Brown, Minka Garmon, and Jessie Croft (collectively "Plaintiffs") have reached a significant settlement with Perdue Farms, Inc. ("Perdue"). This settlement provides for substantial recovery for this class of workers in pork and beef plants, with monetary recovery totaling $1.25 million that accords with Perdue's small share of class members. Perdue has also agreed to provide material cooperation to Plaintiffs in the litigation against the remaining Defendants, including testimony, documents, and assistance in authenticating and admitting documents into evidence at summary judgment and trial. This settlement was reached after hard-fought, arm's-lengths negotiation with sophisticated counsel representing all parties.

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class defined below; (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) deferring notice of the Settlement Agreement to the Settlement Class until an

appropriate future date; and (6) ordering a stay of all proceedings against Perdue except those proceedings provided for or required by the Settlement Agreement.

## II.    BACKGROUND

### A.    Summary of Allegations

Plaintiffs allege that the nation's leading beef- and pork-processors (collectively, "red meat") and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants. This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviewing industry witnesses, and extensive research into the pork- and beef-processing industry. Plaintiffs' lengthy complaint is supported by specific allegations as a result of that investigation, alleging that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis. Other Defendants filed motions to dismiss the complaint on February 17, 2023.

### B.    Summary of the Settlement Agreement

Given the deep experience of the co-lead counsel for the plaintiff class in antitrust cases, and specifically cases alleging wage suppression, the settlement discussions with Perdue were undertaken with an especially deep understanding of the strengths and weaknesses of the case.

#### 1.    Class definition

The proposed Settlement Class is co-extensive with the class in the operative complaint, with the exception of the Class Period: "[a]ll persons employed by Defendant Processors, their

subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2014 until the Date of Preliminary Approval."[1]

### 2. Monetary Terms

Perdue has agreed to provide monetary compensation for the benefit of the Settlement Class in the amount of $1.25 million, which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by Perdue within fourteen (14) business days after entry of the preliminary approval order. Johnson Decl., Ex. A at § II(A)(1). This is a non-reversionary fund; once the Settlement Agreement with Perdue is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Settlement Class members with *no amount* reverting back to Perdue. Johnson Decl., Ex. A at § II(E).

### 3. Cooperation

Perdue has agreed to non-monetary cooperation terms, which will provide significant benefits to the Class when litigating their claims against the remaining defendants:

- **Custodians and depositions**: Perdue will produce documents from five (5) custodians and testimony from up to five (5) then-current employees. Johnson Decl., Ex. A at § II(A)(2).

- **Non-custodial documents:** Perdue will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the agency consents or does not object to the production or the Court orders the production), and structured data. Johnson Decl., Ex. A at § II(A)(2).

---

[1] Declaration of Brent W. Johnson in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Perdue Farms, Inc. ("Johnson Decl."), Ex. A (Perdue Settlement Agreement) at § II(F)(3). The following persons and entities are excluded from the Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

- **Phone records and authentication of documents**: Perdue has agreed to cooperate with Plaintiffs to obtain phone records and in authenticating documents for use at summary judgment and trial. Johnson Decl., Ex. A at § II(A)(2).

### 4.    Release of Liability

The Settlement Agreement releases and discharges Perdue from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to," the Settlement Class. Johnson Decl., Ex. A at § II(B)(2). This Release covers both claims that were asserted and claims that could have been asserted.

## III.    ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[2] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the "important public policy concerns that support voluntary setlements."[3] This is particularly true in large, complex class actions, such as this case.[4]

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[5] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval."[6] This is because "[p]reliminary approval of a class action settlement is a provisional

---

[2] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

[3] *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981).

[4] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions, settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[5] Fed. R. Civ. P. 23(e)(2).

[6] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

step."[7] At preliminary approval, the Court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[8]  The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[9]  "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id*.

If the requirements for preliminary approval are met, "the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine if 'it is fair, reasonable, and adequate'" under Rule 23(e)(2) factors.[10]  In the Tenth Circuit, this assessment also includes weighing the following factors: whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[11]  "If the settling parties can establish these factors, courts usually presume that the

---

[7] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).
[8] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).
[9] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).
[10] *Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).
[11] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

proposed settlement is fair and reasonable."[12] Plaintiffs address both the Rule 23 factors and the unique Tenth Circuit factors.[13] Each of these factors support preliminary approval.

### 1.     The Settlement Agreement Was Fairly and Honestly Negotiated at Arm's Length

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[14] Here, all parties are represented by sophisticated counsel who have played active roles in many antitrust cases across the country. The negotiations between counsel lasted for weeks, with multiple calls between counsel for Perdue and counsel for Plaintiffs. The parties undertook a robust discussion of the strengths and weaknesses of the case. The negotiations were adversarial throughout and at no time was there any collusion which might compromise the interests of the class. *See* Johnson Decl. ¶¶ 2, 8. Thus, because the parties— advised by sophisticated counsel with expertise on antitrust matters and complex class litigation— engaged in good faith negotiations, this "support[s] the integrity of the parties' settlement."[15]

### 2.     The Relief Provided to the Class is Adequate

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation"

---

[12] *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).
[13] *Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).
[14] *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).
[15] *Acevedo v. Sw. Airlines Co.*, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019); *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions").

both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[16]

First, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[17] For example, there is serious disagreement by the parties about whether the Defendants, including Perdue, illegally conspired to depress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants undoubtedly arguing that even if a conspiracy existed there was no harm. The settlement here cuts short these questions and ensures that the class will be entitled to at least some relief in this litigation.[18] Because the serious, disputed legal issues here render the outcome of the litigation uncertain, this factor weighs heavily in favor of settlement.[19]

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[20] It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued

---

[16] *See Rodriguez*, 2020 WL 3288059, at *3 (citation omitted).

[17] *Lucas*, 234 F.R.D. at 693-94.

[18] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) (finding the presence of serious legal and factual questions concerning the outcome of the Litigation to weigh heavily in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[19] *See Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

[20] *Lucas*, 234 F.R.D. at 694.

litigation."[21] In contrast, "the proposed settlement agreement provides the class with substantial, guaranteed relief."[22] Further, even though the case will continue against the non-settling Defendants, continuing to litigate this case against Perdue would have required significant additional resources and materially increased the complexity of the case. *See* Johnson Decl. ¶ 5.

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[23] Here, the parties reached agreements that necessitated compromise by both sides. *See* Johnson Decl. ¶ 5. Thus, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."[24] Accordingly, the relief provided to the class is adequate and satisfies both the Tenth Circuit requirements and those of Rule 23(e)(2)(C).

### 3.     Counsel for the Parties Believe the Settlement is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[25] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support this settlement.[26] In analyzing this factor, courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled

---

[21] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).
[22] *Lucas*, 234 F.R.D. at 694.
[23] *Acevedo*, 2019 WL 6712298, at *3.
[24] *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).
[25] *Lucas*, 234 F.R.D. at 695.
[26] *See e.g., Lucas*, 234 F.R.D. at 695 (finding unanimous approval by experienced counsel supports settlement approval).

to great weight."[27] Under the Settlement Agreement, Perdue will pay $1,250,000 into a settlement fund that will provide tangible financial benefits to the Settlement Class, but also reflects Perdue's relatively small share of the class. Although Plaintiffs have not yet had the opportunity to conduct discovery, the factual investigation involved interviewing former employees of Defendants and others with personal knowledge of the events that give rise to Plaintiffs' claims.[28] The Settlement Agreement allows Plaintiffs to secure potentially key evidence—in the form of documents, deposition testimony, and trial testimony—from Perdue and its employees.[29]

In sum, the proposed Settlement Agreement is fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Plaintiffs request that the Court certify the proposed Settlement Class to receive the benefits of the Settlement Agreement. Specifically, Plaintiffs seek certification of a Settlement Class consisting of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2014 until the Date of Preliminary Approval."

---

[27] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[28] *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (finding that, even without formal discovery, the parties were able to give adequate consideration to the strengths and weaknesses of their respective claims).

[29] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

"A party seeking class certification must show first show the existence of the four threshold requirements of Rule 23(a)."[30] "Once a plaintiff has met the Rule 23(a) threshold requirements, she must then show the action falls within one of the three categories of suits set forth under Rule 23(b)."[31] This proposed Settlement Class meets the prerequisites of Rule 23(a) and Rule 23(b)(3).

## A.     The Settlement Class Satisfies Rule 23(a)

### 1.     Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.[32]  In general, the Tenth Circuit has noted that classes are viable with as few as 17 to 20 persons.[33] Here, the precise number of Settlement Class members is unknown, but it is likely to number in the tens of thousands.

### 2.     Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[34] Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement.[35] "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail."[36] Here, common questions abound,

---

[30] *Murray v. Tips, Inc.*, No. 18-CV-00937-RM-KLM, 2020 WL 1852382, at *3 (D. Colo. Apr. 13, 2020); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004).

[31] *Murray*, 2020 WL 1852382, at *3.

[32] Fed. R. Civ. P. 23(a)(1).

[33] *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978).

[34] Fed. R. Civ. P. 23(a)(2).

[35] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

[36] *D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming

including whether Defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for Plaintiffs' claim under the rule of reason analysis, and what the amount of damages are. Proof for all of these questions are common to the class.

### 3.      Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[37] "Differing fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."[38] In antitrust class action cases, typicality is established by plaintiffs and all class members alleging the same antitrust violations by defendants.[39] Here, typicality is satisfied because both Plaintiffs' claims and Settlement Class members' claims arise out of the same alleged antirust conspiracy—each member suffered the same harm by receiving compensation that was depressed by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4.      Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."[40] This requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with

---

trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

[37] *Paulson v. McKowen*, 2022 WL 168708, at *5 (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

[38] *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations and alteration omitted).

[39] *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

[40] Fed. R. Civ. P. 23(a)(4).

other class members and (2) will prosecute the action vigorously. Fed. R. Civ. P. 23(a)(4). Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other class members—each suffered harm by Defendants' suppression of their wages. Each named Plaintiff, like all Settlement Class members, share an overriding interest in establishing Defendants' liability and maximizing class-wide damages.[41] And the named Plaintiffs and their counsel have, and will continue to, prosecute the action vigorously on behalf of the class. Counsel have extensive experience and expertise in prosecuting complex antitrust litigation cases and representing antitrust plaintiffs. Interim co-lead counsel have represented victims of antitrust conspiracies across the country, and will continue to vigorously represent the class here. Johnson Decl. ¶ 5.

## B.   The Requirements of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

### 1.   Predominance of Common Issues

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[42] It is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.'"[43] To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[44] Common evidence supports each of these elements.

---

[41] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").
[42] *Amchem Prods., Inc.*, 521 U.S. 591, 623 (1997).
[43] *Paulson v. McKowen*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).
[44] *In re Urethane*, 237 F.R.D. at 449.

### a.  Violation of the Antitrust Laws

Courts have found that the existence and scope of an antitrust conspiracy are common issues because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case.[45] Here, proof of Defendants' antitrust violations is a common issue of sufficient importance that it alone causes common issues to predominate in this case.[46]  Plaintiffs' allegations of compensation-fixing focus on the actions of the Defendants and involve evidence common to all Settlement Class members.

### b.  Impact of the Unlawful Activity

Evidence common to the class supports a finding of impact here. Defendant Processors and co-conspirators collectively possess market power in the alleged market for employment at red meat processing plants in the continental United States. Corrected Class Action Compl. ¶ 409, ECF No. 23-1. Decisions regarding "the compensation of workers at red meat processing plants owned by Defendant Processors, their subsidiaries, and related entities were made by and at each Defendant Processor's corporate headquarters during the Class Period." *Id.* ¶ 138. And the alleged conspiracy "commonly impacted all workers at red meat processing plants" because "Defendant Processors valued internal equity, the idea that similarly situated employees should be compensated similarly." *Id.* ¶ 363. Finally, in its absence, Defendants would have vigorously "competed with each other for labor during the Class Period by offering higher wages, higher salaries and superior benefits to Class Members." *Id.* ¶ 153. This evidence is common to the class and supports certification.

### c.  Measurable Damages

---

[45] *In re Urethane*, 237 F.R.D. at 449.

[46] *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir. 1970) ("[W]here the question of basic liability [in antitrust cases] can be established readily by common issues, then it is apparent that the case is appropriate for class action.").

No precise damages formula is required at this stage. Rather, if "plaintiffs can establish that the defendants conspired" to engage in wage-fixing, then "even where there are individual variations in damages, the requirements of Rule 23(b)(3) are satisfied."[47] Plaintiffs can do so here.

### 2. Superiority of a Class Action

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues."[48] Additionally, no other potential class members have filed an analogous antitrust claim against these Defendants. Thus, the absent class members "to date have shown no interest in controlling the litigation of separate actions."[49] Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Class members to seek damages that would otherwise be too costly to pursue.[50]

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."[51] Such is the case here. If approved, the Settlement Agreement would obviate the need for a trial against Perdue, and

---

[47] *In re Urethane*, 768 F.3d at 1255 (quotation and alterations omitted); *See In re Urethane*, 237 F.R.D. at 452 (holding that a regression analysis is a viable method for calculating damages using common evidence).

[48] *Crocs*, 306 F.R.D. at 689-90.

[49] *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 127 (D. Colo. 2016).

[50] *Id.* ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").

[51] *Amchem*, 521 U.S. at 620.

thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Class.

## V.      DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, Plaintiffs respectfully request that the Court agree to defer formal notice of the Settlement Agreement to the Settlement Class until a later date. As discovery has not yet started, Plaintiffs do not have Defendants' data that contain class members' addresses, emails and phone numbers to be able to contact them. Johnson Decl. ¶ 12. Deferring may also save the class's money in that Plaintiffs could provide notice of multiple settlements at one time. After the data production, Plaintiffs will file a motion to direct notice with the Court.

## VI.      CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlement with Perdue, (2) certifying the Settlement Class, (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel, (4) appointing Plaintiffs as Settlement Class Representatives, (5) deferring notice until a later date, and (6) ordering a stay of all proceedings against Perdue except those proceedings provided for or required by the Settlement Agreement.

Dated: March 6, 2023

/s/ Brent W. Johnson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Fl. 5
Washington, DC 20005
Tel: (202) 408-4600
bjohnson@cohenmilstein.com

/s/ George F. Farah
HANDLEY FARAH &
ANDERSON PLLC
33 Irving Pl.
New York, NY 10003
Tel: (212) 477-8090
gfarah@hfajustice.com

/s/ Shana E. Scarlett
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Ave., Ste. 300
Berkeley, CA 94710
Tel: (510) 725-3000
shanas@hbsslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

*/s/ Brent W. Johnson*