UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RON BROWN, *et al.*,

                Plaintiffs,

v.

JBS USA FOOD COMPANY, *et al.*,

                Defendants.

CIVIL ACTION NO. 1:22-CV-02946

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SEABOARD FOODS, LLC, APPROVAL OF COOPERATION AGREEMENT WITH TRIUMPH FOODS, LLC, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

## I. INTRODUCTION

Plaintiffs Ron Brown, Minka Garmon, and Jessie Croft ("Plaintiffs") have reached a significant settlement agreement ("Settlement Agreement") with Seaboard Foods, LLC ("Settling Defendant" or "Seaboard") and a cooperation agreement ("Cooperation Agreement") with Triumph Foods ("Triumph"). These two agreements provide a substantial financial recovery totaling $10 million for a class of workers in red meat processing plants as well as a significant amount of cooperation that will strengthen Plaintiffs' case against the remaining defendants.[1] Both agreements were reached after hard-fought, arm's-lengths negotiation with sophisticated counsel representing all parties.

---

[1] *See* Declaration of Shana E. Scarlett in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Seaboard Foods, LLC ("Scarlett Decl."), Ex. A ("Seaboard Settlement Agreement") at § II(A)(1); Ex. B ("Triumph Cooperation Agreement") at § 1.

- 1 -

The Settlement Agreement with Seaboard requires payment of $10 million to the class, and cooperation in the form of witness testimony, document production, and assistance in authenticating and admitting documents into evidence at summary judgment and trial. Additionally, the Cooperation Agreement with Triumph requires cooperation in the form of witness testimony, document production, and assistance in authenticating and admitting documents into evidence at summary judgment and trial.

These are the second and third settlements reached with defendants in this case. On December 6, 2022, Plaintiffs reached a settlement with Perdue Farms, Inc. for $1,250,000 and cooperation. Plaintiffs filed a motion for preliminary approval of the settlement with Perdue Farms, Inc. on March 6, 2023. ECF No. 170. The Court has not yet granted preliminary approval to this settlement. The agreements with Seaboard and Triumph bring the total financial recovery in the case to date to $11,250,000.

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class defined below; (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) deferring notice of the Settlement Agreement to the Settlement Class until an appropriate future date; and (6) ordering a stay of all proceedings against Settling Defendant's Released Parties except those proceedings provided for or required by the Settlement Agreement.

## II. BACKGROUND

### A. Summary of Allegations

Plaintiffs allege that the nation's leading red meat processors and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants. This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviewing industry witnesses, and extensive research into the

red meat processing industry. As a result of that investigation, Plaintiffs' lengthy complaint is supported by specific allegations, including allegations that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis. Defendants filed motions to dismiss the complaint on February 17, 2023.

**B.     Summary of the Settlement Agreement**

Given the extensive experience of Plaintiffs' counsel in antitrust cases, particularly in cases alleging wage suppression, the settlement discussions with Settling Defendant were undertaken with an especially deep understanding of the strengths and weaknesses of this case.

**1.     Class definition**

The proposed Settlement Class is co-extensive with the class in the operative complaint, with the exception of the Class Period: "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2014 until the date of the first preliminary approval of a settlement in this Action."[2]

**2.     Monetary Terms**

Seaboard has agreed to provide monetary compensation for the benefit of the Settlement Class in the amount of $10 million, which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by Settling Defendant within fourteen (14) business days after entry of the preliminary approval order. Scarlett Decl., Ex. A at § II(A)(1). This is a non-reversionary fund; once the Settlement Agreement with Settling Defendant is finally approved by the Court and after

---

[2] Scarlett Decl., Ex. A at § II(F)(3). The following persons and entities are excluded from the Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

- 3 -

administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Settlement Class members with *no amount* reverting back to Settling Defendant. Scarlett Decl., Ex. A at § II(E).

### 3. Cooperation

Both Seaboard and Triumph have agreed to similar non-monetary cooperation terms, which will provide significant benefits to the Class when litigating their claims against the remaining defendants:[3]

- **Data:** Both Seaboard and Triumph will produce structured data for the Settlement Class Period, and four years prior, and make reasonable efforts to respond to questions from plaintiffs on the interpretation of the data. Scarlett Decl., Ex. A at § II(A)(2)(a); Ex. B at § 1(a).

- **Custodians and depositions**: Seaboard and Triumph will each produce documents from five (5) custodians and testimony from up to five (5) then-current employees. *Id.*, Ex. A at § II(A)(2); Ex. B at § 1(c), (e).

- **Non-custodial documents:** Settling Defendant will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the agency consents or does not object to the production or the Court orders the production), and structured data. *Id.*, Ex. A at § II(A)(2); Ex. B at § 1(g).

- **Phone records and authentication of documents**: Settling Defendant has agreed to cooperate with Plaintiffs to obtain phone records and to authenticate documents for use at summary judgment and trial. *Id.*, Ex. A at § II(A)(2); Ex. B at § 1(b), (d).

### 4. Release of Liability

The Settlement Agreement releases and discharges Settling Defendant's Released Parties from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing,

---

[3] Seaboard's obligation to cooperate encompasses the Red Meat Processing Operations operated by Settling Defendant, Seaboard Triumph Foods, LLC, and Daily's Premium Meats, LLC. Scarlett Decl., Ex. A at § II(A)(2).

- 4 -

depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the Settlement Class. Scarlett Decl., Ex. A at § II(B)(2).

### III.   ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[4] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the "important public policy concerns that support voluntary settlements."[5] This is particularly true in large, complex class actions, such as this case.[6]

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[7] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval."[8] This is because "[p]reliminary approval of a class action settlement is a provisional step."[9] At preliminary approval, the court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[10] The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[11]   "A proposed

---

[4] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

[5] *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981).

[6] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions, settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[7] Fed. R. Civ. P. 23(e)(2).

[8] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

[9] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).

[10] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

[11] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id*.

"Although the standards for preliminary approval of a class action settlement are not as stringent" as the standards for final approval, "the standards used in the [final] stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards." *Id.* Final approval will be granted if a settlement is "'fair, reasonable, and adequate'" under the Rule 23(e)(2) factors.[12] In the Tenth Circuit, this assessment requires courts to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[13] "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable."[14] Plaintiffs address both the Rule 23 factors and the unique Tenth Circuit factors.[15] Each of these factors support preliminary approval.

### 1. The Agreements were negotiated at arm's length.

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[16] Here, all parties are represented by sophisticated

---

[12] *Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).

[13] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

[14] *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

[15] *Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

[16] *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

counsel who have played active roles in many antitrust cases across the country. The negotiations between counsel lasted for weeks, with multiple calls between counsel for Seaboard, Triumph and counsel for Plaintiffs. The parties undertook a robust discussion of the strengths and weaknesses of the case. The negotiations were adversarial throughout and at no time was there any collusion which might compromise the interests of the class. *See* Scarlett Decl. ¶¶ 2, 8. Thus, because the parties—advised by sophisticated counsel with expertise on antitrust matters and complex class litigation—engaged in good faith negotiations, this "support[s] the integrity of the parties' settlement."[17]

### 2. The Relief Provided to the Class is Adequate

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[18]

First, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[19] For example, there is serious disagreement by the parties about whether the Defendants, including both Triumph and Seaboard, illegally conspired to depress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants undoubtedly

---

[17] *Acevedo*, 2019 WL 6712298, at *2; *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions").

[18] *See Rodriguez*, 2020 WL 3288059, at *3 (citation omitted).

[19] *Lucas*, 234 F.R.D. at 693-94.

quarreling with the expert analyses Plaintiffs will use to show the class was harmed. The settlement here cuts short these questions and ensures that the Settlement Class will be entitled to at least some relief in this litigation.[20] Because the serious, disputed legal issues here render the outcome of the litigation uncertain, this factor weighs heavily in favor of settlement.[21]

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[22]  It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation."[23] In contrast, "the proposed settlement agreement provides the class with substantial, guaranteed relief."[24] And although the case will continue against the non-settling Defendants, continuing to litigate this case against Triumph and Seaboard would have required significant additional resources and materially increased the complexity of the case. *See* Scarlett Decl. ¶ 5.

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[25] Here, the parties reached agreements that necessitated compromise by both sides. *See* Scarlett Decl. ¶ 5.

---

[20] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) (finding the presence of serious legal and factual questions concerning the outcome of the Litigation to weigh heavily in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[21] *See Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

[22] *Lucas*, 234 F.R.D. at 694.

[23] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

[24] *Lucas*, 234 F.R.D. at 694.

[25] *Acevedo*, 2019 WL 6712298, at *3.

Thus, the immediate, substantial relief offered by the Settlement and Cooperation Agreements outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."[26] Accordingly, the relief provided to the class is adequate and satisfies both the Tenth Circuit requirements and those of Rule 23(e)(2)(C).

### 3. Plaintiffs' Counsel believes the settlement is fair and reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[27] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support this settlement.[28] Courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."[29] Under the Settlement Agreement, Seaboard will pay $10,000,000 into a fund that will provide tangible financial benefits to the Settlement Class. And both the Settlement Agreement with Seaboard and the Cooperation Agreement with Triumph allows Plaintiffs to secure potentially key evidence—in the form of data, documents and testimony—from these defendants' employees.[30]

In sum, the Settlement and Cooperation Agreements are fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

---

[26] *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

[27] *Lucas*, 234 F.R.D. at 695.

[28] *See e.g., id.* (finding unanimous approval by experienced counsel supports settlement approval).

[29] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[30] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

## IV. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Plaintiffs request that the Court certify the proposed Settlement Class to receive the benefits of the Settlement Agreement and Cooperation Agreement. Plaintiffs seek certification of a Settlement Class consisting of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2014 until the date of the first preliminary approval of a settlement in this Action."

This proposed Settlement Class meets the prerequisites of Rule 23(a) and Rule 23(b)(3).[31]

### A. The Settlement Class Satisfies Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.[32] In general, the Tenth Circuit has noted that classes are viable with as few as 17 to 20 persons.[33] Here, the precise number of Settlement Class members is unknown, but it is likely to number in the tens of thousands.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[34] Courts recognize that "[e]ven a single [common] question will" satisfy the commonality requirement.[35] "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants

---

[31] *Murray v. Tips, Inc.*, No. 18-CV-00937-RM-KLM, 2020 WL 1852382, at *3 (D. Colo. Apr. 13, 2020); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004).

[32] Fed. R. Civ. P. 23(a)(1).

[33] *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978).

[34] Fed. R. Civ. P. 23(a)(2).

[35] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

conspired to harm plaintiffs will likely prevail."[36] Here, common questions abound, including whether Defendants agreed to restrain wages, whether the agreement had an impact on Settlement Class members, the relevant market for Plaintiffs' claim under the rule of reason analysis, and the amount of damages are. Proof for all of these questions are common to the Settlement Class.

### 3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[37] "Differing fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."[38] In antitrust class action cases, typicality is established by plaintiffs and all class members alleging the same antitrust violations by defendants.[39] Here, typicality is satisfied because both Plaintiffs' claims and Settlement Class members' claims arise out of the same alleged antirust conspiracy—each member suffered the same harm by receiving compensation that was depressed by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

---

[36] *D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

[37] *Paulson v. McKowen*, 2022 WL 168708, at *5 (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

[38] *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations and alteration omitted).

[39] *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

### 4. Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."[40] This requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously. Fed. R. Civ. P. 23(a)(4). Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other Class members—each suffered harm by Defendants' suppression of their wages. And each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages.[41] The named Plaintiffs and their counsel have, and will continue to, prosecute the action vigorously on behalf of the Class. Counsel have extensive experience in prosecuting complex antitrust litigation cases and representing antitrust plaintiffs. Scarlett Decl. ¶ 5.

### B. The Requirements of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

### 1. Predominance of Common Issues

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[42] It is a "test readily met in certain cases alleging . . . violations of the antitrust laws."[43] To prevail in an antitrust case, Plaintiffs must prove three

---

[40] Fed. R. Civ. P. 23(a)(4).
[41] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").
[42] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).
[43] *Paulson*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).

elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[44] Common evidence supports each of these elements.

### a. Violation of the Antitrust Laws

Courts have found that the existence and scope of an antitrust conspiracy are common issues because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case.[45] Here, proof of Defendants' antitrust violations is a common issue of sufficient importance that it alone causes common issues to predominate in this case.[46]

### b. Impact of the Unlawful Activity

Evidence common to the Settlement Class supports a finding of impact here. Defendant Processors and co-conspirators collectively possess market power in the alleged market for employment at red meat processing plants in the continental United States. Corrected Class Action Compl. ¶ 409, ECF No. 1. Decisions regarding "the compensation of workers at red meat processing plants owned by Defendant Processors, their subsidiaries, and related entities were made by and at each Defendant Processor's corporate headquarters during the Class Period." *Id.* ¶ 138. And the alleged conspiracy "commonly impacted all workers at red meat processing plants" because "Defendant Processors valued internal equity, the idea that similarly situated employees should be compensated similarly." *Id.* ¶ 363. Finally, in its absence, Defendants would have vigorously "competed with each other for labor during the Class Period by offering higher wages, higher salaries and superior benefits to Class Members." *Id.* ¶ 153. This evidence is common to the Settlement Class.

---

[44] *In re Urethane*, 237 F.R.D. at 449.
[45] *Id.*
[46] *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir. 1970) ("[W]here the question of basic liability [in antitrust cases] can be established readily by common issues, then it is apparent that the case is appropriate for class action.").

### c. Measurable Damages

No precise damages formula is required at this stage. Rather, if "plaintiffs can establish that the defendants conspired" to engage in wage-fixing, then "even where there are individual variations in damages, the requirements of Rule 23(b)(3) are satisfied."[47] Plaintiffs can do so here.

### 2. Superiority of a Class Action

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues."[48] Additionally, no other potential Settlement Class members have filed an analogous antitrust claim against these Defendants. Thus, the absent Class members "to date have shown no interest in controlling the litigation of separate actions."[49] Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Class members to seek damages that would otherwise be too costly to pursue.[50]

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."[51] Such is the case here. If approved, the Settlement Agreement would obviate the need for a trial against Settling

---

[47] *In re Urethane*, 768 F.3d at 1255 (quotation and alterations omitted); *See In re Urethane*, 237 F.R.D. at 452 (holding that a regression analysis is a viable method for calculating damages using common evidence).
[48] *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689-90 (D. Colo. 2014).
[49] *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016).
[50] *Id.* ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").
[51] *Amchem*, 521 U.S. at 620.

Defendant, and thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Class.

## V. DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, Plaintiffs respectfully request that the Court agree to defer formal notice of the Settlement Agreement to the Settlement Class until a later date. As discovery has not yet started, Plaintiffs do not have Defendants' data that contain class members' addresses, emails and phone numbers to be able to contact them. Scarlett Decl. ¶ 13. Deferring may also save the class's money in that Plaintiffs could provide notice of multiple settlements at one time. After the data production, Plaintiffs will file a motion to direct notice with the Court.

## VI. CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement with Seaboard and Cooperation Agreement with Triumph; (2) certifying the Settlement Class, (3) appointing Interim Co-Lead Counsel, (4) appointing the Settlement Class Representatives, (5) deferring notice until a later date, and (6) ordering a stay of all proceedings against the Seaboard and Triumph defendants.

Dated: August 7, 2023

| /s/ Shana E. Scarlett | /s/ George F. Farah | /s/ Brent W. Johnson |
|---|---|---|
| HAGENS BERMAN SOBOL SHAPIRO LLP | HANDLEY FARAH & ANDERSON PLLC | COHEN MILSTEIN SELLERS & TOLL PLLC |
| 715 Hearst Ave., Ste. 202 | 33 Irving Pl. | 1100 New York Ave. NW, Fl. 5 |
| Berkeley, CA 94710 | New York, NY 10003 | Washington, DC 20005 |
| Tel: (510) 725-3000 | Tel: (212) 477-8090 | Tel: (202) 408-4600 |
| shanas@hbsslaw.com | gfarah@hfajustice.com | bjohnson@cohenmilstein.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

*/s/ Shana E. Scarlett*
SHANA E. SCARLETT

- 16 -