**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-CV-02946-PAB-STV

RON BROWN, *et al.*,

                              Plaintiffs,

v.

JBS USA FOOD COMPANY, *et al.*,

                              Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

A scheduling conference pursuant to Federal Rule of Civil Procedure 16(b) is scheduled for Thursday, November 16, 2023, at 11:45 AM MDT before the Honorable Scott T. Varholak. Pursuant to the Court's permission, certain counsel for the parties will appear remotely.

<u>Attorneys Appearing for Plaintiffs Ron Brown, Minka Garmon, and Jessie Croft, individually and on behalf of all others similarly situated:</u>

Shana E. Scarlett (in person)
Hagens Berman Sobol Shaprio LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Robert A. Braun (via telephone)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., NW, Suite 500
Washington, DC 20002
(202) 408-4600

<u>Attorneys Appearing for Defendants:</u>

Counsel for Agri Beef Co. and Washington Beef, LLC: Timothy R. Beyer and Adam B. Stern of Bryan Cave Leighton Paisner LLP.

Counsel for Agri Stats, Inc.: Peter H. Walsh and William L. Monts III of Hogan Lovells US LLP.

Counsel for American Foods Group, LLC: Emily R. Garnett and Richard B. Benenson of Brownstein Hyatt Farber Schreck, LLP, and David L. Hashmall of Felhaber Larson.

Counsel for Cargill, Inc. and Cargill Meat Solutions Corp.: Mark A. Ford, of Wilmer Cutler Pickering Hale and Dorr LLP.

Counsel for Hormel Foods Corporation: Emily E. Chow, Robert C. Gallup, Anderson C. Tuggle, Craig S. Coleman, Desmonne A. Bennett, and Jacob D. Bylund of Faegre Drinker Biddle & Reath LLP.

Counsel for JBS USA Food Company: Marc E. Kasowitz, Daniel J. Fetterman, and Kenneth R. David of Kasowitz Benson Torres LLP and Jonathon Watson and Joseph Hunt of Spencer Fane LLP.

Counsel for National Beef Packing Company, LLC: Michael F. Tubach, and Stephen J. McIntyre of O'Melveny & Myers LLP.

Counsel for Smithfield Foods, Inc. and Smithfield Packaged Meats Corp.: Amy B. Manning, and Sarah A. Zielinski of McGuireWoods LLP.

Counsel for Tyson Foods, Inc.: John F. Terzaken and Abigail W. Williams of Simpson Thacher & Bartlett LLP.

## 2.  STATEMENT OF JURISDICTION

The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

## 3.  STATEMENT OF CLAIMS AND DEFENSES

### a.  Plaintiffs:

Plaintiffs contend that Defendants impermissibly conspired and combined to suppress compensation for workers at beef- and pork-processing plants. ECF No. 23-1 at ¶¶ 2, 29-110. At the appropriate time, Plaintiffs intend to file a motion to certify a class of such workers pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiffs assert that during the period of at least as early as January 1, 2014, through the present ("Class Period"):

Defendant Processors exchanged competitively sensitive compensation data with Defendant consulting companies, Agri Stats Inc. ("Agri Stats") and Webber, Meng, Sahl and Company, Inc. ("WMS"). From 2014 to 2019, groups of Defendant Processors designed and participated in an annual "Red Meat Industry Compensation Survey" in which they exchanged detailed current and future information about wages, salaries, and benefits provided to their workers at red meat processing facilities. *Id.* at 51, ¶¶ 154-55.  Throughout the Class Period, representatives from Defendant Processors attended and participated in annual in-person "Red Meat Industry Compensation Meetings" where Defendant Processors' senior executives spent hours discussing the results of the surveys and fixed Class Members' wages. ¶¶ 9-13, 226-66.

As a result of the conspiracy, Defendant Processors simultaneously and in parallel limited annual wage increases to members of the Class. ¶ 317. Wages were lower than they would have been in the absence of a conspiracy. *Id*. Defendants also implemented and monitored their conspiracy through other avenues. Defendant Processors' executives communicated directly with each other over email and on the phone to exchange and discuss compensation data. ¶¶ 14-15,

267-72. And the Pork Defendant Processors exchanged detailed, current, and nonpublic compensation information by way of a subscription to Agri Stats. ¶¶ 16-17, 273-305.

As a result of the conspiracy, Defendant Processors simultaneously and in parallel limited annual wage increases to members of the Class. ¶ 317. Wages were lower than they would have been in the absence of a conspiracy. *Id.*

### b.  Defendants: [1]

Plaintiffs allege a sprawling conspiracy in what they call the "Red Meat Industry," a loosely defined collection of firms involved in the commercial production of beef and pork products. Compl. ¶¶ 117-20. Plaintiffs allege (1) a conspiracy to "fix and depress the compensation paid to employees at red meat processing plants" across the United States, and (2) a conspiracy to "regularly exchange detailed, timely, competitively sensitive, and non-public information about the compensation being paid or to be paid" to employees at their processing plants. *Id.* ¶¶ 1, 407. Plaintiffs assert that these conspiracies date back to 2014. *Id.* ¶¶ 15.

Defendants expect that evidence gathered in fact discovery will disprove both of Plaintiffs' antitrust claims on their merits. Defendants also expect the facts will demonstrate that Plaintiffs did not bring suit within the applicable statute of limitations; that Plaintiffs will not be

---

[1] Class Plaintiffs, Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and Webber, Meng, Sahl and Company, Inc., d/b/a WMS & Company, Inc. ("Settling Defendants") have previously notified the Court of their respective agreements to settle and/or dismiss all claims against Settling Defendants, (ECF Nos. 65, 204, 207), subject to the Court's approval pursuant to Federal Rule of Civil Procedure 23. Further, Class Plaintiffs and Settling Defendants have stipulated that all proceedings between them be suspended by the Court consistent with the terms of their respective settlement or cooperation agreements, which were provided to the Court in connection with Class Plaintiffs' motion for preliminary approval of the proposed agreements. (*Id.*; ECF Nos. 170, 205, 207). Settling Defendants do not join in the submission of the proposed scheduling and discovery orders, and the schedule, discovery obligations, and deadlines provided herein do not apply with respect to Settling Defendants.

able to demonstrate a cognizable relevant market; that Plaintiffs will fail to establish any anticompetitive effects; that Plaintiffs do not have Article III standing for salaried workers; that Plaintiffs did not suffer any injury or damage as a result of the alleged conspiracies; and that Plaintiffs cannot satisfy the requirements for class certification under Federal Rule of Civil Procedure 23.

### 4.   UNDISPUTED FACTS

The following facts are undisputed:

1. Plaintiffs Minka Garmon, and Jessie Croft were hourly employees of National Beef Packing Company Inc., and Iowa Premium, respectively, during certain portions of the Class Period.

2. Defendant Processors employed many workers during the Class Period in various positions and compensated these employees with either hourly wages or an annual salary, and other benefits.

### 5.   COMPUTATION OF DAMAGES

#### a.  Plaintiffs:

The full scope of harm caused by Defendants' alleged conspiracy cannot be determined until Plaintiffs have access to the documents within the exclusive control and possession of Defendants. Plaintiffs seek, *inter alia*, treble damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, an injunction barring Defendants from continuing their unlawful conduct, and any other relief as is just and proper.

#### b.  Defendants:

Defendants deny that Plaintiffs have suffered any injury or are entitled to any damages.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a. Date of Rule 26(f) meeting.**

The parties held the Rule 26(f) conference on October 20, 2023.

**b. Names of each participant and party he/she represented.**

Attorneys for Plaintiffs:

Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Abigail D. Pershing
Hagens Berman Sobol Shapiro LLP
301 N. Lake Ave., Suite 920
Pasadena CA, 91101
(213) 330-7150

Robert A. Braun
Alison Deich
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., NW, Suite 500
Washington, DC 20002
(202) 408-4600

Attorneys for Defendants:

Counsel for Agri Beef Co. and Washington Beef, LLC: Timothy R. Beyer and Adam B. Stern of Bryan Cave Leighton Paisner LLP.

Counsel for Agri Stats, Inc.: Peter H. Walsh and William L. Monts III of Hogan Lovells US LLP.

Counsel for American Foods Group, LLC: Emily R. Garnett and Richard B. Benenson of Brownstein Hyatt Farber Schreck, LLP, and David L. Hashmall of Felhaber Larson.

Counsel for Cargill, Inc. and Cargill Meat Solutions Corp.: Jennifer Milici, Mark A. Ford, John F. Walsh, Thomas Mueller, and Nana A. Wilberforce of Wilmer Cutler Pickering Hale and Dorr LLP.

Counsel for Hormel Foods Corporation: Emily E. Chow, Robert C. Gallup, Anderson C. Tuggle, Craig S. Coleman, Desmonne A. Bennett, and Jacob D. Bylund of Faegre Drinker Biddle & Reath LLP.

Counsel for JBS USA Food Company: Marc E. Kasowitz, Daniel J. Fetterman, and Kenneth R. David of Kasowitz Benson Torres LLP and Jonathon Watson and Joseph Hunt of Spencer Fane LLP.

Counsel for National Beef Packing Company, LLC: Michael F. Tubach, Stephen J. McIntyre, and Benjamin G. Bradshaw of O'Melveny & Myers LLP.

Counsel for Smithfield Foods, Inc. and Smithfield Packaged Meats Corp.: Amy B. Manning of McGuireWoods LLP.

Counsel for Tyson Foods, Inc.: John F. Terzaken, Abigail W. Williams, Laurel E. Fresquez, and Jonathan R. Myers of Simpson Thacher & Bartlett LLP.

**c. Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The Parties have agreed to serve their Rule 26(a)(1) initial disclosures 21 days after the entry of the Scheduling Order.

**d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None except as noted above.

**e. Statement concerning any agreements to conduct informal discovery.**

The Parties have agreed that within two months from entry of the Scheduling Order, Defendants will produce reasonably available organizational charts or their equivalent.

**f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The Parties have not reached any specific agreements related to reducing discovery or litigation costs but have agreed generally to work cooperatively toward this end. The Parties consent to the electronic service of all documents that require service on an opposing party, including but not limited to Initial Disclosures, Interrogatories, Requests for Production of Documents, Requests for Admissions, and Notices of Deposition, as well as Responses to Interrogatories, Requests for Production of Documents, and Requests for Admission. The Parties will jointly create a list of counsel on whom electronic service of documents shall be made.

     **g.** **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The Parties anticipate that their claims or defenses may involve extensive electronically stored information ("ESI"). The Parties have agreed to work cooperatively toward producing any such relevant data in a mutually agreeable format, pursuant to Federal Rule of Civil Procedure 34 and subject to forthcoming proposed ESI and Protective Orders.

     **h.** **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The Parties certify that they have discussed the possibilities at the conference for a prompt settlement or resolution of the case.

To date, Plaintiffs have entered into settlement agreements with three Defendants: Perdue Farms, Inc., Seaboard Foods, LLC, and Webber, Meng, Sahl and Company, Inc., d/b/a WMS & Company, Inc. Unopposed motions to preliminarily approve those settlements are pending before the Court. *See* ECF Nos.170, 205, and 207.

## 7.  CONSENT

     All parties   ☐ [have]   ☒ [have not] consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

The Parties have met and conferred for the purpose of reaching an agreement on proposed discovery limitations. The Parties have made substantial progress and have reached agreement regarding most provisions. The remaining disputes are outlined below.

a. **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

i. **Depositions**  - Court adopts Defendants' proposal on deposition hours

**Plaintiffs**: Plaintiffs propose a total of 648 hours of depositions for the nine Defendant families. This proposed limit does not include former employees or third-party depositions. Defendants have proposed 7 seven-hour depositions per defendant family, inclusive of former employees represented by company counsel. There are nine defendant families remaining in the case (three have settled, and one was dismissed at the pleadings stage).

In the first instance, Plaintiffs believe the discussion regarding deposition limits is premature. The Parties have yet to exchange initial disclosures or discuss custodians. The number of custodians that are still current employees (versus former), and thus subject to Defendants' ability to produce for deposition, has not yet been discussed. Accordingly, Plaintiffs proposed that deposition limits be discussed in conjunction with a deposition protocol, which would address other related issues such as remote depositions, how time will be allocated during a direct examination of one's own witness, cross-examination by a party-opponent, or examination by a co-conspirator. Defendants declined and have proposed dramatically curtailed deposition limits for a case of this size and complexity.

If this Court is inclined to set deposition limits without the benefit of the Parties' further negotiations on custodians and the allocation of time within any deposition, a useful guidepost for this wage suppression conspiracy comes from the related matter of *Jien v. Perdue Farms, Inc.,* No. 1:19-cv-2521 (D. Md.). *Jien* involves similar claims of wage suppression and information sharing, although in the poultry industry and not the red meat industry. In *Jien*, a similar dispute arose over the numbers and allocation of deposition time, and the court there imposed an hours-based limit of 1512 hours for the sixteen non-settled defendants and third-

parties.[2] (Because every settlement agreement includes cooperation clauses in *Jien*, those private contractual agreements supersede any limits set on depositions by the Court). In setting a deposition limit based on hours, and not witnesses, Judge Gallagher explained that an hours-limit incentivizes efficiency, since every hour spent in one deposition means less time for another.[3] An hours-limit also allows the parties to decide for themselves where their time is best spent.

Defendants propose a hard cap of 7 depositions per defendant family, for a total of only 63 depositions (for a total of 441 hours). Defendants' proposal would be unduly prejudicial to Plaintiffs for a number of reasons.

*First*, a proposal treating all Defendants equally, when they are of unequal size, number of employees, and level of involvement in this multi-year conspiracy, would unfairly deprive Plaintiffs of their ability to build their case as they see fit. The nine defendant families each present unique challenges for discovery. Three (Tyson, JBS and Cargill) are active in both pork and beef processing plants. Three (Agri Beef, American Foods, National Beef) only employ beef plant workers. Two (Hormel and Smithfield) only employ pork plant workers. And one (Agri Stats) facilitates information sharing between the co-conspirators without itself employing processing plant workers, but is paid handsomely to provide the competitors' information to each other. Treating these defendants equally in terms of deposition hours, before even a single document has been produced by any of their witnesses, would unfairly deprive Plaintiffs of the ability to depose more witnesses from larger defendants who span both the pork and beef markets, and who employ substantially more workers.

---

[2] Order at 1, *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md. June 1., 2021), ECF No. 470.
[3] *Id.*

*Second*, the total number of depositions proposed by Defendants (i.e. 63 deposition) is insufficient for such a complex conspiracy. The Complaint alleges multiple facets to Defendants' conspiracy, including the exchange of wage data through annual surveys, attendance at in-person annual compensation meetings, directly exchanges of compensation data via email and telephonic communications, and exchanges of compensation data through Agri-Stats. Each of these sets of acts in furtherance of the conspiracy warrants discovery, and each involved different Defendant employees. Moreover, different executives within each Defendant family performed key roles relating to compensation-setting: some HR executives obtained compensation data from competitors; other employees analyzed competitors' data and recommended wage schedules; senior executives made key compensation decisions. Given the various means by which the conspiracy was implemented and the number and range of employees involved in the conspiracy's implementation, Plaintiffs require a higher number of depositions than the figure proposed by Defendants to effectively prove their claims. Accordingly, whereas Defendants' deposition proposal permitting just 63 depositions totaling 441 hours is inadequate, Plaintiffs' proposal of 648 deposition hours allocated across a range of witnesses is suitable for such a complex and multi-faceted antitrust conspiracy.

*Third*, Plaintiffs' proposal of a more fluid hours cap allows for more efficiency at depositions. Defendants' limit of seven hours for seven witnesses would incentivize Plaintiffs to take every last minute of a deposition with a witness that they could.  In contrast, with an hours cap, if a witness does not have information regarding relevant events, has a lapse in memory regarding certain events, or has only limited information regarding the conspiracy, Plaintiffs' incentives are aligned with those of the witness—to expeditiously extract all relevant information

that the witness has and finish the deposition in as short a time as possible. An hours cap incentivizes peak efficiency.

*Fourth*, an hours cap applies more equally to both sides. The Defendants in this case are in control of their own witnesses. If past cartel cases are any indication, Defendants will likely elect to question their own witnesses, and those of their co-conspirators. If this is true, then an hours cap will apply equally to each side, and incentivize all parties to cooperate by disclosing the amount of hours anticipated for any one deposition in advance and coordinating to ensure that witness is available for the anticipated amount of questioning. Defendants' proposed limitation of seven hours for seven witnesses does not grapple with the complexities of a multi-party conspiracy. It simply acts as if this is a patent disagreement with seven inventors listed on a patent, each with equal information and only one opposing party. Such a rigid structure does not fit a more complex, multi-party conspiracy.

*Finally*, flexibility in allocating depositions among the Defendant families is especially important at this early stage. Plaintiffs have not yet received any documents. But it is usually true that some defendants are more culpable than others. It is entirely likely that once depositions start, Plaintiffs will feel confident they have sufficient evidence to certify a class and defeat summary judgment after a small number of depositions for some defendants, while for others, it will take more deposition hours to reach this point. This can be due to a large turnover of employees, or the lack of a written record requiring depositions of more witnesses to confirm events. But at the outset, these very nuanced details are unknowable. An hours-cap allows Plaintiffs the flexibility to make these decisions (without court intervention) as discovery proceeds.

*In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.) ("*Broilers*") provides some instructive lessons on these points. At the outset, the discovery magistrate in *Broilers* used the structure for allocating depositions that defendants propose here; it permitted a set number of depositions—in *Broilers*, ten—per Defendant family.[4] However, as discovery progressed, this fixed-number of depositions proved unworkable. Because the defendants were very differently situated in the market and of different sizes, the *Broilers* court modified its approach and held that plaintiffs could take additional depositions of some defendants' employees, so long as plaintiffs reduced the depositions they took of *other* defendants' employees, such that the total number of depositions available to plaintiffs remained the same.[5] The *Jien* court heeded the lesson of *Broilers* when it imposed a flexible, hours-based deposition limit.  Plaintiffs' proposal asks this court to do the same.

A limit of 648 hours of depositions allows Plaintiffs to tailor the number of depositions needed to address differences among Defendant families without needing to seek leave of Court. As the significant motion practice in the *Broilers* litigation indicates, such a cap would save the Court and the parties substantial time and resources.

**Defendants:** Defendants propose seven depositions of seven hours each per Defendant family.  Defendants agree that these limits would not include settled parties. Defendants agree that these limits would not include third parties, but they would include former employees represented by company counsel.

---

[4] Order at 2, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Aug. 28, 2018), ECF No. 1155.
[5] Minute Entry, *Broilers* (Apr. 10, 2019), ECF No. 2024.

Rule 30 sets a presumptive limit of ten seven-hour depositions per side.  Fed. R. Civ. P. 30(a)(2)(A)(i), (d)(1).  These restrictions mitigate "undue costs" and reinforce the parties' "professional obligation to develop a mutual cost-effective plan for discovery."  Fed. R. Civ. P. 30 advisory committee's notes to 1993 and 2000 amendments.  "A party seeking leave to take more than 10 depositions must make a 'particularized showing of why the discovery is necessary.'"  *United States v. Springer*, 2009 WL 10756139, at *3 (N.D. Okla. 2009) (quoting *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 586 (D. Minn. 1999)).

Plaintiffs' proposal to take 648 hours of depositions for the nine Defendant families— without any limit on the number of depositions they can take—is not reasonable or proportionate to the needs of the case.  Assuming Plaintiffs examined each witness for a full seven hours, their proposal would work out to an average of more than ten depositions per Defendant family—a dramatic expansion beyond Rule 30's presumptive limits.  But since Plaintiffs expressly do not intend to use the full seven hours with each witness, the consequence is that each of the nine Defendant families will have to produce even more than ten current-employee witnesses for deposition—in addition to any former employees Plaintiffs seek to depose.  (Plaintiffs do not propose any limit whatsoever for depositions of settled Defendants, Defendants' former employees, or third parties, further compounding the burden and expense of discovery.)  Between current and former employees, any given Defendant family could well have to produce dozens of witnesses for deposition.  This is not remotely proportional to the needs of the case.

Allocating depositions by hours places a distinctly disproportionate burden on Defendants.  By way of example, it is significantly more time-consuming, expensive, and intrusive to prepare two witnesses for three-and-a-half-hour depositions than a single witness for a seven-hour deposition.  Unbound by a limit on the total number of depositions they could take,

Plaintiffs would have every incentive to take more and shorter depositions that minimize time on the record but inflate the costs and burdens of preparing extra witnesses to testify (not to mention the associated costs for stenographers, videographers, and other deposition expenses).

Making matters worse, Plaintiffs do not propose to disclose in advance how much time they intend to spend with each witness—meaning that Defendants must prepare each witness on the assumption that the deposition could last seven hours, even though it could end up being an hour or less.  There would be nothing preventing Plaintiffs from taking seven one-hour depositions in lieu of a single seven-hour deposition (and if anything, their proposal incentivizes this conduct).  Under Plaintiffs' proposal, either approach would "count" the same, yet the burdens borne by Defendants and their employees would be dramatically different. Courts have reasonably rejected purely hours-based deposition caps.  *See, e.g.*, *United States v. Umbrella Fin. Servs.*, LLC, 2023 WL 4109697, at *3 (N.D. Tex. 2023) ("The government does not cite, and the court is unaware of, any authority for the court to authorize leave to take excess depositions measured by the total number of hours rather than by a total number of depositions. Indeed, Rule 30 provides that a party may take 10 depositions without leave of court, and each deposition may last up to 7 hours. It does not state that a party may take up to 70 hours of depositions, regardless of how many depositions are taken.").

Another problem is that Plaintiffs' proposal does not limit the number of depositions that Plaintiffs may take of any one Defendant family: Plaintiffs' proposal would permit them to take significantly more depositions from certain Defendants than others, limited only by an overall hours cap.  Plaintiffs suggest that differences in Defendants' size, products, and involvement in the alleged conduct warrant differential treatment, but they do not explain why Defendants' specific proposal of seven depositions per Defendant family would be inadequate to meet any

legitimate discovery needs, nor do they articulate why the burden should fall more heavily on "larger" Defendants.  Plaintiffs never acknowledge that under Defendants' proposal, they can simply seek leave to take more depositions should seven not suffice for any given Defendant family.

Finally, Plaintiffs posit that Defendants' proposal does not grapple with the realities of multiparty antitrust litigation, but they never explain why seven depositions per Defendant family is inadequate per se in antitrust conspiracy cases generally or in this antitrust conspiracy case in particular.  Courts in multiparty antitrust litigation routinely order deposition-based caps rather than hours caps. *See In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn. 2018), ECF No. 569, at 6 (agreeing to 10-deponent cap for percipient witnesses); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. 2016), ECF No. 306, at 6-8 (proposing cap based on number of deponents).  For their part, Plaintiffs urge the Court to follow the *Jien* court in adopting an hours-based cap, in part by painting the *Broilers* case as an allegory about the pitfalls of a deposition-based cap.  But they mistake a feature for a bug—the *Broilers* court effectively calibrated deposition discovery to the needs of that case and positioned itself, not the plaintiffs, as the arbiter of requests for incremental party deposition discovery.

A cap on the number of depositions by Defendant family is the best way to ensure that Plaintiffs are incentivized to conduct targeted and focused depositions.  In recognition of Rule 30's presumptive limits, Rule 26(b)(1)'s proportionality requirement, and the scope of this case, Defendants propose that Plaintiffs be permitted to take seven Rule 30(b)(1) depositions of seven hours each per Defendant family.  This number would be exclusive of settled parties, third parties, and Rule 30(b)(6) depositions.  It would be inclusive of each Defendants' former employees represented by counsel for that Defendant.  And it would allow an enormous amount

of deposition discovery that is more than adequate to account for any of the Plaintiffs' concerns about market complexities, differences in Defendant size, or the difficulties attendant to allocating deposition time among Defendants.

### ii.    Interrogatories

The Parties agree that Plaintiffs may jointly serve 30 interrogatories on each Defendant family, including all discrete subparts, and Defendants may jointly serve 30 interrogatories on each named Plaintiff, including all discrete subparts.

### b.  Limitations which any party proposes on the length of depositions.

### i.     Rule 30(b)(1) Depositions

The parties agree that if a party notices a deposition, the noticing party will be entitled to seven (7) hours of examination per witness consistent with Fed. R. Civ. P. 30(d)(l). The parties also agree that Counsel for a witness (or for the party that is the witness' employer) or Counsel for another party will have a reasonable amount of time beyond deposing counsel's seven (7) hours (or longer, if by agreement of Counsel or Court order) to examine the witness at the conclusion of direct examination without the need for a cross-notice. In that case, Deposing Counsel will have at least a half hour of additional deposition time, over and above the seven (7) hours permitted by the Federal Rules. Should a half hour be insufficient for Deposing Counsel, the Parties shall confer to determine an amount of time that is reasonable and proportional to the extent and importance of the issues raised by counsel for the witness or the witness' employer.


### ii.    Cross-Noticing Deponents   - Court adopts Defendants' position as modified in court
Plaintiffs:

Plaintiffs propose that, in the event a Plaintiff or Defendant cross-notices a deposition of an individual that it does not represent and is not its current employee, the noticing parties and the witness will meet and confer on the appropriate duration of the cross-noticed portion of the deposition. The presumption will be that the originally noticing party shall have the full 7 hours of time permitted by the Federal Rules of Civil Procedure. The cross-noticing party may have additional time beyond the noticing party's 7 hours as agreed with their co-parties. The parties will co-operate on the scheduling of the deposition and whether a second day will be necessary to accommodate the witness, counsel, and the court reporter.

Defendants proposal that any cross-notice would immediately cut Plaintiffs' default time to 50/50 is prejudicial to the Plaintiffs and unworkable. Plaintiffs bear the burden of proof on the elements of this conspiracy. As such, they are the ones that will need to extensively examine witnesses, introduce documents, and lay evidentiary foundation for exhibits. Defendants, as the parties in control of most of the witnesses, do not carry the same burden. Moreover, based on experience in other, similar cases, Defendants do not question witnesses as extensively as the plaintiffs, even where they issue cross notices. Proposing to split time 50/50 as a default, will only encourage Defendants to reflexively issue cross-notices and deprive Plaintiffs of half their deposition time.

The complicated and far-reaching nature of Defendants' conspiracy as well as issues of the relevant market for Plaintiffs' rule of reason claim means that many third parties will have relevant testimony, including co-conspirator red meat processors, trade associations, and— importantly—Defendants' former employees. Defendants proposed per-Defendant family deposition limits include these former employees, despite their status as third parties. Combining these per-family limits with Defendants' proposed 50/50 split of time would hamstring their

ability to fully develop the evidence in this case. Defendants' proposal would mean that Plaintiffs might use an entire deposition allotment in order to elicit mere minutes of rebuttal testimony from a former employee in a deposition noticed by Defendants. In contrast, Plaintiffs' proposal preserves needed flexibility and incentivizes cooperation between the parties while reducing opportunities for gamesmanship.

**Defendants:** Defendants propose that in the event a Plaintiff or Defendant cross-notices a deposition of a third party or a witness of a settling Defendant, there will be a 50/50 time split between the original noticing party and the cross-noticing party. Plaintiffs' proposed time allocations for cross-notices are not workable and present both procedural and substantive problems. Procedurally, Plaintiffs' proposal incentivizes parties to rush deposition notices of third parties, while leaving disputes about time allocations unresolved. Substantively, both parties may have legitimate claims to needing more time to examine various third parties and/or settling Defendants, and it is arbitrary to assume that the first noticing party should be entitled to a full seven hours while a cross-noticing party receives only additional time as agreed with its co-parties. A default 50/50 time split has been adopted in other cases and is the best way to minimize disputes. Finally, while Defendants are willing to defer disputes over time allocations for cross-noticed depositions, they will seek no less than seven hours with each WMS witness. Defendants are open to Plaintiffs having additional time with WMS witnesses, but question whether that is necessary given Plaintiffs' extensive access to and cooperation from Mr. Meng.

### iii.     Rule 30(b)(6) Depositions - Court adopts Plaintiffs' proposal

**Plaintiffs**: Plaintiffs propose an additional maximum of 14 total deposition hours for Rule 30(b)(6) topics per Defendant family. This is a complicated conspiracy involving multiple years, plants, and information sharing services (both WMS and Agri Stats). It is likely that Plaintiffs

will require testimony regarding particular issues on industry background or even evidentiary holes that percipient witnesses will not be able to fill. Examples of topics in prior conspiracy cases that have required Rule 30(b)(6) testimony (versus percipient witness testimony) are questions regarding complex productions of structured data, and evidentiary foundation for documents that do not have a sponsoring witness who remains employed at a company or is reachable as a former employee. These topics are mere examples, and frequently the need for Rule 30(b)(6) testimony is not solidified until closer to the end of discovery when more depositions have occurred of percipient witnesses. Allowing fourteen hours of testimony to address these topics, if necessary, is reasonable under the circumstances.

**Defendants:** Plaintiffs should be permitted a total of seven hours per Defendant family for Rule 30(b)(6) depositions where a single witness serves as the deponent, and ten total hours per Defendant family where multiple witnesses serve as the deponent.

Defendants further believe the parties should make a good-faith effort to notice Rule 30(b)(6) depositions at the outset of all depositions. *See German v. Holtzman Enters., Inc.*, No. 1:19-cv-03540-PAB-STV (D. Colo. 2020), ECF No. 30 at 8 (rejecting plaintiffs' proposal that Rule 30(b)(6) depositions "may require more than 7 hours, depending on the number of corporate designees," and adopting defendants' proposal that Rule 30(b)(6) depositions be limited "to 7 hours, regardless of the number of corporate designees"); *Advanced Exteriors, Inc v. Allstate Corp.*, No. 1:21-cv-01539-PAB-STV (D. Colo. 2021), ECF No. 20 at 7 ("Rule 30(b)(6) depositions shall be limited to seven hours regardless of the number of designees or representatives that testify on behalf of the Rule 30(b)(6) deponent.").

   **c. Limitations which any party proposes on the number of requests for production and/or requests for admission.**

     **i.**     **Requests for Production.**

The Parties agree that Plaintiffs may jointly serve 40 Requests For Production on each Defendant family, and Defendants may jointly serve 40 Requests For Production on each named Plaintiff.

     **ii.**     **Requests for Admission.**

The Parties agree that Plaintiffs may jointly serve 50 Requests for Admission on each Defendant family, including all discrete subparts. Defendants may jointly serve 50 Requests for Admission on each named Plaintiff, including all discrete subparts. This limit does not apply to Requests for Admission relating to the authentication or admissibility of documents.

**d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions.    - Court adopts Plaintiffs' proposal**

**Plaintiffs**: The deadline for service of Interrogatories, Requests for Production of Documents, and/or Requests for Admission should be 45 days before the close of fact discovery, with the exception that the Parties may serve Requests for Admission after the close of fact discovery for the purpose of authenticating and establishing the admissibility of documents.

Defendants have proposed a schedule where fact discovery will close within 30 days of the filing of the motion for class certification. Layering a deadline of 60 days for service of all written discovery would mean that Plaintiffs must serve all written discovery a month before their motion for class certification. At this point, Plaintiffs will not have seen any of the Defendants' expert reports or their opposition to class certification, and will not have the benefit of understanding Defendants' defenses to the case.

Such an interim deadline is found nowhere in the local rules or Federal Rules of Civil Procedure. In the interests of compromise, Plaintiffs have agreed to serve all written discovery 45 days before the close of fact discovery. More is not required.

**Defendants:** Defendants propose that the deadline for service of Interrogatories, Requests for Production of Documents, and/or Requests for Admission be no later than 60 days before the close of fact discovery, except for requests to establish the authenticity and/or admissibility of documents.  This timeline will provide the parties sufficient time to meet and confer over the discovery responses in an attempt to resolve any disputes. Plaintiffs' proposed deadline of serving all written discovery 45 days before the close of fact discovery is unfeasible. Under Plaintiffs' proposal, the parties would have only 15 days to review discovery responses; schedule, conduct, and conclude meet and confer discussions; and draft and file any motions to compel in the event of a dispute.  This is not realistic.  Defendants' proposal gives the parties sufficient time to consider the discovery responses, meet and confer, and prepare and file any necessary motions to compel before the close of discovery deadline.

### e.  Other Planning or Discovery Orders

The Parties must file any motions to compel on or before the close of fact discovery. Additional deadlines are included for the Court's approval in the case plan and schedule below.

### 9.  CASE PLAN AND SCHEDULE

The Parties have agreed on all issues regarding a schedule other than when fact discovery should end, as follows:

| Event | Parties' Proposed Deadline |
|---|---|
| Parties Serve Rule 26(a) Disclosures | **21 days** from entry of scheduling order |
| Parties Serve Initial Rule 34 Requests | **None** |

| | |
|---|---|
| Parties file protective order or submit to the Court discovery disputes relating to protective order | **2 months** from entry of scheduling order |
| Parties file e-discovery order or submit to the Court discovery disputes relating to e-discovery order | **3 months** from entry of scheduling order<br><br>Parties shall file a deposition protocol **4 months** from entry of scheduling order |
| Parties produce reasonably available organizational charts or equivalent information | **2 months** from entry of scheduling order |
| Producing Parties propose initial custodians and initial search protocol (e.g., search terms) | **3 months** from entry of scheduling order |
| Deadline for parties to complete negotiations concerning initial custodians and initial search protocol (e.g., search terms) | **5 months** from entry of scheduling order |
| Date by which parties submit joint letter brief to the court regarding areas of dispute on initial custodians and initial search protocol (e.g., search terms), without prejudice to parties' ability to include in the joint letter other ripe discovery disputes | **6 months** from entry of scheduling order |
| Commencement of rolling productions | **7 months** from entry of scheduling order |
| Parties' certification of substantial completion of production of structured data in response to requests for production | **8 months** from entry of scheduling order |
| Parties' certification of substantial completion of production of documents in response to requests for production | **12 months** from entry of scheduling order |
| Plaintiffs' motion for class certification and supporting expert reports | **20 months** from entry of the scheduling order |

| | |
|---|---|
| Defendants' response to Plaintiffs' class certification motion, opposing expert reports, and Daubert motions directed to Plaintiffs' class certification experts | **23 months** from entry of scheduling order |
| Plaintiffs' replies in support of class certification and supporting rebuttal expert reports; responses to Defendants' Daubert motions regarding Plaintiffs' class certification experts; and Daubert motions regarding Defendants' class certification experts | **26 months** from entry of scheduling order |
| Defendants' replies in support of Daubert motions regarding Plaintiffs' class certification experts (if any); Defendants' responses to Plaintiffs' Daubert motions regarding Defendants' class certification experts (if any) | **27 months** from entry of scheduling order |
| Plaintiffs' replies in support of Daubert motions regarding Defendants' class certification experts (if any) | **28 months** from entry of scheduling order |
| Plaintiffs' merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |
| Defendants' merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |
| Plaintiffs' rebuttal merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |
| Motions for summary judgment and Daubert motions regarding merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |
| Opposition to motions for summary judgment and Daubert motions regarding merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |

| Replies in support of motions for summary judgment and Daubert motions regarding merits and damages expert reports | Parties propose to defer this schedule 30 days after class certification decision |
|---|---|

### a. Deadline for Joinder of Parties and Amendment of Pleadings - Court adopts Defendants' proposal

**Plaintiffs:** Amendments of pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure, which allows a party to amend its pleadings after the time to amend as a matter of course has passed "only with the opposing party's written consent or the court's leave." Federal Rule of Civil procedure 15(a)(2) instructs that courts "should freely give leave when justice so requires." This liberal policy of granting leave to amend reinforces the basic principle that pleadings should enable a claim to be heard on its merits. *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.*, 181 F.3d 1180, 1185–86 (10th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)).

Defendants ask this court to supplant Rule 15's liberal policy of amendment with a good cause standard beginning ***just 45 days*** after the scheduling conference. This would then invoke the "good cause" standard of Federal Rule of Civil Procedure 16, which provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The 'good cause' standard imposes a much higher burden on the moving party than the more lenient Rule 15(a) standard. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Defendants are seeking to require that Plaintiffs amend their complaint likely before they receive even a single document in the case. The parties have agreed that the Defendants will produce reasonably available organizational charts and employee lists within 2 months of the Court's scheduling order, and complete negotiations over custodians 3 months from the issuing

of a scheduling order. Under Plaintiffs' proposal, Defendants will not substantially complete their document productions until 12 months after the scheduling order. ***And yet, Defendants propose that Plaintiffs must amend their pleadings before receiving one document***. Plaintiffs believe that discovery will bring additional issues into focus such as the existence of additional co-conspirators, the beginning date of the conspiracy, and whether the scope of the proposed class is correct given the focus of the Defendants' conspiracy.

Moreover, this proposed deadline does not take into account that this is a complex class action. The parties agree that Plaintiffs' motion for class certification will not be due until 8 months after the completion of substantial discovery. In class actions, it is frequently the case that additional class representatives are added to either substitute for class representatives who no longer wish to serve in a representative capacity, or to represent possible subclasses. Defendants' proposal of imposing a deadline for amendment a mere 45 days after the scheduling conference does not take into account the complexities of this action.

**Defendants:** The deadline for joinder of parties and amendment of pleadings should be 45 days after the November 16, 2023 scheduling conference. This deadline follows the recommended deadline in the District of Colorado's Proposed Scheduling Order and Instructions form, which states that "[u]nless otherwise ordered in a particular case, for good cause, this deadline should be no later than 45 days after the date of the scheduling conference, so as to minimize the possibility that late amendments and joinder of parties will precipitate requests for extensions of discovery cutoff, final pretrial conference, and dispositive motion dates." D. Colo. Proposed Scheduling Order and Instructions at 6.

Plaintiffs' proposal would swallow that default rule.  They insist—contrary to the plain text and the thrust of the District of Colorado's standard form—that document discovery must

precede the expiration of the time to join parties and amend their pleadings.  But the default rule reflects litigation reality: it is nearly always the case that parties will not have completed (or even begun) document discovery by the deadline to amend the pleadings or add parties.  And in the event plaintiffs discover a magic bullet in Defendants' documents and diligently bring it to the Court's attention, they should have no trouble meeting the "good cause" standard that they fear.

      **d.**     **Expert Witness Disclosure.**

The Parties anticipate that they will call expert witnesses. The Parties have not identified their respective expert(s) at this time. The Parties will disclose the identity of these individuals and the subjects of their testimony on or before the expert disclosure date.

      **e.**     **Identification of Persons to Be Deposed.**

**Plaintiffs:** Plaintiffs anticipate, at this early stage in litigation, that the following individuals and entities are likely to have discoverable information that Plaintiffs may use to support their claims and/or defenses:

1. Plaintiffs named in the Complaint who may have information related to the allegations of the Complaint;

2. Current and former employees of Defendants who may have information related to the allegations of the Complaint;

3. Corporate representatives of each respective Defendant (identities to be determined) who may have information related to the allegations of the Complaint;

4. Other fact witnesses as identified in discovery, including but not limited to non-parties who may have information related to the allegations of the Complaint;

5. The Parties' expert witnesses, who have yet to be identified; and

6.      Any other witness identified by Defendants or in discovery, including any witness necessary for authentication, impeachment, or rebuttal.

Plaintiffs believe that it is premature to estimate the amount of time needed for the above depositions or to set depositions limits at this time.  As noted above, Plaintiffs further suggest that any such limits should be determined following substantial completion.

**Defendants:** Defendants propose that the Parties address the identification of persons to be deposed, other than as discussed in 8.a and 8.b above, in the deposition protocol to be negotiated between the parties.

## 10. DATES FOR FURTHER CONFERENCES

**a.  Status conferences will be held in this case at the following dates and times:**

December 10, 2024, at 9:00 a.m.

_____.

**b.  A final pretrial conference will be held in this case on _____ at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.**

## 11. OTHER SCHEDULING MATTERS

**f.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

The Parties' discussions concerning discovery issues are at a preliminary stage.  If the parties are unable to reach agreement on any issues relating to discovery, they will raise those issues with the Court at the appropriate time consistent with the case schedule.

**i.      Fact-Discovery Cutoff and Class Certification Briefing Schedule  - Deferred**

**Plaintiffs:** Federal Rule of Civil Procedure 23(c)(1)(A) requires that courts resolve motions for class certification "[a]t an early practicable time." Consistent with this instruction, Plaintiffs propose that the parties begin briefing motions for class certification before the close of

fact discovery. In antitrust cases, it is common practice for courts to schedule class certification briefing while fact discovery is ongoing.[6]

In addition to moving this case forward expeditiously, initiating class certification briefing before the close of fact discovery promotes efficiency and effective litigation in three distinct ways. First, it allows all parties to obtain the precise discovery needed to adequately respond to each other's class certification arguments. Second, it avoids protracted satellite litigation about whether the parties should reopen discovery or should have foreseen the need to take additional discovery prior to its closure. Third, it ensures that any unanticipated delays that emerge during the final stages of fact discovery do not prevent the start of class certification briefing.

Though Defendants ostensibly propose a date for the close of fact discovery one month after the deadline for class certification, Defendants have also proposed a deadline for the service of written discovery of 60 days before the close of fact discovery. The effect of these two

---

[6] *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. at 176 (expressly rejecting an "attempt to postpone briefing of the class certification until all discovery is finished"); Scheduling Order, *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md. Feb. 3, 2023), ECF 805 (scheduling class certification briefing before the close of fact discovery) Scheduling Order, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill. Aug. 28, 2020), ECF No. 3788 (same); Scheduling Order, *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn. Jan. 26, 2011), ECF 658 (same); Scheduling Order, *In re Cattle and Beef Antitrust Litig.*, No. 0:22-md-03031 (D. Minn. Jan. 13, 2023), ECF 129 (same); Scheduling Order, *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-1610 (N.D. Ill. Nov. 6, 2020), ECF No. 196 (same); Order, *In re Local TV Advert. Antitrust Litig.*, No. 18-cv-6785 (N.D. Ill. Mar. 20, 2019), ECF No. 218 (same); *In re Int. Rate Swaps Antitrust Litig.*, No. 16-md-02704-PAE (S.D.N.Y. Sept. 10, 2018), ECF Nos. 522, 549 (same); *In re Domestic Airline Travel Antitrust Litig.*, Misc. No. 15-1404 (CKK), 2017 WL 11565592, at *3, *5 (D.D.C. Jan. 30, 2017) (same); Scheduling Order, *Kleen Prods. LLC v. Int'l Paper Co.*, No. 10-cv-5711 (N.D. Ill. Feb. 19, 2013), ECF No. 461 (same).

provisions, taken together, is to close discovery one month *before* Plaintiffs' motion for class certification is due.

Even an effective close of fact discovery one month after Plaintiffs' class certification deadline would thwart the benefits of initiating class certification before the close of fact discovery. For instance, Plaintiffs would not be able to obtain the precise discovery needed to adequately respond to Defendants' class certification arguments before the close of fact discovery because Defendants' class certification opposition would not yet be due. Plaintiffs' proposed solution—closing fact discovery six months after Plaintiffs' motion for class certification, yet before the deadline for Plaintiffs' class certification reply—balances the need to resolve class certification quickly and efficiently with the parties' interests in having all relevant discovery available when briefing class certification.

**Defendants:** Fact discovery should close one month after the filing of the motion for class certification. At that point, fact discovery will have been open for twenty-one months. Bringing an end to fact discovery one month after the filing of the class certification motion—as opposed to six months after filing—limits unnecessary interruptions while the parties brief class certification. *See, e.g.*, *Williams v. GGP, Inc.*, No. 1:17-cv-02723-RM-STV (D. Colo. 2018), ECF No. 17 at 5 (setting a fact discovery cutoff deadline six weeks before the deadline for filing a class certification motion); *Jones v. DISH Network Corp.*, No. 1:22-cv-00167-CMA-STV (D. Colo. 2022), ECF No. 24 at 9, 10, 12 (setting a fact discovery cutoff deadline two months after the deadline for filing a class certification motion). Defendants' proposal would allow nearly two years for fact discovery. Plaintiffs do not explain why that lengthy discovery period is inadequate.

Plaintiffs insist that fact discovery should continue to run for six months after class certification briefing begins because they need to take discovery after receiving Defendants' class certification opposition brief, presumably to shore up Plaintiffs' reply brief. But Plaintiffs cannot properly submit new evidence with their reply brief. *See, e.g.*, *Bennett v. Sprint Nextel Corp.*, 2013 WL 1197124, at *2 & n.14 (D. Kan. 2013) ("new evidence or analysis presented for the first time in a reply [in support of class certification' will not be considered") (cleaned up). If they cannot gather the evidence needed to support their class certification motion in the twenty months preceding its filing, then the Court should not certify a class. The Court should not extend an already-lengthy fact discovery period for several more months so as to permit Plaintiffs' improper maneuvering at the class-certification stage.

**g. Anticipated length of trial and whether trial is to the court or jury.**

The Parties believe they will be better informed regarding the length of trial at a later stage in the litigation. The Parties seek a jury trial.

**h. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO SCHEDULING ORDER

This statement may be alerted or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 16th day of November, 2023.

BY THE COURT:

_____
HON. SCOTT T. VARHOLAK
UNITED STATES MAGISTRATE
JUDGE


APPROVED:

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Shana E. Scarlett*
Shana E. Scarlett
Rio S. Pierce
Abby R. Wolf
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com
abbyw@hbsslaw.com

Steve W. Berman
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Telephone: (206) 623-7292
steve@hbsslaw.com

Elaine Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena CA, 91101
Telephone: (213) 330-7150
elaineb@hbsslaw.com
abigailp@hbsslaw.com

COHEN MILSTEIN SELLERS & TOLL
PLLC

*/s/ Brent W. Johnson*
Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Robert A. Braun
Alison S. Deich
Zachary Glubiak
Zachary I. Krowitz
Nina Jaffe-Geffner
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
rbraun@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com
njaffegeffner@cohenmilstein.com


HANDLEY FARAH & ANDERSON PLLC

*/s/ George F. Farah*
George F. Farah
Rebecca P. Chang
Nicholas J. Jackson
33 Irving Place
New York, NY 10003

Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com
njackson@hfajustice.com

William H. Anderson (Co. Bar 45960)
HANDLEY FARAH & ANDERSON PLLC
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (202) 559-2433
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Martha E. Guarnieri
HANDLEY FARAH & ANDERSON PLLC
1727 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 422-3478
Facsimile: (844) 300-1952
mguarnieri@hfajustice.com

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
60 Harrison Avenue, Suite 604
Boston, MA 02111
Telephone: (202) 921-4567
Facsimile: (844) 300-1952
swiener@hfajustice.com

*Interim Co-Lead Counsel for Plaintiffs and
the Proposed Class*

Brian D. Clark
Stephen J. Teti
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
sjteti@locklaw.com
echang@locklaw.com

Eric L. Cramer

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA19103
Telephone: (215) 875-3000
ecramer@bm.net
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed Class*

*/s/ Jennifer Milici*
Jennifer Milici
WILMER CUTLER PICKERING HALE AND DORR LLP
1899 Pennsylvania Avenue
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
E-mail: Jennifer.Milici@wilmerhale.com

Mark Ford
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
E-mail: Mark.Ford@wilmerhale.com

John Walsh
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 Seventeenth St., Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
E-mail: John.Walsh@wilmerhale.com

Nana Wilberforce
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071

Telephone: (213) 443-5300
Facsimile: (213) 443-5400
E-mail: Nana.wilberforce@wilmerhale.com

*Counsel for Cargill, Inc. and Cargill Meat
Solutions Corp.*

*/s/ Timothy R. Beyer*
Timothy R. Beyer
Adam B. Stern
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, #4100
Denver, CO 80203
Telephone: (303) 866-7000
E-mail: tim.beyer@bclplaw.com
E-mail: adam.stern@bclplaw.com

*Counsel for Agri Beef Co. and Washington
Beef, LLC*

*/s/ Richard B. Benenson*
Richard B. Benenson, #32566
Emily R. Garnett, #45047
BROWNSTEIN HYATT FARBER SCHRECK,
LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Telephone: (303) 223-1100
Fax:(303) 223-1111
E-mail: rbenenson@bhfs.com
E-mail: mwells@bhfs.com
E-mail: egarnett@bhfs.com

David L. Hashmall, #138162
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6321
Fax:(612) 338-0535
E-mail: dhashmall@felhaber.com

*Counsel for American Foods Group, LLC*

*/s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP

Two Embarcadero Center
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
E-mail: mtubach@omm.com

Stephen J. McIntyre
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071-2899
213-430-6000
E-mail: smcintyre@omm.com

Benjamin G. Bradshaw
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
202-383-5300
E-mail: bbradshaw@omm.com
E-mail: bquinn@omm.com

*Counsel for National Beef Packing Company, LLC*

*/s/ Justin W. Bernick*
Justin W. Bernick (Admission forthcoming)
William L. Monts III (Admission forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
E-mail: justin.bernick@hoganlovells.com
E-mail: william.monts@hoganlovells.com

*Counsel for Agri Stats, Inc.*

*/s/ John F. Terzaken*
John F. Terzaken
Abigail W. Williams
Laurel Fresquez
Jonathan R. Myers
SIMPSON THACHER & BARTLETT LLP
900 G Street, N.W.

Washington, DC 20001
Telephone: (202) 636-5858
Facsimile: (202) 636-5502
E-mail: john.terzaken@stblaw.com
E-mail: abigail.williams@stblaw.com
E-mail: laurel.fresquez@stblaw.com
E-mail: jonathan.myers@stblaw.com

*Counsel for Tyson Foods, Inc.*

*/s/ Emily E. Chow*
Emily E. Chow
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612)766-7000
Facsimile: (612) 766-1600
E-mail: emily.chow@faegredrinker.com

Jacob D. Bylund
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Telephone: (515) 248-9000
Facsimile: (515) 248-9010
E-mail: jacob.bylund@faegredrinker.com

Desmonne A. Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
1144 Fifteenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
E-mail:
desmonne.bennett@faegredrinker.com

*Counsel for Hormel Foods Corporation*

*/s/ Marc E. Kasowitz*
Marc E. Kasowitz
Daniel J. Fetterman
Kenneth R. David
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

Fax: (212) 506-1800
MKasowitz@kasowitz.com
DFetterman@kasowitz.com
KDavid@kasowitz.com

*Counsel for JBS USA Food Company*

*/s/ Amy B. Manning*
Amy B. Manning
Sarah A. Zielinski
Kali M. Yallourakis
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 849-8100
E-mail: amanning@mcguirewoods.com
E-mail: szielinski@mcguirewoods.com
E-mail: kyallourakis@mcguirewoods.com

*Counsel for Smithfield Foods, Inc. and
Smithfield Packaged Meats Corp.*