IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02946-PAB-STV

RON BROWN,
MINKA GARMON, and
JESSIE CROFT, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

JBS USA FOOD COMPANY,
TYSON FOODS, INC.,
CARGILL INC.,
CARGILL MEAT SOLUTIONS CORP.,
HORMEL FOODS CORP.,
ROCHELLE FOODS, LLC,
AMERICAN FOODS GROUP, LLC,
TRIUMPH FOODS, LLC,
SEABOARD FOODS, LLC,
NATIONAL BEEF PACKING CO., LLC,
SMITHFIELD FOODS INC.,
SMITHFIELD PACKAGED MEATS CORP.,
MURPHY-BROWN OF MISSOURI, LLC,
AGRI BEEF CO.,
WASHINGTON BEEF, LLC,
PERDUE FARMS, INC.,
GREATER OMAHA PACKING CO., INC.,
NEBRASKA BEEF, LTD.,
INDIANA PACKERS CORPORATION,
QUALITY PORK PROCESSORS, INC.,
AGRI STATS, INC., and
WEBBER, MENG, SAHL AND COMPANY, INC. d/b/a/ WMS & Company,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on the Plaintiffs' Motion for Preliminary Approval

of Settlement with Perdue Farms, Inc., Certification of Settlement Class, and

Appointment of Settlement Class Counsel [Docket No. 170], Plaintiffs' Motion for

Preliminary Approval of Settlement with Seaboard Foods, LLC, Approval of Cooperation

Agreement with Triumph Foods, LLC, Certification of Settlement Class, and

Appointment of Settlement Class Counsel [Docket No. 205], and Plaintiffs' Motion for

Preliminary Approval of Settlement with Webber, Meng, Sahl and Company, Inc.,

Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket

No. 207] filed by plaintiffs Ron Brown and Minka Garmon (collectively the

"representative plaintiffs").  The Court has subject matter jurisdiction pursuant to 28

U.S.C. § 1331.

The representative plaintiffs have reached three settlement agreements with

defendants in this case, namely, with Perdue Farms, Inc. ("Perdue"), Docket No. 170 at

1, Seaboard Foods, LLC ("Seaboard"), Docket No. 205 at 1, and Webber, Meng, Sahl

and Company, Inc. ("WMS"), Docket No. 207 at 1, as well as a cooperation agreement

with defendant Triumph Foods, LLC ("Triumph").  Docket No. 205 at 1.  Regarding the

settlement agreement between the representative plaintiffs and Perdue (the "Perdue

settlement"), the representative plaintiffs move for "an order: (1) preliminarily approving

the Settlement Agreement; (2) certifying the Settlement Class. . .; (3) appointing Interim

Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement

Class Representatives; (5) deferring notice of the Settlement Agreement to the

Settlement Class until an appropriate future date; and (6) ordering a stay of all

proceedings against Perdue except those proceedings provided for or required by the

Settlement Agreement."  Docket No. 170 at 1–2.

Regarding the settlement agreement between the representative plaintiffs and Seaboard (the "Seaboard settlement"), and the cooperation agreement between the representative plaintiffs and Triumph (the "Triumph agreement"), the representative plaintiffs move for "an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class. . .; (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) deferring notice of the Settlement Agreement to the Settlement Class until an appropriate future date; and (6) ordering a stay of all proceedings against Settling Defendant's Released Parties except those proceedings provided for or required by the Settlement Agreement."  Docket No. 205 at 2.

Regarding the settlement agreement between the representative plaintiffs and WMS (the "WMS settlement"), the representative plaintiffs move for "an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class . . .; (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) deferring notice of the Settlement Agreement to the Settlement Class until an appropriate future date; and (6) ordering a stay of all proceedings against WMS except those proceedings provided for or required by the Settlement Agreement."  Docket No. 207 at 2.

## I. BACKGROUND

Plaintiffs filed an amended complaint ("the complaint") on January 12, 2024. Docket No. 260.  The complaint alleges that representative plaintiffs were employees of multiple defendants.  *Id.* at 16, ¶¶ 30–31.  Specifically, Ron Brown was employed by Smithfield Farms, Inc., *id.*, ¶ 30, and Minka Garmon was employed by National Beef

Packing Co., *id.*, ¶ 31.  The representative plaintiffs bring this action individually "and on behalf of a class. . . consisting of all persons employed by Defendants, their subsidiaries, and related entities at beef- and pork-processing plants in the continental United States from January 1, 2000, to the present day."  *Id.* at 7 (footnote omitted). The complaint clarifies that:

> Plaintiffs Ron Brown and Minka Garmon also bring this action on behalf of the members of a subclass ("Subclass") consisting of all persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef- and pork-processing plants in the continental United States from January 1, 2014 until the date of the first preliminary approval of a settlement in this class action ("Subclass Period").  The claims of the Class are brought against all Defendants except WMS, Perdue, Seaboard and Triumph, whereas the claims of the Subclass are brought solely against WMS, Perdue, Seaboard and Triumph.

*Id.* at 7 n.2.  The original complaint defined the class using the January 1, 2014 date, which the amended complaint extended to January 1, 2000, with the exception of defendants WMS, Perdue, Seaboard, and Triumph, each of whom filed a motion for preliminary approval of a settlement before plaintiffs filed their amended complaint. *Compare* Docket No. 1 at 6 *with* Docket No. 260 at 7; *see also* Docket Nos. 170, 205, 207.  The complaint states that "Defendants include fifteen red meat[1] processors and several of their subsidiaries. . ., which collectively produce more than 80 percent of the red meat sold to consumers in the United States," and "two consulting companies," including WMS.  Docket No. 260 at 7–8, ¶ 2 (footnote added).  The complaint alleges that "[b]eginning by at least January 2000 and continuing to the present day, Defendants have conspired with each other to fix and depress the compensation paid to employees of Defendant Processors, their subsidiaries, and related entities at red meat

---

[1] The representative plaintiffs define red meat as beef and pork.  Docket No. 260 at 7.

processing plants in the continental United States," in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *Id.* at 61–62, ¶ 170.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the

second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

Here, the representative plaintiffs move for certification for the purposes of settlement with Perdue, Seaboard, and WMS and to receive the benefits of the Triumph Agreement.  Docket No. 170 at 9; Docket No. 205 at 10; Docket No. 207 at 9.  A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  In the typical case where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).  A class action may be sustained if these requirements are satisfied and the class meets the requirements of one of the categories of Rule 23(b).  Fed. R. Civ. P. 23(b).

The representative plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3).  Docket No. 170 at 12; Docket No. 205 at 12; Docket No. 207 at 12. Under that provision, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).  To certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23 requirements apply and demand heightened attention in the settlement context because the court generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the court must separately evaluate whether

the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).[2]  Fed.

R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

Because all three motions seek to certify the same class, the Court will simultaneously

analyze whether the class is appropriately certified for all three motions.

If plaintiffs meet the requirements for preliminary approval, the court will direct

notice to all class members who would be bound by the proposal and hold a fairness

hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (I) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Although the standards for preliminary approval are not

as stringent as those for final approval, the final approval standards inform the court's

preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement was

fairly and honestly negotiated, (2) serious legal and factual questions placed the

litigation's outcome in doubt, (3) the immediate recovery was more valuable than the

mere possibility of a more favorable outcome after further litigation, and (4) [the parties]

believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky*

---

[2] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

*Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

### A.  Agreements

The representative plaintiffs seek certification of settlement classes consisting of the same people.  Each motion seeks certification of a class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2014 until the Date of Preliminary Approval."  Docket No. 170 at 2–3; Docket No. 207 at 2–3; *see* Docket No. 205 at 3 (listing the same definition of a proposed class but describing the range of applicable dates as "January 1, 2014 until the date of the first preliminary approval of a settlement in this Action").  The following persons and entities are excluded from the proposed classes: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities."  Docket No. 170 at 3 n.1; Docket No. 205 at 3 n.2.; Docket No. 207 at 3 n.1.

The Perdue settlement provides for a $1,250,000 settlement fund.  Docket No. 170-1 at 14–15, § II.A.1.  The settlement fund is to "be disbursed in accordance with a plan of distribution to be approved by the Court.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by [the Perdue] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action."  *Id.* at 24,

§ II.D.9.  The Perdue settlement requires Perdue to cooperate with the representative plaintiffs in the following ways: producing data on members of the class employed by Perdue or its subsidiaries, providing declarations or affidavits on the authenticity of documents, providing documents through designated document custodians, allowing five current employees of Perdue to be deposed, and assisting the representative plaintiffs in their efforts to obtain the phone records from third-party carriers.  *Id.* at 15–18, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice as to Perdue."  *Id.* at 9.

The Seaboard settlement provides for a $10,000,000 settlement fund.  Docket No. 205-3 at 10, § II.A.1.  The settlement is to "be disbursed in accordance with a plan of distribution to be approved by the Court.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action."  *Id.* at 21, § II.D.9.  The Seaboard settlement requires Seaboard to cooperate with the representative plaintiffs' prosecution of this case in the following ways: producing data on members of the class employed by "Seaboard Triumph Foods, LLC, or Daily's Premium Meats, LLC," authenticating documents, providing documents through designated document custodians, allowing five current employees of Seaboard to be deposed and called as witnesses at trial, assisting the representative plaintiffs in their efforts to obtain phone records from third-party carriers.  *Id.* at 11–15, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice as to [Seaboard] and Triumph Foods, LLC."  *Id.* at 4.

The Triumph agreement is "[c]ontingent on the Court's preliminary and final approval of the Settlement Agreement between Class Plaintiffs and Defendant Seaboard Foods, LLC."  Docket No. 205-4 at 2.  The Triumph agreement requires Triumph to take actions to cooperate with the representative plaintiffs, including producing data on members of the class who were employed by Triumph or its subsidiaries, authenticating documents Triumph produces, producing documents and phone records, and making employees available for depositions.  *Id.* at 3–7, § 1.  The Triumph agreement states that "Triumph shall have the same rights and obligations as the Settling Defendant as to the sections of the Settlement Agreement pertaining to Settlement Fund Administration (Sec. II, D) and Approval of Settlement Agreement and Dismissal of Claims (Sec. II, F)."  *Id.* at 7.

The WMS settlement requires WMS to cooperate with the representative plaintiffs' prosecution of this case in the following ways: permit George Jonathan Meng, Scott Ramsey, and Cynthia Porter to be deposed and called as witnesses at trial and to use reasonable efforts to provide and authenticate testimony and documents necessary for plaintiffs prosecution of the case.  Docket No. 207-3 at 9, § II.A.1.  This is in addition to the cooperation WMS has already provided through document production and oral proffers to plaintiffs' counsel.  *Id.*  In exchange, plaintiffs agree to release WMS from any present and future claims arising out of the alleged conspiracy to fix and depress the compensation paid to employees of the meat processing defendants.  *Id.* at 9–11, § II.B.2.

**B. Numerosity**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a presumption of numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

Here, the representative plaintiffs state the proposed settlement class likely includes tens of thousands of persons.  Docket No. 170 at 10; Docket No. 205 at 10; Docket No. 207 at 10.  Although the representative plaintiffs do not provide an exact estimate, the Court finds the number of class members is easily ascertainable because identifying class members will not "necessitate delving into individualized or subjective determination."  *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023) (unpublished) (quoting 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (19th ed. updated 2022)).  Given *Trevizo*, the sheer number of class members does not create a presumption of numerosity; however, given that the Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the Court agrees that joinder of tens of thousands of people would be impracticable and that the numerosity requirement is met.

### C. Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires that plaintiffs demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality. *Dukes*, 564 U.S. at 359.

The representative plaintiffs raise the following common questions of law and fact: whether defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for the representative plaintiffs' claims, and what the amount of damages are.  Docket No. 170 at 11; Docket No. 205 at 11; Docket No. 207 at 10.  The Tenth Circuit has acknowledged that "price-fixing affects all market participants, creating an inference of class-wide impact even when prices are individually negotiated."  *In re Urethane Antitrust Litigation*,[3] 768 F.3d 1245, 1254 (10th Cir. 2014).  Here, a conspiracy to fix wages would affect all employees regardless of

---

[3] The Court notes that *In re Urethane* does not "relax or shift Plaintiffs' burden of proving that antitrust impact presented a common issue."  *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1182 (10th Cir. 2023).

individual wage negotiations because the representative plaintiffs allege defendants' "anticompetitive conduct affected the entire market." *Black*, 69 F.4th at 1182.

## D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1198-99. Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted). The representative plaintiffs argue that their claims are typical to the class claims because all the class members faced the same antitrust violations. Docket No. 170 at 11; Docket No. 205 at 11; Docket No. 207 at 11. Even when there are factual differences between plaintiffs in price fixing cases, typicality can be found. *In re Urethane Antitrust Litigation*, 237 F.R.D. 440, 447 (D. Kan. 2006). "In

conspiracy cases, the plaintiffs' claims are typical of those of the class because the claims all depend on proof of the antitrust violation by the defendants, not on the plaintiffs' individual positions." *Id.* Accordingly, the Court agrees that the representative plaintiffs bring claims that are typical of the proposed class.

### E. Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted). As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625–26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between

representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by the representative plaintiffs and their counsel. The representative plaintiffs state that "[e]ach named Plaintiff, like all Settlement Class members, share an overriding interest in establishing Defendants' liability and maximizing class-wide damages. And the named Plaintiffs and their counsel have, and will continue to, prosecute the action vigorously on behalf of the class." Docket No. 170 at 12 (footnote omitted); Docket No. 205 at 12; Docket No. 207 at 11–12 (footnote omitted). With regard to the first adequacy factor, the representative plaintiffs' interests are aligned with those of the proposed settlement class because they seek relief for injuries arising out of the same conspiracy and because they were subject to the same harm, namely, anti-competitive wages. Further, there is nothing in the record to show any conflict of interest between the representative plaintiffs or counsel and the rest of the class; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel Cohen Milstein Sellers & Toll, PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC have been functioning as interim co-lead counsel for over a year. *See* Docket No. 128 at 2, ¶ 2. Magistrate Judge Hegarty found the interim co-lead counsel had experience handling class actions, antitrust litigation, and the types of claims asserted in this action. *Id.*, ¶ 3. The representative plaintiffs claim "[c]ounsel have extensive experience and expertise in prosecuting complex antitrust litigation

cases and representing antitrust plaintiffs.  Interim co-lead counsel have represented victims of antitrust conspiracies across the country, and will continue to vigorously represent the class here."  Docket No. 170 at 12; Docket No. 205 at 12; Docket No. 207 at 11–12.  There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because the representative plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the representative plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to

the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  In antitrust cases, because price-fixing affects all market participants, there is an inference of a class-wide impact.  *Beltran v. Interexchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo. 2018) (citing *In re Urethane*, 768 F.3d at 1254).  This presumption can be extended to antitrust cases where plaintiffs allege a conspiracy to lower wages across an entire market.  *Id.*  The representative plaintiffs must show proof that is common on a class-wide basis of the three elements of an antitrust claim: "(1) a violation of the antitrust laws, (2) that plaintiffs suffered some resulting injury from the violation (also called impact), and (3) the measure of damages."  *In re Urethane*, 237 F.R.D. at 449 (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir.2006)).

The Court agrees with the representative plaintiffs that common questions predominate over the other issues.  *See* Docket No. 170 at 12–14; Docket No. 205 at 12–14; Docket No. 207 at 12–14.  Proof of a conspiracy between defendants is a

question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury. Although the damages may vary for individuals in the class, the question of what competitive market wages should have been will be common to the class and is enough at this stage to show a common question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively. Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to adjudicate common legal and factual issues. In addition, the representative plaintiffs state the agreements will help them litigate claims against the other defendants. Docket No. 170 at 3; Docket No. 205 at 4; Docket No. 207 at 7. Additionally, there is no evidence of analogous antitrust claims. Docket No. 205 at 14. Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons. Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104. Therefore, because the tens of thousands of class members will receive the same type of relief and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation. *See Amchem*, 521 U.S. at 623.

**G.  Rule 23(e) Factors**

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

Based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval: (1) the proposed settlement agreements are the product of significant negotiations and discussion between the parties over the course of weeks and months, Docket No. 170 at 6; Docket No. 205 at 7; Docket No. 207 at 6; (2) the parties engaged in robust discussion as to all three agreements, "advised by sophisticated counsel with expertise on antitrust matters and complex class litigation," Docket No. 170 at 6; Docket No. 205 at 7; Docket No. 207 at 6; (3) there is no evidence that the settlement agreements were the result of a collusive agreement between the parties.  The Court therefore finds that the negotiations were conducted fairly and honestly.  Furthermore, the representative plaintiffs indicate there is serious disagreement by the parties about whether defendants, including Perdue, Seaboard, Triumph, and WMS, illegally conspired to depress the compensation of workers for defendant meat processors.  Docket No. 170 at 7; Docket No. 205 at 7; Docket No. 207 at 7.  As a result, the Court finds that the serious questions factor weighs in favor of the proposed settlement agreements.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief.  This factor weighs in favor of the proposed settlement.  The class will be provided with substantial guaranteed relief and these agreements will cause a simpler litigation process for the remaining claims.  Docket No. 170 at 7–8; Docket No. 205 at 7–8; Docket No. 207 at 7–8.  Given the prospect of shortening what could be prolonged litigation and providing at least partial

guaranteed relief, the Court finds that immediate recovery outweighs the possibility of future relief.  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.  With regard to the fourth factor, the representative plaintiffs' counsel has extensive experience in antitrust litigation and states that the settlement agreements are fair and reasonable.  Docket No. 170 at 8–9; Docket No. 205 at 9; Docket No. 207 at 8–9.  The Court finds this factor weighs in favor of preliminary approval.

In conclusion, certifying the class will allow the representative plaintiffs to gain immediate resources to litigate their remaining claims and allow the Court to determine whether there are other members of the class that challenge the fairness of the parties' proposed settlement agreement.  Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is sufficient to preliminarily approve the terms of the proposed settlement agreements.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d at 1110 (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The representative plaintiffs request that class notice be deferred because the representative plaintiffs need to begin discovery to identify everyone in the settlement class and because deferring notice could provide an opportunity to send notice of multiple settlements at once.  Docket No. 170 at 15; Docket No. 205 at 15; Docket No.

207 at 14–15.  The Court agrees that deferring notice is appropriate under these circumstances.

## V.  CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The settlement agreements list Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as interim lead counsel.  Docket No. 170-1 at 12, ¶ 25; Docket No. 205-3 at 8, ¶ 25; Docket No. 205-4 at 2 n.3; Docket No. 207-3 at 6, ¶ 17.  The representative plaintiffs request that interim lead counsel be appointed as co-lead counsel for the settlement class.  Docket No. 170 at 1; Docket No. 205 at 2; Docket No. 207 at 2.  The Court finds that interim lead counsel have sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment.  Therefore, the Court finds that it is appropriate to appoint Cohen Milstein Sellers & Toll PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC as co-lead settlement class counsel.

## VI.  ADDITIONAL PROCEDURES

The Court will require the representative plaintiffs to file their proposed notice to the Court by March 11, 2024 and require defendants to file any objections on the representative plaintiffs' proposed notice by March 21, 2024.  Fourteen days after a

scheduling order is issued in this case, the representative plaintiffs shall provide a proposed schedule for sending notice of the fairness hearing, the postmark deadline for receiving notice, filing a motion for final approval, and for the fairness hearing.

Additionally, the representative plaintiffs seek "a stay of all proceedings against Perdue except those proceedings provided for or required by the Settlement Agreement," Docket No. 170 at 2, "a stay of all proceedings against [Seaboard and Triumph] except those proceedings provided for or required by the Settlement Agreement." Docket No. 205 at 2, and "stay of all proceedings against WMS except those proceedings provided for or required by the Settlement Agreement." Docket No. 207 at 2. Because these defendants have reached a settlement agreement, the Court will stay the proceedings against these defendants.

## VII. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with Perdue Farms, Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 170] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with Seaboard Foods, LLC, Approval of Cooperation Agreement with Triumph Foods, LLC, Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 205] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with Webber, Meng, Sahl and Company, Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 207] is **GRANTED**. It is further

**ORDERED** that the representative plaintiffs shall file their proposed notice to the settlement classes **on or before March 11, 2024**.  It is further

**ORDERED** that defendants Perdue Farms, Inc., Seaboard Foods, LLC, Triumph Foods, LLC, and Webber, Meng, Sahl and Company, Inc. shall file any objections to the representative plaintiffs' proposed notice **on or before March 21, 2024**.  It is further

**ORDERED** that, **on or before March 29, 2024**, the representative plaintiffs shall file a proposed timeline to complete approval of this settlement.  It is further

**ORDERED** that the case and all related deadlines are **STAYED** as to Perdue Farms, Inc., Seaboard Foods, LLC, Triumph Foods, LLC, and Webber, Meng, Sahl and Company, Inc. except as stated above.

DATED February 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge