# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RON BROWN and MINKA GARMON, individually and on behalf of all others similarly situated, | Civil Action No. 1:22-cv-02946-PAB-STV |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH JBS USA FOOD COMPANY AND TYSON FOODS, INC., CERTIFICATION OF SETTLEMENT CLASSES, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL** |
| v. | |
| JBS USA FOOD COMPANY; TYSON FOODS, INC.; CARGILL, INC.; CARGILL MEAT SOLUTIONS CORP.; HORMEL FOODS CORP.; ROCHELLE FOODS, LLC; AMERICAN FOODS GROUP, LLC; TRIUMPH FOODS, LLC; SEABOARD FOODS LLC; NATIONAL BEEF PACKING CO., LLC; SMITHFIELD FOODS, INC.; SMITHFIELD PACKAGED MEATS CORP.; AGRI BEEF CO.; WASHINGTON BEEF, LLC; PERDUE FARMS, INC.; GREATER OMAHA PACKING CO., INC.; NEBRASKA BEEF, LTD.; INDIANA PACKERS CORPORATION; QUALITY PORK PROCESSORS, INC.; AGRI STATS, INC.; and WEBBER, MENG, SAHL AND COMPANY, INC. d/b/a WMS & COMPANY, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 3

    A.  Summary of Allegations ............................................................................. 3

    B.  Summary of the Settlement Agreements .................................................... 3

        1.  Summary of the JBS Settlement Agreement ................................. 4

            a.  Class Definition ............................................................... 4

            b.  Monetary Terms ............................................................... 4

            c.  Required Cooperation Terms ........................................... 4

            d.  Release of Liability ......................................................... 5

        2.  Summary of the Tyson Settlement Agreement ............................ 6

            a.  Class definition ............................................................... 6

            b.  Monetary Terms ............................................................... 6

            c.  Required Cooperation Terms ........................................... 6

            d.  Release of Liability ......................................................... 7

III.  ARGUMENT ...................................................................................................... 8

        1.  The Agreements Were Fairly and Honestly Negotiated. ........................ 10

        2.  The Immediate Relief Provided to the Class is Adequate and More Favorable Than After Further Litigation. ................................ 11

        3.  Plaintiffs' Counsel believes the settlement is fair and reasonable. ............................................................................... 13

IV.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES ........................................................................................................... 14

    A.  The JBS and Tyson Settlement Classes Satisfy Rule 23(a). ................................ 14

        1.  The Settlement Classes Are Sufficiently Numerous. ................................ 14

011035-11/2450835 V1

2.    Questions of Law and Fact are Common to the Settlement
         Classes......................................................................................... 14

3.    Class Representatives' Claims are Typical of the
         Settlement Classes Members' Claims........................................... 15

4.    Ron Brown and Minka Garmon and Interim Class Counsel
         Are Adequate. ............................................................................... 16

B.    The Requirements of Rule 23(b)(3) Are Satisfied............................... 16

1.    Common Issues Predominate........................................................ 17

2.    Proceeding as a Class Is a Superior Method for Resolving
         This Dispute Fairly and Effectively............................................. 17

V.    DEFERRING CLASS NOTICE REMAINS APPROPRIATE ....................... 18

VI.    CONCLUSION........................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Sw. Airlines Co.*,
   2019 WL 6712298 (D.N.M. Dec. 10, 2019) ...............................................................8, 10, 12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................................17

*In re Ampicillin Antitrust Litig.*,
   82 F.R.D. 652 (D.D.C. 1979) ...............................................................................................13

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
   2020 WL 3833412 (D. Colo. Mar. 8, 2020) ..........................................................................9

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................................12

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   2020 WL 3288059 (D. Kan. June 18, 2020) ...................................................................10, 11

*In re Crocs, Inc. Secs. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ...........................................................................................18

*D&M Farms v. Birdsong Corp.*,
   2020 WL 7074140 (E.D. Va. Dec. 2, 2020) ........................................................................15

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ..............................................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................................13

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ......................................................................10, 11, 12, 13

*Martinez v. Reams*,
   2020 WL 7319081 (D. Colo. Dec. 11, 2020) ......................................................................10

*Menocal v. GEO Grp., Inc.*,
   882 F.3d 905 (10th Cir. 2018) ..............................................................................................14

*In re Molycorp, Inc. Sec. Litig.*,
   2017 WL 4333997 (D. Colo. Feb. 15, 2017) .........................................................................9

*O'Dowd v. Anthem, Inc.*,
  2019 WL 4279123 (D. Colo. Sept. 9, 2019) ...................................................13

*Paulson v. McKowen*,
  2022 WL 168708 (D. Colo. Jan. 19, 2022) ..............................................9, 15, 17

*Pliego v. Los Arcos Mexican Rests., Inc.*,
  313 F.R.D. 117 (D. Colo. 2016) .......................................................................18

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................16

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  625 F. Supp. 2d 1133 (D. Colo. 2009) ..............................................................11

*Ross v. Convergent Outsourcing, Inc.*,
  323 F.R.D. 656 (D. Colo. 2018) .........................................................................8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .......................................................................16

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
  749 F.2d 1451 (10th Cir. 1984) ..........................................................................8

*In re Syngenta AG MIR162 Corn Litig.*,
  2018 WL 1726345 (D. Kan. Apr. 10, 2018) ......................................................13

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  2012 WL 2370523 (D.S.C. June 22, 2012) .......................................................12

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) .......................................................................9, 11

*Trujillo v. Colorado*,
  649 F.2d 823 (10th Cir. 1981) ............................................................................8

*In re Urethane Antitrust Litig.*,
  237 F.R.D. 440 (D. Kan. 2006) ....................................................................15, 17

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014) .......................................................................15

*In re Urethane Antitrust Litig.*,
  2006 WL 2983047 (D. Kan. Oct. 17, 2006) ......................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .........................................................................................14

**Statutes**

Sherman Act, 15 U.S.C. § 1 ..............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................. *passim*

011035-11/2450835 V1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Ron Brown and Minka Garmon (collectively "Plaintiffs") hereby move for an Order granting preliminary approval of settlements reached between Plaintiffs and Defendants JBS USA Food Company ("JBS") and Tyson Foods, Inc. ("Tyson") hereinafter (collectively "Settling Defendants"). The terms of the settlement with JBS are memorialized in a written agreement entered into by JBS and Plaintiffs on January 29, 2024 ("JBS Settlement Agreement"), and the terms of the settlement with Tyson are memorialized in a written agreement entered into by Tyson and Plaintiffs on March 7, 2024 ("Tyson Settlement Agreement").

## I.    INTRODUCTION

The proposed settlements with JBS and Tyson represent a significant increase in the valuation of the case and in the financial compensation and cooperation benefits for the Settlement Classes.[1] Plaintiffs previously entered into settlements with Perdue Farms Inc. (for $1.25 million and cooperation); Seaboard Foods, LLC and Triumph Foods, LLC (for $10 million and cooperation); and Webber, Meng, Sahl and Company, Inc. (for substantial cooperation) that were each preliminarily approved by the Court.[2] Order, ECF No. 306. Plaintiffs have now entered into these two additional settlements with JBS and Tyson that would recover $55 million and $72.25 million, respectively—for total recovery for class members to date of $138.5 million.

---

[1] The proposed Settlement Classes for the settlements with JBS and Tyson are identical to each other and nearly identical to the settlement classes that have already been certified by the court for three settlements previously reached in this case other than as to the time period. ECF No. 306. The Settlement Classes here have a class period that begins in 2000, while the prior classes began in 2014.

[2] Hereinafter, Plaintiffs will refer to Perdue Farms Inc. as "Perdue"; Seaboard Foods, LLC as "Seaboard"; Triumph Foods, LLC as "Triumph"; and Webber, Meng, Sahl and Company, Inc. as "WMS."

- 1 -

This sizable financial recovery alone would render the Settlement Agreements adequate, but the Settlement Agreements also contain meaningful cooperation terms that will help Plaintiffs to prosecute their antitrust claims against the remaining Defendants. Among other cooperation requirements, both Settlement Agreements obligate the settling Defendant to produce structured data relating to the compensation of class members, to produce relevant documents from multiple custodians selected by Plaintiffs, to authenticate those documents, and to make multiple current employees available for both deposition and trial testimony.

This motion is made on the grounds that both Settlement Agreements are fair, reasonable, and adequate and that each satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. Plaintiffs respectfully request that the Court:

(a)     Grant preliminary approval of both Settlement Agreements;

(b)     Certify the proposed JBS and Tyson Settlement Classes;

(c)     Appoint the Named Plaintiffs Ron Brown and Minka Garmon as class representatives of the JBS and Tyson Settlement Classes;

(d)     Appoint the law firms Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll, PLLC, and Handley Farah & Anderson PLLC (which currently serve as Interim Co-Lead Counsel) as Settlement Class Counsel;

(e)     Defer notice of the Settlement Agreements, instead directing Settlement Class Counsel to submit a motion to approve a plan of notice at an appropriate time, *i.e.*, after Defendants have produced contact and wage information regarding Settlement Classes members and prior to Plaintiffs moving for final approval of the Settlement Agreement; and

(f)      Grant a stay of all proceedings in this litigation against the Released Parties (as defined in the Settlement Agreements) except as necessary to effectuate the Settlement Agreements or as otherwise agreed to by the settling parties.

## II.      BACKGROUND

### A.      Summary of Allegations

Plaintiffs allege that the nation's leading red meat processors and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants. This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviewing industry witnesses, and extensive research into the red meat processing industry. As a result of that investigation, Plaintiffs' lengthy complaint was supported by specific allegations, including allegations that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis. Defendants filed motions to dismiss the complaint on February 17, 2023. The Court denied multiple motions to dismiss, holding that Plaintiffs have alleged sufficient evidence to pursue both their *per se* wage-fixing claim and their information exchange claim.

On January 2, 2024, Plaintiffs filed an Amended Complaint that expands the Class Period, names additional Defendants, and contains more compelling allegations of conspiratorial misconduct. ECF No. 260.

### B.      Summary of the Settlement Agreements

Plaintiffs' counsel has extensive experience in antitrust cases, particularly in cases alleging wage suppression. Moreover, the Settlement Agreements with JBS and Tyson were negotiated with the benefit of Plaintiffs' counsel having already obtained multiple earlier settlements on behalf of the class as well having received hundreds of thousands of documents from one of the

earlier settling Defendants. Thus, the settlement discussions with JBS and Tyson were undertaken with an especially deep understanding of both the applicable law and the relevant facts.

### 1.    Summary of the JBS Settlement Agreement

#### a.    Class Definition

The proposed JBS Settlement Class is co-extensive with the class alleged in the operative Amended Complaint: "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until the date of the first preliminary approval of a settlement in this Action."[3]

#### b.    Monetary Terms

JBS has agreed to provide monetary compensation for the benefit of the JBS Settlement Class in the amount of $55 million, which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by Settling Defendant within fourteen (14) business days after entry of the preliminary approval order. Scarlett Decl., Ex. A at § II(A)(1). This is a non-reversionary fund; once the JBS Settlement Agreement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to JBS Settlement Class members with no amount reverting back to JBS. Scarlett Decl., Ex. A at § II(E).

#### c.    Required Cooperation Terms

JBS has agreed to significant non-monetary cooperation terms, which will provide material benefits to the Class when litigating their claims against the remaining Defendants. JBS will provide data, documents, information, and witnesses from its Red Meat Processing Operations

---

[3] Scarlett Decl., Ex. A at § II(F)(3). The following persons and entities are excluded from the JBS Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

- 4 -

concerning the Allegations (as those terms are defined in the Settlement Agreement), including

*inter alia*:

- **Data:** JBS will produce structured data for the JBS Settlement Class Period, and four years prior, and make reasonable efforts to respond to questions from plaintiffs on the interpretation of the data. Scarlett Decl., Ex. A at § II(A)(2)(a).

- **Custodians and depositions:** JBS will each produce documents from fifteen (15) custodians and testimony from up to eight (8) then-current employees. *Id*., Ex. A at § II(A)(2).

- **Non-custodial documents:** JBS will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the agency consents or does not object to the production or the Court orders the production), and structured data. *Id*., Ex. A at § II(A)(2).

- **Phone records and authentication of documents:** JBS has agreed to provide reasonable assistance to Plaintiffs to obtain phone records and to authenticate documents for use at summary judgment and trial. *Id*., Ex. A at § II(A)(2).

### d.    Release of Liability

The JBS Settlement Agreement releases and discharges JBS's Released Parties from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the JBS Settlement Class. *Id*., Ex. A at § II(B)(2).

The JBS Settlement Agreement, however, does nothing to abrogate the rights of any member of the JBS Settlement Class to recover from any other Defendant. *Id*. The JBS Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods,

product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours

laws unrelated to anticompetitive conduct, or securities claims." *Id.*

### 2.     Summary of the Tyson Settlement Agreement

#### a.     Class definition

The proposed Tyson Settlement Class is co-extensive with the class alleged in the operative

Amended Complaint: "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or

related entities at beef-processing or pork-processing plants in the continental United States from

January 1, 2000 until the date of the first preliminary approval of a settlement in this Action."[4]

#### b.     Monetary Terms

Tyson has agreed to provide monetary compensation for the benefit of the Tyson

Settlement Class in the amount of $72,250,000 (seventy-two million, five hundred thousand),

which represents significant and guaranteed recovery to class members (providing this Court

grants final approval). This amount will be deposited in an escrow account by Tyson within

fourteen (14) business days after entry of the preliminary approval order. Scarlett Decl., Ex. B at

§ II(A)(1). This is a non-reversionary fund; once the Tyson Settlement Agreement is finally

approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are

deducted, the net funds will be distributed to Tyson Settlement Class members with no amount

reverting back to Tyson. Scarlett Decl., Ex. B at § II(E).

#### c.     Required Cooperation Terms

Tyson has agreed to equally significant non-monetary cooperation terms as JBS, which

will provide material benefits to the Class when litigating their claims against the remaining

---

[4] Scarlett Decl., Ex. B at § II(F)(3). The following persons and entities are excluded from the Tyson Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

Defendants. Tyson will provide data, documents, information, and witnesses from its Red Meat

Processing Operations concerning the Allegations (as those terms are defined in the Settlement

Agreement), including *inter alia*:

- **Data:** Tyson will produce structured data for the Tyson Settlement Class Period, and four years prior, and make reasonable efforts to respond to questions from plaintiffs on the interpretation of the data. Scarlett Decl., Ex. B at § II(A)(2)(a).

- **Custodians and depositions**: Tyson will each produce documents from fifteen (15) custodians and testimony from up to eight (8) then-current employees. *Id.*, Ex. B at § II(A)(2). Tyson has agreed to produce documents relating to the Allegations to Class Plaintiffs identified by a reasonable search of the Custodians' files relating to (1) WMS and WMS surveys; (2) the Beef Industry Wage Index ("BIWI") and/or Pork Industry Wage Index ("PIWI"); and those documents provided to and received by various industry trade organizations such as the American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee or "JLM", North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club that reference any form or component of Compensation. *Id.*, Ex. B at § II(A)(2).

- **Non-custodial documents:** Tyson will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the agency consents or does not object to the production or the Court orders the production), and structured data. *Id.*, Ex. B at § II(A)(2).

- **Phone records and authentication of documents**: Tyson has agreed to provide reasonable assistance to Plaintiffs to obtain phone records and to authenticate documents for use at summary judgment and trial. *Id.*, Ex. B at § II(A)(2).

### d.    Release of Liability

The Tyson Settlement Agreement releases and discharges Tyson's Released Parties from

any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement

between Defendants relating to reducing competition for the hiring and retaining of, or to fixing,

depressing, restraining, exchanging information about, or otherwise reducing the Compensation

paid or provided to" the Tyson Settlement Class. *Id.*, Ex. B at § II(A)(2).

The Tyson Settlement Agreement, however, does nothing to abrogate the rights of any member of the Tyson Settlement Class to recover from any other Defendant. *Id*. The Tyson Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id*.

### III.    ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[5] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the "important public policy concerns that support voluntary settlements."[6] This is particularly true in large, complex class actions, such as this case.[7]

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[8] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval."[9] This is because "[p]reliminary approval of a class action settlement is a provisional

---

[5] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

[6] *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981).

[7] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions, settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[8] Fed. R. Civ. P. 23(e)(2).

[9] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

step."[10] At preliminary approval, the court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[11] The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[12] "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.*

"Although the standards for preliminary approval of a class action settlement are not as stringent" as the standards for final approval, "the standards used in the [final] stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards." *Id.* Final approval will be granted if a settlement is "'fair, reasonable, and adequate'" under the Rule 23(e)(2) factors.[13] In the Tenth Circuit, this assessment requires courts to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[14] "If the settling parties can establish these factors, courts

---

[10] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).

[11] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

[12] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

[13] *Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).

[14] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

- 9 -

usually presume that the proposed settlement is fair and reasonable."[15] Plaintiffs address both the Rule 23 factors and the unique Tenth Circuit factors.[16] Each of these factors support preliminary approval.

### 1.    The Agreements Were Fairly and Honestly Negotiated.

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[17] Here, all parties are represented by sophisticated counsel who have played active roles in many antitrust cases across the country. Both negotiations—between Plaintiffs' counsel and counsel for JBS, and between Plaintiffs' counsel and counsel for Tyson—lasted for months, and both negotiations required mediations with an experienced third-party mediator to reach successful conclusions. During those intensive negotiations, the parties undertook a robust discussion of the strengths and weaknesses of the case. The negotiations were adversarial throughout and at no time was there any collusion which might compromise the interests of the class. *See* Scarlett Decl. ¶¶ 8–9. Thus, because the parties—advised by sophisticated counsel with expertise on antitrust matters and complex class litigation—engaged in good faith negotiations, this "support[s] the integrity of the parties' settlement."[18]

---

[15] *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

[16] *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

[17] *Lucas*, 234 F.R.D. at 693.

[18] *Acevedo*, 2019 WL 6712298, at *2; *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions").

## 2. The Immediate Relief Provided to the Class is Adequate and More Favorable Than After Further Litigation.

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[19]

First, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[20] For example, there is serious disagreement by the parties about whether the Defendants JBS and Tyson illegally conspired to depress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants undoubtedly quarreling with the expert analyses Plaintiffs will use to show the class was harmed. The settlements with JBS and Tyson cut short these questions and ensure that the Settlement Classes will be entitled to some financial relief in this litigation.[21] Because the serious, disputed legal issues here render the outcome of the litigation uncertain, this factor weighs heavily in favor of settlement.[22]

---

[19] *See Chavez Rodriguez*, 2020 WL 3288059, at *3 (citation omitted).

[20] *Lucas*, 234 F.R.D. at 693-94.

[21] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) (finding the presence of serious legal and factual questions concerning the outcome of the Litigation to weigh heavily in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[22] *See Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[23] It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation."[24] In contrast, "the proposed settlement agreement provides the class with substantial, guaranteed relief."[25] And although the case will continue against the non-settling Defendants, continuing to litigate this case against either JBS or Tyson would have required significant additional resources and materially increased the complexity of the case. *See* Scarlett Decl. ¶ 12. The Settlement Classes will be provided with substantial guaranteed relief, and the resulting litigation will benefit by proceeding in a more targeted manner against fewer, remaining Defendants.

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[26] Here, the parties reached agreements that necessitated compromise by both sides. *See* Scarlett Decl. ¶¶ 8–12. Thus, the immediate, substantial relief offered by the Settlement Agreements outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many

---

[23] *Lucas*, 234 F.R.D. at 694.

[24] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

[25] *Lucas*, 234 F.R.D. at 694.

[26] *Acevedo*, 2019 WL 6712298, at *3.

- 12 -

years in the future."[27] Accordingly, the relief provided to the class is adequate and satisfies both the Tenth Circuit requirements and those of Rule 23(e)(2)(C).

### 3. Plaintiffs' Counsel believes the settlement is fair and reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[28] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support this settlement.[29] Courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."[30] Under the Settlement Agreements, JBS will pay $55,000,000 and Tyson will pay $72,250,000 into a fund that will provide tangible financial benefits to the Settlement Classes. And both Settlement Agreements allows Plaintiffs to secure potentially key evidence—in the form of data, documents and testimony—from these Defendants' employees.[31]

In sum, the JBS and Tyson Settlement Agreements are fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

---

[27] *In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

[28] *Lucas*, 234 F.R.D. at 695.

[29] *See e.g., id.* (finding unanimous approval by experienced counsel supports settlement approval).

[30] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[31] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

- 13 -

**IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES**

**A.    The JBS and Tyson Settlement Classes Satisfy Rule 23(a).**

The proposed Settlement Classes for the JBS and Tyson settlements are nearly identical to

the three settlement classes that have already been certified by the court other than as to the date

of the class period. ECF No. 306. Specifically, after evaluating each of the Rule 23(a) factors, the

Court certified nearly identical settlement classes that cover the same types of jobs and workers

for settlements previously reached with WMS, Seaboard and Perdue. *Id.* Accordingly, the Court

should hold that proposed Settlement Classes for the JBS and Tyson settlements also satisfy the

Rule 23(a) factors.

**1.    The Settlement Classes Are Sufficiently Numerous.**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class

action because the alternative of joinder is impracticable.[32] Here, the precise number of Settlement

Classes members is unknown but will number in the tens of thousands, and joinder of tens of

thousands of people would be impracticable. As the court previously held when certifying nearly

identical settlement classes, "the numerosity requirement is met." ECF No. 306.

**2.    Questions of Law and Fact are Common to the Settlement Classes.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[33] Courts

recognize that "[e]ven a single [common] question will" satisfy the commonality requirement.[34]

"In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a

common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants

---

[32] Fed. R. Civ. P. 23(a)(1).

[33] Fed. R. Civ. P. 23(a)(2).

[34] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

conspired to harm plaintiffs will likely prevail."[35] Here, common questions abound. As the court previously held when certifying nearly identical settlement classes, "plaintiffs raise the following common questions of law and fact: whether defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for the representative plaintiffs' claims, and what the amount of damages are." *See* Order, ECF No. 306 at 13.

### 3. Class Representatives' Claims are Typical of the Settlement Classes Members' Claims.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[36] In antitrust class action cases, typicality is established by plaintiffs and all class members alleging the same antitrust violations by defendants.[37] Here, typicality is satisfied because both Plaintiffs' claims and the claims of members of the JBS and Tyson Settlement Classes arise out of the same alleged antitrust conspiracy. Indeed, when it previously certified nearly identical settlement classes, the Court agreed "that the representative plaintiffs bring claims that are typical of the proposed class." Order, ECF No. 306 at 15.

---

[35] *D&M Farms v. Birdsong Corp.,* No. 2:19-CV-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020); *see also In re Urethane Antitrust Litig*., 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

[36] *Paulson v. McKowen*, No. 19-cv-02639-PAB-NYW, 2022 WL 168708, at *5 (D. Colo. Jan. 19, 2022) (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

[37] *See In re Urethane Antitrust Litig*., 237 F.R.D. 440, 447 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

4.      **Ron Brown and Minka Garmon and Interim Class Counsel Are Adequate.**

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."[38] The Tenth Circuit requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously.[39] Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other Class members, and each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages.[40] The named Plaintiffs and their experienced counsel have prosecuted, and will continue to prosecute, the action vigorously on behalf of the JBS and Tyson Settlement Classes. Scarlett Decl. ¶ 8. As the court previously concluded when certifying nearly identical settlement classes and appointing the same three law firms as Settlement Class Counsel, "the interests of the class are fairly and adequately protected by the representative plaintiffs and their counsel." Order, ECF No. 306 at 16.

B.      **The Requirements of Rule 23(b)(3) Are Satisfied**

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

---

[38] Fed. R. Civ. P. 23(a)(4).

[39] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002); Fed. R. Civ. P. 23(a)(4).

[40] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

- 16 -

1.      **Common Issues Predominate.**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[41] It is a "test readily met in certain cases alleging . . . violations of the antitrust laws.'"[42] To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[43] Common evidence supports each of these elements.

When previously certifying three nearly identical settlement classes, the court "agree[d] with the representative plaintiffs that common questions predominate over the other issues." Order, ECF No. 306 at 18. The court explained: "Proof of a conspiracy between defendants is a question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury." *Id.* at 18-19. The court further held that although "damages may vary for individuals in the class, the question of what competitive market wages should have been will be common to the class and is enough at this stage to show a common question on the measure of damages." *Id.* at 19.

2.      **Proceeding as a Class Is a Superior Method for Resolving This Dispute Fairly and Effectively.**

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time

---

[41] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[42] *Paulson*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).

[43] *In re Urethane*, 237 F.R.D. at 449.

and legal costs to adjudicate common legal and factual issues."[44] Additionally, no other potential Settlement Classes members have filed an analogous antitrust claim against these Defendants. Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Classes members to seek damages that would otherwise be too costly to pursue.[45] For those reasons, when previously certifying nearly identical settlement classes, the court concluded "that a class action settlement is a superior method for resolving this dispute fairly and effectively." Order, ECF No. 306 at 19.

Accordingly, the Court should certify the JBS and Tyson Settlement Classes.

## V.    DEFERRING CLASS NOTICE REMAINS APPROPRIATE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, Plaintiffs respectfully request that the Court agree to defer formal notice of the Settlement Agreements to the JBS and Tyson Settlement Classes until a later date, as the Court had found in preliminarily approving Plaintiffs' Settlements with Perdue, WMS, and Seaboard. Order, ECF No. 306 at 23–24. Given document discovery has not yet started, Plaintiffs do not have the necessary data from Defendants containing class members' contact information. Scarlett Decl. ¶ 13. Deferring notice may also save money for the JBS and Tyson Settlement Classes because Plaintiffs could provide

---

[44] *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689-90 (D. Colo. 2014).

[45] *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016) ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").

notice of multiple settlements at once. After the necessary data has been obtained, Plaintiffs will file a motion to direct notice with the Court.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreements with JBS and Tyson; (2) certifying the JBS and Tyson Settlement Classes, (3) appointing Interim Co-Lead Counsel Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll, PLLC, and Handley Farah & Anderson PLLC as Settlement Class Counsel as Settlement Counsel, (4) appointing Ron Brown and Minka Garmon as Representatives of the Settlement Classes, (5) deferring notice to the Classes until a later date, and (6) ordering a stay of all proceedings against the JBS and Tyson Defendants.

011035-11/2450835 V1

Dated: March 8, 2024          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ *Shana E. Scarlett*
Shana E. Scarlett
Rio S. Pierce
Abby R. Wolf
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com
abbyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Elaine Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena CA, 91101
Telephone: (213) 330-7150
elaineb@hbsslaw.com
abigailp@hbsslaw.com

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ *Brent W. Johnson*
Brent W. Johnson
Benjamin D. Brown
Robert A. Braun
Alison S. Deich
Zachary Glubiak
Zachary I. Krowitz
Nina Jaffe-Geffner
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

- 20 -

bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL PLLC
769 Centre St. Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

HANDLEY FARAH & ANDERSON PLLC

*/s/ George F. Farah*
George F. Farah
Rebecca P. Chang
Nicholas J. Jackson
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com
njackson@hfajustice.com

William H. Anderson (Co. Bar 45960)
HANDLEY FARAH & ANDERSON PLLC
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (202) 559-2433
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Martha E. Guarnieri
HANDLEY FARAH & ANDERSON PLLC
1727 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 422-3478
Facsimile: (844) 300-1952
mguarnieri@hfajustice.com

- 21 -

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
60 Harrison Avenue, Suite 604
Boston, MA 02111
Telephone: (202) 921-4567
Facsimile: (844) 300-1952
swiener@hfajustice.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
sjteti@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed
Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notice to counsel for all parties that have

appeared in this case.

/s/ Shana E. Scarlett
SHANA E. SCARLETT

011035-11/2450835 V1