# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02946-PAB-STV

RON BROWN, et al.,

      Plaintiffs,

v.

JBS USA FOOD COMPANY, et al.,

      Defendants.

---

**SETTLEMENT AGREEMENT BETWEEN
CLASS PLAINTIFFS AND DEFENDANT JBS USA FOOD COMPANY**

---

      Subject to the approval of the Court, this Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between JBS USA Food Company ("JBS" or "Settling Defendant") and the Class Plaintiffs (as hereinafter defined), individually and on behalf of a Settlement Class (as hereinafter defined), through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class, and in the above-captioned Action (as hereinafter defined).

**RECITALS**

      A.    Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative litigation class. Class Plaintiffs and the putative litigation class are currently represented by Interim Co-Lead Counsel.

      B.    Class Plaintiffs have alleged, among other things, that Settling Defendant entered into a contract, combination, or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition for labor and to allow Settling Defendant to pay sub-competitive

compensation to hourly and salaried workers in its Red Meat Processing Operations (as defined below) in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, through a series of overt acts including, but not limited to, sharing compensation information and entering into so-called "no-poach" agreements with and among Defendants (as hereinafter defined), alleged co-conspirators, their respective subsidiaries and/or related entities, to refrain from soliciting, recruiting, and/or hiring one another's employees.

C.     Settling Defendant denies all allegations of wrongdoing in the Action (as previously, currently, or thereinafter alleged) and believes it has numerous legitimate defenses to Class Plaintiffs' Claims (as hereinafter defined).

D.     This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Settling Defendant or of the truth of the Allegations or Claims, nor shall it be deemed or construed to be an admission or evidence of Settling Defendant's defenses.

E.     Interim Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that (1) a settlement with Settling Defendant according to the terms set forth below is fair, reasonable, adequate, and beneficial to, and in the best interests of, the Settlement Class, given the uncertainties, risks, and costs of continued litigation; (2) the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class to release, settle, and discharge their claims that they were undercompensated as a result of the alleged anticompetitive conduct of which Settling Defendant is accused; and (3) the Cooperation (as defined below) to which Settling Defendant has agreed will reduce the substantial burden and expense associated with prosecuting the Action.

F.      Despite Settling Defendant's belief that it is not liable for and has strong defenses to the Claims asserted by Class Plaintiffs, Settling Defendant desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of litigation and other present or future litigation arising out of the allegations giving rise to this Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G.      Arm's-length settlement negotiations with the help of an experienced mediator have taken place between Interim Co-Lead Counsel, Settling Defendant, and Settling Defendant's Counsel (as hereinafter defined), and this Settlement Agreement has been reached as a result of those negotiations.

H.      Settling Parties (as hereinafter defined) wish to preserve all arguments, defenses, and responses related to all Claims in the Action, including any arguments, defenses, and responses related to any litigation class proposed by Class Plaintiffs in the event this Settlement Agreement fails to satisfy the conditions set out in Section II(F)(11) below.

I.      The Settling Parties desire to fully and finally settle all actual and potential Claims arising from or related to the conduct alleged in the Action, and to avoid the costs and risks of protracted litigation and trial.

**IT IS THEREFORE HEREBY AGREED**, by and among the Settling Parties, that in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, this Action and all Released Claims (as hereinafter defined) are finally and fully discharged, settled, and compromised as to the Settling Defendant's Released Parties (as hereinafter defined) and that this Action shall be dismissed in its entirety with prejudice as to Settling Defendant, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

3

# I.      DEFINITIONS

**A.      Class Definition.**

1.      "Settlement Class" means the class described in Section II(F)(3) below.

**B.      General Definitions.**

2.      "Action" means the putative class action filed by Class Plaintiffs captioned *Brown, et al. v. JBS USA Food Co., et al.*, 1:22-CV-02946 (D. Colo.), which is currently pending in the United States District Court for the District of Colorado, or any related action that is based on or related to the same set of facts, circumstances, or allegations as previously, currently, or hereafter set forth in the Complaint (as hereinafter defined).

3.      "Allegations" means the allegations in the Complaint (as previously, currently, or thereinafter alleged), and includes any supplemental or amended complaint, including that Settling Defendant and its predecessors, wholly owned and/or controlled subsidiaries, parents, and/or other affiliates entered into a contract, combination, or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition for labor and to allow Settling Defendant to pay sub-competitive compensation to hourly and salaried workers in its Red Meat Processing Operations in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, through a series of overt acts including, but not limited to, sharing compensation information and entering into so-called "no-poach" agreements with and among defendants in the Action, alleged co-conspirators, their respective subsidiaries and/or related entities, to refrain from soliciting, recruiting, and/or hiring one another's employees.

4.      "Claims" means any and all actual or potential, known or unknown, causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, arising from or related to the conduct alleged (as previously, currently, or hereinafter alleged) in the Action, or that could or should have been

alleged in the Action, including but not limited to any claim relating to or arising from the Allegations or any other allegations in the Complaint.

5.      "Claims Administrator" means the third party to be retained by Interim Co-Lead Counsel and approved by the Court to manage and administer the process by which Settlement Class Members (as hereinafter defined) are notified of the Settlement Agreement and paid from the Net Settlement Fund (as hereinafter defined).

6.      "Class Plaintiffs" means all Plaintiffs named in the Complaint, including but not limited to Ron Brown, Minka Garmon, and Jessie Croft.[1]

7.      "Compensation" means the provision of anything of value to Settlement Class Members and includes (but is not limited to) wages, salaries, insurance benefits, bonuses, overtime pay, night shift premiums, raises, promotions, retirement benefits, stocks or stock options, meals, and any other monetary and nonmonetary forms of remuneration or benefits.

8.      "Complaint" means the Corrected Class Action Complaint (ECF 23-1, filed November 14, 2022), and the Amended Complaint (ECF 260, filed January 12, 2024) in the Action, and any amendment or supplement thereto or any other complaint filed in an Action.

9.      "Cooperation," as described in Section II(A)(2) below, shall mean providing data, Documents, information and witnesses concerning the Allegations per the terms of the conditions set forth herein.

10.     "Court" means the United States District Court for the District of Colorado and the Honorable Chief Judge Philip A. Brimmer or his successor, or any other Court with jurisdiction over an Action.

---

[1] For the avoidance of doubt, the term "Class Plaintiffs" includes Jessie Croft, notwithstanding that she is not named as a plaintiff in the Amended Complaint (ECF 260).

11.     "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Final Approval"), as provided in Section II(F)(8) below.

12.     "Date of Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval of this Settlement Agreement by the Court; and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

13.     "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(F)(4) below.

14.     "Defendant" or "Defendants" means any or all of the defendants named in the Action, now, in the past, or in the future.[2]

15.     "Defendant Processors" means all Defendants other than Webber, Meng, Sahl, and Company, Inc. ("WMS") and Agri Stats, Inc. ("Agri Stats").

16.     "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

---

[2] For the avoidance of doubt, the term "Defendants" includes Iowa Premium LLC and any of its predecessors, wholly owned and/or controlled subsidiaries, and/or other affiliates, notwithstanding the fact that Iowa Premium LLC is not named as a defendant in the Amended Complaint (ECF 260).

17.     "Effective Date" shall be the Date of Final Judgment as defined in Section I(B).

18.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

19.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(D) of this Agreement.

20.     "Escrow Agreement" means the certain agreement between the Escrow Agent that holds the Settlement Fund and Class Plaintiffs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Section II(D) of this Agreement.

21.     "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Settling Parties.

22.     "Fairness Hearing" has the meaning provided in Section II(F)(4) below.

23.     "Interim Co-Lead Counsel" and "Settlement Class Counsel" mean the law firms of Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC.

24.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, or costs of notice and administration, that may be awarded or approved by the Court.

25.     "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, including all of its material terms and conditions without modifications (except any modifications agreed upon by the Settling Parties and, as necessary, approved by the Court), and the settlement pursuant to Federal Rule of Civil Procedure 23, and

dismissing Settling Defendant with prejudice from the Action, as described in Section II(F)(8) below.

26.     "Person(s)" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity or organization.

27.     "Red Meat Processing Operations" means beef and pork (collectively referred to as "red meat(s)") processing plants, including, but not limited to, slaughterhouse plants and further-processing plants, in the United States.

28.     "Released Claims" means those claims identified and defined in Section II(B)(2) of this Settlement Agreement.

29.     "Releasing Party" or "Releasing Parties" shall refer, individually and collectively, to the Settlement Class and all members of the Settlement Class, including the Class Plaintiffs, each on behalf of themselves and their respective predecessors and successors; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present, and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions, and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present, and future claims, persons, or entities acting in a private attorney general, qui tam, taxpayer, or any other capacity, whether or not any of them participate in this Settlement Agreement.

30.     "Settlement Agreement" or "Agreement" means this document and the agreement reflected herein.

31.     "Settlement Amount" means the cash payment of $55,000,000 (fifty-five million U.S. dollars) described in Section II(A)(1), below.

32.     "Settlement Class Member" means each member of the Settlement Class who is not timely and properly excluded from the Settlement Class.

33.     "Settlement Class Notice" means the notice to the Settlement Class that is approved by the Court, in accordance with Section II(F)(5) below.

34.     "Settlement Class Period" means the period from January 1, 2000 until the date of the first preliminary approval of a settlement in this action.

35.     "Settlement Fund" means the funds described in Section II(A) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account to be maintained by the Escrow Agent for the settlement contemplated by this Settlement Agreement established in accordance with Section II(D) below.

36.     "Settling Defendant" means JBS USA Food Company.

37.     "Settling Defendant's Counsel" means the law firms of Kasowitz Benson Torres LLP and Spencer Fane LLP, and any other legal advisors retained for purposes of advising Settling Defendant with respect to the Action.

38.     "Settling Defendant's Released Parties" means JBS and all of its respective former or current, direct or indirect, parents, subsidiaries and affiliates, including but not limited to the predecessors, successors and assigns of each of them; and any of their respective former or current, direct or indirect trustees, owners, parents, subsidiaries, divisions, departments, principals, partners, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers, supervisors, representatives and employees.

39.     "Settling Parties" means Settling Defendant and the Settlement Class, as represented by the Class Plaintiffs.

40.     "Unrelated Co-Conspirator" means any alleged co-conspirator in the Action that does not satisfy the criteria for inclusion as a "Released Party" in the definition of "Settling Defendant's Released Parties."

## II.     SETTLEMENT

**A.     Performance By Settling Defendant.**

1.     **Settlement Payment**.  In consideration for the release of the Released Claims and the dismissal with prejudice of the Action as to Settling Defendant within fourteen days of the Date of Preliminary Approval, Settling Defendant shall pay or cause to be paid $55,000,000 (fifty-five million U.S. dollars) into the Settlement Fund.

a.     Settling Defendant's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Interim Co-Lead Counsel.

b.     The payment described in Section II(A)(1) shall constitute the total Settlement Amount and Settling Defendant shall have no other payment obligations to the Settlement Class or Settlement Class Counsel or owe any further amount under this Settlement Agreement so long as this Settlement Agreement remains in effect. The obligations described in Section II(A)(2) shall continue so long as this Settlement Agreement remains in effect.

2.     **Cooperation**. Cooperation is a material term of this Settlement Agreement. Settling Defendant's obligation to cooperate under this paragraph encompasses the Red Meat Processing Operations operated by Settling Defendant's Released Parties.  Such cooperation shall consist of the following actions:

a.     Within 120 days of the Date of Preliminary Approval, Settling Defendant will produce to Class Plaintiffs structured compensation data for the Settlement Class Period and four years prior, identified after a reasonable search, regarding Settlement Class Members employed by Settling Defendant's Released Parties. Such structured compensation data will

include the following (to the extent such data currently exists in JBS's possession, custody, and control):

      i.   A running history of personal information, including name, email address, physical address, telephone number, hire date, employee ID, Social Security number, date of birth, contact information, gender, education level, race, ethnicity, immigration status, channel of hiring, and information on seniority/prior employer(s);

      ii.   Job title, dates of employment, job changes, wages or salaries, bonuses, overtime pay, shift premiums, benefits, changes in wage or salary rate, and any other reasonably accessible components of Compensation; and

      iii.   Exit information, including date of termination of employment, reason(s) for termination of employment, and subsequent employer(s).

Settling Defendant will use reasonable efforts to respond to a reasonable number of Plaintiffs' questions regarding, and otherwise assist Plaintiffs to understand, such structured data.

      b.   Settling Defendant agrees to use reasonable efforts to authenticate and lay the foundation for admissibility of Documents and/or things produced by it in the Action where the facts indicate that the Documents and/or things at issue are authentic, whether by declarations, affidavits, hearings, and/or trials as may be necessary and as qualified herein in Section II(A)(2)(e).

      c.   Class Plaintiffs will identify fifteen (15) either current or former employees of Settling Defendant's Released Parties as document custodians (collectively, the "Document Custodians"), and provide Settling Defendant with a list of reasonable proposed search terms relating to the Allegations.  If the Settling Parties are unable to reach agreement on a final list of reasonable search terms after good faith negotiations, Settling Defendant will, within 120 days of either (i) the Date of Preliminary Approval or (ii) the date upon which the Document Custodians are identified and any reasonable search terms are agreed-upon, whichever is later, produce non-

privileged Documents in its possession, custody or control that are returned by the agreed-upon search terms and responsive to Class Plaintiffs' requests for production (the "RFPs").  After any agreement on additional search terms by the non-settling defendants or a court order ordering the use of any additional search terms, Class Plaintiffs will provide those search terms to Settling Defendant, and within 120 days, Settling Defendant will produce any additional non-privileged Documents of the Document Custodians in its possession, custody or control that are returned by any of those additional search terms not previously run and responsive to the RFPs.  The Settling Parties may mutually agree to alter the search terms run by Settling Defendant and to move these deadlines.  Notwithstanding the foregoing or anything else contained herein, the Document Custodians shall not include any Chief(s), President(s), or Board Director(s).

       d.      Within 120 days of either (i) the Date of Preliminary Approval or (ii) the identification of the Document Custodians by Class Plaintiffs, whichever is later, the Settling Defendant will produce all records of phone calls placed or received by those Document Custodians during the Settlement Class Period, as well as the phone numbers associated with those Document Custodians, in Settling Defendant's possession, custody, and control that are located through a reasonable search.  Settling Defendant will also use reasonable efforts, including obtaining signed authorizations, to allow Class Plaintiffs to obtain records of such phone calls from third-party carriers, if necessary.

       e.      Class Plaintiffs will identify up to eight (8) then-current employees of Settling Defendant's Released Parties who will be deposed by Class Plaintiffs and who will participate as witnesses at trial (if requested by Class Plaintiffs and still employed by JBS at the time of trial) (collectively, the "Depo and Trial Witnesses"), including any witnesses called for authentication or admissibility purposes.  This limitation on Depo and Trial Witnesses does not

apply to former employees of Settling Defendant's Released Parties. This limitation does, however, include depositions of corporate representatives under Fed.R.Civ.P. 30(b)(6), regarding the topics concerning factual allegations underlying the Claims in the Action, and general industry knowledge, which will be negotiated by the Settling Parties. Notwithstanding the foregoing or anything else contained herein, the Depo and Trial Witnesses referenced herein shall not include any Chief(s), President(s), or Board Director(s).

        f.     In addition to the custodial searches discussed above in Sections II(A)(2)(c) and II(A)(2)(d), within 120 days of Date of Preliminary Approval, Settling Defendant will produce the following Documents to Class Plaintiffs:

- All written agreements or contracts with Agri Stats, Inc. or Express Markets, Inc., related to Red Meat Processing Operations, identified by a reasonable search;

- All contracts executed with labor unions representing Class Members at Settling Defendant's Released Parties' Red Meat Processing Operations executed during the Settlement Class Period, identified by a reasonable search.

- Any Documents that have been or will be produced to the Department of Justice by Settling Defendant in connection with any investigation regarding Compensation paid to workers at Red Meat Processing Operations that have not already been produced to Class Plaintiffs, and thereafter JBS will do so within 14 days of the production of such Documents to the Department of Justice. Settling Defendant is required to produce any such Documents unless the Department of Justice objects to such production and Settling Defendant is not otherwise ordered by the Court to produce any such Documents. Unless prohibited by the Department of Justice, Settling Defendant agrees to take no position on submissions by Class Plaintiffs to any court to obtain any Documents produced to the Department of Justice; provided, however, that Settling Defendant reserves the right to designate any produced Documents for confidential treatment pursuant to the applicable protective order in this Action.

g.      If JBS withholds the production of any Documents due to attorney-client privilege or other forms of protection from disclosure, Settling Defendant will produce a privilege log (that accords with the format outlined in the ESI order to be entered in the Action) no later than 21 days after the document production from which Documents were withheld.

h.      The Settling Parties will have discretion to agree to modifications of these discovery obligations and deadlines, and such modifications will not require Court approval.

i.      Documents or information provided pursuant to these Cooperation provisions shall not be used for any purpose outside of this Action. Once a protective order has been entered, confidential Documents or information provided pursuant to these Cooperation provisions will be subject to and conditioned upon the entry of the protective order in this case, except as provided in the preceding sentence.  Nothing in this provision prevents Plaintiffs from complying with a lawfully issued subpoena, request for production, or CID, provided that Class Plaintiffs will give notice to JBS within 5 business days of the receipt of such subpoena, request, or CID, and a reasonable opportunity to respond, object, or intervene.  Nothing in this provision shall affect or modify the legal standards that govern whether a Document satisfies the criteria for requiring that the Document be filed under seal rather than publicly.

**B.      Release of Claims.**

1.      The Release of Claims is a material term of this Settlement Agreement.

2.      **Release**.  Upon the Date of Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Settling Defendant's Released Parties from any and all claims, demands, actions, suits, causes of action, whether known or unknown, whether class, individual, parens patriae, or otherwise in nature, and regardless of whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any

other capacity, that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, civil or other penalties, restitution, disgorgement, damages, and the consequences thereof that have been asserted in the Allegations in the Action, or could have been asserted, under federal or state law in any way arising out of or relating in any way to an alleged or actual conspiracy or agreement between or among Defendants, any purported or alleged co-conspirators, their respective subsidiaries, parents, and/or related entities, relating to reducing competition for the hiring, solicitation, and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties by Defendants, alleged co-conspirators, their respective subsidiaries, parents, and/or related entities (collectively, the "Released Claims").  Notwithstanding the above, "Released Claims" do not include (i) claims asserted against Defendants other than the Settling Defendant's Released Parties except as provided below concerning the Predecessor Owner(s), and (ii) any claims wholly unrelated to the Allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims. "Released Claims" also includes Acquired Claims (as defined below).  "Acquired Claims" shall mean claims or potential claims relating to the Allegations in the Action against an entity from which a Settling Defendant's Released Party acquired Red Meat Processing Operations ("Predecessor Owner(s)"), but only to the extent that such claims arise out of or result from the ownership, maintenance or conduct of such Red Meat Processing Operations prior to the

effective date of such acquisition and for which a Settling Defendant's Released Party has assumed, or indemnified Predecessor Owner(s) from, liabilities attributable to such Red Meat Processing Operations for the period prior to the effective date of such acquisition or assumption of liabilities.  Upon the Date of Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Predecessor Owner(s) from the Acquired Claims.  The reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Settling Defendant's Released Parties to assert any and all defenses to such claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the Settling Defendant's Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon final approval of the Settlement Agreement and the passing of the time to appeal such final approval. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Settling Defendant's Released Parties arising out of or relating to the Released Claims.

   3.  **Covenant Not to Sue**.  Upon the Date of Final Judgment, Class Plaintiffs and each Settlement Class Member covenant not to sue, directly or indirectly, or otherwise seek to establish liability against the Settling Defendant's Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

4.      **Full Release**.  The Settling Parties to this Settlement Agreement expressly agree and confirm that the Released Claims as set forth in the provisions of Section II(B) constitute a full and final release of the Settling Defendant's Released Parties by the Releasing Parties of the Released Claims, and of the Predecessor Owner(s) solely with respect to Acquired Claims by the Releasing Parties.

5.      **Waiver**.  In addition to the provisions of Section II(B)(2), the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon the Date of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Section II(B)(2), but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Date of Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Section II(B)(2), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

C.      **Claims Administrator.**

Pursuant to the Preliminary Approval Order (as hereinafter defined), and subject to Court approval, Interim Co-Lead Counsel shall engage a qualified Claims Administrator. The Claims Administrator will assist with the settlement claims process as set forth herein.

1.      The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

2.      The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes regarding the Plan of Distribution.

D.      **Settlement Fund Administration.**

The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1.      The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent designated by Interim Co-Lead Counsel. Interim Co-Lead Counsel, Settling Defendant, and Settling Defendant's Counsel agree to cooperate in good faith to prepare an appropriate Escrow Agreement in conformance with this Agreement.

2.      All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

3.      Neither the Settlement Class, Interim Co-Lead Counsel, Settling Defendant, nor Settling Defendant's Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining

18

approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval. Settling Defendant shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $500,000 to pay the costs for notice and for Preliminary and Final Approval of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Settling Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms. At their discretion, Class Plaintiffs may combine the notice of the Settling Defendant's settlement with the notice for any other Defendant in the action. The timing of the filing of a motion to approve notice of the Settlement Agreement to the Settlement Class, and the timing proposed to the Court for the actual distribution of that notice to the Settlement Class, shall be at the sole discretion of Interim Co-Lead Counsel.

4.       Under no circumstances will Settling Defendant or the Settling Defendant's Released Parties be required to pay more than the Settlement Amount pursuant to this Agreement and the settlement set forth herein. For purposes of clarification, the payment of any fee and expense award, the notice and administrative costs (including payment of any applicable fees to Escrow Agent) and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

5.       Except for as provided in Section II(F)(11), no other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court.

6.       The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the

United States Government, or fully insured by the United States Government or any agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(D)(6) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund pursuant to Section II(A)(1), neither Settling Defendant nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

7.      The Settling Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1, and to that end, the Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, the Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing all necessary information and tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. In addition, Interim Co-Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance

with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file, or cause to be filed through the Escrow Agent, all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Neither Settling Defendant nor Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

8.      All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund. Settlement Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

9.      After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

**E.      No Reversion.**

Settling Defendant shall have no rights to reversion, except as provided in Section II(F)(11) of this Settlement Agreement. In the event of a reversion, all funds not previously spent on notice and administrative costs shall be returned to Settling Defendant, including any interest accrued.

**F.      Approval of Settlement Agreement and Dismissal of Claims.**

1.      **Notice of Settlement**. No later than seven (7) days after the execution of this Settlement Agreement by Settling Defendant, Interim Co-Lead Counsel and Settling Defendant's Counsel shall jointly file with the Court a notice of settlement and stipulation for suspension of all proceedings by Class Plaintiffs against Settling Defendant in the Action pending approval of this Settlement Agreement.

2.      **Effectuating the Settlement**. Class Plaintiffs and Settling Defendant shall cooperate in good faith and use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement without modification of any of its material terms and conditions, providing appropriate Settlement Class Notice under Federal Rules of Civil Procedure 23, and seeking the complete and final dismissal with prejudice of the Action as to Settling Defendant.

3.      **Settlement Class Certification**. Class Plaintiffs shall seek, and Settling Defendant shall take no position with respect to, the appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and the certification in the Action of a class for settlement purposes only, referred to herein as the "Settlement Class," which shall include Class Plaintiffs and be defined as:

> All persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States

from January 1, 2000 until the date of the first preliminary approval of a settlement in this action.

The following persons and entities are excluded from the Settlement Class: plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities ("Excluded Personnel"), unless such Excluded Personnel are added as plaintiffs in any Complaint in this Action. For the avoidance of doubt, the Settlement Class includes all persons employed by Defendant Processors, their subsidiaries, affiliates, and/or related entities at Red Meat Processing Operations from January 1, 2000 until the date of the first preliminary approval of a settlement in this action.

4.    **Preliminary Approval**. No later than thirty (30) days after the Execution Date, Class Plaintiffs shall submit to the Court a motion requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order"). Class Plaintiffs may combine the motion for Preliminary Approval with a motion to grant preliminary approval for settlement with any other Defendants. The Settling Parties may delay the filing of Preliminary Approval by mutual agreement. At a reasonable time in advance of submission to the Court, the papers in support of Preliminary Approval, which shall include the proposed form of an order preliminarily approving this Settlement Agreement, shall be provided by Interim Co-Lead Counsel to Settling Defendant's Counsel for their review. Settling Defendant shall not oppose and shall reasonably cooperate in such motion, subject to the provisions below. The proposed Preliminary Approval Order shall provide that, *inter alia*:

a.    the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

b.       after Settlement Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

c.       Settlement Class Members who wish to exclude themselves from the settlement and the Settlement Agreement must submit an appropriate and timely request for exclusion;

d.       Settlement Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

e.       Settlement Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

f.       all proceedings in the Action with respect to Settling Defendant, and Class Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the settlement reflected in this Settlement Agreement or comply with the terms thereof.

5.       **Settlement Class Notice**. The Settlement Class Notice shall provide for a right of exclusion, as set forth in Section II(F)(4). The Settlement Class Notice shall also provide for a right to object to the proposed Settlement. Individual notice of the Settlement to all Settlement Class Members who can be identified through reasonable effort shall be mailed, emailed and/or sent via text message to the Settlement Class in conformance with a notice plan to be approved by the Court. Interim Co-Lead Counsel will undertake all reasonable efforts to notify potential Settlement Class Members of the settlement, including publication notice through traditional, digital, and/or social media sources likely to reach Settlement Class Members. The timing of a motion to approve notice to the Settlement Class of this Settlement Agreement ("Notice

Motion") shall be in the discretion of Interim Co-Lead Counsel, and may be combined with notice of other settlements in this Action. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

6.      **Cost of Settlement Class Notice**. The costs of providing Settlement Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(D)(2) and (3).

7.      **CAFA Notice**. Within ten days of the filing of the motion for Preliminary Approval, Settling Defendant will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

8.      **Final Approval**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class shall seek entry of an Order and Final Judgment, which Settling Defendant shall not oppose and with which it shall reasonably cooperate, that *inter alia*:

a.      certifies the Settlement Class described in Section II(F)(3), pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of this settlement as a settlement class;

b.      finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

c.      determines that the Settlement Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

d.      confirms that Settling Defendant has provided the appropriate notice pursuant to CAFA;

e.      orders that all claims made against Settling Defendant in the Action, including in all class action complaints asserted by the Class Plaintiffs, are dismissed with prejudice and without further costs or fees;

f.      discharges and releases the Settling Defendant's Released Parties from all Released Claims;

g.      enjoins Class Plaintiffs from suing, directly or indirectly, any of the Settling Defendant's Released Parties for any of the Released Claims;

h.      requires Interim Co-Lead Counsel to file with the clerk of the Court a record of potential Settlement Class Members that timely excluded themselves from the Settlement Class, and to provide a copy of the record to Settling Defendants' Counsel;

i.      incorporates the release set forth in Section II(B)(2) of this Agreement and makes that release effective as of the Effective Date as to the Class Plaintiffs and all Settlement Class Members that were not timely and validly excluded from the Settlement Class;

j.      determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to Settling Defendant shall be final and entered forthwith, and stating:

  i.      Final judgment as to the Action is entered in favor of Settling Defendant; and

  ii.     Final judgment is granted in favor of the Settling Defendant's Released Parties on any Released Claim of a Settlement Class Member that did not file a timely notice for exclusion.

k.      reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement; and

l.       orders that Settlement Funds may be disbursed as provided in the Final Approval Order or other order of the Court.

9.    **Class Counsel Fees and Expenses; No Other Costs**.

a.       Settling Defendant shall have no responsibility for any other costs or expenses, including Interim Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Action, including this Settlement Agreement, Settling Defendant shall bear its costs and attorneys' fees.

b.       Subject to Interim Co-Lead Counsel's sole discretion as to whether to apply and timing of such an application, Interim Co-Lead Counsel may apply to the Court for an attorney fee award, reimbursement of expenses and costs, and/or service awards for class representatives, to be paid from the proceeds of the Settlement Fund. Settling Defendant shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or service awards.

c.       The procedure for and the allowance or disallowance by the Court of any applications by Interim Co-Lead Counsel for attorneys' fees, reimbursement of expenses, and/or service awards to class representatives are not part of or a condition to the settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Agreement, and any order or proceeding relating to any application for attorneys' fees, reimbursement of expenses, and/or service awards to class representatives shall not operate to terminate or cancel this Agreement or the release set forth herein, or affect or delay the finality of the judgment approving this settlement.

d.      Within 15 days after any order by the Court awarding attorneys' fees, reimbursing expenses, and/or providing service awards to class representatives, the Escrow Agent shall pay the approved attorneys' fees, reimbursement of expenses, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Court does not grant Final Approval of the settlement set forth herein or the award of attorneys' fees, reimbursement of expenses, and/or provision of service awards is reversed or modified, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund within 30 days of the order from a court of appropriate jurisdiction.

10.     **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the Date of Final Judgment.

11.     **Termination and Reduction**. If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(F)(4) or (F)(8) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Order and Final Judgment, or if the Court enters the Order and Final Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively, "Triggering Events"), then Settling Defendant and Class Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) calendar days of any such Triggering Event. For purposes of this Section II(F)(11), a material modification includes but is not limited to any modification to the Settlement Amount, settlement payments, scope of the Settlement

Class definition, or the scope of the Released Claims. If rescinded or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Section II(D)(3), all other funds remaining in the Escrow Account (including interest earned thereon) shall be returned to Settling Defendant and the Settling Parties' position shall be returned to the status quo ante. In no way shall Class Plaintiffs have the right to rescind or terminate this Settlement Agreement if the Court fails or refuses to grant any request for attorneys' fees, reimbursement of costs, or any service awards to class representatives.

12.   **No Admission**.

a.      Settling Defendant denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by Settling Defendant or Settling Defendant's Released Parties as to the merits of the Allegations made in the Complaint or Action, or an admission by Class Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Settling Defendant.

b.      This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of Settling Defendant or other Settling Defendant's Released Parties; provided, however, that nothing contained in this Section II(F)(12) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the

reasonableness, fairness, or good faith of any Settling Party participating in the settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including but not limited to Settling Defendant filing this Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     **Litigation Standstill**. Class Plaintiffs shall cease all litigation activities against Settling Defendant in the Action except to the extent expressly authorized in this Settlement Agreement in connection with providing the Cooperation provided for in Section II(A), or to enforce this Settlement Agreement subject to Sections III(E) and III(K). Except to the extent expressly authorized in this Section II(F)(13), Settling Defendant and Settling Defendant's Counsel shall cease all litigation activities against Class Plaintiffs in the Action.  As may be necessary to effectuate this Agreement, Class Plaintiffs may continue to name Settling Defendant as a defendant in any amended Complaint filed in the Action before the Date of Final Judgment provided, however, that in any such amended Complaint or otherwise, Class Plaintiffs will not assert (or assist any other persons in asserting) any claims against any of the Settling Defendant's Released Parties other than the claims asserted in the operative Complaint as of the date this Settlement Agreement is executed; and in any event, all such claims and those in the current operative Complaint and any amended Complaint have been and will be released as Released Claims.  For the avoidance of doubt, should Class Plaintiffs seek to depose or call as trial

witnesses former employees of Settling Defendant's Released Parties on topics related to their time of employment at any of the Settling Defendant's Released Parties, this litigation standstill shall not preclude such depositions or trial witnesses or testimony, and Settling Defendant in its sole discretion shall be permitted to represent the interests of Settling Defendant's Released Parties and the former employee in such deposition and any related discovery practice or at trial. None of the foregoing provisions shall be construed to prohibit Class Plaintiffs from seeking appropriate discovery from non-settling Defendants, Unrelated Co-Conspirators, former employees of Settling Defendant consistent with Section II(A)(2)(d), or other third parties. This litigation standstill precludes Settling Defendant (whether through Settling Defendant's Counsel or otherwise) from assisting any non-settling Defendant in the litigation or defense of this Action, including by assisting in opposing Class Plaintiffs' motion for class certification or working with expert witnesses or on expert materials. This litigation standstill does not, however, preclude Settling Defendant from (i) responding to discovery served by any non-Settling Defendant; (ii) negotiating in good faith to resolve any disputes regarding the scope of such discovery; (iii) taking steps they believe in good faith are necessary to reduce the scope or burden of such discovery from non-Settling Defendants, including without limitation by providing information related to structured data productions, or (iv) moving to dismiss any subsequent claims, allegations, or causes of action asserting Released Claims against Settling Defendant's Released Parties (and Class Plaintiffs agree not to oppose such motion). Settling Defendant will notify Interim Co-Lead Class Counsel within two (2) business days in the event any non-Settling Defendant requests a declaration, affidavit, or other written statement in lieu of a deposition.

### III.     MISCELLANEOUS

**A.     Entire Agreement.**

This Settlement Agreement shall constitute the entire, complete, and integrated agreement between the Settlement Class and Settling Defendant pertaining to the settlement of the Action and supersedes any and all prior and contemporaneous undertakings of the Settlement Class and Settling Defendant or Settling Defendant's Released Parties in connection therewith. All terms of this Settlement Agreement are contractual and not mere recitals.

**B.     Inurement.**

The terms of the Settlement Agreement are and shall be binding upon and inure to the benefit of, to the fullest extent possible, each of the Releasing Parties and the Settling Defendant's Released Parties, and upon all other Persons claiming any interest in the subject matter herein through any of the Settling Parties, Releasing Parties, or Settling Defendant's Released Parties, including any Settlement Class Members.

**C.     Modification and Waiver.**

Except for minor modifications of discovery obligations and deadlines as set forth in Section II(A)(2)(i) above, this Settlement Agreement may be modified or amended only by a writing executed by the Class Plaintiffs (through Interim Co-Lead Counsel) and Settling Defendant, subject (if after Preliminary or Final Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.

**D.**       **Drafted Mutually.**

For the purpose of construing or interpreting this Settlement Agreement, the Settlement Class and Settling Defendant shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E.**       **Governing Law & Jurisdiction.**

Any disputes relating to this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the state of Colorado without regard to its choice of law or conflicts of law provisions.  The Settling Parties have agreed, as set forth in Section III(K) below, that any dispute concerning this Settlement Agreement, including but not limited to the implementation, enforcement, breach, or performance of this Settlement Agreement (a "Settlement Dispute"), that cannot be resolved by negotiation and agreement by the Settling Parties, shall be brought confidentially pursuant to the rules of the American Arbitration Association consistent with the Federal Arbitration Act before Eric Green, who shall be the sole arbitrator of such dispute and his opinion shall be binding upon the Settling Parties.  If Professor Green is no longer willing or has otherwise notified the Settling Parties of his refusal to arbitrate any such Settlement Dispute, the Settling Parties will select an alternative, mutually agreeable arbitrator.

**F.**       **Counterparts.**

This Settlement Agreement may be executed in counterparts by Interim Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**G.     Represented by Counsel.**

Class Plaintiffs, the Settlement Class, and Settling Defendant acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake. The Settling Parties agree that this Settlement Agreement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Settling Party has entered this Settlement Agreement as the result of any coercion or duress.

**H.     Authorization.**

Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Interim Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Settling Defendant.

**I.     Privilege and Confidentiality.**

1.     Nothing in this Settlement Agreement, settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

2.     The Settling Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The Settling Parties may disclose the fact of the settlement and the cooperation provided for in Section II(A)

of this Settlement Agreement to other parties in the Action. Furthermore, during the period following the notice of settlement in Section II(F)(1) and prior to the public filing of this Agreement, Settling Defendant and Class Plaintiffs can, in addition, inform other parties to this Action as to the amount of the settlement. Moreover, during the period prior to the public filing of this Agreement, Settling Defendant may disclose the fact of settlement, the amount of settlement, and other terms of the Settlement Agreement to the Department of Justice or to comply with any legal obligations.

**J.      No Unstated Third-Party Beneficiaries.**

No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not a Settling Party, Settling Defendant's Released Party, Class Plaintiff, Settlement Class Member, or Interim Co-Lead Counsel, as well as a Predecessor Owner(s) (but only with respect to the release of the Acquired Claims).

**K.      Breach.**

Except as set forth in Section III(E), this Agreement does not waive or otherwise limit the Settling Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Settling Party for which such Settling Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Settling Parties acknowledge and agree that the Settling Parties and any Settling Defendant's Released Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security; provided however that any dispute or effort to seek enforcement of this Settlement Agreement shall be brought confidentially before Eric Green in accordance with Section III(E), who shall be the sole arbitrator of such dispute and his opinion shall be binding upon the Settling Parties. The waiver by any Settling Party of any particular breach of this Agreement shall not be

deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

**L.      Notice.**

Other than Settlement Class Notice, any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Settlement Class Member, to Interim Co-Lead Counsel at their physical addresses set forth below, with a copy by email at the email addresses set forth below and, in the case of notice to Settling Defendant, to their representatives at their physical addresses set forth below, with a copy by email at the email addresses set forth below, or such other physical or email addresses as Settling Defendant or Interim Co-Lead Counsel may designate, from time to time, by giving notice to all Settling Parties in the manner described in this Section III(L).

<u>For Class Plaintiffs:</u>

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005

Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com

George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, New York 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com

For Settling Defendant:

Marc E. Kasowitz
Hector Torres
Daniel J. Fetterman
Kenneth R. David
Christian T. Becker
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
Email:  MKasowitz@kasowitz.com
Email:  HTorres@kasowitz.com
Email:  DFetterman@kasowitz.com
Email:  KDavid@kasowitz.com
Email:  CBecker@kasowitz.com

Jonathon Watson
Joseph Hunt
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Fax: (303) 839-3838
Email: jmwatson@spencerfane.com
Email: jhunt@spencerfane.com

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated:  January 29, 2024

_____
George F. Farah
Rebecca Chang
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, New York 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com

Matthew K. Handley
Stephen Pearson
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, Seventh Floor
Washington, D.C. 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
spearson@hfajustice.com

Dated:  January 29, 2024

_____
Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0954
steve@hbsslaw.com

Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, #920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
abigailp@hbsslaw.com

Dated:  January 29, 2024

_____
Brent W. Johnson
Benjamin D. Brown
Daniel Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

Proposed Interim Co-Lead Counsel for Plaintiffs and the Proposed Class

Dated:  January 29, 2024

_____
Marc E. Kasowitz
Hector Torres
Daniel J. Fetterman
Kenneth R. David
Christian T. Becker
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
MKasowitz@kasowitz.com
HTorres@kasowitz.com
DFetterman@kasowitz.com
KDavid@kasowitz.com
CBecker@kasowitz.com

Jonathon Watson
Joseph Hunt
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Fax: (303) 839-3838
jmwatson@spencerfane.com
jhunt@spencerfane.com

Attorneys for JBS USA Food Company

Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, #920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
abigailp@hbsslaw.com

Dated: January 29, 2024

_____
Brent W. Johnson
Benjamin D. Brown
Daniel Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

Proposed Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class

Dated: January 29, 2024

_____
Marc E. Kasowitz
Hector Torres
Daniel J. Fetterman
Kenneth R. David
Christian T. Becker
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
MKasowitz@kasowitz.com
HTorres@kasowitz.com
DFetterman@kasowitz.com
KDavid@kasowitz.com
CBecker@kasowitz.com

Jonathon Watson
Joseph Hunt
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Fax: (303) 839-3838
jmwatson@spencerfane.com
jhunt@spencerfane.com

Attorneys for JBS USA Food Company