# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

RON BROWN, *et al.*,

    Plaintiffs,

v.

JBS USA FOOD COMPANY, *et al.*,

    Defendants.

Civil Action No. 1:22-cv-02946-PAB-STV

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH AMERICAN FOODS GROUP, LLC, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Ron Brown and Minka Garmon (collectively "Plaintiffs") hereby move for an Order granting preliminary approval of a settlement reached between Plaintiffs and American Foods Group, LLC ("American Foods"). The terms of the settlement with American Foods are memorialized in a written agreement between American Foods and Plaintiffs dated May 17, 2024 ("Settlement Agreement").

## I.   INTRODUCTION

The proposed settlement would provide significant financial compensation and cooperation benefits for the Settlement Class.[1] Plaintiffs previously reached settlements with JBS

---

[1] The proposed Settlement Class for the settlement with American Foods is nearly identical to the settlement classes that have already been certified by the court for three settlements previously reached in this case other than as to the time period. ECF No. 306. The proposed Settlement Class here has a class period that begins in 2000, while the prior certified settlement classes began in 2014. The settlements reached with Tyson Foods, Inc. and JBS USA Food Company are also on behalf of settlement classes that begin in 2000, and motions for preliminary approval of those settlements are pending. ECF No. 322.

USA Food Company; Tyson Foods, Inc.; Perdue Farms Inc.; Seaboard Foods, LLC; Triumph Foods, LLC; and Webber, Meng, Sahl and Company, Inc.[2] Four of those settlements have already been preliminarily approved by the Court, Order, ECF No. 306, and Plaintiffs' motions for preliminary approval of the settlements with Tyson and JBS are currently pending, ECF No. 322. The proposed settlement with American Foods would recover an additional $4 million for the class and provide meaningful cooperation that will help Plaintiffs prosecute their antitrust claims against the remaining Defendants.

      The proposed settlement with American Foods is fair, reasonable, adequate, and satisfies Rule 23(e) of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs respectfully request that the Court: (a) grant preliminary approval of the Settlement Agreement; (b) certify the proposed Settlement Class; (c) appoint the Named Plaintiffs Ron Brown and Minka Garmon as class representatives of the Settlement Class; (d) appoint the law firms Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll, PLLC, and Handley Farah & Anderson PLLC (which currently serve as Interim Co-Lead Counsel) as Settlement Class Counsel; (e) defer notice of the Settlement Agreement, instead directing Settlement Class Counsel to submit a motion to approve a plan of notice at an appropriate time; and (f) grant a stay of all proceedings in this litigation against the Released Parties (as defined in the Settlement Agreement) except as necessary to effectuate the Settlement Agreement or as otherwise agreed to by the settling parties.

---

[2] Hereinafter, Plaintiffs will refer to JBS USA Food Company as "JBS"; Tyson Foods, Inc. as "Tyson"; Perdue Farms Inc. as "Perdue"; Seaboard Foods, LLC as "Seaboard"; Triumph Foods, LLC as "Triumph"; and Webber, Meng, Sahl and Company, Inc. as "WMS."

## II.   BACKGROUND

### A.   Summary of Allegations

Plaintiffs allege that the nation's leading red meat processors and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants. This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviews of industry witnesses, and extensive research into the red meat processing industry. As a result of that investigation, Plaintiffs' lengthy complaint was supported by specific allegations, including allegations that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis. Defendants filed motions to dismiss the complaint on February 17, 2023. The Court denied multiple motions to dismiss, holding that Plaintiffs have alleged sufficient evidence to pursue both their *per se* wage-fixing claim and their information exchange claim.

On January 2, 2024, Plaintiffs filed an Amended Complaint expanding the Class Period, naming new defendants, and alleging further conspiratorial misconduct. ECF No. 260.

### B.   Summary of the Settlement Agreement

Plaintiffs' counsel has extensive experience in antitrust cases, particularly in cases alleging wage suppression. The settlement discussions with American Foods were undertaken with an especially deep understanding of both the applicable law and the relevant facts.

#### 1.   Class Definition

The proposed Settlement Class is co-extensive with the settlement classes identified in the operative complaint and the settlements with Tyson and JBS: "[a]ll persons employed by

3

Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024."[3]

American Foods has agreed to provide monetary compensation for the benefit of the Settlement Class in the amount of $4 million, which represents significant and guaranteed recovery to class members (providing this Court grants final approval). Half of this amount will be paid to the Settlement Fund within 120 days after entry of the preliminary approval order, and the other half will be paid to the Settlement Fund within 120 days thereafter. Farah Decl., Ex. A at § II(A)(1). Once the Settlement Agreement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Settlement Class members with no amount reverting back to American Foods. Farah Decl., Ex. A at § II(E).

### 2. Required Cooperation Terms

American Foods has agreed to significant non-monetary cooperation terms, which will provide material benefits to the class when litigating their claims against the remaining defendants. American Foods will provide data, documents, information, and witnesses from its Red Meat Processing Operations concerning the Allegations (as those terms are defined in the Settlement Agreement), including *inter alia*:

- **Data:** American Foods will produce structured data for the Settlement Class Period, and four years prior, and make reasonable efforts to respond to questions from plaintiffs on the interpretation of the data. Farah Decl., Ex. A at § II(A)(2)(a).

- **Custodians and depositions:** American Foods will each produce documents from five (5) custodians and testimony from up to three (3) then-current employees. *Id*., Ex. A at § II(A)(2).

---

[3] Farah Decl., Ex. A at § II(F)(3); ECF No. 260, ¶ 413. The following persons and entities are excluded from the Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

4

- **Non-custodial documents:** American Foods will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the Department of Justice, and structured data. *Id.*, Ex. A at § II(A)(2).

- **Phone records and authentication of documents:** American Foods has agreed to provide reasonable assistance to Plaintiffs to obtain phone records and to authenticate documents for use at summary judgment and trial. *Id.*, Ex. A at § II(A)(2).

### 3. Release of Liability

The Settlement Agreement releases and discharges American Foods's Released Parties from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the Settlement Class. *Id.*, Ex. A at § II(B)(2).

The Settlement Agreement, however, does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant. *Id.* The Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the Allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id.*

### III. ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[4] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the "important public policy

---

[4] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

5

concerns that support voluntary settlements."[5] This is particularly true in large, complex class actions, such as this case.[6]

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[7] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval."[8] This is because "[p]reliminary approval of a class action settlement is a provisional step."[9] At preliminary approval, the court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[10] The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[11] "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.*

---

[5] *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981).

[6] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions, settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[7] Fed. R. Civ. P. 23(e)(2).

[8] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

[9] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).

[10] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

[11] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

"Although the standards for preliminary approval of a class action settlement are not as stringent" as the standards for final approval, "the standards used in the [final] stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards." *Id.* Final approval will be granted if a settlement is "'fair, reasonable, and adequate'" under the Rule 23(e)(2) factors.[12] In the Tenth Circuit, this assessment requires courts to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[13] "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable."[14] Plaintiffs address both the Rule 23 factors and the Tenth Circuit factors.[15] Each of these factors support preliminary approval.

### 1.     The Agreement Was Fairly and Honestly Negotiated.

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[16] Here, all parties are represented by sophisticated counsel who have played active roles in many antitrust cases across the country. The negotiations between Plaintiffs' counsel and counsel for American Foods lasted for months. During those intensive negotiations, the parties undertook a robust discussion of the strengths and weaknesses

---

[12] *Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).

[13] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

[14] *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

[15] *Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

[16] *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

of the case. The negotiations were adversarial and at no time was there any collusion which might compromise the interests of the class. *See* Farah Decl. ¶¶ 6–7. Thus, because the parties—advised by sophisticated counsel with expertise on antitrust matters and complex class litigation—engaged in good faith negotiations, this "support[s] the integrity of the parties' settlement."[17]

### 2. The Immediate Relief Provided to the Class Is Adequate

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[18]

First, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[19] For example, there is serious disagreement by the parties about whether American Foods illegally conspired to depress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants undoubtedly disputing the expert analyses Plaintiffs will use to show the class was harmed. The settlement with American Foods cuts short these questions and ensures that the Settlement Class will be entitled to some financial relief in

---

[17] *Acevedo*, 2019 WL 6712298, at *2; *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions").

[18] *See Rodriguez*, 2020 WL 3288059, at *3 (citation omitted).

[19] *Lucas*, 234 F.R.D. at 693–94.

this litigation.[20] Because the serious, contested legal issues here render the outcome of the litigation uncertain, this factor weighs heavily in favor of settlement.[21]

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[22] It is inherently difficult to prove a complex antitrust class action claim, and there are "significant risks associated with continued litigation."[23] In contrast, "the proposed settlement agreement provides the class with substantial, guaranteed relief."[24] And although the case will continue against the non-settling Defendants, continuing to litigate this case against American Foods would have required additional resources and materially increased the complexity of the case. *See* Farah Decl. ¶ 10. The Settlement Class will be provided with substantial guaranteed relief, and the resulting litigation will benefit by proceeding in a more targeted manner against fewer, remaining Defendants.

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[25] Here, the parties reached an agreement that required compromise. *See* Farah Decl. ¶¶ 6–10. Thus, the substantial relief offered by the Settlement Agreement outweighs the "mere possibility of a more

---

[20] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ( "[B]ecause settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[21] *See Tennille*, 785 F.3d at 435 (affirming final approval where "serious disputed legal issues" rendered "the outcome . . . uncertain and further litigation would have been costly").

[22] *Lucas*, 234 F.R.D. at 694.

[23] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

[24] *Lucas*, 234 F.R.D. at 694.

[25] *Acevedo*, 2019 WL 6712298, at *3.

9

favorable outcome after protracted and expensive litigation over many years."[26] Accordingly, the relief is adequate and satisfies the Tenth Circuit requirements and Rule 23(e)(2)(C).

### 3. Plaintiffs' Counsel Believes the Settlement Is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[27] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support this settlement.[28] Courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."[29] Under the Settlement Agreement, American Foods will pay $4,000,000 into a fund that will provide financial benefits to the Settlement Class. And Plaintiffs will be able to secure potentially key evidence—including data, documents, and testimony—from these defendants' employees.[30]

In sum, the Settlement Agreement is fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

## IV. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

### A. The Settlement Class Satisfies Rule 23(a).

The proposed Settlement Class is nearly identical to the settlement classes that have already been certified except for the class period. ECF No. 306. Specifically, after evaluating the Rule

---

[26] *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

[27] *Lucas*, 234 F.R.D. at 695.

[28] *See e.g., id.* (finding unanimous approval by experienced counsel supports settlement).

[29] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[30] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (crediting "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–99 (S.D.N.Y. 2005) (noting the value of cooperating defendants in class actions).

23(a) factors, the Court certified settlement classes that cover the same types of jobs and workers for settlements reached with WMS, Seaboard, and Perdue. *Id.* Accordingly, the Court should hold that proposed Settlement Class for the American Foods settlement also satisfies Rule 23(a).

### 1. The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.[31] Here, the precise number of Settlement Class members is unknown but will number in the tens of thousands, and joinder of tens of thousands of people would be impracticable. As the court previously held when certifying a nearly identical settlement class, "the numerosity requirement is met." ECF No. 306.

### 2. Questions of Law and Fact are Common to the Settlement Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[32] Courts recognize that "[e]ven a single [common] question will" satisfy the commonality requirement.[33] "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail."[34] Here, common questions abound. As the court previously held when certifying nearly identical settlement classes, "plaintiffs raise the following common questions of law and fact: whether defendants agreed to restrain wages, whether the

---

[31] Fed. R. Civ. P. 23(a)(1).

[32] Fed. R. Civ. P. 23(a)(2).

[33] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

[34] *D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020)*; *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

11

agreement had an impact on class members, what the relevant market is for the representative plaintiffs' claims, and what the amount of damages are." *See* Order, ECF No. 306 at 13.

### 3. Class Representatives' Claims are Typical of the Settlement Class Members' Claims.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[35] In antitrust class actions, typicality is established by plaintiffs and all class members alleging the same antitrust violations.[36] Here, typicality is satisfied because Plaintiffs' claims and the claims of the Settlement Class members arise from the same alleged conspiracy. Indeed, when it certified similar settlement classes, the Court agreed "that the representative plaintiffs bring claims that are typical of the proposed class." ECF No. 306 at 14.

### 4. Ron Brown and Minka Garmon and Interim Class Counsel Are Adequate.

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."[37] The Tenth Circuit requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously.[38] Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other class members, and each named Plaintiff shares an overriding interest in establishing Defendants' liability and

---

[35] *Paulson v. McKowen*, 2022 WL 168708, at *5 (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

[36] *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

[37] Fed. R. Civ. P. 23(a)(4).

[38] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002); Fed. R. Civ. P. 23(a)(4).

12

maximizing class-wide damages.[39] The named Plaintiffs and their counsel have prosecuted, and will continue to prosecute, the action vigorously on behalf of the Settlement Class. Farah Decl. ¶ 6. As the court previously concluded when certifying nearly identical settlement class and appointing Settlement Class Counsel, "the interests of the class are fairly and adequately protected by the representative plaintiffs and their counsel." Order, ECF No. 306 at 16.

### B. The Requirements of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied.

#### 1. Common Issues Predominate.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[40] It is a "test readily met in certain cases alleging . . . violations of the antitrust laws.'"[41] To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[42] Common evidence supports each of these elements.

When it certified three nearly identical settlement classes, the court "agree[d] with the representative plaintiffs that common questions predominate over the other issues." Order, ECF No. 306 at 18. The court explained: "Proof of a conspiracy between defendants is a question that

---

[39] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

[40] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[41] *Paulson*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).

[42] *In re Urethane*, 237 F.R.D. at 449.

goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury." *Id.* at 18–19. And although "damages may vary for individuals in the class, the question of what competitive market wages should have been will be common to the class and is enough at this stage to show a common question on the measure of damages." *Id.* at 19.

### 2. Proceeding as a Class Is a Superior Method for Resolving This Dispute Fairly and Effectively.

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues."[43] Additionally, no other potential Settlement Class members have filed an analogous antitrust claim against these Defendants. Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Class members to seek damages that would otherwise be too costly to pursue.[44] For those reasons, when previously certifying nearly identical settlement classes, the court concluded "that a class action settlement is a superior method for resolving this dispute fairly and effectively." Order, ECF No. 306 at 19.

Accordingly, the Court should certify the Settlement Class.

---

[43] *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689–90 (D. Colo. 2014).

[44] *Id.* ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").

14

## V. DEFERRING CLASS NOTICE REMAINS APPROPRIATE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, Plaintiffs respectfully request that the Court defer formal notice of the Settlement Agreement to the Settlement Class until a later date, as with Plaintiffs' settlements with Perdue, WMS, and Seaboard. Order, ECF No. 306 at 23–24. Given document discovery has not yet started, Plaintiffs do not have the necessary data from Defendants containing class members' contact information. Farah Decl. ¶ 11. Deferring notice may also save money for the Settlement Class because Plaintiffs could provide notice of multiple settlements at once. After the necessary data has been obtained, Plaintiffs will file a motion to direct notice with the Court.

## VI. CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class, (3) appointing Interim Co-Lead Counsel Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll, PLLC, and Handley Farah & Anderson PLLC as Settlement Class Counsel, (4) appointing Plaintiffs as Representatives of the Settlement Class, (5) deferring notice to the Settlement Class until a later date, and (6) ordering a stay of all proceedings against American Foods.

Dated: June 17, 2024                                    Respectfully submitted,

| /s/ Brent W. Johnson | /s/ George F. Farah | /s/ Shana E. Scarlett |
|---|---|---|
| COHEN MILSTEIN SELLERS & TOLL PLLC | HANDLEY FARAH & ANDERSON PLLC | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 1100 New York Ave. NW, Fl. 5 | 33 Irving Pl. | 715 Hearst Ave., Ste. 300 |
| Washington, DC 20005 | New York, NY 10003 | Berkeley, CA 94710 |
| Tel: (202) 408-4600 | Tel: (212) 477-8090 | Tel: (510) 725-3000 |
| bjohnson@cohenmilstein.com | gfarah@hfajustice.com | shanas@hbsslaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

*/s/ George F. Farah*
GEORGE F. FARAH

16