**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

RON BROWN and MINKA GARMON,
individually and on behalf of all others
similarly situated,

                                    Plaintiffs,

   v.

JBS USA FOOD COMPANY; TYSON
FOODS, INC.; CARGILL, INC.; CARGILL
MEAT SOLUTIONS CORP.; HORMEL
FOODS CORP.; ROCHELLE FOODS, LLC;
AMERICAN FOODS GROUP, LLC;
TRIUMPH FOODS, LLC; SEABOARD
FOODS LLC; NATIONAL BEEF PACKING
CO., LLC; SMITHFIELD FOODS, INC.;
SMITHFIELD PACKAGED MEATS
CORP.; AGRI BEEF CO.; WASHINGTON
BEEF, LLC; PERDUE FARMS, INC.;
GREATER OMAHA PACKING CO., INC.;
NEBRASKA BEEF, LTD.; INDIANA
PACKERS CORPORATION; QUALITY
PORK PROCESSORS, INC.; AGRI STATS,
INC.; and WEBBER, MENG, SAHL AND
COMPANY, INC. d/b/a WMS &
COMPANY, INC.,

                                    Defendants.

Civil Action No. 1:22-cv-02946-PAB-STV

**PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENTS WITH NATIONAL
BEEF PACKING CO., LLC; CARGILL,
INC. AND CARGILL MEAT
SOLUTIONS CORP.; AND HORMEL
FOODS CORPORATION; ROCHELLE
FOODS, LLC; AND QUALITY PORK
PROCESSORS, INC.,
CERTIFICATION OF SETTLEMENT
CLASSES, AND APPOINTMENT OF
SETTLEMENT CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 3

      A.    Summary of Allegations ............................................................................ 3

      B.    Summary of the Settlement Agreements .................................................... 4

            1.    Summary of the National Beef Settlement Agreement............................. 4

                  a.    Class Definition ................................................................................. 4

                  b.    Monetary Terms................................................................................ 5

                  c.    Required Cooperation Terms ........................................................... 5

                  d.    Release of Liability .......................................................................... 6

            2.    Summary of the Cargill Settlement Agreement......................................... 7

                  a.    Class definition ................................................................................ 7

                  b.    Monetary Terms................................................................................ 7

                  c.    Release of Liability .......................................................................... 9

            3.    Summary of the Hormel Foods-QPP Settlement Agreement .................... 9

                  a.    Required Cooperation Terms ......................................................... 10

                  b.    Release of Liability ........................................................................ 11

III.  ARGUMENT ...................................................................................................... 11

            1.    The Agreements were fairly and honestly negotiated............................. 13

            2.    The immediate relief provided to the class is adequate and
                  more favorable than after further litigation............................................. 14

            3.    Plaintiffs' counsel believes the settlements are fair and
                  reasonable. ............................................................................................... 16

IV.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
      CLASSES ........................................................................................................... 17

A. The National Beef, Cargill, and Hormel Foods-QPP Settlement Classes satisfy Rule 23(a). ............................................................ 17

   1. The Settlement Classes are sufficiently numerous. ................................. 17

   2. Questions of law and fact are common to the Settlement Classes. ............................................................................... 18

   3. Class representatives' claims are typical of the Settlement Classes members' claims. ....................................................... 18

   4. Ron Brown and Minka Garmon and interim class counsel are adequate. ............................................................................ 19

B. The requirements of Rule 23(b)(3) are satisfied. ................................... 20

   1. Common issues predominate. ................................................. 20

   2. Proceeding as a class is a superior method for resolving this dispute fairly and effectively. ................................................ 21

V. DEFERRING CLASS NOTICE REMAINS APPROPRIATE ....................................... 21

VI. CONCLUSION ............................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acevedo v. Sw. Airlines Co.*,
    2019 WL 6712298 (D.N.M. Dec. 10, 2019) .............................................................11, 14, 15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................................20

*In re Ampicillin Antitrust Litig.*,
    82 F.R.D. 652 (D.D.C. 1979) ...............................................................................................16

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
    2020 WL 3833412 (D. Colo. Mar. 8, 2020) .........................................................................12

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................................15

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    2020 WL 3288059 (D. Kan. June 18, 2020)...................................................................13, 14

*In re Crocs, Inc. Secs. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ...........................................................................................21

*D&M Farms v. Birdsong Corp.*,
    2020 WL 7074140 (E.D. Va. Dec. 2, 2020) .........................................................................18

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................................................16

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .....................................................................13, 14, 15, 16

*Martinez v. Reams*,
    2020 WL 7319081 (D. Colo. Dec. 11, 2020)........................................................................13

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) ..............................................................................................18

*In re Molycorp, Inc. Sec. Litig.*,
    2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................................................12

*O'Dowd v. Anthem, Inc.*,
2019 WL 4279123 (D. Colo. Sept. 9, 2019) ...........................................................16

*Paulson v. McKowen*,
2022 WL 168708 (D. Colo. Jan. 19, 2022) .................................................13, 18, 20

*Pliego v. Los Arcos Mexican Rest., Inc.*,
313 F.R.D. 117 (D. Colo. 2016) ............................................................................21

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................19

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) ...................................................................14

*Ross v. Convergent Outsourcing, Inc.*,
323 F.R.D. 656 (D. Colo. 2018) ............................................................................12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) .............................................................................19

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
749 F.2d 1451 (10th Cir. 1984) .............................................................................11

*In re Syngenta AG MIR162 Corn Litig.*,
2018 WL 1726345 (D. Kan. Apr. 10, 2018) ..........................................................16

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
2012 WL 2370523 (D.S.C. June 22, 2012) ............................................................15

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) .........................................................................13, 15

*Trujillo v. Colorado*,
649 F.2d 823 (10th Cir. 1981) ...............................................................................11

*In re Urethane Antitrust Litig.*,
237 F.R.D. 440 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126
(D. Kan. Oct. 23, 2006) ...................................................................................19, 20

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .............................................................................18

*In re Urethane Antitrust Litig.*,
2006 WL 2983047 (D. Kan. Oct. 17, 2006) ..........................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...............................................................................................18

**STATUTES**

Sherman Act, 15 U.S.C. § 1 ..............................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................... *passim*

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Ron Brown and Minka Garmon (collectively "Plaintiffs") hereby move for an Order granting preliminary approval of settlements reached between Plaintiffs and three additional Defendants—National Beef Packing Co., LLC ("National Beef"); Cargill, Inc. and Cargill Meat Solutions Corp. ("Cargill"); and Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Pork Processors, Inc. ("Hormel Foods-QPP"), (collectively "Settling Defendants").[1]

Plaintiffs have now recovered over $200 million on behalf of a class of workers at the processing plants at Defendants' red meat facilities across the country. These are the seventh, eighth, and ninth settlements reached in this case. Seven defendant families remain. The Court has already preliminarily approved settlements with Defendants Perdue Farms Inc. ("Perdue"), Seaboard Foods, LLC ("Seaboard"), and Triumph Foods, LLC ("Triumph"). ECF No. 306. Two motions for preliminary approval of settlements with Defendants Tyson Foods, Inc. ("Tyson"), JBS USA Food Co. ("JBS"), and American Foods Group, LLC ("American Foods") remaining pending before the Court. ECF Nos. 322, 360.

Preliminary approval of these pending six settlements will trigger several necessary and meaningful events for the class. *First*, until preliminary approval is granted, the more than $188 million recovered by these six settlements (Tyson, JBS, American Foods, National Beef, Cargill, and Hormel Foods-QPP), will not be paid into escrow accounts and will not begin to earn interest

---

[1] The terms of the settlement with National Beef are memorialized in a written agreement entered into by National Beef and Plaintiffs on July 2, 2024 ("National Beef Settlement Agreement"); the terms of the settlement with Cargill are memorialized in a written agreement entered into by Cargill and Plaintiffs on July 24, 2024 ("Cargill Settlement Agreement"); and the terms of the settlement with Hormel are memorialized in a written agreement entered into by Hormel and Plaintiffs on August 20, 2024 ("Hormel Settlement Agreement") (collectively "Settlement Agreements").

for the class. *Second*, under the terms of the settlement agreements, Defendants are not obligated to produce the data and contact information for the class until the Court grants preliminary approval, stalling Class Counsel's efforts at disseminating notice to the class and preparing for a distribution. Because this is an employment-related case, Defendants are in possession of the contact information for many class members as well as the amount they were compensated. This data is important in preparing a plan for notice and allocation of funds to class members. *Third*, cooperation under the settlements (production of documents, providing witnesses for depositions) is also triggered off the granting of the motions for preliminary approval. That cooperation will advance both the administration of the settlements as well as the litigation.

These settlements are well within the range of reasonableness required under Rule 23. They each provide meaningful financial recovery for the class: Cargill has agreed to pay the class $29.75 million, National Beef to pay $14.2 million, and Hormel Foods-QPP to pay $13.5 million. These settlements reflect the proportionate number of class employees that each Defendant employed during the Class Period. The following chart shows the recovery to date:

| Date | Defendant | Settlement |
|------|-----------|------------|
| 12/6/2022 | Perdue | $1,250,000 |
| 6/20/2023 | WMS | (cooperation) |
| 6/23/2023 | Seaboard Triumph | $10,000,000 (cooperation) |
| 1/29/2024 | JBS | $55,000,000 |
| 3/7/2024 | Tyson | $72,500,000 |
| 5/17/2024 | American Foods | $4,000,000 |
| 7/2/2024 | National Beef | $14,200,000 |
| 7/24/2024 | Cargill | $29,750,000 |
| 8/20/2024 | Hormel Foods-QPP | $13,500,000 |
|  | **TOTAL** | **$200,200,000** |

This motion is made on the grounds that the Settlement Agreements are fair, reasonable, and adequate and that each satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. Plaintiffs respectfully request that the Court:

(a)    Grant preliminary approval of the three Settlement Agreements;

(b)    Certify the proposed National Beef, Cargill, and Hormel Foods-QPP Settlement Classes;

(c)    Appoint the Named Plaintiffs Ron Brown and Minka Garmon as class representatives of the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes;

(d)    Appoint the law firms Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC (which currently serve as Interim Co-Lead Counsel) as Settlement Class Counsel;

(e)    Defer notice of the Settlement Agreements, instead directing Settlement Class Counsel to submit a motion to approve a plan of notice at an appropriate time, *i.e.*, after Defendants have produced contact and wage information regarding Settlement Classes members and prior to Plaintiffs moving for final approval of the Settlement Agreements; and

(f)    Grant a stay of all proceedings in this litigation against the Released Parties (as defined in the Settlement Agreements) except as necessary to effectuate the Settlement Agreements or as otherwise agreed to by the settling parties.

## II.    BACKGROUND

### A.    Summary of Allegations

Plaintiffs allege that the nation's leading red meat processors and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants. This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviewing industry witnesses, and extensive research into the

red meat processing industry. As a result of that investigation, Plaintiffs' lengthy complaint was supported by specific allegations, including allegations that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis. Defendants filed motions to dismiss the complaint on February 17, 2023. The Court denied multiple motions to dismiss, holding that Plaintiffs have alleged sufficient evidence to pursue both their *per se* wage-fixing claim and their information exchange claim.

On January 2, 2024, Plaintiffs filed an Amended Complaint that expands the Class Period, names additional Defendants, and contains additional allegations of conspiratorial misconduct. ECF No. 260. The motions to dismiss that complaint are pending before the Court. ECF Nos. 337–343. Settling Defendants have not admitted to any liability or wrongdoing, and maintain that they have strong defenses to Plaintiffs' claims.

**B.    Summary of the Settlement Agreements**

Plaintiffs' counsel has extensive experience in antitrust cases, particularly in cases alleging wage suppression. The Settlement Agreements with National Beef, Cargill, and Hormel Foods-QPP were negotiated with the benefit of Plaintiffs' counsel having already obtained multiple earlier settlements on behalf of the class as well having received hundreds of thousands of documents from one of the earlier settling Defendants. Thus, the settlement discussions with National Beef, Cargill, and Hormel Foods-QPP were undertaken with an especially deep understanding of both the applicable law and the relevant facts.

**1.    Summary of the National Beef Settlement Agreement**

**a.    Class Definition**

The proposed National Beef Settlement Class is co-extensive with the class alleged in the operative Amended Complaint: "[a]ll persons employed by Defendant Processors, their

subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024."[2]

### b. Monetary Terms

National Beef has agreed to provide monetary compensation for the benefit of the National Beef Settlement Class in the amount of $14,200,000 (fourteen million, two hundred thousand dollars), which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by National Beef within fourteen (14) business days after entry of the preliminary approval order. Ex. A at § II(A)(1). This is a non-reversionary fund; once the National Beef Settlement Agreement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to National Beef Settlement Class members with no amount reverting back to National Beef. *Id.*, at § II(E).

### c. Required Cooperation Terms

National Beef has agreed to significant non-monetary cooperation terms, which will provide material benefits to the class when litigating their claims against the remaining Defendants. National Beef will provide data, documents, information, and witnesses from its Red Meat Processing Operations concerning the Allegations (as those terms are defined in the Settlement Agreement), including *inter alia*:

- **Data:** National Beef will produce structured data for the National Beef Settlement Class Period, and four years prior, identified after a reasonable search and make

---

[2] Ex. A to the Declaration of Shana E. Scarlett, at § II(F)(3). The following persons and entities are excluded from the National Beef Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

February 27, 2024 is the date of the first preliminary approval of a settlement in this Action. ECF No. 306.

reasonable efforts to respond to questions from Plaintiffs on the interpretation of the data. *Id*., at § II(A)(2)(a).

- **Custodial documents and depositions:** National Beef will produce documents from up to eight (8) custodians and make up to five (5) current employees available for deposition and, if requested by Class Plaintiffs, trial. *Id*., at § II(A)(2). National Beef has agreed to produce documents relating to the Allegations to Class Plaintiffs identified by a reasonable search of the Custodians' files relating to (1) WMS and WMS surveys; (2) the Beef Industry Wage Index ("BIWI") and/or Pork Industry Wage Index ("PIWI"); and those documents provided to and received by various industry trade organizations (the American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee or "JLM", North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club) that reference any form or component of Compensation. *Id.*, at § II(A)(2)(c), (f) & (h).

- **Non-custodial documents:** National Beef will produce, to the extent identified by a reasonable search, certain documents from non-custodial files (contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the DOJ consents or does not object to the production or the Court orders the production)). *Id*., at § II(A)(2)(i).

- **Authentication of documents:** National Beef will use reasonable efforts to provide declarations relating to authentication or admissibility of documents, if reasonably requested by Class Plaintiffs. *Id*., at § II(A)(2)(b).

### d.    Release of Liability

As set forth more fully in Section II(B)(2), the National Beef Settlement Agreement contains a release and discharge of National Beef's Released Parties, including from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the National Beef Settlement Class. *Id*. at § II(B)(2).

The National Beef Settlement Agreement, however, does nothing to abrogate the rights of any member of the National Beef Settlement Class to recover from any other Defendant. *Id*. The National Beef Settlement Agreement also expressly excludes from the Release "any claims wholly

unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id.*

### 2. Summary of the Cargill Settlement Agreement

#### a. Class definition

The proposed Cargill Settlement Class is co-extensive with the class alleged in the operative Amended Complaint: "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024."[3]

#### b. Monetary Terms

Cargill has agreed to provide monetary compensation for the benefit of the Cargill Settlement Class in the amount of $29,750,000 (twenty-nine million, seven hundred fifty thousand dollars), which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by Cargill within fourteen (14) business days after entry of the preliminary approval order. Ex. B at § II(A)(1). This is a non-reversionary fund; once the Cargill Settlement Agreement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Cargill Settlement Class members with no amount reverting back to Cargill. *Id.* at § II(E).

---

[3] Ex. B at § II(F)(3). The following persons and entities are excluded from the Cargill Settlement Class: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

Cargill has agreed to equally significant non-monetary cooperation terms, which will provide material benefits to the Class when litigating their claims against the remaining Defendants. Cargill will provide data, documents, information, and witnesses from its Red Meat Processing Operations concerning the Allegations (as those terms are defined in the Settlement Agreement), including *inter alia*:

- **Data:** Cargill will produce structured data for the Cargill Settlement Class Period, and four years prior, identified after a reasonable search and to the extent such data is in Cargill's possession, custody, and control, and make reasonable efforts to respond to questions from plaintiffs on the interpretation of the data. Ex. B at § II(A)(2)(a).

- **Custodial documents and depositions**: Cargill will each produce documents from up to ten (10) custodians and testimony from up to six (6) then-current employees. *Id.*, at § II(A)(2). Cargill has agreed to produce documents to Class Plaintiffs relating to the Allegations that are identified by a reasonable search of the Custodian's files using agreed-upon search terms and responsive to the already served Plaintiffs' requests for production,  as well as documents identified by a reasonable search of the Custodians' files relating to (1) Cargill's Red Meat Processing Operations that (a) reference WMS, any of WMS's employees, or any surveys or survey results prepared by WMS, (b) were sent by Cargill or Cargill's employees to WMS or WMS's employees, and/or (c) were received by Cargill or Cargill's employees from WMS or WMS's employees; (2) the Beef Industry Wage Index ("BIWI") and/or Pork Industry Wage Index ("PIWI"); and  (3) those documents provided to and received by the following industry trade organizations: American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee or "JLM", North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club that reference any form or component of Compensation. *Id.*, at § II(A)(2).

- **Non-custodial documents:** Cargill will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, documents related to the Allegations and within the timeframe covered by the Class Period produced to the DOJ that have not already been produced to Plaintiffs prior to the resolution of this Action (so long as the agency consents or does not object to the production or the Court orders the production). *Id.*

- **Phone records and authentication of documents**: Cargill has agreed to use reasonable efforts to provide declarations or affidavits relating to authentication or admissibility of documents and agreed not to object to Plaintiffs' efforts to obtain third-party phone records. *Id.*

c.      **Release of Liability**

As more fully expressed in Section II.B.2, the Cargill Settlement Agreement releases and discharges Cargill's Released Parties from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the Cargill Settlement Class. Section II.B.2.

The Cargill Settlement Agreement, however, does nothing to abrogate the rights of any member of the Cargill Settlement Class to recover from any other Defendant. *Id*. The Cargill Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id*.

3.      **Summary of the Hormel Foods-QPP Settlement Agreement**

Hormel Foods-QPP has agreed to provide monetary compensation for the benefit of the Hormel Foods-QPP Settlement Class in the amount of $13,500,000 (thirteen million, five hundred thousand), which represents significant and guaranteed recovery to class members (providing this Court grants final approval). This amount will be deposited in an escrow account by Hormel Foods-QPP within thirty (30) calendar days after the later of (i) entry of the preliminary approval order, or (ii) the date on which Hormel Foods-QPP is provided with wiring information for the escrow account. Ex. C at § II(A)(1). This is a non-reversionary fund; once the Hormel Foods-QPP Settlement Agreement is finally approved by the Court and after administrative costs, litigation

expenses, and attorneys' fees are deducted, the net funds will be distributed to Hormel Foods-QPP

Settlement Class members with no amount reverting back to Hormel Foods-QPP. *Id.*, at § II(E).

a.    **Required Cooperation Terms**

Hormel Foods-QPP has also agreed to non-monetary cooperation terms and to provide

material benefits to the Class when litigating their claims against the remaining Defendants.

Hormel Foods-QPP will provide data, documents, information, and witnesses from its Red Meat

Processing Operations concerning the Allegations (as those terms are defined in the Settlement

Agreement), including *inter alia*:

- **Data:** Hormel Foods-QPP will produce structured data identified after a reasonable search from certain databases, and make reasonable efforts to respond to questions from plaintiffs regarding the database scheme, codes, abbreviations, and different report formats. *Id.*, at § II(A)(2)(a).

- **Custodians and depositions**: Hormel Foods-QPP will produce documents from five (5) custodians and testimony from up to four (4) then-current employees. *Id.*, at §§ II(A)(2)(d)-(e). Hormel Foods-QPP has agreed to produce documents relating to the Allegations to Class Plaintiffs identified by a reasonable search of the Custodians' files relating to (1) WMS and WMS surveys; (2) the Beef Industry Wage Index ("BIWI") and/or Pork Industry Wage Index ("PIWI"); and those documents provided to and received by the following industry trade organizations: the American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee or "JLM", North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club that reference any form or component of Compensation. *Id.*, at § II(A)(2)(d).

- **Non-custodial documents:** Hormel Foods-QPP will produce, to the extent identified by a reasonable search, the following documents from non-custodial files: contracts with Agri-Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, and documents that have been produced to the DOJ (so long as the agency consents or does not object to the production or the Court orders the production). *Id.*, at § II(A)(2)(g).

- **Declarations relating to authentication of documents**: Hormel Foods-QPP has agreed to use reasonable efforts to provide declarations relating to authentication of documents. *Id.*, at § II(A)(2)(f).

### b.    Release of Liability

As more fully set forth in section II(B)(2), the Hormel Foods-QPP Settlement Agreement contains a release which discharges Hormel Foods-QPP's Released Parties from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to" the Hormel Foods-QPP Settlement Class. *Id.*, at § II(B)(2).

The Hormel Foods-QPP Settlement Agreement, however, does nothing to abrogate the rights of any member of the Hormel Foods-QPP Settlement Class to recover from any other Defendant. *Id*. The Hormel Foods-QPP Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id*.

## III.    ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[4] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the "important public policy concerns that support voluntary settlements."[5] This is particularly true in large, complex class actions, such as this case.[6]

---

[4] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

[5] *Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981).

[6] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions,

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[7] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval."[8] This is because "[p]reliminary approval of a class action settlement is a provisional step."[9] At preliminary approval, the court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[10] The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[11] "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.*

"Although the standards for preliminary approval of a class action settlement are not as stringent" as the standards for final approval, "the standards used in the [final] stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards." *Id.* Final approval will be granted if a settlement is "'fair, reasonable, and adequate'" under the Rule

---

settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[7] Fed. R. Civ. P. 23(e)(2).

[8] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

[9] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).

[10] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

[11] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

23(e)(2) factors.[12] In the Tenth Circuit, this assessment requires courts to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[13] "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable."[14] Plaintiffs address both the Rule 23 factors and the unique Tenth Circuit factors.[15] Each of these factors support preliminary approval.

### 1. The Agreements were fairly and honestly negotiated.

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[16] Here, all parties are represented by sophisticated counsel who have played active roles in many antitrust cases across the country. Each negotiation lasted for several weeks or months. During those intensive negotiations, the parties undertook a robust discussion of the strengths and weaknesses of the case. The negotiations were adversarial throughout and at no time was there any collusion which might compromise the interests of the class. *See* Scarlett Decl. ¶¶ 10–11. Thus, because the parties—advised by sophisticated counsel

---

[12] *Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).

[13] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

[14] *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

[15] *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

[16] *Lucas*, 234 F.R.D. at 693.

with expertise on antitrust matters and complex class litigation—engaged in good faith negotiations, this "support[s] the integrity of the parties' settlement."[17]

      **2.**      **The immediate relief provided to the class is adequate and more favorable than after further litigation.**

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[18]

As an initial matter, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[19] For example, there is serious disagreement by the parties about whether the Defendants National Beef, Cargill, and Hormel Foods-QPP illegally conspired to suppress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants disputing the expert analyses Plaintiffs will use to show the class was harmed. The settlements with National Beef, Cargill, and Hormel Foods-QPP cut short these questions and ensure that the Settlement Classes will be entitled to some financial relief in this litigation.[20]

---

[17] *Acevedo*, 2019 WL 6712298, at *2; *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions").

[18] *See Chavez Rodriguez*, 2020 WL 3288059, at *3 (citation omitted).

[19] *Lucas*, 234 F.R.D. at 693–94.

[20] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) (finding the presence of serious legal and factual questions concerning the outcome of the Litigation to weigh heavily in favor of settlement, "because settlement creates a certainty of some

Because the serious, disputed legal issues here render the outcome of the litigation uncertain, this factor weighs heavily in favor of settlement.[21]

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[22] It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation."[23] In contrast, "the proposed settlement agreement provides the class with substantial, guaranteed relief."[24] And although the case will continue against the non-settling Defendants, continuing to litigate this case against any of the Settling Defendants would have required significant additional resources and materially increased the complexity of the case. *See* Scarlett Decl. ¶ 14. The Settlement Classes will be provided with substantial guaranteed relief, and the resulting litigation will benefit by proceeding in a more targeted manner against fewer, remaining Defendants.

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[25] Here, the parties reached agreements that necessitated compromise by both sides. *See* Scarlett Decl. ¶¶ 10–

---

recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[21] *See Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

[22] *Lucas*, 234 F.R.D. at 694.

[23] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

[24] *Lucas*, 234 F.R.D. at 694.

[25] *Acevedo*, 2019 WL 6712298, at *3.

- 15 -

14. Thus, the immediate, substantial relief offered by the Settlement Agreements outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."[26] Accordingly, the relief provided to the class is adequate and satisfies both the Tenth Circuit requirements and those of Rule 23(e)(2)(C).

### 3. Plaintiffs' counsel believes the settlements are fair and reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[27] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support the settlements.[28] Courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."[29] Under the Settlement Agreements, National Beef will pay $14,200,000, Cargill will pay $29,750,000, and Hormel Foods-QPP will pay $13,500,000 into a fund that will provide tangible financial benefits to the Settlement Classes. And the Settlement Agreements allow Plaintiffs to secure potentially key evidence—in the form of data, documents and testimony—from these Defendants and their employees.[30]

In sum, the National Beef, Cargill, and Hormel Foods-QPP Settlement Agreements are fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of

---

[26] *In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

[27] *Lucas*, 234 F.R.D. at 695.

[28] *See, e.g.*, *id.* (finding unanimous approval by experienced counsel supports settlement approval).

[29] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[30] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES

### A.    The National Beef, Cargill, and Hormel Foods-QPP Settlement Classes satisfy Rule 23(a).

The proposed Settlement Classes for the National Beef, Cargill, and Hormel Foods-QPP settlements are nearly identical to the three settlement classes that have already been certified by the court other than as to the date of the class period. ECF No. 306. Specifically, after evaluating each of the Rule 23(a) factors, the Court certified nearly identical settlement classes that cover the same types of jobs and workers for settlements previously reached with WMS, Seaboard, and Perdue. *Id.* Accordingly, the Court should hold that proposed Settlement Classes for the National Beef, Cargill, and Hormel Foods-QPP settlements also satisfy the Rule 23(a) factors.

### 1.    The Settlement Classes are sufficiently numerous.

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.[31] Here, the precise number of Settlement Classes members is unknown but will number in at least the tens of thousands, and joinder of tens of thousands of people would be impracticable. As the court previously held when certifying nearly identical settlement classes, "the numerosity requirement is met." ECF No. 306.

---

[31] Fed. R. Civ. P. 23(a)(1).

      **2.**      **Questions of law and fact are common to the Settlement Classes.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[32] Courts recognize that "[e]ven a single [common] question will" satisfy the commonality requirement.[33] "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail."[34] Here, common questions abound. As the Court previously held when certifying nearly identical settlement classes, "plaintiffs raise the following common questions of law and fact: whether defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for the representative plaintiffs' claims, and what the amount of damages are." *See* Order, ECF No. 306 at 13.

      **3.**      **Class representatives' claims are typical of the Settlement Classes members' claims.**

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[35] In antitrust class action cases, typicality is established by

---

[32] Fed. R. Civ. P. 23(a)(2).

[33] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

[34] *D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

[35] *Paulson v. McKowen*, No. 19-cv-02639-PAB-NYW, 2022 WL 168708, at *5 (D. Colo. Jan. 19, 2022) (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

plaintiffs and all class members alleging the same antitrust violations by defendants.[36] Here, typicality is satisfied because Plaintiffs' claims and the claims of members of the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes arise out of the same alleged antitrust conspiracy. Indeed, when it previously certified nearly identical settlement classes, the Court agreed "that the representative plaintiffs bring claims that are typical of the proposed class." Order, ECF No. 306 at 15.

### 4.    Ron Brown and Minka Garmon and interim class counsel are adequate.

Rule 23(a)(4) requires that, for a case to proceed as a class action, a court must find that "the representative parties will fairly and adequately protect the interests of the class."[37] The Tenth Circuit requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously.[38] Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other class members, and each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages.[39] The named Plaintiffs and their experienced counsel have prosecuted, and will continue to prosecute, the action vigorously on behalf of the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes. Scarlett Decl. ¶ 5. As the court previously concluded when certifying nearly identical settlement classes and appointing the same three law

---

[36] *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006), *stay granted in part*, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

[37] Fed. R. Civ. P. 23(a)(4).

[38] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002); Fed. R. Civ. P. 23(a)(4).

[39] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

firms as Settlement Class Counsel, "the interests of the class are fairly and adequately protected by the representative plaintiffs and their counsel." Order, ECF No. 306 at 16.

**B.    The requirements of Rule 23(b)(3) are satisfied.**

Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

**1.    Common issues predominate.**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[40] It is a "test readily met in certain cases alleging . . . violations of the antitrust laws."[41] To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[42] Common evidence supports each of these elements.

When previously certifying three nearly identical settlement classes, the Court "agree[d] with the representative plaintiffs that common questions predominate over the other issues." Order, ECF No. 306 at 18. The Court explained: "Proof of a conspiracy between defendants is a question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury." *Id.* at 18–19. The Court further held that although "damages may vary for individuals in the class, the question of what competitive market wages should have been will be

---

[40] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[41] *Paulson*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).

[42] *In re Urethane*, 237 F.R.D. at 449.

common to the class and is enough at this stage to show a common question on the measure of damages." *Id.* at 19.

2.    **Proceeding as a class is a superior method for resolving this dispute fairly and effectively.**

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues."[43] Additionally, no other potential Settlement Classes members have filed an analogous antitrust claim against these Defendants. Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Classes members to seek damages that would otherwise be too costly to pursue.[44] For those reasons, when previously certifying nearly identical settlement classes, the Court concluded "that a class action settlement is a superior method for resolving this dispute fairly and effectively." Order, ECF No. 306 at 19.

Accordingly, the Court should certify the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes.

V.    **DEFERRING CLASS NOTICE REMAINS APPROPRIATE**

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including

---

[43] *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689-90 (D. Colo. 2014).

[44] *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016) ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").

individual notice to all members who can be identified through reasonable effort." Here, Plaintiffs respectfully request that the Court agree to defer notice of the Settlement Agreements to the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes until a later date, as the Court had found in preliminarily approving Plaintiffs' settlements with Perdue, WMS, and Seaboard. Order, ECF No. 306 at 23–24. Given document discovery has not yet started and the Settling Defendants have not proceeded with their cooperation yet, Plaintiffs do not have the necessary data from Defendants containing class members' contact information. Scarlett Decl. ¶ 15. Deferring notice may also save money for the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes because Plaintiffs could provide notice of multiple settlements at once. After the necessary data has been obtained, Plaintiffs will file a motion to direct notice with the Court.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreements with National Beef, Cargill, and Hormel Foods-QPP; (2) certifying the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes; (3) appointing Interim Co-Lead Counsel Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Handley Farah & Anderson PLLC as Settlement Class Counsel; (4) appointing Ron Brown and Minka Garmon as Representatives of the Settlement Classes; (5) deferring notice to the Settlement Classes until a later date; and (6) ordering a stay of all proceedings against the National Beef, Cargill, and Hormel Foods-QPP Defendants.

Dated: September 6, 2024                    Respectfully submitted,

                                            HAGENS BERMAN SOBOL SHAPIRO LLP

                                            */s/ Shana E. Scarlett*
                                            Shana E. Scarlett
                                            Rio S. Pierce
                                            Abby R. Wolf
                                            715 Hearst Avenue, Suite 300
                                            Berkeley, CA 94710
                                            Telephone: (510) 725-3000
                                            Facsimile: (510) 725-3001
                                            shanas@hbsslaw.com
                                            riop@hbsslaw.com
                                            abbyw@hbsslaw.com

                                            Steve W. Berman
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1301 Second Avenue, Suite 2000
                                            Seattle, WA 98101
                                            Telephone: (206) 623-7292
                                            steve@hbsslaw.com

                                            Elaine Byszewski
                                            Abigail D. Pershing
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            301 N. Lake Ave., Suite 920
                                            Pasadena CA, 91101
                                            Telephone: (213) 330-7150
                                            elaineb@hbsslaw.com
                                            abigailp@hbsslaw.com

                                            COHEN MILSTEIN SELLERS & TOLL PLLC

                                            */s/ Brent W. Johnson*
                                            Brent W. Johnson
                                            Benjamin D. Brown
                                            Robert A. Braun
                                            Alison S. Deich
                                            Zachary Glubiak
                                            Zachary I. Krowitz
                                            Nina Jaffe-Geffner
                                            1100 New York Avenue NW, 5th Floor
                                            Washington, DC 20005
                                            Telephone: (202) 408-4600
                                            Facsimile: (202) 408-4699

- 23 -

bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL PLLC
769 Centre St. Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

HANDLEY FARAH & ANDERSON PLLC

*/s/ George F. Farah*
George F. Farah
Rebecca P. Chang
Nicholas J. Jackson
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com
njackson@hfajustice.com

William H. Anderson (Co. Bar 45960)
HANDLEY FARAH & ANDERSON PLLC
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (202) 559-2433
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Martha E. Guarnieri
HANDLEY FARAH & ANDERSON PLLC
1727 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 422-3478
Facsimile: (844) 300-1952
mguarnieri@hfajustice.com

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
60 Harrison Avenue, Suite 604
Boston, MA 02111
Telephone: (202) 921-4567
Facsimile: (844) 300-1952
swiener@hfajustice.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
sjteti@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed
Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

/s/ Shana E. Scarlett
SHANA E. SCARLETT