IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 1:22-cv-02946-PAB-STV

RON BROWN and
MINKA GARMON, individually and on behalf of all others similarly situated,

          Plaintiffs,

v.

JBS USA FOOD COMPANY,
TYSON FOODS, INC.,
CARGILL, INC.,
CARGILL MEAT SOLUTIONS CORP.,
HORMEL FOODS CORP.,
ROCHELLE FOODS, LLC,
AMERICAN FOODS GROUP, LLC,
TRIUMPH FOODS, LLC,
SEABOARD FOODS LLC,
NATIONAL BEEF PACKING CO., LLC,
SMITHFIELD FOODS, INC.,
SMITHFIELD PACKAGED MEATS CORP.,
AGRI BEEF CO.,
WASHINGTON BEEF, LLC,
PERDUE FARMS, INC.,
GREATER OMAHA PACKING CO., INC.,
NEBRASKA BEEF, LTD.,
INDIANA PACKERS CORPORATION,
QUALITY PORK PROCESSORS, INC.,
AGRI STATS, INC., and
WEBBER, MENG, SAHL AND COMPANY, INC. d/b/a WMS & COMPANY, INC.,

          Defendants.

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH NATIONAL BEEF PACKING CO., LLC; CARGILL, INC. AND CARGILL MEAT SOLUTIONS CORP.; AND HORMEL FOODS CORPORATION; ROCHELLE FOODS, LLC; AND QUALITY PORK PROCESSORS, INC., CERTIFICATION OF SETTLEMENT CLASSES, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

This matter is before the Court on Plaintiffs' Motion for Preliminary Approval of Settlements with National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Pork Processors, Inc.,

- 1 -

Certification of Settlement Classes, and Appointment of Settlement Class Counsel filed by plaintiffs Ron Brown and Minka Garmon (collectively the "representative plaintiffs") ("Motion" or "Mot."). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The representative plaintiffs have reached three settlement agreements with defendants in this case, namely, National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation; Rochelle Foods, LLC; and Quality Pork Processors, Inc. Regarding the settlement agreement between the representative plaintiffs and National Beef (the "National Beef settlement"), the representative plaintiffs and Cargill (the "Cargill settlement"), and the settlement agreement between the representative plaintiffs and Hormel Foods-QPP (the "Hormel Foods-QPP settlement"), the representative plaintiffs move for "an order: (1) preliminarily approving the Settlement Agreements with National Beef, Cargill, and Hormel Foods-QPP; (2) certifying the National Beef, Cargill, and Hormel Foods-QPP Settlement Classes, (3) appointing Interim Co-Lead Counsel Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Handley Farah & Anderson PLLC as Settlement Class Counsel, (4) appointing Ron Brown and Minka Garmon as Representatives of the Settlement Classes, (5) deferring notice to the Classes until a later date, and (6) ordering a stay of all proceedings against the National Beef, Cargill, and Hormel Foods-QPP Defendants." (Mot.) at 22.

## I.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Here, the representative plaintiffs move for preliminary approval of settlements with National Beef, Cargill, and Hormel Foods-QPP. (Exhibit A, National Beef Settlement Agreement; Exhibit B, Cargill Settlement Agreement; Exhibit C, Hormel Foods-QPP Settlement Agreement).

The National Beef settlement provides for a $14,200,000 settlement fund. (Exhibit A, National Beef Settlement Agreement) at 9. The settlement fund is to "be disbursed in accordance with a plan of distribution to be approved by the Court. The timing of a motion to approve a plan

of distribution of the Net Settlement Fund created by [the National Beef] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action." *Id*. at 21. The National Beef settlement requires National Beef to cooperate with the representative plaintiffs in the following ways: producing data on members of the class employed by National Beef or its subsidiaries, providing declarations or affidavits on the authenticity of documents, providing documents from eight designated document custodians, and allowing up to five current employees of National Beef to be deposed. *Id*. at 10–14, § II.A.2. In exchange, "this Action shall be dismissed in its entirety with prejudice as to National Beef." *Id*. at 3.

The Cargill Settlement Agreement provides for a $29,750,000 settlement fund. (Exhibit B, Cargill Settlement Agreement) at 9–10. The settlement fund is to "be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by [the Cargill] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action." *Id*. at 21. The Cargill settlement requires Cargill to cooperate with the representative plaintiffs in the following ways: producing data on members of the class employed by Cargill or its subsidiaries, to the extent it exists and is in Cargill's possession, custody, and control; using reasonable efforts to provide declarations or affidavits relating to the authentication or admissibility of documents; providing documents from up to ten designated document custodians that are identified through the use of search terms and responsive to the already served requests for production, allowing up to six then-current employees of Cargill to be deposed; and agreeing not to object to the

- 3 -

representative plaintiffs' efforts to obtain the phone records from third-party carriers. *Id*. at 11–13. In exchange, "this Action shall be dismissed in its entirety with prejudice as to Cargill." *Id*. at 3.

The Hormel Foods-QPP Settlement Agreement provides for a $13,500,000 settlement fund. (Exhibit C, Hormel Foods-QPP Settlement Agreement) at 10. The settlement fund is to "be disbursed in accordance with a plan of distribution to be approved by the Court. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by [the Hormel Foods-QPP] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action." *Id*. at 22. The Hormel Foods-QPP settlement requires Hormel Foods-QPP to cooperate with the representative plaintiffs in the following ways: producing data on members of the class employed by Hormel Foods-QPP or its subsidiaries, providing declarations or affidavits on the authenticity of documents, providing documents from five designated document custodians, and allowing four then-current employees of Hormel Foods-QPP to be deposed. *Id*. at 11–13. In exchange, "this Action shall be dismissed in its entirety with prejudice as to [Hormel Foods-QPP]." *Id*. at 4.

## II.     ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

### A.     Agreements

The representative plaintiffs seek certification of settlement classes that nearly identical to the settlement classes previously approved by this court other than as to the time period. ECF No. 306. Each Settlement seeks certification of a class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024," which was the date of the first preliminary approval of a settlement in this action. The following persons and entities are excluded from the proposed settlement classes: "plant managers; human-resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of

- 4 -

their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities."

### B. Rule 23 factors of numerosity, commonality, typicality, and adequacy of representation are met.

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Here, the representative plaintiffs state the proposed settlement classes likely includes tens of thousands of persons. (Mot.) at 17. The Court agrees that joinder of tens of thousands of people would be impracticable and that the numerosity requirement is met.

The representative plaintiffs raise the following common questions of law and fact: whether defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for the representative plaintiffs' claims, and what the amount of damages are. (Mot.) at 18. Here, a conspiracy to fix wages would affect all employees regardless of individual wage negotiations because the representative plaintiffs allege defendants' anticompetitive conduct affected the entire market.

The representative plaintiffs argue that their claims are typical to the settlement classes claims because all the class members faced the same antitrust violations. In antitrust conspiracy cases, the plaintiffs' claims are typical of those of the class because the claims all depend on proof of the antitrust violation by the defendants, not on the plaintiffs' individual positions. *Id.* Accordingly, the Court agrees that the representative plaintiffs bring claims that are typical of the proposed settlement classes.

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court finds that the interests of the settlement classes are fairly and adequately protected by the representative plaintiffs and their counsel. The

- 5 -

representative plaintiffs' interests are aligned with those of the proposed settlement classes because they seek relief for injuries arising out of the same alleged conspiracy and because they were subject to the same alleged harm, namely, anti-competitive wages. Further, there is nothing in the record to show any conflict of interest between the representative plaintiffs or counsel and the rest of the settlement classes; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise. The proposed settlement class counsel Hagens Berman Sobol Shapiro LLP; Cohen Milstein Sellers & Toll PLLC; and Handley Farah & Anderson PLLC have been functioning as Interim Co-Lead Class Counsel for over a year. *See* ECF No. 128 at 2, ¶ 2. Magistrate Judge Varholak found the Interim Co-Lead Class Counsel had experience handling class actions, antitrust litigation, and the types of claims asserted in this action. *Id.*, ¶ 3. The representative plaintiffs claim "[c]ounsel has extensive experience in antitrust cases, particularly in cases alleging wage suppression." (Mot.) at 4. There are no questions regarding the competency of the proposed settlement class counsel or their ability to prosecute this action and, to the extent any such questions do arise, they will be considered at the fairness hearing. Accordingly, at this preliminary stage, because the representative plaintiffs and proposed settlement class counsel do not have a conflict of interest with the rest of the classes and have shown that they can vigorously litigate on behalf of the classes, the Court finds that the representative plaintiffs have satisfied Rule 23(a)(4)'s requirements.

### C. Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). In antitrust cases, because price-fixing affects all market participants, there is an inference of a class-wide impact. *Beltran v. Interexchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo. Feb. 2, 2018). This presumption can be extended to antitrust cases where plaintiffs allege a conspiracy to lower wages across an entire market. *Id*. The Court agrees with the representative plaintiffs that common questions predominate over the other issues. *See* (Mot.) at 20. Proof of a conspiracy between defendants is a question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury. Although the damages may vary for individuals in the classes, the question of what competitive market wages should have been will be common to the classes and is enough at this stage to show a common question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively. Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to adjudicate common legal and factual issues. In addition, the representative plaintiffs state the agreements will help them litigate claims against the other defendants and have already been helpful with the recent complaint amendment [ECF No. 260]. (Mot.) at 3. Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated

- 7 -

persons. Therefore, because the tens of thousands of class members will receive the same type of relief and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement classes are a superior method of resolving this litigation. *See Amchem*, 521 U.S. at 623.

### D.     Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval: (1) the proposed settlement agreements are the product of significant negotiations and discussion between the parties over the course of months, (Mot.) at 13; (2) the parties engaged in robust discussions as to each Settlement Agreements, advised by sophisticated counsel with expertise on antitrust matters and complex class litigation, *Id*. at 13; and (3) there is no evidence that the settlement agreements were the result of a collusive agreement between the parties. The Court therefore finds that the negotiations were conducted fairly and honestly. Furthermore, the representative plaintiffs indicate there is serious disagreement by the parties about whether defendants, including National Beef, Cargill, or Hormel Foods-QPP, illegally conspired to depress the compensation of workers for defendant meat processors. *Id*. As

- 8 -

a result, the Court finds that the serious questions factor weighs in favor of the proposed settlement agreements.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief. This factor weighs in favor of the proposed settlements. The classes will be provided with substantial guaranteed relief and these agreements will cause a more targeted litigation process against the remaining claims. *Id*. at 15. Given the prospect of shortening what could be prolonged litigation and providing at least partial, guaranteed relief, the Court finds that immediate recovery outweighs the possibility of future relief. Accordingly, the Court finds this factor weighs in favor of granting preliminary approval. With regard to the fourth factor, the representative plaintiffs' counsel has extensive experience in antitrust litigation and states that the settlement agreements are fair and reasonable. *Id*. at 15. The Court finds this factor weighs in favor of preliminary approval.

In conclusion, preliminarily approving the Settlement Agreements with National Beef, Cargill, and Hormel Foods-QPP will allow the representative plaintiffs to gain immediate resources to litigate their ongoing claims against the remaining defendants and allow the Court to determine whether there are other members of the classes that challenge the fairness of the three settlement agreements. Should any classes member find the terms of either settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently, or to remain in the case and file objections to the settlement agreement.

### III.   NOTICE TO THE SETTLEMENT CLASSES IS DEFERRED

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the

circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The representative plaintiffs request that class notice be deferred because the representative plaintiffs need to begin discovery to identify everyone in the settlement classes and because deferring notice could provide an opportunity to send notice of multiple settlements at once. (Mot.) at 21–22.

The Court agrees that deferring notice is appropriate under these circumstances.

## IV.   CLASS COUNSEL

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The settlement agreements list Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Handley Farah & Anderson PLLC as Interim Co-Lead Counsel. (Exhibit A, National Beef Settlement Agreement; Exhibit B, Cargill Settlement Agreement; Exhibit C, Hormel Foods-QPP Settlement Agreement). The representative plaintiffs request that Interim Co-Lead Counsel be appointed as Settlement Class Counsel for the settlement classes. (Mot.) at 22. The Court finds that Interim Co-Lead Counsel have sufficient experience in class actions and their knowledge of the applicable law weighs in favor of their appointment. Therefore, the Court finds that it is appropriate to appoint Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Handley Farah & Anderson PLLC as Settlement Class Counsel.

## V.     CONCLUSION

For the foregoing reasons, it is

ORDERED that Plaintiffs' Motion for Preliminary Approval of Settlements with National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods-QPP Foods Corporation; Rochelle Foods, LLC; and Quality Pork Processors, Inc., Certification of Settlement Classes, and Appointment of Settlement Class Counsel is GRANTED. It is further

ORDERED that Terms used in this Order that are defined in the Settlement Agreements are, unless otherwise defined herein, used as defined in the Settlement Agreements. It is further

ORDERED that the Court hereby certifies the following Settlement Class for the purpose of the National Beef Settlement Agreement:

> All persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024

The National Beef Settlement Class excludes plant managers; human resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their

subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities. It is further

ORDERED that the Court hereby certifies the following Settlement Class for the purpose of the Cargill Settlement Agreement:

> All persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024.

The Cargill Settlement Class excludes plant managers; human resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities. It is further

ORDERED that the Court hereby certifies the following Settlement Class for the purpose of the Hormel Foods-QPP Settlement Agreement:

> All persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024.

The Hormel Foods-QPP Settlement Class excludes plant managers; human resources managers and staff; clerical staff; guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities. It is further

ORDERED that the Court appoints the following named plaintiffs as class representatives of each Settlement Class: Ron Brown and Minka Garmon. It is further

ORDERED that if any Settlement Agreement is terminated or rescinded in accordance with its provisions, then that Settlement Agreement shall become null and void, except insofar as expressly provided otherwise in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs, Settling Defendants' Released Parties (as that term is defined in each

Settlement Agreement)[1], and the members of the Settlement Classes. The parties shall also comply with any terms or provisions of the Settlement Agreement applicable to termination, rescission, or the Settlement Agreement otherwise not becoming Final. It is further

ORDERED that the Court approves the establishment of an escrow account, as set forth in the Settlement Agreements, as a "Qualified Settlement Fund" pursuant to Treas. Reg. § 1.468B-1. The Court retains continuing jurisdiction over any issues regarding the formation or administration of the escrow account. Settlement Class Counsel and their designees are authorized to expend funds from the escrow account to pay taxes, tax expenses, and notice and administration costs, as set forth in the Settlement Agreement. It is further

ORDERED that notice to the classes is deferred. Counsel for the representative plaintiffs shall file their proposed notice to the settlement classes at an appropriate time, *i.e.* after defendants have produced contact information regarding Settlement Classes members and prior to plaintiffs moving for final approval of the Settlement Agreements. It is further

ORDERED that after Settlement Classes Notices have been approved and disseminated, the Court shall hold a hearing (the "Fairness Hearing") regarding the Settlement Agreements to determine whether it is fair, reasonable, and adequate and whether it should be finally approved by the Court. It is further

ORDERED that the case and all related deadlines are STAYED as to National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation; Rochelle Foods, LLC; and Quality Pork Processors, Inc. except as stated above.

---

[1] National Beef Released Parties as described in Ex. A at § I(B)(5); Cargill Released Parties as described in Ex. B § I(B)(5); and Hormel Settlement Agreement at § I(B)(6).

DATED: _____

_____
HON. PHILIP A. BRIMMER
CHIEF JUDGE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

                                              /s/ Shana E. Scarlett
                                                SHANA E. SCARLETT