# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02946-STV

RON BROWN,
and MINKA GARMON,
individually and on behalf of others similarly situated,

        Plaintiffs,

v.

JBS USA FOOD COMPANY;
TYSON FOODS, INC.;
CARGILL, INC.;
CARGILL MEAT SOLUTIONS CORP.;
HORMEL FOODS CORP.;
ROCHELLE FOODS, LLC;
AMERICAN FOODS GROUP, LLC;
TRIUMPH FOODS, LLC;
SEABOARD FOODS LLC;
NATIONAL BEEF PACKING CO., LLC;
SMITHFIELD FOODS, INC.;
SMITHFIELD PACKAGED MEATS CORP.;
AGRI BEEF CO.;
WASHINGTON BEEF, LLC;
PERDUE FARMS, INC.;
GREATER OMAHA PACKING CO., INC.;
NEBRASKA BEEF, LTD.;
INDIANA PACKERS CORPORATION;
QUALITY PORK PROCESSORS, INC.;
AGRI STATS, INC.;
and WEBBER, MENG, SAHL AND COMPANY, INC. d/b/a WMS & COMPANY, INC.,

        Defendants.

---

**SETTLEMENT AGREEMENT BETWEEN CLASS PLAINTIFFS AND
DEFENDANTS CARGILL, INC. AND CARGILL MEAT SOLUTIONS CORP.
(COLLECTIVELY "CARGILL")**

---

Subject to the approval of the Court, this Settlement Agreement ("Settlement Agreement"

or "Agreement") is made and entered into as of the Execution Date, by and between Cargill (as

hereinafter defined) and the Class Plaintiffs (as hereinafter defined), individually and on behalf

of a Settlement Class (as hereinafter defined), through Interim Co-Lead Counsel for the proposed

Settlement Class, and in the above-captioned action (the "Action").

## RECITALS

A.    Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a

putative litigation class. Class Plaintiffs and the putative litigation class are currently represented

by Interim Co-Lead Counsel.

B.    Class Plaintiffs have alleged, among other things, that Cargill entered into a

contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to

suppress competition for labor and to allow Cargill to pay sub-competitive compensation to

hourly and salaried workers in its Red Meat Processing Operations (as defined below) in

violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    Cargill denies all allegations of wrongdoing in the Action and believes it has

numerous legitimate defenses to Class Plaintiffs' claims.

D.    This Settlement Agreement shall not be deemed or construed to be an admission

or evidence of any violation of any statute, law, rule, or regulation or of any liability or

wrongdoing by Cargill or of the truth of the Allegations or Claims (as those terms are defined

below), nor shall it be deemed or construed to be an admission or evidence of Cargill's defenses.

E.    Interim Co-Lead Counsel have conducted an investigation into the facts and law

regarding the Action and the possible legal and factual defenses thereto and have concluded that

(1) a settlement with Cargill according to the terms set forth below is fair, reasonable, adequate,

and beneficial to, and in the best interests of, the Settlement Class, given the uncertainties, risks,

and costs of continued litigation; (2) the Settlement Fund (as hereinafter defined) reflects fair,

reasonable, and adequate compensation for the Settlement Class to release, settle, and discharge

their claims that they were undercompensated as a result of the alleged anticompetitive conduct

of which Cargill is accused; and (3) the Cooperation (as defined below) to which Cargill has

agreed will reduce the substantial burden and expense associated with prosecuting the Action.

F.      Despite Cargill's belief that it is not liable for and has strong defenses to the Claims (as defined below) asserted by Class Plaintiffs, Cargill desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of litigation and other present or future litigation arising out of the facts that gave rise to this Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G.      Arm's-length settlement negotiations have taken place between Interim Co-Lead Counsel and Cargill's Counsel, and this Agreement has been reached as a result of those negotiations.

H.      Both Settling Parties (as hereinafter defined) wish to preserve all arguments, defenses, and responses related to all claims in the Action, including any arguments, defenses, and responses related to any litigation class proposed by Class Plaintiffs in the event this Settlement Agreement fails to satisfy the conditions set out in Section II(F)(11) below.

I.      The Settling Parties desire to fully and finally settle all actual and potential claims arising from or related to the conduct alleged in the Action, and to avoid the costs and risks of protracted litigation and trial.

**IT IS THEREFORE HEREBY AGREED**, by and among the Settling Parties, that in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, this Action and all Released Claims (as hereinafter defined) are finally and fully discharged, settled, and compromised as to the Cargill Released Parties (as hereinafter defined) and that this Action shall be dismissed in its entirety with prejudice as to Cargill, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

- 3 -

**I.    DEFINITIONS**

**A.    Class Definition**.

"Settlement Class" means the class described in Section II(F)(3) below.

**B.    General Definitions**.

1.    "Action" means the putative class action filed by Class Plaintiffs captioned *Brown, et al., v. JBS USA Food Co., et al.*, 1:22-CV-02946 (D. Colo.), which is currently pending in the United States District Court for the District of Colorado.

2.    "Allegations" means the allegations in the Action concerning an agreement, contract, combination or conspiracy in restraint of trade in the red meat industry, the purpose and effect of which was to suppress competition for labor and to allow Cargill to pay sub-competitive compensation to hourly and salaried workers in its Red Meat Processing Operations (as defined below) in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.    "Cargill" means, collectively, Cargill, Incorporated and its current subsidiaries, and any of its respective former or current, direct or indirect trustees, directors, officers, members, attorneys, agents and insurers, and Cargill Meat Solutions Corporation ("CMS") and its current subsidiaries, and any of its respective former or current, direct or indirect trustees, directors, officers, members, attorneys, agents and insurers.

4.    "Cargill's Counsel" means the law firm of WilmerHale, and any other legal advisors retained for purposes of advising Cargill with respect to the Action.

5.    "Cargill Released Parties" means Cargill and all of its respective former or current, direct or indirect, parents, subsidiaries and affiliates, including but not limited to the predecessors, successors and assigns of each of them; and any of the respective former or current, direct or indirect trustees, owners, principals, partners, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers, supervisors, representatives and

- 4 -

employees. "Cargill Released Parties" does not include any Defendant or Co-Conspirator named by Class Plaintiffs in any complaint filed to date in the Action, other than Cargill.

6.      "Claims" means any and all actual or potential, known or unknown, causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, or relating or referred to, arising from or related to the conduct alleged in the Action, or that could or should have been alleged in the Action.

7.      "Claims Administrator" means the third party to be retained by Interim Co-Lead Counsel and approved by the Court to manage and administer the process by which Settlement Class Members are notified of the Settlement Agreement and paid from the Net Settlement Fund.

8.      "Class Plaintiffs" means all Plaintiffs named in the Complaint: Ron Brown and Minka Garmon.

9.      "Compensation" means the provision of anything of value to Settlement Class Members and includes wages, salaries, insurance benefits, bonuses, overtime pay, night shift premiums, raises, promotions, retirement benefits, stocks or stock options, meals, and any other monetary and nonmonetary forms of remuneration or benefits.

10.     "Complaint" means the Amended Class Action Complaint in the Action (ECF 260).

11.     "Cooperation," as described in Section II(A)(2) below, shall mean providing data, documents, information and witnesses concerning the Allegations.

12.     "Court" means the United States District Court for the District of Colorado and the Honorable Chief Judge Philip A. Brimmer or the Honorable Scott T. Varholak or a successor, or any other Court with jurisdiction over the Action.

13.     "Date of Final Approval" means the date on which the Court enters an order

granting final approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of

Civil Procedure, as provided in Section II(F)(8) below.

14.     "Date of Final Judgment" means the first date upon which both of the following

conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court

("Final Approval"); and (b) either (1) thirty days have passed from the date of Final Approval

with no notice of appeal having been filed with the Court; or (2) Final Approval has been

affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and

any further petition for review (including certiorari) has been denied, and the time for any further

appeal or review of Final Approval has expired.

15.     "Date of Preliminary Approval" means the date on which the Court enters an

order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23 of the

Federal Rules of Civil Procedure, as provided in Section II(F)(4) below.

16.     "Defendant" or "Defendants" means any or all of the Defendants named in the

Action, now, in the past, or in the future.

17.     "Defendant Processors" means all Defendants other than Webber, Meng, Sahl,

and Company, Inc. ("WMS") and Agri Stats, Inc. ("Agri Stats").

18.     "Documents" means (a) all papers, electronically stored information ("ESI"),

statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal

Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including

microfilm copies or computer images.

19.     "Effective Date" shall be the Date of Final Judgment as defined in Section (I)(B).

20.     "Escrow Account" means the account with the Escrow Agent that holds the

Settlement Fund.

21.    "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(D) of this Agreement.

22.    "Escrow Agreement" means the certain agreement between the Escrow Agent that holds the Settlement Fund and Class Plaintiffs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Section II(D) of this Agreement.

23.    "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Settling Parties.

24.    "Fairness Hearing" has the meaning provided in Section II(F)(4) below.

25.    "Interim Co-Lead Counsel" and "Settlement Class Counsel" mean the law firms of Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC.

26.    "Executive Team" means any current or former member of Cargill's Executive Team (CEO, CFO, CIO, Chief HR Officer, General Counsel, Chief Risk Officer, and the heads of its Business Operations and Supply Chain, Asia Pacific, Animal Health & Nutrition, Protein & Salt, and Agricultural Supply Chain divisions) or Board of Directors.

27.    "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, or costs of notice and administration, that may be awarded or approved by the Court.

28.    "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, including all of its material terms and conditions without modifications (except any modifications agreed upon by the Settling Parties and, as necessary, approved by the Court), and the settlement pursuant to Federal Rule of Civil Procedure 23, and dismissing Cargill with prejudice from the Action, as described in Section II(F)(8) below.

29.    "Person(s)" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity or organization.

30.    "Red Meat Processing Operations" means Cargill's beef processing plants (referred to as red meat), including slaughterhouse plants and further-processing plants, in the United States.

31.    "Released Claims" means claims defined in Section II(B)(2) of this Settlement Agreement.

32.    "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the Class Plaintiffs, each on behalf of themselves and their respective predecessors and successors; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

33.    "Settlement Agreement" means this document and the agreement reflected herein.

34.    "Settlement Amount" means the cash payment of $29,750,000 (twenty nine million, seven hundred fifty thousand U.S. dollars) described in Section II(A)(1), below.

35.    "Settlement Class Member" means each member of the Settlement Class who is not timely and properly excluded from the Settlement Class.

36.    "Settlement Class Notice" means the notice to the Settlement Class that is approved by the Court, in accordance with Section II(F)(5) below.

37.    "Settlement Class Period" means the period from and including January 1, 2000, through February 27, 2024, the date of the first preliminary approval of a settlement in this action.

38.    "Settlement Fund" means the funds described in Section II(A) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account to be maintained by the Escrow Agent for the settlement contemplated by this Settlement Agreement established in accordance with Section II(D) below.

39.    "Settling Parties" means Cargill and the Settlement Class, as represented by the Class Plaintiffs.

40.    "Unrelated Co-Conspirator" means any alleged co-conspirator in the Action that does not satisfy the criteria for inclusion as a "Released Party" in the definition of "Cargill Released Parties."

## II.    SETTLEMENT

**A.    Performance By Cargill.**

1.    **Settlement Payment.** In consideration for the release of the Released Claims and the dismissal with prejudice of the Action as to Cargill, within fourteen business days of the later of (i) the Court's grant of Preliminary Approval or (ii) the date on which Cargill is provided with wiring information for the Escrow Account, Cargill shall pay or cause to be paid $29,750,000 (twenty nine million, seven hundred fifty thousand U.S. dollars) into the Settlement Fund.

a.    Cargill's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Interim Co-Lead Counsel.

b.    The payment described in Section II(A)(1) shall constitute the total Settlement Amount and Cargill shall have no other payment obligations to the Settlement Class

or owe any further amount under this Settlement Agreement, and the obligations described in Section II(A)(2) shall continue so long as this Settlement Agreement remains in effect.

2.     **Cooperation**. Cooperation is a material term of this Settlement Agreement and is intended to provide responsive information to Class Plaintiffs, while also alleviating the significant costs and burdens of discovery on Cargill. Cargill's obligation to cooperate under this paragraph encompasses the Red Meat Processing Operations operated by Cargill and shall, upon Class Plaintiffs' request and after the Date of Preliminary Approval, include the following actions:

a.     Within one hundred fifty (150) calendar days of the Date of Preliminary Approval, Cargill will produce to Class Plaintiffs structured compensation data for the Settlement Class Period and four years prior, identified after a reasonable search, regarding Settlement Class Members employed by Cargill's Red Meat Processing Operations. Such structured compensation data will include the following (to the extent such data currently exists, is reasonably available, and is in Cargill's possession, custody, and control):

i.     A running history of personal information, including name, email address, physical address, telephone number, hire date, employee ID, Social Security number, date of birth, contact information, gender, education level, race, ethnicity, immigration status, channel of hiring and information on seniority/prior employer(s);

ii.     Job title, dates of employment, job changes, wages or salaries, bonuses, overtime pay, shift premiums, benefits, changes in wage or salary rate, and any other reasonably accessible components of Compensation.

iii.     Exit information, including date of termination of employment, reason(s) for termination of employment, and subsequent employer(s).

The inclusion of these types of data in this agreement is not an admission by Cargill that they necessarily exist in their structured data. Cargill will use reasonable efforts to respond to a reasonable number of Class Plaintiffs' questions regarding, and otherwise assist Plaintiffs to understand, such structured data, but those efforts will not include answering formal discovery like interrogatories.

        b.      Cargill agrees to use reasonable efforts to provide declarations or affidavits relating to authentication or admissibility of documents and/or things at issue, if reasonably requested by the Class Plaintiffs in connection with this Action.

        c.      Class Plaintiffs will identify up to ten (10) current or former employees of Cargill as document custodians ("Custodians") and provide Cargill with a list of reasonable search terms relating to the Allegations ("Search Terms"). If the Parties are unable to reach agreement on a final list of search terms after good faith negotiations, the parties agree—within fourteen (14) days of reaching impasse— to submit any disputed terms to the presiding Magistrate Judge, whose decision shall be final, binding, and non-appealable. Cargill will, within 150 days of either (i) the Date of Preliminary Approval or (ii) the date upon which the parties reach a resolution on search terms (through agreement or by order of the Magistrate Judge), whichever is later, produce non-privileged documents in its possession, custody or control that are returned by the Search Terms and responsive to the already served Plaintiffs' requests for production.[1] The Parties may mutually agree to move these deadlines without seeking Court

---

[1] Cargill will determine responsiveness to those requests for production as if (1) they had been served with the definition of "Class Members" being the Settlement Class contained in this agreement in Section II(f)(3), (2) consistent with Section II(A)(2) of this Settlement Agreement, responsiveness to the already-served requests for production will be limited to Compensation related to Cargill's Red Meat Processing Operations; and (3) they contained the following three requests in addition to those already enumerated:

approval. Notwithstanding the foregoing or anything else contained herein, the Custodians shall

not include any members of the Executive Team.

      d.    Within 150 days of the later of (i) the Date of Preliminary Approval or

(ii) the date upon which Class Plaintiffs identify custodians, Cargill will produce all records of

phone calls placed and received by the Custodians during the Class Period, including phone calls

to or from phone numbers specifically associated with the Custodians, that are in Cargill's

possession, custody, and control that are located through a reasonable search of the Custodians'

electronic files. Cargill will also use reasonable efforts to identify phone numbers used for

business that are reasonably available and specifically associated with the Custodians even if

records of phone calls associated with those numbers are not in its possession, custody or

control. Cargill will also use reasonable efforts to obtain signed authorizations from the

Custodians to allow Class Plaintiffs to obtain records of phone calls placed and received from

third-party carriers, if necessary.

      e.    Class Plaintiffs will identify up to six (6) then-current employees of

Cargill (i.e., current employees of Cargill at the time Class Plaintiffs identify deponents) who

will be deposed by Class Plaintiffs and will participate as witnesses at trial if requested by Class

Plaintiffs, assuming they remain employed at the time of trial. This limitation on depositions and

---

(a) Documents related to Cargill's Red Meat Processing Operations that (1) reference WMS, any of WMS's employees, or any surveys or survey results prepared by WMS, (2) were sent by Cargill or Cargill's employees to WMS or WMS's employees, and/or (3) were received by Cargill or Cargill's employees from WMS or WMS's employees;

(b) All documents related to, preparing, or discussing the Beef Industry Wage Index ("BIWI") and/or Pork Industry Wage Index ("PIWI");

(c) All documents produced to, and received from, the American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee or "JLM", North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club that reference any form or component of Compensation.

trial witnesses does not apply to former employees of Cargill. This limitation does, however, include depositions of corporate representatives under Fed. R. Civ. P. 30(b)(6) regarding the topics concerning the Allegations, and general industry knowledge, which will be negotiated by the Settling Parties. Notwithstanding the foregoing or anything else contained herein, the depositions shall not include members of the Executive Team.

        f.      Cargill will not object to Class Plaintiffs' subpoenas to third-party phone carriers for phone records of Defendants' current and former employees that relate to the period such employees were employed by Cargill in a capacity relating to Compensation of employees in Cargill's Red Meat Processing Operations.

        g.      In addition to the custodial searches discussed above in Sections II(A)(2)(b) and II(A)(2)(e) and to the extent such Documents are relevant, within the Settlement Class Period, and not protected by the attorney-client privilege, attorney work product doctrine, or another applicable privilege, Cargill will produce the following Documents to Class Plaintiffs identified by a reasonable search:

- All written agreements or contracts with Agri-Stats, Inc. and/or Express Markets, Inc. related, in whole or in part, to compensation of employees involved in Cargill's Red Meat Processing Operations;

- All contracts executed with labor unions representing Class Members at Cargill's Red Meat Processing Operations and executed during the Settlement Class Period;

- Any documents related to the Allegations and within the timeframe covered by the Class Period that have been or will be produced to the Department of Justice by Cargill prior to the resolution of this Action against all Defendants in connection with any investigation regarding any form or component of Compensation paid to workers at Red Meat Processing Operations that have not already been produced to Class Plaintiffs within 14 days of the production of such Documents to the Department of Justice. Cargill is required to produce any such documents unless the Department of Justice objects to such production and Cargill is not otherwise ordered by the Court to produce any such documents. Unless prohibited by the Department of Justice, Cargill

agrees to take no position on submissions by Class Plaintiffs to any
court to obtain any documents submitted to the Department of Justice;
provided, however, that Cargill reserves the right to designate any
produced documents for confidential treatment pursuant to the
applicable protective order in this Action.

h.    To the extent Cargill withholds the production of any documents on the

basis of attorney-client privilege or any other form of protection from disclosure, Cargill is

obligated to produce a privilege log no later than 75 days after the document production from

which documents were withheld. The privilege log must conform to the requirements of the ESI

protocol in this Action (ECF No. 320).

i.    The documents and information produced pursuant to this Settlement

Agreement will be treated in conformance with the requirements of the protective order entered

in this Action (ECF No. 321).

For the avoidance of doubt, if Class Plaintiffs settle with all Defendants in the Action,

Cargill's cooperation obligations outlined above shall cease immediately upon the last

Defendant's Date of Final Approval.  The Parties will have discretion to agree to modifications

of these discovery obligations and deadlines, and such modifications will not require Court

approval.

B.    **Release of Claims**.

1.    The Release of Claims is a material term of this Settlement Agreement.

2.    **Release.** Upon the Date of Final Judgment, the Releasing Parties shall completely

release, acquit, and forever discharge the Cargill Released Parties from any and all existing or

potential, known or unknown, claims, demands, actions, suits, causes of action, upon any theory

of law or equity, whether class, individual, *parens patriae*, or otherwise in nature (whether or not

any member of the Settlement Class has objected to the Settlement Agreement or makes a claim

upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in

any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may

ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen

and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated

claims, causes of action, injuries, losses, civil or other penalties, restitution, disgorgement,

damages, and the consequences thereof that have been asserted, or could have been asserted,

under federal or state law in any way arising out of or relating in any way to an alleged or actual

conspiracy or agreement between Defendants relating to reducing competition for the hiring and

retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise

reducing the Compensation paid or provided to, the Releasing Parties by Defendants, co-

conspirators, their respective subsidiaries and/or related entities or arising from or in connection

with any act or omission during the Class Period relating to or referred to in the Action or arising

from the factual predicate of the Action or any conduct that could have or should have been

challenged, raised or alleged in the Action (collectively, the "Released Claims").

Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any

Defendant other than the Cargill Released Parties, and (ii) any claims wholly unrelated to the

allegations or underlying conduct alleged in the Action that are based on breach of contract,

negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods,

product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and

hours laws unrelated to anticompetitive conduct, or securities claims. This reservation of claims

set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Cargill

Released Parties to assert any and all defenses to such claims. During the period after the

expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior

to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded

from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released

Claims against the Cargill Released Parties. The release of the Released Claims will become

effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing

Parties further agree that they will not file any other suit against the Cargill Released Parties

arising out of or relating to the Released Claims.

3.    **Covenant Not to Sue**. Upon the Date of Final Judgment, Class Plaintiffs and

each Settlement Class Member covenant not to sue, directly or indirectly, or otherwise seek to

establish liability against the Cargill Released Parties for any transaction, event, circumstance,

action, failure to act, or occurrence of any sort or type arising out of or related to the Released

Claims, including, without limitation, seeking to recover damages or other relief relating to any

of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement

Agreement.

4.    **Full Release**. The Settling Parties to this Agreement expressly agree and confirm

that the Released Claims as set forth in the provisions of Section II(B) constitute a full and final

release of the Cargill Released Parties by the Releasing Parties of the Released Claims, and that

the Parties expressly agree that they intend for this Section II(B) to be interpreted as broadly as

possible and to the fullest extent permitted by law.

5.    **Waiver**. In addition to the provisions of Section II(B)(2), the Releasing Parties

hereby expressly waive and release, solely with respect to the Released Claims, upon the Date of

Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the

California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY;

or by any law, regulation or rule of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, they, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Section II(B)(2), but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Date of Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Section II(B)(2), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**C.    Claims Administrator.**

Pursuant to the Preliminary Approval Order, and subject to Court approval, Interim Co-Lead Counsel shall engage a qualified Claims Administrator. The Claims Administrator will assist with the settlement claims process as set forth herein.

1.    The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

2.    The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes regarding the Plan of Distribution.

Cargill shall have the right to review, edit and comment on the notice plan and the Plan of Distribution prior to being submitted to the Court.

**D.     Settlement Fund Administration**.

The Settlement Fund shall be administered pursuant to the provisions of this Settlement

Agreement and subject to the Court's continuing supervision and control, until the funds in the

Settlement Fund are fully distributed, as follows:

1.     The Settlement Fund shall be established within an Escrow Account and

administered by an Escrow Agent at a bank designated by Interim Co-Lead Counsel. Interim Co-

Lead Counsel, Cargill, and Cargill's Counsel agree to cooperate in good faith to prepare an

appropriate Escrow Agreement in conformance with this Agreement.

2.     All funds held in the Escrow Account shall be deemed and considered to be in

*custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such

time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the

Court.

3.     Neither the Settlement Class, Interim Co-Lead Counsel, Cargill, nor Cargill's

Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or

expenses related to providing notice to the Settlement Class or obtaining approval of the

settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from

the Settlement Fund, subject to any necessary Court approval. Cargill shall not object to Interim

Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court

approval, up to $500,000 to pay the costs for notice and for Preliminary and Final Approval of

the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to

withdraw from the Settlement Fund, either pursuant to the Settling Parties' Settlement

Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement

Agreement is terminated according to its terms. At their discretion, Class Plaintiffs may combine

the notice of the Cargill settlement with the notice for any other Defendant in the action. The

timing of the filing of a motion to approve notice of the Settlement Agreement to the Settlement Class, and the timing proposed to the Court for the actual distribution of that notice to the Settlement Class, shall be at the sole discretion of Interim Co-Lead Counsel.

4.     Under no circumstances will Cargill or the Cargill Released Parties be required to pay more than the Settlement Amount pursuant to this Agreement and the settlement set forth herein. For purposes of clarification, the payment of any fee and expense award, the notice and administrative costs (including payment of any applicable fees to Escrow Agent) and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

5.     Except for as provided in Section II(F)(11), no other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court.

6.     The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(D)(6) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund

pursuant to Section II(A)(1), neither Cargill nor Cargill's Counsel shall bear any responsibility or

risk related to the Settlement Fund or the Net Settlement Fund.

7.    The Settling Parties agree that the Settlement Fund and the Net Settlement Fund

are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury

Regulation § 1.468B-1, and to that end, the Settling Parties shall cooperate with each other and

shall not take a position in any filing or before any tax authority that is inconsistent with such

treatment. In addition, the Escrow Agent, as administrator of the Qualified Settlement Fund

within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for

filing all necessary information and tax returns for the Escrow Account and paying from the

Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. In

addition, Interim Co-Lead Counsel shall timely make, or cause to be made, such elections as

necessary or advisable to carry out the provisions of this paragraph, including the "relation-back

election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election

shall be made in compliance with the procedures and requirements contained in such regulations.

It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and

deliver the necessary documentation for signature by all necessary parties, and thereafter to cause

the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted

in a manner that is consistent with the Settlement Fund being a "Qualified Settlement Fund"

within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and

properly file, or cause to be filed through the Escrow Agent, all information and other tax returns

necessary or advisable with respect to the Settlement Fund (including without limitation the

returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes

(including any estimated taxes, interest or penalties) on the income earned by the Settlement

Fund shall be paid out of the Settlement Fund. Neither Cargill nor Cargill's Counsel shall have

any liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

8.    All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund. Settlement Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

9.    After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel and may be combined with a plan to distribute proceeds from other settlements in this Action.

**E.    No Reversion.**

Cargill shall have no rights to reversion, except as provided in Section II(F)(11) of this Settlement Agreement. In the event of a reversion, all funds not previously spent on notice and administrative costs shall be returned to Cargill, including any interest accrued.

**F.    Approval of Settlement Agreement and Dismissal of Claims.**

1.    **Notice of Settlement**. No later than thirty (30) days after the execution of this Settlement Agreement by Cargill, Interim Co-Lead Counsel and Cargill's Counsel shall jointly file with the Court a notice of settlement and stipulation for suspension of all proceedings by Class Plaintiffs against Cargill in the Action pending approval of the Settlement Agreement.

2.    **Effectuating the Settlement**. Class Plaintiffs and Cargill shall cooperate in good

faith and use their best efforts to effectuate this Settlement Agreement, including cooperating in

seeking the Court's approval of the Settlement Agreement without modification of any of its

material terms and conditions, providing appropriate Settlement Class Notice under Federal

Rules of Civil Procedure 23, and seeking the complete and final dismissal with prejudice of the

Action as to Cargill.

3.    **Settlement Class Certification**. Class Plaintiffs shall seek, and Cargill shall take

no position with respect to, the appointment of Interim Co-Lead Counsel as Settlement Class

Counsel for purposes of this Settlement and the certification in the Action of a class for

settlement purposes only, referred to herein as the Settlement Class, which shall include Class

Plaintiffs and be defined as:

> All persons employed by Defendant Processors, their subsidiaries,
> and/or related entities at beef-processing or pork-processing plants
> in the continental United States from January 1, 2000 until
> February 27, 2024.

The following persons and entities are excluded from the Settlement Class: plant managers;

human-resources managers and staff; clerical staff; guards, watchmen, and salesmen;

Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors;

and federal, state or local governmental entities.

4.    **Preliminary Approval**. No later than thirty (30) business days after the

Execution Date, Class Plaintiffs shall submit to the Court a motion requesting entry of an order

preliminarily approving the settlement ("Preliminary Approval Order"). Class Plaintiffs may

combine the motion for Preliminary Approval with a motion to grant preliminary approval for

settlement with any other Defendants. The Settling Parties may delay the filing of Preliminary

Approval by mutual agreement. At a reasonable time in advance of submission to the Court, the

papers in support of Preliminary Approval, which shall include the proposed form of an order preliminarily approving this Settlement Agreement, shall be provided by Interim Co-Lead Counsel to Cargill's Counsel for its review. Cargill shall not oppose and shall reasonably cooperate in such motion, subject to the provisions below. The proposed Preliminary Approval Order shall provide that, *inter alia*:

   a. the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

   b. after Settlement Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

   c. Settlement Class Members who wish to exclude themselves from the settlement and the Settlement Agreement must submit an appropriate and timely request for exclusion;

   d. Settlement Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

   e. Settlement Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

   f. all proceedings in the Action with respect to Cargill and Class Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the settlement reflected in this Settlement Agreement or comply with the terms thereof.

  5. **Settlement Class Notice**. The Settlement Class Notice shall provide for a right of exclusion, as set forth in Section II(F)(4). The Settlement Class Notice shall also provide for a

right to object to the proposed Settlement. Individual notice of the Settlement to all Settlement

Class Members who can be identified through reasonable effort shall be mailed, emailed and/or

sent via text message to the Settlement Class in conformance with a notice plan to be approved

by the Court. Interim Co-Lead Counsel will undertake all reasonable efforts to notify potential

Settlement Class Members of the settlement, including publication notice through traditional,

digital, and/or social media sources likely to reach Settlement Class Members. The timing of a

motion to approve notice to the Settlement Class of this Settlement Agreement ("Notice

Motion") shall be in the discretion of Interim Co-Lead Counsel, and may be combined with

notice of other settlements in this Action. The Notice Motion shall include a proposed form of,

method for, and date of dissemination of notice.

6.    **Cost of Settlement Class Notice.** The costs of providing Settlement Class Notice

to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund

pursuant to Section II(D)(2) and (3).

7.    **CAFA Notice.** Within ten days of the filing of the motion for Preliminary

Approval, Cargill will provide to the appropriate state officials and the appropriate federal

official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b)

("CAFA").

8.    **Final Approval.** If this Settlement Agreement is preliminarily approved by the

Court, the Settlement Class shall seek entry of an Order and Final Judgment, which Cargill shall

not oppose and with which it shall reasonably cooperate, that *inter alia:*

a.    certifies the Settlement Class described in Section II.F.3, pursuant to Rule

23 of the Federal Rules of Civil Procedure, for purposes of this settlement as a settlement class;

b.    finally approves this Settlement Agreement and its terms as being a fair,

reasonable, and adequate settlement as to the Settlement Class Members within the meaning of

Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

        c.      determines that the Settlement Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

        d.      confirms that Cargill has provided the appropriate notice pursuant to CAFA;

        e.      orders that all claims made against Cargill in the Action, including in all class action complaints asserted by the Class Plaintiffs, are dismissed with prejudice and without further costs or fees;

        f.      discharges and releases the Cargill Released Parties from all Released Claims;

        g.      enjoins Class Plaintiffs from suing, directly or indirectly, any of the Cargill Released Parties for any of the Released Claims;

        h.      requires Interim Co-Lead Counsel to file with the clerk of the Court a record of potential Settlement Class Members that timely excluded themselves from the Settlement Class, and to provide a copy of the record to Cargill's Counsel;

        i.      incorporates the release set forth in Section II(B)(2) of this Agreement and makes that release effective as of the Effective Date as to the Class Plaintiffs and all Settlement Class Members that were not timely and validly excluded from the Settlement Class;

        j.      determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to Cargill shall be final and entered forthwith, and stating:

i.    Final judgment as to the Action is entered in favor of Cargill; and

ii.    Final judgment is granted in favor of the Cargill Released Parties
on any Released Claim of a Settlement Class Member that did not
file a timely notice for exclusion.

k.    reserves to the Court exclusive jurisdiction over the settlement and this
Settlement Agreement, including the administration and consummation of this Agreement; and

l.    orders that Settlement Funds may be disbursed as provided in the Final
Approval Order or other order of the Court.

9.    **Class Counsel Fees and Expenses; No Other Costs**.

a.    Cargill shall have no responsibility for any other costs, including Interim
Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any
Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives,
provided, however, that with respect to the Action, including this Settlement Agreement, Cargill
shall bear its own costs and attorneys' fees.

b.    Subject to Interim Co-Lead Counsel's sole discretion as to whether to
apply and timing of such an application, Interim Co-Lead Counsel may apply to the Court for an
attorney fee award, reimbursement of expenses and costs, and/or service awards for class
representatives, to be paid from the proceeds of the Settlement Fund. Cargill shall have no
responsibility, financial obligation, or liability for any such fees, costs, expenses, or service
awards.

c.    The procedure for and the allowance or disallowance by the Court of any
applications by Interim Co-Lead Counsel for attorneys' fees, reimbursement of expenses, and/or
service awards to class representatives are not part of or a condition to the Settlement set forth
herein, and are to be considered by the Court separately from the Court's consideration of the
fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and any

order or proceeding relating to any application for attorneys' fees, reimbursement of expenses, and/or service awards to class representatives shall not operate to terminate or cancel this Agreement or the release set forth herein, or affect or delay the finality of the judgment approving this settlement.

d.  Within 15 days after any order by the Court awarding attorneys' fees, reimbursing expenses, and/or providing service awards to class representatives, the Escrow Agent shall pay the approved attorneys' fees, reimbursement of expenses, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become Final or the award of attorneys' fees, reimbursement of expenses, and/or provision of service awards is reversed or modified, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund within 30 days of the order from a court of appropriate jurisdiction.

10.  **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the Date of Final Judgment.

11.  **Termination and Reduction**. If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(F)(4) or (F)(8) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Order and Final Judgment, or if the Court enters the Order and Final Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively, "Triggering Events"), then Cargill and Class Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so

("Termination Notice") to each other within thirty (30) calendar days of any such Triggering Event. For purposes of this Section II(F)(11), a material modification includes but is not limited to any modification to the settlement payments, scope of the Settlement Class definition, or the scope of the Released Claims. If rescinded or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Section II(D)(2) and (3), all other funds remaining in the Escrow Account (including interest earned thereon) shall be returned to Cargill and the Settling Parties' position shall be returned to the status quo ante. In no way shall Class Plaintiffs have the right to rescind or terminate this Settlement Agreement if the Court fails or refuses to grant any request for attorneys' fees, reimbursement of costs, or any service awards to class representatives.

12.    **No Admission**.

a.    Cargill denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by Cargill as to the merits of the allegations made in the Action, or an admission by Class Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Cargill.

b.    This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of Cargill or other Cargill Released Parties; provided, however, that nothing contained in this Section II(F)(12) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or

good faith of any Settling Party participating in the settlement (or any agreement or order

relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or

the Order and Final Judgment. Cargill may file or use this Settlement Agreement in other

proceedings, where relevant, to demonstrate the fact of its existence and of this settlement in

order to support a defense or counterclaim based on principles of res judicata, collateral estoppel,

release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim

preclusion or issue preclusion or similar defense or counterclaim.

13.    **Litigation Standstill**. Class Plaintiffs shall cease all litigation activities against

Cargill in the Action except to the extent expressly authorized in this Settlement Agreement.

Cargill and Cargill's Counsel shall cease all litigation activities against Class Plaintiffs in the

Action, except in connection with providing the Cooperation provided for in Section II(A)(2). As

is necessary to effectuate this Settlement Agreement, Class Plaintiffs will continue to name

Cargill as a defendant in any amended complaint filed in the Action before the Date of Final

Judgment. Provided, however, that in any such amended complaint or otherwise, Class Plaintiffs

will not assert (or assist any other persons in asserting) any claims against any of the Cargill

Released Parties other than the claims asserted in the operative complaint as of the date this

Settlement Agreement is executed, which claims would be released as of the Effective Date. For

the avoidance of doubt, should Class Plaintiffs seek to depose former Cargill employees on

topics primarily related to their time of employment at Cargill, this litigation standstill shall not

apply to preclude such depositions, and Cargill in its sole discretion shall be permitted to

represent the interests of Cargill and the former employee in the deposition and any related

discovery practice. None of the foregoing provisions shall be construed to prohibit Class

Plaintiffs from seeking appropriate discovery from non-settling Defendants, Unrelated Co-

Conspirators, former employees of Cargill consistent with Section II(A)(2)(d), or other third

parties. This litigation standstill precludes Cargill or Cargill's Counsel from assisting any non-settling Defendant in the litigation or defense of this Action, including by assisting in opposing Class Plaintiffs' motion for class certification, working with expert witnesses or on expert materials or providing relevant documents to non-settling Defendants without any formal discovery request from them. This litigation standstill does not, however, preclude Cargill or its counsel from (i) responding to discovery served by any non-Settling Defendant; (ii) negotiating in good faith to resolve any disputes regarding the scope of such discovery; (iii) taking steps they believe in good faith are necessary to reduce the scope or burden of discovery from non-Settling Defendants, including without limitation by providing information related to structured data productions; or (iv) representing (or paying for the representation of) current or former Cargill employees in connection with discovery, court hearings, or trial. Cargill will notify Interim Co-Lead Class Counsel within two (2) business days in the event any non-Settling Defendant requests a declaration, affidavit, or other written statement in lieu of a deposition.

### III.    MISCELLANEOUS

**A.    Entire Agreement.**

This Settlement Agreement shall constitute the entire, complete, and integrated agreement between the Settlement Class and Cargill pertaining to the settlement of the Action against Cargill and supersedes any and all prior and contemporaneous undertakings of the Settlement Class and Cargill in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals.

**B.    Inurement.**

The terms of the Settlement Agreement are and shall be binding upon and inure to the benefit of, to the fullest extent possible, each of the Releasing Parties and the Cargill Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any

of the Settling Parties, Releasing Parties, or Cargill Released Parties, including any Settlement

Class Members.

**C.    Modification and Waiver**.

Except for minor modifications of discovery obligations and deadlines as set forth in

Section II(A)(2) above, this Settlement Agreement may be modified or amended only by a

writing executed by the Class Plaintiffs (through Interim Co-Lead Counsel) and Cargill, subject

(if after Preliminary or Final Approval) to approval by the Court. Amendments and

modifications may be made without notice to the Settlement Class unless notice is required by

law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made

by written instrument of the waiving Party.

**D.    Drafted Mutually**.

For the purpose of construing or interpreting this Settlement Agreement, the Settlement

Class and Cargill shall be deemed to have drafted it equally, and it shall not be construed strictly

for or against any party.

**E.    Governing Law & Jurisdiction**.

Any disputes relating to this Settlement Agreement shall be governed by and interpreted

according to the substantive laws of the state of Colorado without regard to its choice of law or

conflicts of law provisions. Subject to Court approval, the United States District Court for the

District of Colorado shall retain jurisdiction over the implementation, enforcement, and

performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit,

action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the

applicability of this Settlement Agreement that cannot be resolved by negotiation and agreement

by Class Plaintiffs and Cargill.

**F.    Counterparts**.

This Settlement Agreement may be executed in counterparts by Interim Co-Lead Counsel

and Cargill's Counsel, each of which shall be deemed an original and all of which taken together

shall constitute the same Settlement Agreement. A facsimile or .pdf signature shall be deemed an

original signature for purposes of executing this Settlement Agreement.

**G.    Represented by Counsel**.

Class Plaintiffs, the Settlement Class, and Cargill acknowledge that each have been

represented by counsel, and have made their own investigations of the matters covered by this

Settlement Agreement to the extent they have deemed it necessary to do so and are not relying

on any representation or warranty by the other party other than as set forth herein. Therefore, the

Settling Parties and their respective counsel agree that they will not seek to set aside any part of

the Settlement Agreement on the grounds of mistake. The Settling Parties agree that this

Settlement Agreement was negotiated in good faith by the Settling Parties, and reflects a

settlement that was reached voluntarily after consultation with competent counsel, and no

Settling Party has entered this Settlement Agreement as the result of any coercion or duress.

**H.    Authorization**.

Each of the undersigned attorneys represents that he or she is fully authorized to enter

into and execute this Settlement Agreement, subject to Court approval; the undersigned Interim

Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on

behalf of Class Plaintiffs; and the undersigned Cargill's Counsel represent that they are

authorized to execute the Settlement Agreement on behalf of Cargill.

**I.    Privilege and Confidentiality**.

1.    Nothing in this Settlement Agreement, settlement, or the negotiations or

proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of

any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

2.      The Settling Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The Settling Parties may disclose the fact of the settlement and the cooperation provided for in Section II(A) of this Settlement Agreement to other parties in the Action.  Furthermore, during the period following the notice of settlement in Section II(F)(1) and prior to the public filing of this Agreement, Cargill and Class Plaintiffs can, in addition, inform other parties to this Action as to the amount of the settlement, and the cooperation provided for in Section II(A) of this Settlement Agreement. Moreover, during the period prior to the public filing of this Agreement, Cargill may disclose the fact of settlement, the amount of settlement, and other terms of the Settlement Agreement to comply with any legal obligations.

**J.      No Unstated Third-Party Beneficiaries.**

No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not a Released Party, Class Plaintiff, Settlement Class Member, or Interim Co-Lead Counsel.

**K.      Breach.**

This Agreement does not waive or otherwise limit the Settling Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Settling Parties acknowledge and agree that the Settling Parties and any Cargill Released Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security. The waiver by any

Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

**L.**     **Notice**.

Other than Settlement Class Notice, any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Settlement Class Member, to Interim Co-Lead Counsel at their physical addresses set forth below, with a copy by email at the email addresses set forth below and, in the case of notice to Cargill, to its representatives at their physical addresses set forth below, with a copy by email at the email addresses set forth below, or such other physical or email addresses as Cargill or Interim Co-Lead Counsel may designate, from time to time, by giving notice to all Settling Parties in the manner described in this Section III(L).

For Class Plaintiffs:

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com

George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, New York 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com

For Cargill, Incorporated and Cargill, Meat Solutions:

Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Fascimile: (202) 663-6363
Jennifer.Milici@wilmerhale.com
John.O'Toole@wilmerhale.com

Mark Ford
Holly A. Ovington
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fascimile: (617) 526-5000
Mark.Ford@wilmerhale.com
Holly.Ovington@wilmerhale.com

Nana Wilberforce
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fascimile: (213) 443-5400
Nana.wilberforce@wilmerhale.com

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated: July 18, 2024

Shana E. Scarlett
Rio S. Pierce
Abby R. Wolf
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com
abbyw@hbsslaw.com

Steve W. Berman
Abigail Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
abigailp@hbsslaw.com

Dated: July 18, 2024

Brent W. Johnson
Benjamin D. Brown
Daniel Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

Dated:   July 18 2024

George F. Farah
Rebecca Chang
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
T: (212) 477-8090
F: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com

Matthew K. Handley (D. Md. Bar # 18636)
Stephen Pearson
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, Seventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
spearson@hfajustice.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

Dated: July 24, 2024

Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING HALE AND
DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Fascimile: (202) 663-6363
Jennifer.Milici@wilmerhale.com
John.O'Toole@wilmerhale.com

Mark Ford
Holly A. Ovington
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fascimile: (617) 526-5000
Mark.Ford@wilmerhale.com
Holly.Ovington@wilmerhale.com

Nana Wilberforce
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fascimile: (213) 443-5400
Nana.wilberforce@wilmerhale.com


*Attorneys for Cargill, Incorporated and Cargill, Meat
Solutions*