IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02946-PAB-STV

RON BROWN, and,
MINKA GARMON, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

JBS USA FOOD COMPANY,
TYSON FOODS, INC.,
CARGILL INC.,
CARGILL MEAT SOLUTIONS CORP.,
HORMEL FOODS CORP.,
ROCHELLE FOODS, LLC,
AMERICAN FOODS GROUP, LLC,
TRIUMPH FOODS, LLC,
SEABOARD FOODS, LLC,
NATIONAL BEEF PACKING CO., LLC,
SMITHFIELD FOODS, INC.,
SMITHFIELD PACKAGED MEATS CORP.,
AGRI BEEF CO.,
WASHINGTON BEEF, LLC,
PERDUE FARMS, INC.,
GREATER OMAHA PACKING CO., INC.,
INDIANA PACKERS CORPORATION,
QUALITY PORK PROCESSORS, INC.,
AGRI STATS, INC., and
WEBBER, MENG, SAHL AND COMPANY, INC., d/b/a/ WMS & Company,

      Defendants.

---

# ORDER

---

This matter is before the Court on the Plaintiffs' Motion for Preliminary Approval

of Settlement with JBS USA Food Company and Tyson Foods, Inc., Certification of

Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 322],

Plaintiffs' Motion for Preliminary Approval of Settlement with American Foods Group, LLC, Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 360], and Plaintiffs' Motion for Preliminary Approval of Settlements with National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation; Rochelle Foods, LLC; and Quality Pork Processors, Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 369] filed by plaintiffs Ron Brown and Minka Garmon (the "Representative Plaintiffs"). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Representative Plaintiffs have reached six settlement agreements with nine defendants in this case, namely, JBS USA Food Company ("JBS") (the "JBS settlement") and Tyson Foods, Inc. ("Tyson") (the "Tyson settlement"), Docket No. 322 at 1; American Foods Group, LLC ("American Foods") (the "American Foods settlement"), Docket No. 360 at 1; and National Beef Packing Co., LLC ("National Beef") (the "National Beef settlement"), Cargill, Inc. and Cargill Meat Solutions Corp. ("Cargill")[1] (the "Cargill settlement"), and Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Pork Processors, Inc. ("Hormel Foods-QPP defendants")[2] (the "Hormel Foods-QPP settlement"), Docket No. 369 at 1.

---

[1] The motion for preliminary approval of the settlement agreement between Representative Plaintiffs and defendants Cargill, Inc. and Cargill Meat Solutions Corp. refers to the defendants as the singular entity "Cargill." *See* Docket No. 369 at 7. The settlement agreement between defendants Cargill, Inc. and Cargill Meat Solutions Corp. also refers to these parties collectively as "Cargill." *See* Docket No. 369-4 at 2. The Court will adopt the nomenclature of Representative Plaintiffs' motion for preliminary approval of the settlement agreement and of the settlement agreement itself and will refer to defendants Cargill, Inc. and Cargill Meat Solutions Corp. collectively as "Cargill."

[2] The motion for preliminary approval of the settlement agreement between Representative Plaintiffs and defendants Hormel Foods Corp., Rochelle Food, LLC, and Quality Pork Processors, Inc. refers to these defendants collectively as "Hormel Foods-

In their motions, Representative Plaintiffs ask the Court to:

(a) Grant preliminary approval of the six settlement agreements with JBS and Tyson, Docket No. 322 at 8; American Foods, Docket No. 360 at 2; and National Beef, Cargill, and Hormel Foods-QPP, Docket No. 369 at 9.

(b) Certify the proposed JBS, Tyson, American Foods, National Beef, Cargill, and Hormel Foods-QPP settlement classes. Docket No. 322 at 8; Docket No. 360 at 2; Docket No. 369 at 9.

(c) Appoint named Representative Plaintiffs as class representatives of the JBS, Tyson, American Foods, National Beef, Cargill, and Hormel Foods-QPP settlement classes. Docket No. 322 at 8; Docket No. 360 at 2; Docket No. 369 at 9.

(d) Appoint the law firms Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as settlement class counsel. Docket No. 322 at 8; Docket No. 360 at 2; Docket No. 369 at 9.

(e) Defer notice to the class of the settlement agreements and instead direct settlement class counsel to submit a motion to approve a plan of notice at an appropriate time, after defendants have produced contact and wage information regarding settlement class members and before Representative

---

QPP" and indicates that these defendants represent a "defendant famil[y]." *See* Docket No. 369 at 7. Although the settlement agreement reached between Representative Plaintiffs and defendants Hormel Foods Corp., Rochelle Food, LLC, and Quality Pork Processors, Inc. refers to these defendants collectively as the "settling defendants," these defendants are included in a single settlement agreement. Docket No. 369-5 at 2. The Court will adopt the nomenclature of Representative Plaintiffs' motion for preliminary approval of the settlement agreement and will refer to defendants Hormel Foods Corp., Rochelle Food, LLC, and Quality Pork Processors, Inc. collectively as the "Hormel Foods-QPP defendants."

Plaintiffs moving for final approval of the settlement agreements.  Docket No. 322 at 8; Docket No. 360 at 2; Docket No. 369 at 9.

(f)  Grant a stay of all proceedings in this litigation against defendants JBS, Tyson, American Foods, National Beef, Cargill, and Hormel Foods-QPP except as necessary to effectuate the settlement agreements or as otherwise agreed to by the settling parties.  Docket No. 322 at 10; Docket No. 360 at 2; Docket No. 369 at 9.

## I.  BACKGROUND

Plaintiffs filed an amended complaint ("the complaint") on January 12, 2024.  Docket No. 260.  The complaint alleges that Representative Plaintiffs were employees of two defendants.  *Id.* at 16, ¶¶ 30–31.  Specifically, Ron Brown was employed by Smithfield Farms, Inc., *id.*, ¶ 30, and Minka Garmon was employed by National Beef Packing Co.  *Id.*, ¶ 31.  Representative Plaintiffs bring this action individually "and on behalf of a class . . . consisting of all persons employed by Defendants, their subsidiaries, and related entities at beef- and pork-processing plants in the continental United States from January 1, 2000, to the present day."[3]  *Id.* at 7 (footnote omitted).  Representative Plaintiffs make their class claims pursuant to Federal Rule of Civil Procedure 23.  *Id.* at 134, ¶¶ 413, 415.

---

[3] As discussed in the Court's February 27, 2024 order, Representative Plaintiffs also brought claims against defendants Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and Webber, Meng, Sahl and Company, Inc. but from the period of January 1, 2014 to the present day.  Docket No. 306 at 4.

The complaint states that "Defendants include fifteen red meat[4] processors and several of their subsidiaries . . . , which collectively produce more than 80 percent of the red meat sold to consumers in the United States" and "two consulting companies." *Id.* at 7–8, ¶ 2 (footnote added).  The complaint alleges that, "[b]eginning by at least January 2000 and continuing to the present day, Defendants have conspired with each other to fix and depress the compensation paid to employees of Defendant Processors, their subsidiaries, and related entities at red meat processing plants in the continental United States" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *Id.* at 61–62, ¶ 170.

On February 27, 2024, the Court preliminarily approved four settlement agreements with defendants Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and Webber, Meng, Sahl and Company, Inc. ("WMS").  *See* Docket No. 306.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 occurs in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the settlement's fairness.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action and (2) any objections to the fairness, reasonableness, or

---

[4] Representative Plaintiffs define red meat as beef and pork.  Docket No. 260 at 7.

adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*"  See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by

overlap between a Rule 23 requirement and a merits issue, even a merits issue that is
identical with a Rule 23 requirement").

Here, Representative Plaintiffs move for certification for the purposes of
settlement with JBS, Tyson, American Foods, National Beef, Cargill, and Hormel Foods-
QPP.  Docket No. 322 at 8–9; Docket No. 360 at 2; Docket No. 369 at 9.  A district court
may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ.
P. 23(a) as well as the requirements of one of the three types of classes identified in
Rule 23(b).  The plaintiff bears the burden of proving that Rule 23's requirements are
satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing
*Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the class be so numerous that
joinder is impracticable; (2) there are questions of law or fact common to the class; (3)
the claims of the representative parties are typical of those of the class; and (4) the
representative parties will fairly and adequately protect the interests of the class.  Fed.
R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242,
249 (2d. Cir. 2011).

Representative Plaintiffs ask the Court to certify a settlement class under Rule
23(b)(3).  Docket No. 322 at 22; Docket No. 360 at 13; Docket No. 369 at 26.  Under
that provision, plaintiffs must show that "questions of law or fact common to class
members predominate over any questions affecting only individual members" and that a
class action "is superior to other available methods for fairly and efficiently adjudicating
the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority
under Rule 23(b)(3), the Court considers the following factors: (A) the class members'
interests in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23 requirements apply and demand heightened attention in the settlement context because the court generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the court must separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).[5]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). Because all three motions seek to certify the same class, the Court will simultaneously analyze whether the class is appropriately certified for all three motions.

If plaintiffs meet the requirements for preliminary approval, a court will direct notice to all class members who would be bound by the proposed settlement agreement and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

---

[5] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the court's preliminary inquiry.  A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

### A.  Agreements

Representative Plaintiffs seek certification of identical settlement classes. Representative Plaintiffs' motion for preliminary approval of the class settlement with Tyson and JBS seeks certification of a class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until the date of the first preliminary approval of a settlement in this Action."  Docket No. 322 at 10, 12. Representative Plaintiffs' motions for preliminary approval of the class settlements with American Foods, National Beef, Cargill, and Hormel Foods-QPP[6] seek certification of a

---

[6] Although Representative Plaintiffs' motion for preliminary approval of the class settlement with National Beef, the Cargill defendants, and the Hormel Foods-QPP

class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or

related entities at beef-processing or pork-processing plants in the continental United

States from January 1, 2000 until February 27, 2024," which is the date the Court first

approved a settlement in this case.  Docket No. 360 at 3–4; Docket No. 369 at 10–11,

13; *see also* Docket No. 306 at 4.

  The JBS settlement provides for a $55,000,000 settlement fund.  Docket No.

322-3 at 11, § II.A.1.  The settlement fund is to "be disbursed in accordance with a plan

of distribution to be approved by the Court.  The timing of a motion to approve a plan of

distribution of the Net Settlement Fund created by [the JBS] Settlement Agreement shall

be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to

distribute proceeds from other settlements in this Action."  *Id.* at 21, § II.D.9.  The JBS

settlement requires JBS to cooperate with Representative Plaintiffs in the following

ways: producing structured compensation data on members of the class employed by

JBS, providing declarations or affidavits on the authenticity of documents, providing

documents through designated document custodians, producing records of phone calls

placed or received by such document custodians, allowing eight current employees of

JBS to be deposed, producing contracts and agreements with Agri Stats, Inc., Express

---

defendants include a class definition for the National Beef and Cargill settlements in a
section titled Summary of the Settlement Agreements, it does not include a definition of
the settlement class for the Hormel Foods-QPP settlement.  *See* Docket No. 369 at 10–
17.  However, the Hormel Foods-QPP settlement agreement includes that same
definition of the settlement class, i.e. "[a]ll persons employed by Defendant Processors,
their subsidiaries, and/or related entities at beef-processing or pork-processing plants in
the continental United States from January 1, 2000 until February 27, 2024."  *See*
Docket No. 369-5 at 24, § II.F.3.  As such, the Court will use this definition for the class
that the Representative Plaintiffs seek to certify as to the Hormel Foods-QPP
settlement.

Markets, Inc., and labor unions, and producing documents previously produced to the Department of Justice.  *Id.* at 11–15, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice" as to JBS.  *Id.* at 4.

The Tyson settlement provides for a $72,500,000 settlement fund.  Docket No. 322-4 at 10, § II.A.1.  The settlement fund is to "be disbursed in accordance with a plan of distribution to be approved by the Court. . . .  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by [the Tyson] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action."  *Id.* at 22, § II.D.9.  The Tyson settlement requires Tyson to cooperate with Representative Plaintiffs in the following ways: producing structured compensation data on members of the class employed by Tyson, providing declarations or affidavits on the authenticity of documents, providing documents through designated document custodians, producing records of phone calls placed or received by such document custodians, allowing eight current employees of Tyson to be deposed, assisting Representative Plaintiffs in their efforts to obtain phone records from third-party carriers, producing documents referencing WMS or documents sent to or from WMS, producing documents related to the Beef Industry Wage Index, producing documents sent to or from the American Meat Institute, American Meat Institute Foundation, Joint Labor Management Committee, North American Meat Institute, National Pork Producers Council, National Cattlemen's Beef Association, the US Meat Export Federation, and the 21st Century Pork Club that reference compensation, producing contracts and agreements with Agri Stats, Inc., Express Markets, Inc., and labor unions, and producing documents previously produced

to the Department of Justice.  *Id.* at 11–15, § II.A.2.  In exchange, "this Action shall be
dismissed in its entirety with prejudice as to Tyson."  *Id.* at 4.

The American Foods settlement provides for a $4,000,000 settlement fund, paid
in two $2,000,000 payments within two hundred and forty days of the Court's
preliminary approval of the settlement.  Docket No. 360-3 at 11, § II.A.1.  The settlement
fund is to "be disbursed in accordance with a plan of distribution to be approved by the
Court.  The timing of a motion to approve a plan of distribution of the Net Settlement
Fund created by [the American Foods] Settlement Agreement shall be in the discretion
of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds
from other settlements in this Action."  *Id.* at 22, § II.D.9.  The American Foods
settlement requires American Foods to cooperate with Representative Plaintiffs in the
following ways: producing structured compensation data on members of the class
employed by American Foods, providing declarations or affidavits on the authenticity of
documents, providing documents through designated document custodians, producing
records of phone calls placed or received by such document custodians, allowing three
current employees of American Foods to be deposed, producing contracts and
agreements with Agri Stats, Inc., Express Markets, Inc., and labor unions, and
producing documents previously produced to the Department of Justice.  *Id.* at 11–14,
§ II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice as to"
American Foods.  *Id.* at 4.

The National Beef settlement provides for a $14,200,000 settlement fund.
Docket No. 369-3 at 10–11, § II.A.1.  The settlement fund is to "be disbursed in
accordance with the Plan of Distribution," which is "to be approved by the Court."  *Id.* at

18, 22, §§ II.C.1, II.D.9. "The timing of a motion to approve a plan of distribution of the

Net Settlement Fund created by [the National Beef] Settlement Agreement shall be in

the discretion of Interim Co-Lead Counsel and may be combined with a plan to

distribute proceeds from other settlements in this Action." *Id.* at 22, § II.D.9. The

National Beef settlement requires National Beef to cooperate with Representative

Plaintiffs in the following ways: producing structured compensation data on members of

the class employed by National Beef, providing declarations or affidavits on the

authenticity of documents, providing documents through designated document

custodians, producing records of phone calls placed or received by such document

custodians, allowing five current employees of National Beef to be deposed, agreeing

not to object to Representative Plaintiffs' subpoena to obtain phone records from third-

party carriers, producing documents referencing WMS or documents sent to or from

WMS, producing documents related to the Beef Industry Wage Index and the Pork

Industry Wage Index, producing documents sent to or from the American Meat Institute,

American Meat Institute Foundation, Joint Labor Management Committee, North

American Meat Institute, National Pork Producers Council, National Cattlemen's Beef

Association, the US Meat Export Federation, and the 21st Century Pork Club that

reference compensation, producing contracts and agreements with Agri Stats, Inc.,

Express Markets, Inc., and labor unions, and producing documents previously produced

to the Department of Justice. *Id.* at 11–15, § II.A.2. In exchange, "this Action shall be

dismissed in its entirety with prejudice as to National Beef." *Id.* at 4.

       The Cargill settlement provides for a $29,750,000 settlement fund. Docket No.

369-4 at 10, § II.A.1. The settlement fund is to "be disbursed in accordance with a plan

of distribution to be approved by the Court. . . .  The timing of a motion to approve a

plan of distribution of the Net Settlement Fund created by [the Cargill] Settlement

Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined

with a plan to distribute proceeds from other settlements in this Action."  *Id.* at 22,

§ II.D.9.  The Cargill settlement requires Cargill to cooperate with Representative

Plaintiffs in the following ways: producing structured compensation data on members of

the class employed by Cargill, providing declarations or affidavits on the authenticity of

documents, providing documents through designated document custodians, producing

records of phone calls placed or received by such document custodians, allowing six

current employees of Cargill to be deposed, agreeing not to object to Representative

Plaintiffs' subpoena to obtain phone records from third-party carriers, producing

documents referencing WMS or documents sent to or from WMS, producing documents

related to the Beef Industry Wage Index and the Pork Industry Wage Index, producing

documents sent to or from the American Meat Institute, American Meat Institute

Foundation, Joint Labor Management Committee, North American Meat Institute,

National Pork Producers Council, National Cattlemen's Beef Association, the US Meat

Export Federation, and the 21st Century Pork Club that reference compensation,

producing contracts and agreements with Agri Stats, Inc., Express Markets, Inc., and

labor unions, and producing documents previously produced to the Department of

Justice.  *Id.* at 11–15, § II.A.2.  In exchange, "this Action shall be dismissed in its

entirety with prejudice as to Cargill."  *Id.* at 4.

The Hormel Foods-QPP settlement provides for a $13,500,000 settlement fund.

Docket No. 369-5 at 11, § II.A.1.  The settlement fund is to "be disbursed in accordance

with a plan of distribution to be approved by the Court.  The timing of a motion to

approve a plan of distribution of the Net Settlement Fund created by [the Hormel Foods-

QPP] Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel and

may be combined with a plan to distribute proceeds from other settlements in this

Action." *Id.* at 23, § II.D.9.  The Hormel Foods-QPP settlement requires the Hormel

Foods-QPP defendants to cooperate with Representative Plaintiffs in the following

ways: producing structured compensation data on members of the class employed by

the Hormel Foods-QPP defendants, providing declarations on the authenticity of

documents, providing documents through designated document custodians, producing

records of phone calls placed or received by such document custodians, allowing four

current employees of the Hormel Foods-QPP defendants to be deposed, agreeing not

to object to Representative Plaintiffs' subpoena to obtain phone records from third-party

carriers, producing documents referencing WMS or documents sent to or from WMS,

producing documents related to the Beef Industry Wage Index and the Pork Industry

Wage Index, producing documents sent to or from the American Meat Institute,

American Meat Institute Foundation, Joint Labor Management Committee, North

American Meat Institute, National Pork Producers Council, National Cattlemen's Beef

Association, the US Meat Export Federation, and the 21st Century Pork Club that

reference compensation, producing reports created by Agri Stats, Inc. or Express

Markets, Inc., producing contracts with labor unions, and producing documents

previously produced by Hormel Foods to the Department of Justice.  *Id.* at 11–15,

§ II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice as to"

the Hormel Foods-QPP defendants.  *Id.* at 5.

**B.  Numerosity**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a presumption of numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

Here, Representative Plaintiffs state the proposed settlement classes likely include tens of thousands of persons.  Docket No. 322 at 20; Docket No. 360 at 11; Docket No. 369 at 23.  Although Representative Plaintiffs do not provide an exact estimate, the Court finds the number of class members is ascertainable because identifying class members will not "necessitate delving into individualized or subjective determination."  *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023) (unpublished) (quoting 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (19th ed. updated 2022)).  Given *Trevizo*, the sheer number of class members does not create a presumption of numerosity; however, given that the Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the Court agrees that joinder of tens of thousands of people would be impracticable and that the numerosity requirement is met.

### C.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires that plaintiffs demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality.  *Dukes*, 564 U.S. at 359.

Representative Plaintiffs rely on the Court's prior determination that the following common questions of fact and law exist in this case: "whether defendants agreed to restrain wages, whether the agreement had an impact on class members, what the relevant market is for Representative Plaintiffs' claims, and what the amount of damages are."  Docket No. 322 at 21 (quoting Docket No. 306 at 13); Docket No. 360 at 11–12 (quoting Docket No. 306 at 13); Docket No. 369 at 24 (quoting Docket No. 306 at 13).  As discussed in the Court's prior order, the Tenth Circuit has acknowledged that "price-fixing affects all market participants, creating an inference of class-wide impact even when prices are individually negotiated."  *In re Urethane Antitrust Litigation*, 768 F.3d 1245, 1254 (10th Cir. 2014); *see also* Docket No. 306 at 13–14.  Here, a

conspiracy to fix wages would affect all employees regardless of individual wage

negotiations because Representative Plaintiffs allege that defendants' "anticompetitive

conduct affected the entire market."  *Black v. Occidental Petroleum Corp.*, 69 F.4th

1161, 1182 (10th Cir. 2023).

### D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties

are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The

typicality requirement ensures that the absent class members are adequately

represented by the lead plaintiffs such that the interests of the class will be fairly and

adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from

the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

The interests and claims of the lead plaintiffs and the class members need not be

identical to satisfy typicality and, provided the claims of the lead plaintiff and class

members are based on the same legal or remedial theory, differing fact situations of the

class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99.

Nevertheless, "it is well-established that a proposed class representative is not 'typical'

under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to

become a major focus of the litigation."  *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583,

599 (3d Cir. 2012) (citation and quotation omitted).  Representative Plaintiffs argue that

their claims are typical of the class claims because all the class members faced the

same antitrust violations.  Docket No. 322 at 21; Docket No. 360 at 11; Docket No. 369

at 24–25.  As the Representative Plaintiffs point out, the Court has already determined

that their claims are "typical of the proposed class."  Docket No. 306 at 15.  "In

conspiracy cases, the plaintiffs' claims are typical of those of the class because the

claims all depend on proof of the antitrust violation by the defendants, not on the

plaintiffs' individual positions."  *In re Urethane Antitrust Litigation*, 237 F.R.D. 440, 447

(D. Kan. 2006).  Therefore, the Court finds that Representative Plaintiffs bring claims

that are typical of the proposed class.

## E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has

noted, the "adequacy-of-representation requirement tends to merge with the

commonality and typicality criteria of Rule 23(a), which serve as guideposts for

determining whether maintenance of a class action is economical and whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence."  *Amchem*, 521

U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4)

serves to uncover conflicts of interest between named parties and the class they seek to

represent."  *Id.* at 625.  To be an adequate class representative, the "representative

must be part of the class and possess the same interest and suffer the same injury as

the class members."  *Id*. at 625–26.

The Tenth Circuit has identified two questions relevant to the adequacy of

representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by Representative Plaintiffs and their counsel. Representative Plaintiffs state that they "have no material conflict with other Class members, and each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages." Docket No. 322 at 22; Docket No. 360 at 12–13; Docket No. 369 at 25. With regard to the first adequacy factor, Representative Plaintiffs' interests are aligned with those of the proposed settlement class because they seek relief for injuries arising out of the same conspiracy and because they were subject to the same harm, namely, anti-competitive wages. Further, there is nothing in the record to show any conflict of interest between Representative Plaintiffs or counsel and the rest of the class; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel Cohen Milstein Sellers & Toll, PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC have been functioning as interim co-lead counsel for almost two years. *See* Docket No. 128 at 2, ¶ 2 (appointing interim co-lead counsel on January 9, 2023). Magistrate Judge Hegarty found the interim co-lead counsel had experience handling class actions, antitrust litigation, and the types of claims asserted in this action.

*Id.*, ¶ 3.  There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action, and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because Representative Plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that Representative Plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.

*Amchem*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be
certified only when it would achieve economies of time, effort, and expense, and
promote . . . uniformity of decision as to persons similarly situated, without sacrificing
procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin.
Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation
omitted). Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class
is sufficiently cohesive to warrant adjudication by representation based on "questions
that preexist any settlement." *Amchem*, 521 U.S. at 623. In antitrust cases, because
price-fixing affects all market participants, a class-wide impact is inferred. *Beltran v.
Interexchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo.
2018) (citing *In re Urethane*, 768 F.3d at 1254). This presumption can be extended to
antitrust cases where plaintiffs allege a conspiracy to lower wages across an entire
market. *Id.* Representative Plaintiffs must show proof that is common on a class-wide
basis of the three elements of an antitrust claim: "(1) a violation of the antitrust laws, (2)
that plaintiffs suffered some resulting injury from the violation (also called impact), and
(3) the measure of damages." *In re Urethane*, 237 F.R.D. at 449 (citing *Deiter v.
Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006)).

    The Court agrees with Representative Plaintiffs that common questions
predominate over the other issues. *See* Docket No. 322 at 23; Docket No. 360 at 13–
14; Docket No. 369 at 26–27. Proof of a conspiracy between defendants is a question
that goes to the alleged antitrust violation common to the entire class. Evidence of
market wages and any depression across the wages of defendants' employees is a
common question that goes to the alleged injury. Although the damages may vary for

individuals in the class, the question of what competitive market wages should have
been will be common to the class and is enough at this stage to show a common
question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for
resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation,
saving both class members and defendants significant time and legal costs to
adjudicate common legal and factual issues.  Additionally, there is no evidence of
analogous antitrust claims filed by potential class members.  *See* Docket No. 322 at 24;
Docket No. 360 at 14; Docket No. 369 at 27.  Thus, given that the class members'
claims arise from the same series of events, the Court finds that conducting the class
action settlement in this forum would achieve economies of time, effort, and expense
and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P.
23(b)(3); *Cordes*, 502 F.3d at 104.  Therefore, because the tens of thousands of class
members will receive the same type of relief and have claims that present common
questions of fact and law, the Court finds that class certification is appropriate because
the class questions predominate over individual questions and the settlement class is a
superior method of resolving this litigation.  *See Amchem*, 521 U.S. at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a
"finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making
this determination, "trial judges bear the important responsibility of protecting absent
class members" and must be "assur[ed] that the settlement represents adequate
compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*,

629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the

Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements

affecting their rights when the representatives become fainthearted before the action is

adjudicated or are able to secure satisfaction of their individual claims by a compromise"

(citations omitted)).

To determine whether a proposed settlement is fair, reasonable, and adequate,

courts consider the following factors: (1) whether the proposed settlement was fairly and

honestly negotiated; (2) whether serious questions of law and fact exist, placing the

ultimate outcome of the litigation in doubt; (3) whether the value of an immediate

recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts

usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin*

*Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial

presumption of fairness" to a proposed settlement where: (1) it is the result of arm's

length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected).

Based on the information available to the Court, the Court notes the following,

which weighs in favor of preliminary approval: (1) the proposed settlement agreements

are the product of significant negotiations and discussion between the parties over

several weeks or months, Docket No. 322 at 16; Docket No. 360 at 7; Docket No. 369 at

19; (2) the parties engaged in robust discussion as to all six agreements, "advised by

sophisticated counsel with expertise on antitrust matters and complex class litigation,"
Docket No. 322 at 16; Docket No. 360 at 8; Docket No. 369 at 19–20; (3) there is no
evidence that the settlement agreements were the result of a collusive agreement
between the parties.  The Court therefore finds that the negotiations were conducted
fairly and honestly.  Furthermore, Representative Plaintiffs indicate there is serious
disagreement by the parties about whether defendants, including JBS, Tyson, American
Foods, National Beef, Cargill, and the Hormel Foods-QPP defendants, illegally
conspired to depress the compensation of workers for defendant meat processors.
Docket No. 322 at 17; Docket No. 360 at 8; Docket No. 369 at 20.  As a result, the Court
finds that the serious questions factor weighs in favor of the proposed settlement
agreements.

Next, the Court must determine whether the value of immediate recovery
outweighs the mere possibility of future relief.  This factor weighs in favor of the
proposed settlement.  The class will be provided with substantial guaranteed relief, and
these agreements will result in a simpler litigation process for the remaining claims.
Docket No. 322 at 18; Docket No. 360 at 9; Docket No. 369 at 21.  Given the prospect
of shortening what could be prolonged litigation and providing at least partial
guaranteed relief, the Court finds that immediate recovery outweighs the possibility of
future relief.  Accordingly, the Court finds this factor weighs in favor of granting
preliminary approval.  With regard to the fourth factor, Representative Plaintiffs' counsel
has extensive experience in antitrust litigation and states that the settlement
agreements are fair and reasonable.  Docket No. 322 at 19; Docket No. 360 at 10;

Docket No. 369 at 22. The Court finds this factor weighs in favor of preliminary approval.

In conclusion, certifying the class will allow Representative Plaintiffs to gain immediate resources to litigate their remaining claims and allow the Court to determine whether there are other members of the class that challenge the fairness of the parties' proposed settlement agreement. Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors. *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections). The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is sufficient to preliminarily approve the terms of the proposed settlement agreements.

## IV. NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id.* Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d at 1110 (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

In its previous order preliminarily approving settlements with Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and WMS, the Court granted Representative Plaintiffs' request to defer notice of the settlements because representative plaintiff needed to begin discovery to identify everyone in the settlement class and because deferring notice could provide an opportunity to send notice of multiple settlements at once. *See* Docket No. 306 at 23–24. Magistrate Judge Scott Varholak held a status conference regarding notice of the settlements with Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and WMS on March 21, 2024. Docket No. 344 at 1. At the status conference, counsel for Representative Plaintiffs explained that, because Representative Plaintiffs' claims involve a conspiracy with joint

and several liability, notices of settlement with each defendant would have to be sent
out to the entire class of plaintiffs in this case, and that each round of notice would likely
cost one million dollars. *Id.* at 10:23–11:3, 14:15–15:12. In light of the then pending
motion for preliminary approval of class settlement with JBS and Tyson, Judge Varholak
ordered Representative Plaintiffs to file a status report on September 16, 2024. *Id.* at
17:13–19; *see also* Docket No. 328 at 2. In the status report, representative plaintiff
state that they have settled with "nine of the defendant families in this case" and that
"[s]ix remain." Docket No. 373 at 2. Representative Plaintiffs state that they have
"recovered over $200 million on behalf of a class of workers who were employed at
processing plants at Defendants' red meat facilities." *Id.* Moreover, they indicate that,
whereas the Court's preliminary approval settlements with Perdue Farms, Inc., Triumph
Foods, LLC, Seaboard Foods, LLC, and WMS represented approximately 3.5% of class
members, the Court's preliminary approval of the JBS, Tyson, American Foods,
National Beef, Cargill, and Hormel Foods-QPP settlements would represent 71% of
class members. *Id.* Because the settlements obtained by Representative Plaintiffs to
date exceed two hundred million dollars, and these settlements represent nearly three-
quarters of all class members, the Court finds that deferred notice is no longer
appropriate.

Instead, the Court will require Representative Plaintiffs to file their proposed
notice to the Court by February 14, 2025 and require defendants to file any objections to
Representative Plaintiffs' proposed notice by February 28, 2025. Moreover, on or
before January 28, 2025, Representative Plaintiffs shall provide a proposed schedule

for sending notice of the fairness hearing, the postmark deadline for receiving notice,

filing a motion for final approval, and for the fairness hearing.

Representative Plaintiffs also seek "a stay of all proceedings against the JBS and

Tyson Defendants," Docket No. 322 at 25, "a stay of all proceedings against American

Foods," Docket No. 360 at 15, and "stay of all proceedings against the National Beef,

Cargill, and Hormel Foods-QPP Defendants."  Docket No. 369 at 28.  Because these

defendants have reached a settlement agreement, the Court will stay the proceedings

against these defendants.

## V.  CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P.

23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential
> claims in the action; (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in the action; (iii) counsel's
> knowledge of the applicable law; and (iv) the resources that counsel will commit
> to representing the class; [and] (B) may consider any other matter pertinent to
> counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The settlement agreements list Cohen Milstein Sellers & Toll

PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as

interim lead counsel.  Docket No. 322-3 at 8, ¶ 23; Docket No. 322-4 at 8, ¶ 25; Docket

No. 360-3 at 8, ¶ 23; Docket No. 369-3 at 8, ¶ 25; Docket No. 369-4 at 8, ¶ 25; Docket

No. 369-5 at 9, ¶ 26.  Representative Plaintiffs request that interim lead counsel be

appointed as co-lead counsel for the settlement class.  Docket No. 322 at 25; Docket

No. 360 at 15; Docket No. 369 at 28.  The Court finds that interim lead counsel have

sufficient experience in class actions and their knowledge of the applicable law, as

exhibited in the case up to this point, weighs in favor of their appointment.  Therefore,

the Court finds that it is appropriate to appoint Cohen Milstein Sellers & Toll PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC as co-lead settlement class counsel.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with JBS USA Food Company and Tyson Foods, Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 322] is **GRANTED**.  It is further

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with American Foods Group, LLC, Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 360] is **GRANTED**.  It is further

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlement with National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation; Rochelle Foods, LLC; and Quality Pork Processors, Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel [Docket No. 369] is **GRANTED**.  It is further

**ORDERED** that Representative Plaintiffs shall file their proposed notice to the settlement classes **on or before February 14, 2025**.  It is further

**ORDERED** that defendants JBS USA Food Company, Tyson Foods, Inc., American Foods Group, LLC, National Beef Packing Co., LLC, Cargill, Inc., Cargill Meat Solutions Corp., Hormel Foods Corp., Rochelle Foods, LLC, and Quality Pork Processors, Inc. shall file any objections to Representative Plaintiffs' proposed notice **on or before February 28, 2025**.  It is further

**ORDERED** that, **on or before January 28, 2025**, Representative Plaintiffs shall file a proposed timeline to complete approval of these settlements.  It is further

**ORDERED** that the case and all related deadlines are **STAYED** as to defendants JBS USA Food Company, Tyson Foods, Inc., American Foods Group, LLC, National Beef Packing Co., LLC, Cargill, Inc., Cargill Meat Solutions Corp., Hormel Foods Corp., Rochelle Foods, LLC, and Quality Pork Processors, Inc. except as stated above.  It is further

**ORDERED** that Defendant Rochelle Foods, LLC's Motion to Dismiss the Amended Complaint [Docket No. 340] is **DENIED as moot**.  It is further

**ORDERED** that Defendant Quality Pork Processors, Inc.'s Motion to Dismiss the Amended Complaint [Docket No. 341] is **DENIED as moot**.  It is further

**ORDERED** that Plaintiffs' Motion for Status [Docket No. 374] is **DENIED as moot**.


DATED January 15, 2025.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge