IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RON BROWN, *et al.*, | Civil Action No. 1:22-cv-02946-PAB-STV |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION TO DIRECT NOTICE** |
| JBS USA FOOD COMPANY, *et al.*, | |
| Defendants. | |

TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 2
    A.    Plaintiffs Request that this Court Direct Notice to the Settlement Class and Subclass ............................................................................................................. 2
        a.    The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances. .............................................. 2
        b.    The proposed form of notice clearly and fairly informs Class Members of the nature of this action and their rights. ...................................................................... 8
    B.    The Proposed Allocation Plan Is Fair and Reasonable. ........................................ 11

III. CONCLUSION .................................................................................................................. 12

i

## I. INTRODUCTION

Pursuant to this Court's January 15, 2025 Order (ECF No. 382) and Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Ron Brown and Minka Garmon (collectively "Plaintiffs") respectfully move to disseminate notice to the Settlement Class and Subclass for the $220.2 million in settlements reached in this case with the Settling Defendants.[1]

Class Counsel have retained an experienced notice and claims administrator, A.B. Data, Ltd. ("A.B. Data"), that has the expertise to oversee notice and distribution to a nationwide class of underpaid workers. *See* Declaration of Justin Parks ("Parks Decl."), ¶ 3. Counsel for Plaintiffs provided counsel for Settling Defendants with copies of the proposed notices on February 6, 2025, and have incorporated comments from the Settling Defendants.[2] Pursuant to the Court's Order (ECF No. 382), Settling Defendants have until February 28, 2025 to respond to Plaintiffs' proposed notices.

A.B. Data and Class Counsel collaborated to develop a notice plan and robust set of notices that satisfy the requirements of Rule 23 and constitutional due process. The notice plan includes both a direct and indirect notice component, in addition to a detailed settlement website available to assist Class Members in answering questions.

Additionally, Plaintiffs request approval of a *pro rata* plan of allocation. Plaintiffs propose that Class Members will be entitled to recover a proportionate amount of these settlements based

---

[1] The Settling Defendants are: American Foods Group, LLC; Cargill, Incorporated and Cargill Meat Solutions Corporation; Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Pork Processors, Inc.; JBS USA Food Company; National Beef Packing Company, LLC; Perdue Farms, Inc.; Seaboard Foods, LLC; Triumph Foods, LLC; Tyson Foods, Inc.; and Webber, Meng, Sahl & Co., Inc.

[2] Plaintiffs also provided copies of the notices to litigating defendant, Smithfield Foods, Inc., upon their request and have incorporated their feedback as well.

1

on the amount of compensation earned by each class member during the relevant class period. The notices inform Class Members of the *pro rata* plan of allocation and that the total amount of money each claimant will receive will be determined at a later date. Plaintiffs propose that Class Members have the option of receiving funds either in the form of physical checks or digital payments.

## II.   ARGUMENT

**A. Plaintiffs Request that this Court Direct Notice to the Settlement Class and Subclass.**

As discussed in detail below, Plaintiffs' proposed notice methods and the back-end verification processes used by A.B. Data satisfy all legal requirements.[3]

### a. The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances.

Class actions certified under Rule 23(b)(3) require "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."[4] The Federal Rules of Civil Procedure permit notice to be made through electronic means. *See* Fed. R. Civ. P. 23(c)(2)(B). When notice is mailed to each member of a settlement class "who can be identified through reasonable effort[,]" that constitutes the best notice practicable.[5] Notice by publication "is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts."[6]

Plaintiffs propose a robust notice plan designed in collaboration with an experienced notice and claims administrator, A.B. Data, who is the notice and claims administrator in *Jien, et al. v.*

---

[3] Plaintiffs previously submitted to this Court on January 28, 2025 (ECF No. 383) a proposed schedule for the dissemination of notice, period of objections, and the motion for final approval.
[4] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).
[5] *Id.* at 176.
[6] *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (D. Colo. 2006) (quoting Moore's Federal Practice 3d § 23.102(3)(b)).

*Perdue Farms, Inc., et al.*, No. 1:19-cv-02521 (D. Md.), a wage-fixing lawsuit similar to this case that involves poultry workers. Parks Decl., ¶ 3. This notice plan includes: (1) direct notice, (2) supplemental paid media, (3) earned media, (4) union outreach, (5) a toll-free telephone number, and (6) website notice.

**Direct Notice.** Plaintiffs' proposed notice plan includes a summary notice sent by email and postcard based on Class Members' information obtained from the structured data produced by each Settling Defendant. Once that structured data is produced in accordance with the terms of the settlement agreements and with the schedule that Plaintiffs proposed to the Court, ECF No. 383, A.B. Data will review the data to verify mail and email addresses. Based on its experience in similar cases, A.B. Data estimates that that there will be sufficient data for a robust direct notice plan. *See* Parks Decl., ¶¶ 9-11.

For those Class Members with email addresses, the claims administrator will send the proposed email notice consistent with best practices to reduce SPAM or junk filters. These practices include: (1) running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid, and (2) working with email service providers to develop sending strategies that achieve optimal deliverability. *See id.* ¶ 13. A.B. Data will also incorporate additional best practices to maximize deliverability, including ensuring exclusion of words or phrases known to trigger SPAM or junk filters, not including attachments to the email, and sending the email in tranches over a period of time. *Id.* ¶ 13. The email notice will inform each Class Member of the aggregate amount of their compensation for the class period based on information obtained from Settling Defendants' data, which will enable Class Members to see whether the compensation information is complete or if they need to submit additional information. *See* Parks Decl., Ex. C.

3

A.B. Data will send a double postcard notice to Class Members with only known mailing addresses and whose email addresses were not provided or could not be validated. Parks Decl., ¶ 14; *see also* Parks Decl., Ex. B. Given the postcard notice will inform Class Members of the aggregate amount of their compensation for the class period based on the Settling Defendants' data, the postcard notice will be formatted as a sealed double postcard to protect the privacy of Class Members' information. Mailing addresses will be updated through the U.S. Postal Service's national change of address database. A.B. Data may also use available demographic information and known standard tools to locate Class Members' contact information, if necessary. *See* Parks Decl., ¶ 15. If a postcard notice is returned as undeliverable with a forwarding address provided, A.B. Data will promptly re-mail the postcard notice to the forwarding address. If the postcard notice is returned as undeliverable with no forwarding address provided, A.B. Data will search for an updated address using an information provider it subscribes to and promptly remail the postcard if an updated address is available. *See id.* ¶ 16.

In response to the direct notice, Class Members for whom all relevant information is known (*i.e.*, compensation information, contact information, and a verified Taxpayer Identification Number ("TIN")) will not need to do anything to receive a check during the distribution phase of the case, unless they choose to exclude themselves from some or all of the settlements. *Id.* ¶¶ 8-16.

**Indirect Notice.** Plaintiffs further propose a robust campaign of indirect notice, including supplemental paid media, earned media, union outreach, a website, and a toll-free telephone number. For Class Members whose information is not included in Settling Defendants' data and are reached through indirect notice, they will be directed to the settlement website where contact, employment, and earnings information will be requested from them. An example of the proposed

participation form that will assist such Class Members in submitting their claims accompanies this motion. *See* Parks Decl., Ex. F.

### i. *Supplemental Paid Media*

The paid media plan will include both digital and social media to reach Class Members who did not receive the email or postcard notices. The ads—which will appear on desktops, tablets, and mobile devices for 30 days on Google Display Network, YouTube, Facebook, Instagram, and other platforms—are estimated to achieve approximately 30 million gross impressions. *See* Parks Decl., ¶ 18. The ads will be delivered nationally and geotargeted within states with increased concentrations of beef and pork workers, including Iowa, Kansas, Mississippi, Nebraska, North Carolina, and South Dakota. *Id*. The media campaign and settlement website will use a standardized logo to help Class Members identify the correct official settlement website. Each piece of the campaign—the simple text, standard logo, and eye-catching colors on the online banner ads and social media newsfeed ads—is designed to alert Class Members about the case. The ads will include links to the case-specific website so that Class Members can easily find answers to frequently asked questions, download case information, update their information, and/or complete the participation form. Sample banner and social media ads accompany this motion. *Id.* ¶¶ 18-19; Ex. D.

Sponsored search listings will also appear on Google and other search partners. A person will be able to use specific target phrases or keywords to search for information, and the link to the case-specific website may appear on the search result pages. *See* Parks Decl., ¶ 20. This supplemental paid media is flexible and will be adjusted as needed to provide sufficient notice coverage.

### ii. Earned Media

The proposed notice plan includes a press release calculated to reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide. The news release will be distributed via PR Newswire's US1 and Hispanic National Newslines to help the case gain Class Members' attention. News about the settlements will also be broadcast to the news media via X (formerly known as Twitter). *See id.* ¶¶ 22-23.

### iii. Union Outreach

Plaintiffs intend to create flyers with QR codes directing Class Members to the settlement website and to ask the United Food and Commercial Workers International Union to assist in disseminating news about the settlement funds to reach additional Class Members. *Id.* ¶ 24.

### iv. Settlement Website

Plaintiffs have purchased and built a case-specific website for this matter, www.BeefPorkWages.com, which will allow former or current beef and pork processing workers to determine if they are a member of the Settlement Class and Subclass; check and update their contact, employment, and earnings information; and review key documents in the case. Working with the claims administrator, Plaintiffs developed a specific logo to be placed at the top of the website to help ensure continuity between the various notices and the official, court-sponsored website (versus the websites of claims aggregators). Class Counsel and A.B. Data have drafted a detailed set of frequently asked questions to assist Class Members in understanding their claims and the distribution process. *See* Parks Decl., Ex. G. The website will be continually updated by Class Counsel regarding timelines in the case, countdowns to submit claims, important documents and decisions in the case, and answers to frequently asked questions. The website can easily be translated into more than 130 languages, including Spanish, Vietnamese, and French, for the Class

6

Members' ease through an online translating tool. *See* Parks Decl., ¶ 27. The participation form will also be accessible on the website and can be translated using the same online translating tool.

As this case involves the return of wages, Class Counsel sought the advice of an accounting firm regarding the necessity of W-9s or TINs from Class Members. Consistent with that advice, the website includes multiple precautions. First, prior to sending notice, the claims administrator will perform a TIN match. For those with matches, direct notice will be sent, and distribution will be automatic. For the second group, TIN verification will be needed, and Class Members will be directed to the website where a W-9 or substitute W-9 will be solicited. If a TIN match thereafter results, then the Class Member will be moved automatically to the distribution phase. For those without TIN matches, one more attempt will be made to solicit a TIN, and then a distribution will be made. To avoid penalties to the settlement funds due to a lack of TIN-verification, the following process will be followed, but under all pathways, Class Members will ultimately receive distribution (that is, funds will not be denied because of a lack of TIN matching):



7

       *v.*  *Toll-Free Telephone Number*

A.B. Data will also implement and maintain a toll-free telephone number with an automated, interactive voice response system, which will present callers with a series of choices to hear prerecorded information regarding the settlements in both English and Spanish. Callers will also have the option to speak with a live operator during business hours or to leave a message during non-business hours which will be returned. *See* Parks Decl., ¶ 25.

The direct and indirect forms of notice proposed by Plaintiffs will inform Class Members of their rights and options in response to the settlements. The notices, and the website they link to, inform Class Members that they have the option to remain in the Settlement Class by doing nothing, remain in the Settlement Class and choose to object to one or more of the settlements, or opt out and exclude themselves from any or all of the settlements. *See* Parks Decl., Exs. B; C; G. As such, Plaintiffs' proposed plan of notice satisfies the requirements of Rule 23 and is constitutional, will provide ample notice to potential settlement Class Members, and is the best notice practicable under the circumstances. Plaintiffs respectfully request that this Court approve the proposed notice plan.

  **b. The proposed form of notice clearly and fairly informs Class Members of the nature of this action and their rights.**

In a Rule 23(b)(3) class action, the Court must direct notice of class certification to class members using the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The class notice needs to "clearly and concisely state in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court

8

will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *Id.*

As the results of a certified Rule 23(b)(3) class action bind class members unless they affirmatively opt out, this notice plan protects the constitutional due process rights of absent class members.[7] In order to satisfy Rule 23 and due process, the class notice should be "reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections."[8] The notice must also "fairly apprise" prospective class members of both the settlement terms and their options.[9] But the notices generally need not estimate the amount of class members' recovery as it is "difficult, if not impossible, for parties to reliably predict the number of valid claims when drafting notices."[10]

Plaintiffs worked in collaboration with the claims administrator to propose notice that is highly informative and easily accessible. Using clear, simple language, the proposed notices describe the definition of the Settlement Class and Subclass, the allegations and claims, the procedures to object and opt out to some or all of the settlements, and the right of any Class Member who does not opt out to appear at the fairness hearing. If Class Members seek additional information, the proposed website notice provides the claims administrator's and Class Counsel's contact information. *See* Parks Decl., ¶ 26.

The proposed notice plan maximizes accessibility while also critically preserving privacy. The email notice will be readable on mobile devices and link to a secure website where Class

---

[7] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen*, 417 U.S. at 173-74.
[8] *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).
[9] *Tennille v. Western Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (quoting *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012)).
[10] *See McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022).

9

Members can access additional information or correct their contact information. The postcard notice will be folded over to protect the personal information of Class Members and will also contain a link to the settlement website. Both the email and postcard notices will include (to the extent information is available from Settling Defendants' data) the total wages each Class Member is known to have earned while working for the Settling Defendants during the class period. Thus, Class Members will be provided the basis of their *pro rata* recovery and can confirm if the information informing their award is correct.[11] The notices and frequently asked questions both direct Class Members to provide additional compensation information on the settlement website, if they believe the information contained on the notices is incorrect or incomplete. *See* Parks Decl., ¶¶ 12; 14; 26; 28.

Because a significant portion of beef or pork processing workers speak English as a second language or have a high school diploma, its equivalent, or less, the proposed notices were carefully drafted in accessible language. The email and postcard notices were drafted with language at a sixth to seventh grade reading level. *Id.* ¶ 33. The frequently asked questions accessible on the settlement website were drafted at a fourth grade reading level and will be available to download in English and Spanish. *Id.* The content of the website will also be available in HTML and translatable to more than 130 languages, including Spanish, French, and Vietnamese. *Id.* ¶ 27.

Since the Court's first preliminary approval of settlements on February 27, 2024, Class Counsel and A.B. Data have evaluated Class Members' demographics and have sought to provide the clearest notice practicable. The proposed notices detailed above plainly satisfy the

---

[11] Actual payments to Class Members are determined in part by the number of Class Members submitting claims, and it is unknown at this time how many Class Members will submit claims and receive distributions. As such, and as discussed above, the notices indicate the criteria that will be used for the *pro rata* plan of allocation and make clear that the actual amount of money each claimant will receive will be determined at a later date. *See* Parks Decl., Exs. B; C; G.

requirements of due process and the specific requirements of Rule 23(c)(2)(B).[12] Plaintiffs respectfully request that the Court approve the contents of the proposed notices.

### B. The Proposed Allocation Plan Is Fair and Reasonable.

Allocation plans need to pass muster under Federal Rule of Civil Procedure 23. Courts assess the fairness, reasonableness, and adequacy of proposed allocation plans to determine whether class members are treated "equitably relative to each other."[13] *Pro rata* allocation plans are consistently approved by courts as fair, adequate, and reasonable.[14]

Plaintiffs propose that the plan of allocation here will be a *pro rata* share of compensation earned by each settlement Class Member during the relevant class periods. The notices make clear that for Class Members who worked at any of the Defendants' beef or pork processing plants in the United States between January 1, 2000 and February 27, 2024, they are part of the Class and are thus eligible for payments from settlements with nine Defendants totaling $188.95 million. Class Members who worked at any of the Defendants' beef or pork processing plants in the United States between January 1, 2014 and February 27, 2024, are also part of a Subclass, and are thus eligible for payments from settlements with two additional Defendants totaling $11.25 million.

---

[12] *See, e.g.*, *In re Crocs, Inc. Securities Litig.*, 2013 WL 4547404, at *13 (D. Colo. Aug. 28, 2013) (finding a notice that provided class members, among other things, with information on "the outcome of the case without a settlement, the agreement on the amount of damages, reasons for the settlement, the amount of attorneys' fees or costs sought, and a summary of the plan of allocation" satisfied Rule 23 and was "reasonably calculated to apprise the absent class members of the action"); *Wornicki v. Brokerpriceopinion.com, Inc.*, 2017 WL 3283139, at *4 (D. Colo. Aug. 2, 2017) (finding a notice satisfied Rule 23 where it provided potential class members with information regarding the "reasons for the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement.")

[13] *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[14] *See, e.g.*, *In re Crocs, Inc. Securities Litig.*, 306 F.R.D. 672, 692-93 (D. Colo. 2014); *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *7 (D. Colo. Dec. 3, 2021); *KPH Healthcare Services, Inc. v. Mylan, N.V.*, 2024 WL 3360499, at *7 (D. Kan. July 9, 2024).

Plaintiffs propose having multiple methods of payment accessible to Class Members. For Class Members with valid email addresses, the option is available to either receive a physical check or electronically receive digital payments through Venmo, PayPal, virtual debit cards, or gift cards from various retailers, including Target, Walmart, Starbucks, and Amazon, which are places where Class Members will be able to use their returned wages. *See* Parks Decl., ¶ 34. Class Members without valid email addresses will be mailed a check. *Id.*

Following the initial distribution, it is very likely that additional settlement funds will remain in the escrow accounts. Plaintiffs propose that either the funds remaining from the first-round distribution will be joined with any subsequent settlements for the class, or that a second-round of distribution take place limited to only those Class Members who cashed their checks or claimed their digital funds in the first round.[15] Plaintiffs also propose that any second-round distribution remove *de minimis* payments where the costs of administration would outweigh the benefit to that Class Member. Plaintiffs propose that there would be a floor of $5 per Class Member in the second-round of distribution, and any amounts of awards less than $5 would be forfeited and returned to the settlement funds. If money remains after the second-round of distribution and it is no longer cost effective to continue with a third-round of distribution, and no additional settlements are reached with which the funds may be joined, Plaintiffs propose that the money would be sent to the State Attorney General of Colorado for use in prosecuting antitrust actions.

### III. CONCLUSION

Plaintiffs respectfully request this Court approve the proposed form of notice, the proposed manner of dissemination to settlement Class Members, and approve the plan of allocation.

---

[15] Limiting the second-round of distribution to only Class Members who have already demonstrated that they are sufficiently engaged to collect their funds and that their contact information is correct will help lessen administrative costs.

12

Dated: February 14, 2025

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

<u>/s/ Brent W. Johnson</u>
Brent W. Johnson
Benjamin D. Brown
Alison S. Deich
Zachary Glubiak
Zachary I. Krowitz
Sabrina S. Merold
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com
smerold@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL PLLC
769 Centre St. Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com
HAGENS BERMAN SOBOL SHAPIRO LLP

<u>/s/ Shana E. Scarlett</u>
Shana E. Scarlett
Rio S. Pierce
Abby R. Wolf
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com
abbyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

13

steve@hbsslaw.com

Elaine Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena CA, 91101
Telephone: (213) 330-7150
elaineb@hbsslaw.com
abigailp@hbsslaw.com


HANDLEY FARAH & ANDERSON PLLC

*/s/ George F. Farah*
George F. Farah
Rebecca P. Chang
Nicholas J. Jackson
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
Facsimile: (844) 300-1952
gfarah@hfajustice.com
rchang@hfajustice.com
njackson@hfajustice.com

William H. Anderson (Co. Bar 45960)
HANDLEY FARAH & ANDERSON PLLC
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (202) 559-2433
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Martha E. Guarnieri
HANDLEY FARAH & ANDERSON PLLC
1727 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 422-3478
Facsimile: (844) 300-1952
mguarnieri@hfajustice.com

Simon Wiener
HANDLEY FARAH & ANDERSON PLLC
60 Harrison Avenue, Suite 604
Boston, MA 02111

Telephone: (202) 921-4567
Facsimile: (844) 300-1952
swiener@hfajustice.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
sjteti@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

　　　　　　　　　　　　　　　　　　　　/s/ Brent W. Johnson
　　　　　　　　　　　　　　　　　　　　Brent W. Johnson

16