**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

RON BROWN, *et al.*,

　　　　　　　Plaintiffs,

　　v.

JBS USA FOOD COMPANY, *et al.*,

　　　　　　　Defendants.

Civil Action No. 1:22-cv-02946-PAB-STV

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENTS WITH AGRI BEEF CO., WASHINGTON BEEF, LLC,**
**AND INDIANA PACKERS CORPORATION AND TO DIRECT NOTICE**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

      A.    Plaintiffs allege Defendants conspired to stabilize red meat
            processing workers' wages. ............................................................... 3

      B.    Summary of the Settlement Agreements. ............................................ 4

            1.    Summary of the Agri Beef Settlement Agreement. ................... 5

                  a.    Class definition. ........................................................... 5

                  b.    Monetary terms. ........................................................... 5

                  c.    Cooperation. ................................................................. 6

                  d.    Release of liability. ...................................................... 6

            2.    Summary of the Indiana Packers Settlement Agreement. ......... 7

                  a.    Class definition. ........................................................... 7

                  b.    Terms. .......................................................................... 8

                  c.    Release of liability. ...................................................... 8

III.  ARGUMENT .................................................................................................... 9

      A.    The Settlement Agreements were negotiated at arm's length. ............ 11

      B.    The relief provided to the Class is adequate. .................................... 12

      C.    Plaintiffs' counsel believe the settlements are fair and reasonable ..... 14

IV.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
      CLASSES ...................................................................................................... 15

      A.    The Settlement Classes satisfies Rule 23(a). .................................... 15

            1.    Numerosity ............................................................................ 15

            2.    Commonality ......................................................................... 16

            3.    Typicality .............................................................................. 16

4.       Adequacy ................................................................................ 17

B.       The Rule 23(b)(3) requirements are satisfied. .................................... 18

1.       Predominance of Common Issues ........................................... 18

a.       Violation of the Antitrust Laws .................................. 18

b.       Impact of the Unlawful Activity ................................ 19

c.       Measurable Damages ................................................. 19

2.       Superiority of a Class Action ................................................. 20

V.       Plaintiffs Request that this Court Direct Notice to the Settlement Classes
and Subclass ................................................................................................ 21

A.       The proposed manner of notice dissemination is reasonable and
represents the best notice practicable under the circumstances. ......... 22

i.       Supplemental Paid Media ................................ 25

ii.       Earned Media .................................................. 26

iii.       Union Outreach ............................................... 26

iv.       Settlement Website .......................................... 26

v.       Toll-Free Telephone Number ........................... 28

B.       The proposed form of notice clearly and fairly informs Class
members of the nature of this action and their rights. ......................... 29

C.       The proposed allocation plan is fair and reasonable. .......................... 31

D.       The proposed schedule for notice and final approval. ........................ 33

VI.       CONCLUSION ......................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acevedo v. Sw. Airlines Co.*,
2019 WL 6712298 (D.N.M. Dec. 10, 2019) ...................................................................9, 12, 13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................18, 20

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979) .....................................................................................................14

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
2020 WL 3833412 (D. Colo. Mar. 8, 2020) ...............................................................................10

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .............................................................................................13

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) ..................................................................................................17

*In re Crocs, Inc. Sec. Litig.*,
2013 WL 4547404 (D. Colo. Aug. 28, 2013) .............................................................................31

*In re Crocs, Inc. Secs. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...........................................................................................20, 32

*D&M Farms v. Birdsong Corp.*,
2020 WL 7074140 (E.D. Va. Dec. 2, 2020) ...............................................................................16

*DeJulius v. New England Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ....................................................................................................29

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..............................................................................................................22, 29

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ....................................................................................................................16

*Gold Strike Stamp Co. v. Christensen*,
436 F.2d 791 (10th Cir. 1970) ....................................................................................................18

*In re IPO Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................................14

*KPH Healthcare Services, Inc. v. Mylan, N.V.*,
2024 WL 3360499 (D. Kan. July 9, 2024) .................................................................................32

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ................................................................ *passim*

*Martinez v. Reams*,
2020 WL 7319081 (D. Colo. Dec. 11, 2020) ........................................................11

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ........................................................................29

*Menocal v. GEO Grp., Inc.*,
882 F.3d 905 (10th Cir. 2018) ......................................................................16

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 4333997 (D. Colo. Feb. 15, 2017) ......................................................10

*Murray v. Tips, Inc.*,
2020 WL 1852382 (D. Colo. Apr. 13, 2020) ......................................................15

*O'Dowd v. Anthem, Inc.*,
2019 WL 4279123 (D. Colo. Sept. 9, 2019) ..................................................14, 32

*Paulson v. McKowen*,
2022 WL 168708 (D. Colo. Jan. 19, 2022) ............................................11, 16, 18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ...................................................................................29

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
313 F.R.D. 117 (D. Colo. 2016) ....................................................................20

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ......................................................................17

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) ............................................................12

*Rex v. Owens ex rel. Okl.*,
585 F.2d 432 (10th Cir. 1978) ......................................................................15

*Rodriguez v. Hermes Landscaping, Inc.*,
2020 WL 3288059 (D. Kan. June 18, 2020) ..................................................11, 12

*Ross v. Convergent Outsourcing, Inc.*,
323 F.R.D. 656 (D. Colo. 2018) ....................................................................10

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
749 F.2d 1451 (10th Cir. 1984) ......................................................................9

*Shook v. El Paso Cnty.*,
    386 F.3d 963 (10th Cir. 2004) ............................................................15

*In re Syngenta Ag Mir 162 Corn Litig.*,
    2018 WL 1726345 (D. Kan. Apr. 10, 2018)..........................................14

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
    2012 WL 2370523 (D.S.C. June 22, 2012)............................................13

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ..............................................11, 13, 29

*Trujillo v. State of Colo.*,
    649 F.2d 823 (10th Cir. 1981) ..............................................................9

*In re Urethane Antitrust Litig.*,
    237 F.R.D. 440 (D. Kan. 2006).............................................................17

*In re Urethane Antitrust Litig.*,
    768 F.3d 1245 (10th Cir. 2014) ..........................................................16

*In re Urethane Antitrust Litig.*,
    2006 WL 2983047 (D. Kan. Oct. 17, 2006) ..........................................12

*Voulgaris v. Array Biopharma Inc.*,
    2021 WL 6331178 (D. Colo. Dec. 3, 2021)...........................................32

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................16

*Wornicki v. Brokerpriceopinion.com, Inc.*,
    2017 WL 3283139 (D. Colo. Aug. 2, 2017) ..........................................31

## RULES AND STATUTES

Fed. R. Civ. P. 23 ............................................................................... *passim*

Sherman Act, 15 U.S.C. § 1 ......................................................................3

## I.     INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Ron Brown and Minka Garmon ("Plaintiffs") hereby move for an Order granting preliminary approval of settlements reached between Plaintiffs and two additional Defendant families: Agri Beef Co. and Washington Beef, LLC (collectively "Agri Beef"), and Indiana Packers Corporation ("Indiana Packers" and, collectively with Agri Beef, "Settling Defendants").

Plaintiffs have now recovered well over $200 million on behalf of a class of workers at Defendants' red meat processing plant facilities across the country. The Agri Beef and Indiana Packers settlements are the eleventh and twelfth settlements reached in this case. The Court has preliminarily approved all ten prior settlements and cooperation agreements.[1] The recovery per settled Defendant appears in the chart below.

| Date | Defendant Family | Settlement |
|------|-----------------|-----------|
| 12/6/2022 | Perdue Farms Inc. ("Perdue") | $1,250,000 |
| 6/20/2023 | Webber, Meng, Sahl, and Company, Inc. ("WMS") | (cooperation) |
| 6/23/2023 | Seaboard Foods, LLC ("Seaboard") Triumph Foods, LLC ("Triumph") | $10,000,000 (cooperation) |
| 1/29/2024 | JBS USA Food Co. ("JBS") | $55,000,000 |
| 3/7/2024 | Tyson Foods, Inc. ("Tyson") | $72,500,000 |
| 5/17/2024 | American Foods Group, LLC ("American Foods") | $4,000,000 |
| 7/2/2024 | National Beef Packing Co., LLC ("National Beef") | $14,200,000 |
| 7/24/2024 | Cargill, Inc. and Cargill Meat Solutions Corp. ("Cargill") | $29,750,000 |

---

[1] *See* Order granting preliminary approval of settlements with Perdue Farms Inc.; Seaboard Foods, LLC; Triumph Foods, LLC; and Webber, Meng, Sahl, and Company, Inc. ("Order on Prelim. Approval"), Dkt. No. 306, Feb. 27, 2024; Order granting preliminary approval of settlements with JBS USA Food Co.; Tyson Foods, Inc.; American Foods Group, LLC; National Beef Packing Co., LLC; Cargill, Inc. and Cargill Meat Solutions Corp.; and Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Processors, Inc., Dkt. No. 382, Jan. 15, 2025. Only three Defendant families remain: Smithfield Foods, Inc. and Smithfield Packaged Meats Corp. ("Smithfield"); Greater Omaha Packing Co., Inc. ("Greater Omaha"); and Agri Stats, Inc. ("Agri Stats").

| Date | Defendant Family | Settlement |
|---|---|---|
| 8/20/2024 | Hormel Foods Corporation, Rochelle Foods, LLC, and Quality Pork Processors, Inc. ("Hormel Foods-QPP") | $13,500,000 |
| 4/10/2025 | Agri Beef Co. and Washington Beef, LLC | $1,400,000 |
| 6/10/2025 | Indiana Packers Corporation | $1,100,000 |
| **TOTAL** | | **$202,700,000** |

Plaintiffs also respectfully move for an order approving the concurrently filed, revised proposed notice documents and directing Interim Co-Lead Counsel to issue these notice documents to the Class. These revised, proposed notice documents filed with this motion are intended to supersede the proposed notice documents Plaintiffs filed following the Court's approval of the ten prior settlement agreements.[2] These previously filed notice documents were prepared before Plaintiffs signed settlement agreements with Agri Beef and Indiana Packers and thus do not mention these two most recent settlements.

Rather than asking the Court to approve the previously filed notice documents and separately approve notice documents for just the Agri Beef and Indiana Packers settlements, Interim Co-Lead Counsel believe it will be a more efficient use of judicial resources and class settlement funds to issue one set of notice documents that mentions all twelve settlements. Approving these revised, proposed notice documents would not require changing the proposed notice schedule, as discussed in detail below.

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreements; (2) certifying the Settlement Classes defined below; (3) appointing

---

[2] *See* Proposed Schedule to Direct Notice and for Final Approval of Settlements with Defendants American Foods, Cargill, JBS, Hormel, National Beef, Perdue, Quality Pork, Rochelle Foods, Seaboard, Triumph, Tyson, and WMS ("Proposed Schedule to Direct Notice"), Dkt. No. 383, Jan. 28, 2025.

Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) approving the revised, proposed notice documents and directing Interim Co-Lead Counsel to distribute these notice documents to Class members according to the proposed notice schedule; and (6) ordering a stay of all proceedings against Agri Beef's Released Parties and Indiana Packers' Released Parties, except those proceedings provided for or required by their respective Settlement Agreements.

## II.    BACKGROUND

### A.    Plaintiffs allege Defendants conspired to stabilize red meat processing workers' wages.

Plaintiffs allege the nation's leading red meat processors and two consulting companies conspired to stabilize the compensation paid to workers at red meat processing plants.[3] This action was filed after a comprehensive investigation by Plaintiffs' counsel, which included assessments of industry wages, interviewing industry witnesses, and extensive research into the red meat processing industry. As a result of that investigation, Plaintiffs' lengthy complaint is supported by specific allegations, including allegations that Defendants entered into an illegal agreement in violation of the Sherman Act, 15 U.S.C. § 1, under both a *per se* and rule of reason analysis.

Defendants moved to dismiss the Complaint on February 17, 2023.[4] The Court denied the dismissal motions as to all but one Defendant, Iowa Premium, LLC, for which it granted the motion without prejudice.[5] Plaintiffs requested, and the Court on January 12, 2024 granted, leave to amend the Complaint.[6] The Amended Complaint added additional Defendants: Greater Omaha and

---

[3] Amended Compl. ¶ 381, Dkt. No. 260, Jan. 12, 2024.

[4] *See generally* Mots. to Dismiss, Dkt. Nos. 159–166, Feb. 17, 2023.

[5] Order on Mots. to Dismiss, Dkt. No. 220, Sept. 27, 2023.

[6] *See* Amended Compl., Dkt. No. 260, Jan. 12, 2024; Order on Stip. on Pls.' Mot. to Amend Compl., Dkt. No. 259, Jan. 12, 2024.

Indiana Packers.[7] The Amended Complaint also added a Subclass of red meat workers whose claims are against WMS, Perdue, Seaboard, and Triumph.[8] The Subclass period ends on "the date of the first preliminary approval of a settlement in this action," *i.e.*, Feb. 27, 2024.[9]

Defendants moved to dismiss the Amended Complaint on April 5, 2024 and April 10, 2024.[10] While this motion was pending, multiple Defendant families entered settlement agreements with Plaintiffs, including American Foods, National Beef, Cargill, and Hormel Foods-QPP.[11] On March 26, 2025, the Court granted in-part and denied in-part the Motions to Dismiss as to the remaining Defendants, including Agri Beef and Indiana Packers.[12]

**B.    Summary of the Settlement Agreements.**

The settlement discussions with Agri Beef and Indiana Packers were informed by an especially deep understanding of both the applicable law and the relevant facts. Plaintiffs' counsel has extensive experience in antitrust cases, particularly in cases alleging wage suppression. The Agri Beef and Indiana Packers settlement negotiations benefitted from hundreds of thousands of documents from one of the earlier settling Defendants and from multiple earlier settlements on behalf of the Class. The result is fair, impartial, and robust Settlement Agreements, described below.

---

[7] *See* Summons Request, Dkt. No. 261, Jan. 12, 2024.

[8] Amended Compl. ¶¶ 415–16, Dkt. No. 260, Jan. 12, 2024.

[9] *See id.*; Order on Prelim. Approval, Dkt. No. 306, Feb. 27, 2024.

[10] Joint Mot. to Dismiss, Dkt. No. 337, Apr. 5, 2024; Mots. to Dismiss, Dkt. Nos. 338–43, Apr. 5, 2024 and Apr. 10, 2024.

[11] *See* Class Pls.' and Def. American Foods' Joint Notice of Settlement and Stip. For Suspension of Proceedings, Dkt. No. 352, May 24, 2024; Class Pls.' and Def. National Beef's Joint Notice of Settlement and Stip. for Suspension of Proceedings, Dkt. No. 365, Jul. 29, 2024; Class Pls.' and Defs. Hormel Foods-QPP's Joint Notice of Settlement and Stip. for Suspension of Proceedings, Dkt. No. 366, Aug. 21, 2024; Notice of Compliance with Class Action Fairness Act of 2005 of Defs. Cargill, Dkt. No. 372, Sept. 16, 2024.

[12] Order on Mots. to Dismiss, Dkt. Nos. 400–01, Mar. 26, 2025.

1.      **Summary of the Agri Beef Settlement Agreement.**

   a.      **Class definition.**

The proposed Agri Beef Settlement Class is co-extensive with the Class in the operative complaint, except for the time period. The Settlement Class includes "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024."[13] February 27, 2024 is the date this Court issued the first preliminary approval Order.[14] The Amended Complaint includes the same definition, but the time period continues through the present.[15]

   b.      **Monetary terms.**

Agri Beef has agreed to provide monetary compensation for the benefit of the Agri Beef Settlement Class in the amount of $1.4 million, which represents significant and guaranteed recovery to class members (provided this Court grants final approval). Agri Beef will deposit this amount into escrow in three installments: $500,000 within fourteen (14) days after entry of the preliminary approval order; another $500,000 on December 31, 2025; and the remaining $400,000 on October 7, 2026.[16]

This fund is non-reversionary. Once the Agri Beef Settlement Agreement is finally approved by the Court, and after administrative costs, litigation expenses, and attorneys' fees are

---

[13] Decl. of Shana E. Scarlett in Supp. of Pls.' Prelim. Approval of Settlements with Agri Beef and Indiana Packers ("Scarlett Decl."), Ex. A at 23, § II(F)(3), filed herewith.

[14] *See* Order on Prelim. Approval, Dkt. No. 306, Feb. 27, 2024.

[15] Amended Compl. ¶ 413, Dkt. No. 260, Jan. 12, 2024.

[16] Scarlett Decl., Ex. A at § II(A)(1).

deducted, the net funds will be distributed to Settlement Classes members with *no amount* reverting back to Agri Beef.[17]

###      c.      Cooperation.

Agri Beef has agreed to non-monetary cooperation terms similar to those in the ten settlements this Court has already preliminarily approved. This cooperation will provide significant benefits to the Class when litigating their claims against the remaining defendants:

- **Data:** Agri Beef will produce structured data for the Settlement Classes Period, and four years prior, and make reasonable efforts to respond to questions from Plaintiffs on the interpretation of the data.[18] This structured data is critical to notifying class members of the Settlement Agreements in this case and the amount they may recover under them, as required by Federal Rule of Civil Procedure 23(e) and constitutional due process.

- **Custodians and depositions:** Agri Beef will produce documents from three (3) custodians and testimony from up to one (1) then-current employee.[19]

- **Non-custodial documents:** Agri Beef will produce, to the extent identified by a reasonable search, certain documents from non-custodial files, including contracts with Agri Stats, Inc. and/or Express Markets, Inc., contracts with labor unions, and documents produced to the DOJ that have not already been produced to Plaintiffs (so long as the agency consents or does not object to the production or the Court orders the production).[20]

- **Phone records and authentication of documents**: Agri Beef has agreed to cooperate with Plaintiffs to authenticate documents for use at summary judgment and trial and has agreed not to object to Plaintiffs' subpoenas to third-party phone carriers for certain phone records.[21]

###      d.      Release of liability.

The Agri Beef Settlement Agreement releases and discharges Agri Beef from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between

---

[17] *Id.*, Ex. A at 22, § II(E).

[18] *Id.*, Ex. A at 11, § II(A)(2)(a).

[19] *Id.*, Ex. A at 12–13, § II(A)(2)(c); 13, § II(A)(2)(e).

[20] *Id.*, Ex. A at 14, § II(A)(2)(g).

[21] *Id.*, Ex. A at 12, § II(A)(2)(b); 13, § II(A)(2)(d).

Defendants, any purported or alleged co-conspirators, their respective subsidiaries, affiliates, parents, and/or related entities, relating to reducing competition for the hiring, solicitation, and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties by Defendants, alleged co-conspirators, their respective subsidiaries, affiliates, parents, and/or related entities or arising from or in connection with any act or omission during the Class Period relating to or referred to in the Action or arising from the factual predicate of the Action or any conduct that could have or should have been challenged, raised or alleged in the Action."[22]

The Agri Beef Settlement Agreement, however, does nothing to abrogate the rights of any member of the Agri Beef Settlement Class to recover from any other Defendant.[23] The Agri Beef Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims."[24]

### 2. Summary of the Indiana Packers Settlement Agreement.

#### a. Class definition.

The proposed Indiana Packers Settlement Class is co-extensive with the Class in the operative complaint, except for the time period. The Indiana Packers Settlement Class includes "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until

---

[22] *Id.*, Ex. A at 15, § II(B)(2).

[23] *Id.*

[24] *Id.* at 15–16, § II(B)(2).

February 27, 2024[,]"[25] that is, the date this Court issued the first preliminary approval Order.[26] The Amended Complaint class definition time period continues through the present.[27]

### b.    Terms.

Indiana Packers has agreed to provide monetary compensation for the benefit of the Settlement Classes in the amount of $1.1 million, which represents significant and guaranteed recovery to class members (provided this Court grants final approval). Indiana Packers will deposit this amount into escrow by within fourteen days of the Date of Preliminary Approval.[28]

This fund is non-reversionary. Once the Court approves the Indiana Packers Settlement Agreement, and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Settlement Classes members with *no amount* reverting back to Indiana Packers.[29]

Indiana Packers has agreed to produce reasonably available structured data for the Settlement Class Period and make reasonable efforts to respond to reasonable questions from Plaintiffs on the interpretation of the data.[30] This structured data is critical to notifying class members of the Settlement Agreements in this case and the amount they may recover under them, as required by Federal Rule of Civil Procedure 23(e) and constitutional due process.

### c.    Release of liability.

The Settlement Agreement releases and discharges Indiana Packers from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants . . .

---

[25] Scarlett Decl., Ex. B at 21–22, § II(F)(3).

[26] *See* Order on Prelim. Approval, Dkt. No. 306, Feb. 27, 2024.

[27] Amended Compl. ¶ 413, Dkt. No. 260, Jan. 12, 2024.

[28] Scarlett Decl., Ex. B at 10, § II(A)(1).

[29] *Id.*, Ex. B at 21, § II(E).

[30] *Id.*, Ex. B at 10–11, § II(A)(2).

relating to reducing competition for the hiring, solicitation, and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties by Defendants. . .”[31]

The Indiana Packers Settlement Agreement, however, does nothing to abrogate the rights of any member of the Indiana Packers Settlement Class to recover from any other Defendant.[32] The Indiana Packers Settlement Agreement also expressly excludes from the Release “any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims.”[33]

## III.    ARGUMENT

Settlement is strongly favored as a method for resolving disputes.[34] When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the “important public policy concerns that support voluntary settlements.”[35] This is particularly true in large, complex class actions, such as this case.[36]

---

[31] *Id.*, Ex. B at 12, § II(B).

[32] *Id.*

[33] *Id.* at 15–16, § II(B)(2).

[34] *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984).

[35] *Trujillo v. State of Colo.*, 649 F.2d 823, 826 (10th Cir. 1981).

[36] *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal citations omitted) (noting that particularly in complex class actions, settlement “minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources”), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

Under Federal Rule of Civil Procedure 23(e), before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate."[37] However, the review at the preliminary approval stage is not "as stringent as [that] applied for final approval"[38] since "[p]reliminary approval of a class action settlement is a provisional step."[39] At preliminary approval, the court is tasked with determining whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."[40] The analysis is "at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[41] "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives."[42]

"Although the standards for preliminary approval of a class action settlement are not as stringent" as the standards for final approval, "the standards used in the [final] stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards."[43] Final approval will be granted if a settlement is "fair, reasonable, and adequate" under the Rule 23(e)(2)

---

[37] Fed. R. Civ. P. 23(e)(2).

[38] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

[39] *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020).

[40] *Id.* (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

[41] *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017) (quotation and alteration marks omitted), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

[42] *Id.*

[43] *Id.*

factors.[44] In the Tenth Circuit, this assessment requires courts to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[45] "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable."[46] Plaintiffs address both the Rule 23 factors and the unique Tenth Circuit factors.[47] Each of these factors support preliminary approval.[48]

## A.    The Settlement Agreements were negotiated at arm's length.

This factor requires courts to look for "indicia that the settlement negotiations in this case have been fair, honest and at arm's length."[49] Here, all parties are represented by sophisticated counsel who have played active roles in many antitrust cases across the country. The negotiations between counsel lasted for months, with multiple calls between Agri Beef's and Plaintiffs' counsel, and separately, for weeks with multiple calls between Indiana Packers' counsel and Plaintiffs' counsel. The parties undertook a robust discussion of the case strengths and weaknesses. The negotiations were adversarial throughout, and at no time was there any collusion that might

---

[44] *Paulson v. McKowen*, No. 19-cv-02639-PAB-NYW, 2022 WL 168708, at *3 (D. Colo. Jan. 19, 2022) (citing Fed. R. Civ. P. 23(e)(2)).

[45] *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

[46] *Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2020 WL 7319081, at *7 (D. Colo. Dec. 11, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

[47] *Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

[48] Orders on Prelim. Approval, Dkt. Nos. 306, 382.

[49] *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

compromise the Class's interests.[50] That the parties engaged in good faith negotiations advised by sophisticated counsel with antitrust and complex class litigation expertise supports the settlements' integrity.[51]

## B.    The relief provided to the Class is adequate.

The analysis under Rule 23(e)(2)(C) looks at whether "the relief provided for the class is adequate." The Tenth Circuit's factors regarding "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" both "largely overlap" with Rule 23(e)(2)(C)(i), the first subfactor of this analysis, and thus these analyses are combined and subsumed into the analysis below.[52]

First, "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."[53] For example, there is serious disagreement by the parties about whether the Defendants, including Agri Beef and Indiana Packers, illegally conspired to depress their workers' compensation. As in most antitrust cases, questions of predominance and impact are certain to arise, with the Defendants undoubtedly challenging the expert analyses Plaintiffs will use to show the Class was harmed. The settlement here cuts short these questions and assures the Settlement Classes relief.[54] Because the

---

[50] *See* Scarlett Decl. ¶¶ 7, 9–10, 12–13.

[51] *Acevedo*, 2019 WL 6712298, at *2; *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (finding the settlement "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions.").

[52] *See Rodriguez*, 2020 WL 3288059, at *2 (citation omitted).

[53] *Lucas*, 234 F.R.D. at 693–94.

[54] *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) (finding the presence of serious legal and factual questions concerning the outcome of the Litigation to weigh heavily in favor of settlement, "because settlement creates a certainty of some

serious, disputed legal issues here render the outcome of the litigation uncertain, this factor heavily favors settlement.[55]

In addition, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. As in most cases, if "this case were to be litigated, in all probability it would be many years before it was resolved."[56] It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation."[57] In contrast, "the proposed settlement agreement[s] provides the class with substantial, guaranteed relief."[58] And although the case will continue against the non-settling Defendants, continuing to litigate this case against Agri Beef and Indiana Packers would have required significant additional resources and materially increased the case's complexity.[59]

In addition, "[a]n evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties."[60] Here, the parties reached an agreement that necessitated compromise by both sides.[61] Thus, the immediate, substantial relief offered by the Agri Beef and Indiana Packers Settlement Agreements outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over

---

recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

[55] *See Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly.").

[56] *Lucas*, 234 F.R.D. at 694.

[57] *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *12 (D.S.C. June 22, 2012). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

[58] *Lucas*, 234 F.R.D. at 694.

[59] *See* Scarlett Decl. ¶¶ 4, 10.

[60] *Acevedo*, 2019 WL 6712298, at *3.

[61] *See* Scarlett Decl. ¶¶ 5–6.

many years in the future."[62] Accordingly, the relief provided to the Class is adequate and satisfies both the Tenth Circuit requirements and those of Rule 23(e)(2)(C).

**C.    Plaintiffs' counsel believe the settlements are fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."[63] Here, counsel—attorneys with substantial experience in complex class action and antitrust litigation—unanimously support these settlements.[64] Courts recognize that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."[65] Under the Settlement Agreement, Agri Beef will pay $1,400,000, and Indiana Packers will pay $1,100,000, into a fund that will provide tangible financial benefits to the Settlement Classes. And the Settlement Agreements with Agri Beef and Indiana Packers allows Plaintiffs to secure important evidence—in the form of data, documents, and testimony—from these Defendants' employees.[66]

In sum, the Settlement Agreements are fair, reasonable, and adequate in light of the strength of the claims and the risks and expense of continued litigation. Accordingly, under the Rule 23(e)(2) and Tenth Circuit factors, preliminary approval should be granted.

---

[62] *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

[63] *Lucas*, 234 F.R.D. at 695.

[64] *See e.g.*, *id.* (finding unanimous approval by experienced counsel supports settlement approval).

[65] *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[66] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

## IV.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES

Plaintiffs request that the Court certify the proposed Settlement Classes to receive the benefits of the Settlement Agreement. Plaintiffs seek certification of Settlement Classes consisting of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until the date of the first preliminary approval of a settlement in this Action [*i.e.*, February 27, 2024]."[67]

This proposed Settlement Classes meets the prerequisites of Rule 23(a) and Rule 23(b)(3).[68]

### A.     The Settlement Classes satisfies Rule 23(a).

#### 1.     Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.[69] In general, the Tenth Circuit has noted that classes are viable with as few as 17 to 20 persons.[70] Here, the precise number of Settlement Classes members is unknown, but it is likely to number in the tens of thousands.

---

[67] Scarlett Decl., Ex. A at 23, § II(F)(3); Ex. B at 23, § II(F)(3).

[68] *See* Order, Dkt. No. 382, Jan. 15, 2025; *see also Murray v. Tips, Inc.*, No. 18-cv-00937-RM-KLM, 2020 WL 1852382, at *3 (D. Colo. Apr. 13, 2020); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004).

[69] Fed. R. Civ. P. 23(a)(1).

[70] *Rex v. Owens ex rel. Okl.*, 585 F.2d 432, 436 (10th Cir. 1978).

### 2.     Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[71] Courts recognize that "[e]ven a single [common] question will" satisfy the commonality requirement.[72] "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail."[73] Here, common questions abound, including whether Defendants agreed to restrain wages, whether the agreement had an impact on Settlement Classes members, the relevant market for Plaintiffs' claim under the rule of reason analysis, and the damages amount. Proof for these questions is common to the Settlement Classes.

### 3.     Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims.[74] "The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence."[75] "Differing fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the

---

[71] Fed. R. Civ. P. 23(a)(2).

[72] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class." (citation omitted)).

[73] *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact.").

[74] Fed. R. Civ. P. 23(a)(3).

[75] *Paulson*, 2022 WL 168708, at *5 (referencing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

same legal or remedial theory."[76] In antitrust class action cases, typicality is established by plaintiffs and all class members alleging the same antitrust violations by defendants.[77] Here, typicality is satisfied because both Plaintiffs' claims and Settlement Classes members' claims arise out of the same alleged antirust conspiracy—each member suffered the same harm by receiving compensation that was depressed by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class."[78] This requires that the named plaintiffs and their counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously.[79] Here, the adequacy requirement is met. The named Plaintiffs have no material conflict with other Class members— each suffered harm by Defendants' suppression of their wages. And each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages.[80] The named Plaintiffs and their counsel have, and will continue to, prosecute the action vigorously on behalf of the Class. Counsel have extensive experience in prosecuting complex antitrust litigation cases and representing antitrust plaintiffs.[81]

---

[76] *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations and alteration omitted).

[77] *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006), stay granted in part, 2006 WL 3021126 (D. Kan. Oct. 23, 2006).

[78] Fed. R. Civ. P. 23(a)(4).

[79] *Id.*

[80] *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

[81] Scarlett Decl. ¶¶ 4, 15.

**B.**      **The Rule 23(b)(3) requirements are satisfied.**

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy."[82] Both requirements are met.

**1.**      **Predominance of Common Issues**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[83] It is a "test readily met in certain cases alleging . . . violations of the antitrust laws."[84] To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) impact of the unlawful activity; and (3) measurable damages.[85] Common evidence supports each of these elements.

**a.**      **Violation of the Antitrust Laws**

Courts have found that the existence and scope of an antitrust conspiracy are common issues because proof of the conspiracy is a common question that predominates over other issues of the case.[86] Here, proof of Defendants' antitrust violations is a common issue of sufficient importance that alone causes common issues to predominate in this case.[87]

---

[82] Fed. R. Civ. P. 23(b)(3).

[83] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[84] *Paulson*, 2022 WL 168708, at *7 (citing *Amchem*, 521 U.S. at 625).

[85] *In re Urethane*, 237 F.R.D. at 449.

[86] *Id.*

[87] *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir. 1970) ("[W]here the question of basic liability [in antitrust cases] can be established readily by common issues, then it is apparent that the case is appropriate for class action.").

### b.      Impact of the Unlawful Activity

Evidence common to the Settlement Classes supports a finding of impact here. Defendant Processors and co-conspirators collectively possess market power in the alleged market for employment at red meat processing plants in the continental United States.[88] Decisions regarding "the compensation of workers at red meat processing plants owned by Defendant Processors, their subsidiaries, and related entities were made by and at each Defendant Processor's corporate headquarters during the Class Period."[89] And the alleged conspiracy "commonly impacted all workers at red meat processing plants" because "Defendant Processors valued internal equity, the idea that similarly situated employees should be compensated similarly."[90] Finally, in its absence, Defendants would have vigorously "competed with each other for labor during the Class Period by offering higher wages, higher salaries and superior benefits to Class Members."[91] This evidence is common to the Settlement Classes.

### c.      Measurable Damages

No precise damages formula is required at this stage. Rather, if "plaintiffs can establish that the defendants conspired" to engage in wage-fixing, then "even where there are individual variations in damages, the requirements of Rule 23(b)(3) are satisfied[.]"[92] Plaintiffs can do so here.

---

[88] Amended Compl. ¶¶ 354–361, Dkt. No. 260, Jan. 12, 2024.

[89] *Id.* ¶ 157.

[90] *Id.* ¶¶ 118–119.

[91] *Id.* ¶ 172.

[92] *In re Urethane*, 768 F.3d at 1255 (quotation and alterations omitted); *See In re Urethane*, 237 F.R.D. at 452 (holding that a regression analysis is a viable method for calculating damages using common evidence).

2.    **Superiority of a Class Action**

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." In this case, settlement of this action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues."[93] Additionally, no other potential Settlement Classes members have filed an analogous antitrust claim against these Defendants. Thus, the absent Class members "to date have shown no interest in controlling the litigation of separate actions."[94] Further, proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Classes members to seek damages that would otherwise be too costly to pursue.[95]

Finally, the Supreme Court has found that when certifying Settlement Classes "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."[96] Such is the case here. If approved, the Settlement Agreements would obviate the need for a trial against Agri Beef and Indiana Packers, and thus questions concerning those trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Classes.

---

[93] *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689–90 (D. Colo. 2014).

[94] *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016).

[95] *Id.* ("Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.").

[96] *Amchem*, 521 U.S. at 620.

## V.    PLAINTIFFS REQUEST THAT THIS COURT DIRECT NOTICE TO THE SETTLEMENT CLASSES AND SUBCLASS

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Class members are entitled to notice of the ten settlement agreements the Court has preliminarily approved—twelve total settlements, should the Court grant this instant motion for preliminary approval of the Agri Beef and Indiana Packers Settlement Agreements.

Plaintiffs previously filed proposed notice documents informing Class members of the ten, then-approved settlements.[97] Those notice documents were created before the Agri Beef and Indiana Packers Settlement Agreements were signed.[98] To increase judicial efficiency and reduce administrative expenses to the class, Plaintiffs have prepared revised notice documents that include not just the ten prior settlements, but the Agri Beef and Indiana Packers settlements as well.[99] The revised, proposed notice documents mirror the notices already approved by this Court, but merely update their contents with notice of these additional settlements.[100] The proposed notice schedule accompanying these revised notice documents is the same as the one Interim Co-Lead Counsel previously proposed, as described below, so no scheduling delay results.[101]

Plaintiffs' revised proposed notices and notice plan satisfy all legal requirements.

---

[97] *See* Proposed Schedule to Direct Notice, Dkt. No. 383, Jan. 28, 2025.

[98] *See* Scarlett Decl. ¶¶ 5–6.

[99] *See* Decl. of Justin Parks of A.B. Data in Supp. of Mot. for Approval of Notice Plan ("Parks Decl."), Exs. A–G, filed herewith.

[100] *See* Pls.' Mot. to Direct Notice, Dkt. No. 385, Feb. 14, 2025 (submitting proposed notice documents as exhibits); Order, Dkt. No. 409, May 6, 2025.

[101] *See* Dkt. No. 383, Jan. 28, 2025; *see also* Proposed Order, filed contemporaneously herewith.

A.      **The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances.**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[102] The Federal Rules of Civil Procedure permit notice through electronic means. Mailing notice to each member of a settlement class "who can be identified through reasonable effort" constitutes the best notice practicable.[103] Notice by publication "is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts."[104]

Plaintiffs propose a robust notice plan designed in collaboration with an experienced notice and claims administrator, A.B. Data, who is the notice and claims administrator in *Jien, et al. v. Perdue Farms, Inc., et al.*,[105] a wage-fixing lawsuit similar to this case that involves poultry workers.[106] This notice plan includes: (1) direct notice, (2) supplemental paid media, (3) earned media, (4) union outreach, (5) a toll-free telephone number, and (6) website notice.

**Direct Notice.** Plaintiffs' proposed notice plan includes a summary notice sent by email and postcard based on Class members' information obtained from the structured data produced by each Settling Defendant. Defendants have already begun producing these data in accordance with the terms of the settlement agreements and with the schedule that Plaintiffs proposed to the Court.[107] After receiving the data, the claims administrator reviews it to verify mail and email

---

[102] Fed. R. Civ. P. 23(c)(2)(B).

[103] *See* Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

[104] *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (D. Colo. 2006) (quoting Moore's Federal Practice 3d § 23.102(3)(b)).

[105] No. 1:19-cv-02521 (D. Md.).

[106] Parks Decl. ¶ 3.

[107] *See* Proposed Schedule to Direct Notice, Dkt. No. 383, Jan. 28, 2025.

addresses. Based on its experience in similar cases, the claims administrator estimates there will be sufficient data for a robust direct notice plan.[108]

For those Class members with email addresses, the claims administrator will send the proposed email notice consistent with best practices to reduce SPAM or junk filters. These practices include: (1) running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid, and (2) working with email service providers to develop sending strategies that achieve optimal deliverability.[109] The claims administrator will also incorporate additional best practices to maximize deliverability, including ensuring exclusion of words or phrases known to trigger SPAM or junk filters, not including attachments to the email, and sending the email in tranches over a period of time.[110] The email notice will inform each Class member of the aggregate amount of their compensation for the class period based on information obtained from Settling Defendants' data, which will enable Class members to see whether the compensation information is complete or if they need to submit additional information.[111]

The claims administrator will send a double postcard notice to Class members with only known mailing addresses and whose email addresses were not provided or could not be validated.[112] Given the postcard notice will inform Class members of the aggregate amount of their compensation for the Class period based on the Settling Defendants' data, the postcard notice will be formatted as a sealed double postcard to protect the privacy of Class members' information. Mailing addresses will be updated through the U.S. Postal Service's national change of address

---

[108] *See* Parks Decl. ¶¶ 9–12.

[109] *Id.* ¶ 14.

[110] *Id.* ¶ 14.

[111] *See* Parks Decl., Ex. C.

[112] Parks Decl. ¶ 15; *see also* Parks Decl., Ex. B.

database. The claims administrator may also use available demographic information and known standard tools to locate Class members' contact information, if necessary.[113] If a postcard notice is returned as undeliverable with a forwarding address provided, the claims administrator will promptly remail the postcard notice to the forwarding address. If the postcard notice is returned as undeliverable with no forwarding address provided, the claims administrator will search for an updated address using an information provider it subscribes to and promptly remail the postcard if an updated address is available.[114]

In response to the direct notice, Class members for whom all relevant information is known (*i.e.*, compensation information, contact information, and a verified Taxpayer Identification Number ("TIN")) will not need to do anything to receive a check during the distribution phase of the case, unless they choose to exclude themselves from some or all of the settlements.[115]

**Indirect Notice.** Plaintiffs further propose a robust campaign of indirect notice, including supplemental paid media, earned media, union outreach, a website, and a toll-free telephone number. For Class members whose information is not included in Settling Defendants' data and are reached through indirect notice, they will be directed to the settlement website where contact, employment, and earnings information will be requested from them. An example of the proposed participation form that will assist such Class members in submitting their claims accompanies this motion.[116]

---

[113] Parks Decl. ¶ 16.

[114] *Id.* ¶ 17.

[115] *Id.* ¶¶ 9–17.

[116] *See* Parks Decl., Ex. F.

i.        **Supplemental Paid Media**

The paid media plan will include both digital and social media to reach Class members who did not receive the email or postcard notices. The ads—which will appear on desktops, tablets, and mobile devices for 30 days on Google Display Network, YouTube, Facebook, Instagram, and other platforms—are estimated to achieve approximately 30 million gross impressions.[117] The ads will be delivered nationally and geotargeted within states with increased concentrations of beef and pork workers, including Iowa, Kansas, Mississippi, Nebraska, North Carolina, and South Dakota.[118] The media campaign and settlement website will use a standardized logo to help Class members identify the correct official settlement website. Each piece of the campaign—the simple text, standard logo, and eye-catching colors on the online banner ads and social media newsfeed ads—is designed to alert Class members about the case. The ads will include links to the case-specific website so that Class members can easily find answers to frequently asked questions, download case information, update their information, and/or complete the participation form. Sample banner and social media ads accompany this motion.[119]

Sponsored search listings will also appear on Google and other search partners. A person will be able to use specific target phrases or keywords to search for information, and the link to the case-specific website may appear on the search result pages.[120] This supplemental paid media is flexible and will be adjusted as needed to provide sufficient notice coverage.

---

[117] Parks Decl. ¶ 19.

[118] *Id.*

[119] *Id.* ¶¶ 19–20; Ex. D.

[120] *Id.* ¶ 21.

### ii.    Earned Media

The proposed notice plan includes a press release calculated to reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide. The news release will be distributed via PR Newswire's US1 and Hispanic National Newslines to help the case gain Class members' attention. News about the settlements will also be broadcast to the news media via X (formerly known as Twitter).[121]

### iii.    Union Outreach

Plaintiffs intend to create flyers with QR codes directing Class members to the settlement website and to ask the United Food and Commercial Workers International Union to assist in disseminating news about the settlement funds to reach additional Class members.[122]

### iv.    Settlement Website

Plaintiffs have purchased and built a case-specific website for this matter, www.BeefPorkWages.com, which will allow former or current beef and pork processing workers to determine if they are a member of the Settlement Classes and Subclass; check and update their contact, employment, and earnings information; and review key documents in the case. Working with the claims administrator, Plaintiffs developed a specific logo to be placed at the top of the website to help ensure continuity between the various notices and the official, court-sponsored website (versus the websites of claims aggregators). Class Counsel and the claims administrator have drafted a detailed set of frequently asked questions to assist Class Members in understanding their claims and the distribution process.[123] The website will be continually updated by Class Counsel regarding timelines in the case, countdowns to submit claims, important documents and

---

[121] *See id.* ¶¶ 23–24.

[122] *Id.* ¶ 25.

[123] *See* Parks Decl., Ex. G.

decisions in the case, and answers to frequently asked questions. The website can easily be translated into more than 130 languages, including Spanish, Vietnamese, and French, for the Class members' ease through an online translating tool.[124] The participation form will also be accessible on the website and can be translated using the same online translating tool.

As this case involves the return of wages, Class Counsel sought the advice of an accounting firm regarding the necessity of W-9s or TINs from Class members. Consistent with that advice, the website includes multiple precautions. First, prior to sending notice, the claims administrator will perform a TIN match. For those with matches, direct notice will be sent, and distribution will be automatic. For the second group, TIN verification will be needed, and Class members will be directed to the website where a W-9 or substitute W-9 will be solicited. If a TIN match thereafter results, then the Class member will be moved automatically to the distribution phase. For those without TIN matches, one more attempt will be made to solicit a TIN, and then a distribution will be made. To avoid penalties to the settlement funds due to a lack of TIN-verification, the following process will be followed, but under all pathways, Class members will ultimately receive distribution (that is, funds will not be denied because of a lack of TIN matching):

---

[124] *See* Parks Decl. ¶ 28.



v.    **Toll-Free Telephone Number**

A.B. Data will also implement and maintain a toll-free telephone number with an automated, interactive voice response system, which will present callers with a series of choices to hear prerecorded information regarding the settlements in both English and Spanish. Callers will also have the option to speak with a live operator during business hours or to leave a message during non-business hours which will be returned.[125]

The direct and indirect forms of notice proposed by Plaintiffs will inform Class members of their rights and options in response to the settlements. The notices, and the website they link to, inform Class members that they have the option to remain in the Settlement Classes by doing nothing, remain in the Settlement Classes and choose to object to one or more of the settlements, or opt out and exclude themselves from any or all of the settlements.[126] As such, Plaintiffs'

---

[125] *See* Parks Decl. ¶ 26.
[126] *See* Parks Decl., Exs. B, C, and G.

proposed plan of notice satisfies the requirements of Rule 23 and is constitutional, will provide ample notice to potential Settlement Classes members, and is the best notice practicable under the circumstances. Plaintiffs respectfully request that this Court approve the proposed notice plan.

**B.      The proposed form of notice clearly and fairly informs Class members of the nature of this action and their rights.**

The class notice needs to "clearly and concisely state in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members.[127]

As the results of a certified Rule 23(b)(3) class action bind class members unless they affirmatively opt out, this notice plan protects the constitutional due process rights of absent Class members.[128] In order to satisfy Rule 23 and due process, the class notice should be "reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections."[129] The notice must also "fairly apprise" prospective class members of both the settlement terms and their options.[130] But the notices generally need not estimate the amount of class members' recovery as it is "difficult, if not impossible, for parties to reliably predict the number of valid claims when drafting notices."[131]

---

[127] Fed. R. Civ. P. 23(c)(2)(B).

[128] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen*, 417 U.S. at 173–74.

[129] *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[130] *Tennille*, 785 F.3d 422, 437 (10th Cir. 2015) (quoting *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012)).

[131] *See McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022).

Plaintiffs worked in collaboration with the claims administrator to propose notice that is highly informative and easily accessible. Using clear, simple language, the proposed notices describe the definition of the Settlement Classes and Subclass, the allegations and claims, the procedures to object and opt out to some or all of the settlements, and the right of any Class member who does not opt out to appear at the fairness hearing. If Class members seek additional information, the proposed website notice provides the claims administrator's and Class Counsel's contact information.[132]

The proposed notice plan maximizes accessibility while also critically preserving privacy. The email notice will be readable on mobile devices and link to a secure website where Class members can access additional information or correct their contact information. The postcard notice will be folded over to protect the personal information of Class members and will also contain a link to the settlement website. Both the email and postcard notices will include (to the extent information is available from Settling Defendants' data) the total wages each Class member is known to have earned while working for the Settling Defendants during the class period. Thus, Class members will be provided the basis of their *pro rata* recovery and can confirm if the information informing their award is correct.[133] The notices and frequently asked questions both direct Class members to provide additional compensation information on the settlement website, if they believe the information contained on the notices is incorrect or incomplete.[134]

---

[132] *See* Parks Decl. ¶ 27.

[133] Actual payments to Class members are determined in part by the number of Class members submitting claims, and it is unknown at this time how many Class members will submit claims and receive distributions. As such, and as discussed above, the notices indicate the criteria that will be used for the pro rata plan of allocation and make clear that the actual amount of money each claimant will receive will be determined at a later date. *See* Parks Decl., Exs. B, C, and G.

[134] *See* Parks Decl. ¶¶ 13, 15, 27, 29.

Because a significant portion of beef or pork processing workers speak English as a second language or have a high school diploma, its equivalent, or less, the proposed notices were carefully drafted in accessible language. The email and postcard notices were drafted with language at a sixth to seventh grade reading level.[135] The frequently asked questions accessible on the settlement website were drafted at a fourth grade reading level and will be available to download in English and Spanish.[136] The content of the website will also be available in HTML and translatable to more than 130 languages, including Spanish, French, and Vietnamese.[137]

Since the Court's first preliminary approval of settlements on February 27, 2024, Class Counsel and A.B. Data have evaluated Class members' demographics and have sought to provide the clearest notice practicable. The proposed notices detailed above plainly satisfy the requirements of due process and the specific requirements of Rule 23(c)(2)(B).[138] Plaintiffs respectfully request that the Court approve the contents of the proposed notices.

**C.    The proposed allocation plan is fair and reasonable.**

Allocation plans need to pass muster under Federal Rule of Civil Procedure 23. Courts assess the fairness, reasonableness, and adequacy of proposed allocation plans to determine

---

[135] *Id.* ¶ 34.

[136] *Id.*

[137] *Id.* ¶ 28.

[138] *See, e.g.*, *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *13 (D. Colo. Aug. 28, 2013) (finding a notice that provided class members, among other things, with information on "the outcome of the case without a settlement, the agreement on the amount of damages, reasons for the settlement, the amount of attorneys' fees or costs sought, and a summary of the plan of allocation" satisfied Rule 23 and was "reasonably calculated to apprise the absent class members of the action"); *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2017 WL 3283139, at *4 (D. Colo. Aug. 2, 2017) (finding a notice satisfied Rule 23 where it provided potential class members with information regarding the "reasons for the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement.").

whether class members are treated "equitably relative to each other."[139] *Pro rata* allocation plans are consistently approved by courts as fair, adequate, and reasonable.[140]

Plaintiffs propose that the plan of allocation here will be a *pro rata* share of compensation earned by each settlement Class member during the relevant class periods. The notices make clear that for Class members who worked at any of the Defendants' beef or pork processing plants in the United States between January 1, 2000 and February 27, 2024, they are part of the Class and are thus eligible for payments from settlements with nine Defendants totaling $191.45 million. Class members who worked at any of the Defendants' beef or pork processing plants in the United States between January 1, 2014 and February 27, 2024, are also part of a Subclass, and are thus eligible for payments from settlements with two additional Defendants totaling $11.25 million.

Plaintiffs propose having multiple methods of payment accessible to Class members. For Class members with valid email addresses, the option is available to either receive a physical check or electronically receive digital payments through Venmo, PayPal, virtual debit cards, or gift cards from various retailers, including Target, Walmart, Starbucks, and Amazon, which are places where Class members will be able to use their returned wages.[141] Class members without valid email addresses will be mailed a check.[142]

Following the initial distribution, it is very likely that additional settlement funds will remain in the escrow accounts. Plaintiffs propose that either the funds remaining from the first-round distribution will be joined with any subsequent settlements for the Class, or that a second-

---

[139] *O'Dowd*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

[140] *See, e.g.*, *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 692–93; *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 WL 6331178, at *7 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *KPH Healthcare Services, Inc. v. Mylan, N.V.*, No. 20-2064-DDC-TJJ, 2024 WL 3360499, at *7 (D. Kan. July 9, 2024).

[141] *See* Parks Decl. ¶ 35.

[142] *Id.*

round of distribution take place limited to only those Class members who cashed their checks or claimed their digital funds in the first round.[143] Plaintiffs also propose that any second-round distribution remove *de minimis* payments where the costs of administration would outweigh the benefit to that Class member. Plaintiffs propose that there would be a floor of $5 per Class member in the second-round of distribution, and any amounts of awards less than $5 would be forfeited and returned to the settlement funds. If money remains after the second-round of distribution and it is no longer cost effective to continue with a third-round of distribution, and no additional settlements are reached with which the funds may be joined, Plaintiffs propose that the money would be sent to the State Attorney General of Colorado for use in prosecuting antitrust actions.

**D.    The proposed schedule for notice and final approval.**

Plaintiffs propose that notice proceed as previously ordered by this Court.[144]

| Event | Deadline |
|---|---|
| Publication notice plan, postcard, and email notice to commence | Oct. 13, 2025 |
| Initial notice complete (email and postcard) | Nov. 11, 2025 |
| Supplemental Hormel-QPP notice complete (email and postcard) | Dec. 11, 2025 |
| Class counsel to file motion for award of attorney fees, costs, and service awards | Feb. 25, 2026 |
| Deadline for class members to request exclusion or object to settlements | Mar. 11, 2026 |
| Class counsel to file motion for final approval, a declaration regarding completion of notice, and a list of timely excluded class members | Apr. 10, 2026 |

---

[143] Limiting the second-round of distribution to only Class Members who have already demonstrated that they are sufficiently engaged to collect their funds and that their contact information is correct will help lessen administrative costs.

[144] Order, Dkt. No. 409, May 6, 2025.

| Event | Deadline |
|---|---|
| Final approval hearing | May 5, 2026, or at the convenience of the Court |
| Deadline for claims / submission of claims / update of tax or TIN information to be provided by class members | Sept. 7, 2026 |
| Distribution of funds begins | Oct. 7, 2026 |
| Report to Court regarding first round distribution | Oct. 22, 2026 |

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreements with Agri Beef and Indiana Packers; (2) certifying the Settlement Classes; (3) appointing Interim Co-Lead Counsel; (4) appointing the Settlement Classes Representatives; (5) approving the revised, proposed notice documents and directing Interim Co-Lead Counsel to distribute these notice documents to Class members according to the proposed notice schedule; and (6) ordering a stay of all proceedings against Agri Beef and Indiana Packers.

Dated: June 13, 2025                         Respectfully submitted,

                                             HAGENS BERMAN SOBOL SHAPIRO LLP

                                             _s/ Shana E. Scarlett_
                                                SHANA E. SCARLETT
                                             Rio Pierce
                                             Abby Wolf
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             715 Hearst Avenue, Suite 300
                                             Berkeley, CA 94710
                                             Telephone: (510) 725-3000
                                             shanas@hbsslaw.com
                                             riop@hbsslaw.com
                                             abbyw@hbsslaw.com

                                             Steve W. Berman
                                             Breanna Van Engelen
                                             Abigail D. Pershing
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1301 Second Avenue, Suite 2000
                                             Seattle, WA 98101
                                             Telephone: (206) 623-7292
                                             steve@hbsslaw.com
                                             breannav@hbsslaw.com
                                             abigailp@hbsslaw.com

                                             HANDLEY FARAH & ANDERSON PLLC

                                             _s/ George F. Farah_
                                                GEORGE F. FARAH
                                             Rebecca P. Chang
                                             Nicholas J. Jackson
                                             HANDLEY FARAH & ANDERSON PLLC
                                             33 Irving Place
                                             New York, NY 10003
                                             Telephone: (212) 477-8090
                                             gfarah@hfajustice.com
                                             rchang@hfajustice.com
                                             njackson@hfajustice.com
                                             William H. Anderson (Co. Bar 45960)
                                             HANDLEY FARAH & ANDERSON PLLC
                                             4730 Table Mesa Drive, Suite G-200
                                             Boulder, CO 80305
                                             Telephone: (202) 559-2433
                                             wanderson@hfajustice.com

Matthew K. Handley
Rachel E. Nadas
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, Seventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
rnadas@hfajustice.com

Martha E. Guarnieri
HANDLEY FARAH & ANDERSON PLLC
1727 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 422-3478
mguarnieri@hfajustice.com

COHEN MILSTEIN SELLERS & TOLL PLLC

*s/ Brent W. Johnson*
    BRENT W. JOHNSON
Benjamin D. Brown
Daniel H. Silverman
Robert A. Braun
Alison S. Deich
Zachary Glubiak
Zachary I. Krowitz
Sabrina Merold
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
rbraun@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com
smerold@cohenmilstein.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class and Subclass*

Brian D. Clark
Stephen J. Teti
Eura Chang
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
sjteti@locklaw.com
echang@locklaw.com

Eric L. Cramer
Candice J. Enders
Julia R. McGrath
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the
Proposed Class and Subclass*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that on June 13, 2025, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will cause notice to be sent to all counsel of record.

DATED: June 13, 2025                    *s/ Shana E. Scarlett*
                                                                 Shana E. Scarlett