IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02946-PAB-STV

RON BROWN, and,
MINKA GARMON, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

JBS USA FOOD COMPANY,
TYSON FOODS, INC.,
CARGILL INC.,
CARGILL MEAT SOLUTIONS CORP.,
HORMEL FOODS CORP.,
ROCHELLE FOODS, LLC,
AMERICAN FOODS GROUP, LLC,
TRIUMPH FOODS, LLC,
SEABOARD FOODS, LLC,
NATIONAL BEEF PACKING CO., LLC,
SMITHFIELD FOODS, INC.,
SMITHFIELD PACKAGED MEATS CORP.,
AGRI BEEF CO.,
WASHINGTON BEEF, LLC,
PERDUE FARMS, INC.,
GREATER OMAHA PACKING CO., INC.,
INDIANA PACKERS CORPORATION,
QUALITY PORK PROCESSORS, INC.,
AGRI STATS, INC., and
WEBBER, MENG, SAHL AND COMPANY, INC., d/b/a/ WMS & Company,

      Defendants.

---

# ORDER

---

    This matter is before the Court on the Plaintiffs' Motion for Preliminary Approval

of Settlement with Agri Beef Co., Washington Beef, LLC, and Indiana Packers

Corporation [Docket No. 416]. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

In their motions, plaintiffs ask the Court to:

(a) Grant preliminary approval of the settlement agreements with Agri Beef Co. and Washington Beef, LLC (collectively the "Agri Beef defendants"), and Indiana Packers Corporation ("Indiana Packers"). Docket No. 416 at 8.

(b) Certify the proposed Agri Beef defendants and Indiana Packers settlement classes. *Id.*

(c) Appoint the law firms Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as settlement class counsel. *Id.* at 8-9.

(d) Appoint named Representative Plaintiffs as class representatives of the Agri Beef defendants and Indiana Packers settlement classes. *Id.* at 9.

(e) Approve the revised, proposed notice documents and direct Interim Co-Lead Counsel to distribute notice to class members in accordance with the proposed notice schedule. *Id.*

(f) Grant a stay of all proceedings in this litigation against the Agri Beef defendants and Indiana Packers except as necessary to effectuate the settlement agreements or as otherwise agreed to by the settling parties. *Id.*

"Rather than asking the Court to approve the previously filed notice documents and separately approve notice documents for just the Agri Beef and Indiana Packers settlements," plaintiffs ask that the Court approve "one set of notice documents that mentions all twelve settlements." *Id.* at 8.

2

## I. BACKGROUND

Plaintiffs filed an amended complaint ("the complaint") on January 12, 2024.
Docket No. 260.  The complaint alleges that Representative Plaintiffs were employees
of two of the defendants.  *Id.* at 16, ¶¶ 30–31.  Specifically, Ron Brown was employed
by Smithfield Farms, Inc., *id.*, ¶ 30, and Minka Garmon was employed by National Beef
Packing Co.  *Id.*, ¶ 31.  Plaintiffs bring this action individually "and on behalf of a class
. . . .  consisting of all persons employed by Defendants, their subsidiaries, and related
entities at beef- and pork-processing plants in the continental United States from
January 1, 2000, to the present day."[1]  *Id.* at 7 (footnote omitted).  Plaintiffs make their
class claims pursuant to Federal Rule of Civil Procedure 23.  *Id.* at 134, ¶¶ 413, 415.

The complaint states that "Defendants include fifteen red meat[2] processors and
several of their subsidiaries . . . , which collectively produce more than 80 percent of the
red meat sold to consumers in the United States" and "two consulting companies."  *Id.*
at 7–8, ¶ 2 (footnote added).  The complaint alleges that, "[b]eginning by at least
January 2000 and continuing to the present day, Defendants have conspired with each
other to fix and depress the compensation paid to employees of Defendant Processors,
their subsidiaries, and related entities at red meat processing plants in the continental
United States" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *Id.*
at 61–62, ¶ 170.

---

[1] As discussed in the Court's February 27, 2024 order, plaintiffs also brought
claims against defendants Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods,
LLC, and Webber, Meng, Sahl and Company, Inc., but did so for the period of January
1, 2014 to the present day.  Docket No. 306 at 4.

[2] The complaint defines red meat as beef and pork.  Docket No. 260 at 7.

On February 27, 2024, the Court preliminarily approved settlements with Perdue Farms Inc., Seaboard Foods, LLC, Triumph Foods, LLC, and Webber, Meng, Sahl, and Company, Inc (the "2024 settlements").  *See* Docket No. 306.  On January 15, 2025, the Court preliminarily approved settlements with JBS USA Food Company, Tyson Foods, Inc., American Foods Group, LLC, National Beef Packing Co., LLC, Cargill, Inc., Cargill Meat Solutions Corp., Hormel Foods Corp., Rochelle Foods, LLC, and Quality Pork Processors, Inc (the "2025 settlements").  *See* Docket No. 382.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 occurs in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the settlement's fairness.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where

it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

Here, plaintiffs move for certification for the purpose of settlement with the Agri Beef defendants and Indiana Packers.  Docket No. 416 at 10.  A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  The plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing

*Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the class be so numerous that

joinder is impracticable; (2) there are questions of law or fact common to the class; (3)

the claims of the representative parties are typical of those of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class.  Fed.

R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242,

249 (2d. Cir. 2011).

Plaintiffs ask the Court to certify settlement classes under Rule 23(b)(3).  Docket

No. 416 at 21.  Under that provision, plaintiffs must show that "questions of law or fact

common to class members predominate over any questions affecting only individual

members" and that a class action "is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining

predominance and superiority under Rule 23(b)(3), the Court considers the following

factors: (A) the class members' interests in individually controlling the prosecution or

defense of separate actions; (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D)

the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To

certify a settlement class, the Court need not inquire whether the case, if tried, would

present difficult management problems under Rule 23(b)(3)(D).  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23 requirements apply and

demand heightened attention in the settlement context because the court generally

lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed

settlement class satisfies the requirements of Rules 23(a) and (b), then the court must

separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).[3]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, a court will direct notice to all class members who would be bound by the proposed settlement agreement and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the court's preliminary inquiry.  A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

---

[3] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

## III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

### A.  Agreements

Plaintiffs' motion for preliminary approval of the class settlements with the Agri Beef defendants (the "Agri Beef settlement") and Indiana Packers (the "Indiana Packers settlement") seeks certification of a class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until February 27, 2024."[4]  Docket No. 416 at 11, 13-14.

The Agri Beef settlement provides for a $1,400,000 settlement fund, Docket No. 416-3 at 11, § II.A.1, to be "disbursed in accordance with the Plan of Distribution to be approved by the Court."  *Id.* at 23, § II.D.9.  The Agri Beef settlement requires the Agri Beef defendants to cooperate with plaintiffs in the following ways: producing structured compensation data on members of the class employed by the Agri Beef defendants, providing declarations or affidavits on the authenticity of documents, providing documents through designated document custodians, not objecting to plaintiffs' subpoenas to third-party phone carriers for purposes of obtaining phone records of class members employed by the Agri Beef defendants, allowing one current employee to be deposed, producing contracts and agreements with Agri Stats, Inc., Express Markets, Inc., and labor unions, and producing documents previously produced to the Department of Justice.  *Id.* at 12–15, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice" as to the Agri Beef defendants.  *Id.* at 5.

---

[4] February 27, 2024 is the date of the Court's first preliminary settlement approval order.  *See* Docket No. 306.

The Indiana Packers settlement provides for a $1,100,000 settlement fund,
Docket No. 416-4 at 9, 11, ¶ 28, § II.A.1, to be "disbursed in accordance with the Plan of
Distribution to be approved by the Court."  *Id.* at 21, § II.D.9.  The Indiana Packers
settlement requires Indiana Packers to cooperate with plaintiffs by producing structured
compensation data on members of the class employed by Indiana Packers.  *Id.* at 11–
12, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice"
as to Indiana Packers.  *Id.* at 4.

### B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant
a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P.
23(a)(1).  Some courts have held that numerosity may be presumed after a certain
number; however, the Tenth Circuit has never adopted a presumption of numerosity.
*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling
that a group of eighty-four class members was insufficient to warrant class certification).

Here, plaintiffs state the proposed settlement classes likely include tens of
thousands of persons.  Docket No. 416 at 21.  Although plaintiffs do not provide an
exact estimate, the Court finds the number of class members is ascertainable because
identifying class members will not "necessitate delving into individualized or subjective
determination."  *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May
5, 2023) (unpublished) (quoting 2 Joseph M. McLaughlin, *McLaughlin on Class Actions*
§ 4:2 (19th ed. updated 2022)).  Given *Trevizo*, the sheer number of class members
does not create a presumption of numerosity; however, given that the Tenth Circuit has
found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel*

*St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the Court agrees that joinder of tens of thousands of people would be impracticable and that the numerosity requirement is met.

### C.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires that plaintiffs demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality. *Dukes*, 564 U.S. at 359.

Plaintiffs contend that there are "common questions abound, including whether Defendants agreed to restrain wages, whether the agreement had an impact on Settlement Classes members, the relevant market for Plaintiffs' claim under the rule of reason analysis, and the damages amount."  Docket No. 416 at 22.  The Tenth Circuit has acknowledged that "price-fixing affects all market participants, creating an inference of class-wide impact even when prices are individually negotiated."  *In re Urethane*

*Antitrust Litigation*, 768 F.3d 1245, 1254 (10th Cir. 2014).  Here, a conspiracy to fix wages would affect all employees regardless of individual wage negotiations because plaintiffs allege that defendants' "anticompetitive conduct affected the entire market." *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1182 (10th Cir. 2023).  Therefore, the Court finds that there are questions common to the class.

### D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99.  Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation and quotation omitted).  Plaintiffs argue that their claims are typical of the class because all the class members faced the same antitrust violations.

Docket No. 416 at 12. "In conspiracy cases, the plaintiffs' claims are typical of those of the class because the claims all depend on proof of the antitrust violation by the defendants, not on the plaintiffs' individual positions." *In re Urethane Antitrust Litigation*, 237 F.R.D. 440, 447 (D. Kan. 2006). The Court finds that plaintiffs bring claims that are typical of the proposed class.

### E. Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted). As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 625–26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate

representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by Representative Plaintiffs and their counsel. Representative Plaintiffs state that they "have no material conflict with other Class members – each suffered harm by Defendants' suppression of their wages. And each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages." Docket No. 416 at 23. With regard to the first adequacy factor, Representative Plaintiffs' interests are aligned with those of the proposed settlement class because they seek relief for injuries arising out of the same conspiracy and because they were subject to the same harm, namely, anti-competitive wages. Further, there is nothing in the record to show any conflict of interest between Representative Plaintiffs or counsel and the rest of the class; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel Cohen Milstein Sellers & Toll, PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC have been functioning as interim co-lead counsel for over two years. *See* Docket No. 128 at 2, ¶ 2 (appointing interim co-lead counsel on January 9, 2023). Magistrate Judge Hegarty found the interim co-lead counsel had experience handling class actions, antitrust litigation, and the types of claims asserted in this action. *Id.*, ¶ 3. There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action, and, to the extent any such questions do arise, they

will be considered at the fairness hearing.  Accordingly, at this preliminary stage,

because Representative Plaintiffs and proposed class counsel do not have a conflict of

interest with the rest of the class and have shown that they can vigorously litigate on

behalf of the class, the Court finds that Representative Plaintiffs have satisfied Rule

23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must

"predominate over any questions affecting only individual members," and class

resolution must be "superior to other available methods for the fair and efficient

adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that

courts should consider the following factors when certifying a class: (A) the interest of

members of the class in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class; (C) the desirability of concentrating the

litigation of the claims in the particular forum; and (D) the difficulties likely to be

encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance

requirement imposes an obligation upon district courts to ensure that issues common to

the class predominate over those affecting only individual class members.  *Sullivan v.

DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance

criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.

*Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be

certified only when it would achieve economies of time, effort, and expense, and

promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation omitted).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  In antitrust cases, because price-fixing affects all market participants, a class-wide impact is inferred.  *Beltran v. Interexchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo. 2018) (citing *In re Urethane*, 768 F.3d at 1254).  This presumption can be extended to antitrust cases where plaintiffs allege a conspiracy to lower wages across an entire market.  *Id.*  Plaintiffs must show proof that is common on a class-wide basis of the three elements of an antitrust claim: "(1) a violation of the antitrust laws, (2) that plaintiffs suffered some resulting injury from the violation (also called impact), and (3) the measure of damages."  *In re Urethane*, 237 F.R.D. at 449 (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006)).

The Court agrees with plaintiffs that common questions predominate over the other issues.  *See* Docket No. 416 at 24-25.  Proof of a conspiracy between defendants is a question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury.  Although the damages may vary for individuals in the class, the question of what competitive market wages should have been will be common to the class and is enough at this stage to show a common question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively. Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to adjudicate common legal and factual issues. Additionally, plaintiffs assert that "no other potential Settlement Classes members have filed an analogous antitrust claim against these Defendants." *See id*. at 26. Thus, given that the class members' claims arise from the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense and promote uniformity of decision to similarly situated persons. Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104. Therefore, because class members will receive the same type of relief and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation. *See Amchem*, 521 U.S. at 623.

### G. Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is

adjudicated or are able to secure satisfaction of their individual claims by a compromise"
(citations omitted)).

To determine whether a proposed settlement is fair, reasonable, and adequate,
courts consider the following factors: (1) whether the proposed settlement was fairly and
honestly negotiated; (2) whether serious questions of law and fact exist, placing the
ultimate outcome of the litigation in doubt; (3) whether the value of an immediate
recovery outweighs the mere possibility of future relief after protracted and expensive
litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.
*Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts
usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin
Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial
presumption of fairness" to a proposed settlement where: (1) it is the result of arm's
length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the
settlement are experienced in similar litigation; and (4) only a small fraction of the class
objected).

Based on the information available to the Court, the Court notes the following,
which weighs in favor of preliminary approval: (1) the proposed settlement agreements
are the product of significant negotiations and discussion between the parties over
several weeks or months, Docket No. 416 at 17; (2) the parties engaged in robust
discussion "advised by sophisticated counsel with antitrust and complex class litigation
expertise," *id*. at 17-18; and (3) there is no evidence that the settlement agreements
were the result of a collusive agreement between the parties.  The Court therefore finds
that the negotiations were conducted fairly and honestly.  Furthermore, plaintiffs indicate

there is serious disagreement by the parties about whether defendants, including the
Agri Beef defendants and Indiana Packers, illegally conspired to depress the
compensation of workers for defendant meat processors.  *Id.* at 18.  As a result, the
Court finds that the "serious questions" factor weighs in favor of the proposed
settlement agreements.

Next, the Court must determine whether the value of immediate recovery
outweighs the mere possibility of future relief.  This factor weighs in favor of the
proposed settlement.  The class will be provided with substantial guaranteed relief, and
these agreements will result in a simpler litigation process for the remaining claims.  *Id.*
at 19.  Given the prospect of shortening what could be prolonged litigation and providing
at least partial guaranteed relief, the Court finds that immediate recovery outweighs the
possibility of future relief.  Accordingly, the Court finds this factor weighs in favor of
granting preliminary approval.  With regard to the fourth factor, plaintiffs' counsel has
extensive experience in antitrust litigation and states that the settlement agreements are
fair and reasonable.  *Id*. at 20.  The Court finds this factor weighs in favor of preliminary
approval.

In conclusion, certifying the class will allow plaintiffs to gain immediate resources
to litigate their remaining claims and allow the Court to determine whether there are
other members of the class that challenge the fairness of the parties' proposed
settlement agreement.  Should any class member find the terms of the settlement
agreement unfair, he or she may choose not to join the settlement and to litigate
independently or to remain in the case and file objections to the settlement agreement
detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*,

78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is sufficient to preliminarily approve the terms of the proposed settlement agreements.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d at

19

1110 (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

On May 6, 2025, the Court approved the proposed notice schedule and plan regarding the 2024 and 2025 settlements.  *See* Docket No. 409 at 12.  Notice was scheduled to begin on October 13, 2025.[5]  *See id*; Docket No. 426 at 3.  Rather than send out the previously approved notices regarding the 2024 settlements and 2025 settlements separately from the notices regarding the Agri Beef and Indiana Packers settlements, plaintiffs requested that the Court approve a notice plan that mentions all settlements.  *See* Docket No. 416 at 8.  Furthermore, plaintiffs asked that the Court extend the deadlines in the previously approved schedule, with notice to begin on November 12, 2025.  *See* Docket No. 426 at 5-6.  The Court granted the extension. *See* Docket No. 427.

Plaintiffs represent that the "revised, proposed notice documents mirror the notices already approved by this Court, but merely update their contents with notice of these additional settlements" concerning the Agri Beef defendants and Indiana Packers. Docket No. 416 at 27.  For the reasons discussed in the Court's order approving the notice documents and proposed schedule regarding the 2024 and 2025 settlements, *see* Docket No. 409, the Court finds that plaintiffs' plan to provide notice is reasonably calculated to apprise absent class members of the action.  *See In re Integra*, 262 F.3d at 1111.  Plaintiffs may send notice of the Agri Beef Settlement and Indiana Packers

---

[5] Although notice was scheduled to begin on October 12, 2025, that day falls on a Sunday and notice would, therefore, begin on October 13, 2025.

settlement in accordance with the schedule that was approved in the Court's October 10

Minute Order. *See* Docket No. 427.

Plaintiffs also seek "a stay of all proceedings against Agri Beef and Indiana

Packers." Docket No. 416 at 40. Because these defendants have reached a settlement

agreement, the Court will stay the proceedings against these defendants.

## V. CLASS COUNSEL

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P.

23(g). In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential
> claims in the action; (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in the action; (iii) counsel's
> knowledge of the applicable law; and (iv) the resources that counsel will commit
> to representing the class; [and] (B) may consider any other matter pertinent to
> counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The settlement agreements list Cohen Milstein Sellers & Toll

PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as

interim lead counsel. Docket No. 416-3 at 9, ¶ 25; Docket No. 416-4 at 7, ¶ 20.

Plaintiffs request that interim lead counsel be appointed as co-lead counsel for the

settlement class. Docket No. 416 at 25. The Court finds that interim lead counsel have

sufficient experience in class actions and their knowledge of the applicable law, as

exhibited in the case up to this point, weighs in favor of their appointment. Therefore,

the Court finds that it is appropriate to appoint Cohen Milstein Sellers & Toll PLLC;

Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC as co-lead

settlement class counsel.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Plaintiffs' Motion for Preliminary Approval of Settlement with Agri Beef Co., Washington Beef, LLC, and Indiana Packers Corporation [Docket No. 416] is **GRANTED**.  It is further

**ORDERED** that plaintiffs' revised plan to provide notice to members of the settlement classes is approved.  It is further

**ORDERED** that plaintiffs shall send notice of the Agri Beef settlements and Indiana Packers settlement pursuant to the notice schedule approved by the Court on October 10, 2025.  It is further

**ORDERED** that the case and all related deadlines are **STAYED** as to defendants Agri Beef Co., Washington Beef, LLC, and Indiana Packers Corporation.

DATED October 16, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge