IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 22-cv-02946-PAB-STV

RON BROWN, and,
MINKA GARMON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

JBS USA FOOD COMPANY,
TYSON FOODS, INC.,
CARGILL INC.,
CARGILL MEAT SOLUTIONS CORP.,
HORMEL FOODS CORP.,
ROCHELLE FOODS, LLC,
AMERICAN FOODS GROUP, LLC,
TRIUMPH FOODS, LLC,
SEABOARD FOODS, LLC,
NATIONAL BEEF PACKING CO., LLC,
SMITHFIELD FOODS, INC.,
SMITHFIELD PACKAGED MEATS CORP.,
AGRI BEEF CO.,
WASHINGTON BEEF, LLC,
PERDUE FARMS, INC.,
GREATER OMAHA PACKING CO., INC.,
INDIANA PACKERS CORPORATION,
QUALITY PORK PROCESSORS, INC.,
AGRI STATS, INC., and
WEBBER, MENG, SAHL AND COMPANY, INC., d/b/a/ WMS & Company,

Defendants.

---

**ORDER**

---

This matter is before the Court on the Plaintiffs' Motion for Preliminary Approval

of Settlements with Greater Omaha Packing Co., Inc. and Agri Stats, Inc. and to Direct

Notice [Docket No. 456].  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

In their motions, plaintiffs ask the Court to:

(a) Grant preliminary approval of the settlement agreements with Agri Stats, Inc. ("Agri Stats") and Greater Omaha Packing Co., Inc. ("Greater Omaha"). Docket No. 456 at 9.

(b) Certify the proposed Agri Stats and Greater Omaha settlement classes.  *Id.*

(c) Appoint the law firms Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as settlement class counsel.  *Id.* at 8-9.

(d) Appoint named Representative Plaintiffs as class representatives of the Agri Stats and Greater Omaha settlement classes.  *Id.*

(e) Approve the revised, proposed notice documents and notice plan.  *Id.*

(f) Grant a stay of all proceedings in this litigation against Greater Omaha and Agri Stats except as necessary to effectuate the settlement agreements or as otherwise agreed to by the settling parties.  *Id.*

## I. BACKGROUND

Plaintiffs filed an amended complaint ("the complaint") on January 12, 2024. Docket No. 260.  The complaint alleges that Representative Plaintiffs were employees of two of the defendants.  *Id.* at 16, ¶¶ 30–31.  Specifically, Ron Brown was employed by Smithfield Farms, Inc., *id.*, ¶ 30, and Minka Garmon was employed by National Beef Packing Co.  *Id.*, ¶ 31.  Plaintiffs bring this action individually "and on behalf of a class . . . .  consisting of all persons employed by Defendants, their subsidiaries, and related

entities at beef- and pork-processing plants in the continental United States from January 1, 2000, to the present day."[1]  *Id.* at 7 (footnote omitted).  Plaintiffs make their class claims pursuant to Federal Rule of Civil Procedure 23.  *Id.* at 134, ¶¶ 413, 415.

The complaint states that "Defendants include fifteen red meat[2] processors and several of their subsidiaries . . . , which collectively produce more than 80 percent of the red meat sold to consumers in the United States" and "two consulting companies."  *Id.* at 7–8, ¶ 2 (footnote added).  The complaint alleges that, "[b]eginning by at least January 2000 and continuing to the present day, Defendants have conspired with each other to fix and depress the compensation paid to employees of Defendant Processors, their subsidiaries, and related entities at red meat processing plants in the continental United States" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *Id.* at 61–62, ¶ 170.

On February 27, 2024, the Court preliminarily approved settlements with Perdue Farms Inc., Seaboard Foods, LLC, Triumph Foods, LLC, and Webber, Meng, Sahl, and Company, Inc (the "2024 settlements").  *See* Docket No. 306.  On January 15, 2025, the Court preliminarily approved settlements with JBS USA Food Company, Tyson Foods, Inc., American Foods Group, LLC, National Beef Packing Co., LLC, Cargill, Inc., Cargill Meat Solutions Corp., Hormel Foods Corp., Rochelle Foods, LLC, and Quality Pork Processors, Inc (the "January 15, 2025 settlements").  *See* Docket No. 382.  On October 16, 2025, the Court preliminarily approved settlements with Agri Beef Co.,

---

[1] As discussed in the Court's February 27, 2024 order, plaintiffs also brought claims against defendants Perdue Farms, Inc., Triumph Foods, LLC, Seaboard Foods, LLC, and Webber, Meng, Sahl and Company, Inc., but did so for the period of January 1, 2014 to the present day.  Docket No. 306 at 4.

[2] The complaint defines red meat as beef and pork.  Docket No. 260 at 7.

Washington Beef, LLC, and Indiana Packers Corporation (the "October 16, 2025

settlements").  Docket No. 428.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23

occurs in two stages.  In the first stage, the court preliminarily certifies a settlement

class, preliminarily approves the settlement agreement, and authorizes that notice be

given to the class so that interested class members may object to the settlement's

fairness.  In the second stage, after notice is given to the putative class, the court holds

a fairness hearing at which it will address (1) any timely objections to the treatment of

this litigation as a class action and (2) any objections to the fairness, reasonableness, or

adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v.*

*Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is

at most a determination that there is . . . 'probable cause' to submit the proposal to class

members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*,

No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A

proposed settlement of a class action should therefore be preliminarily approved where

it "appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, and does not improperly grant preferential treatment to class

representatives.*" See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D.

488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for

preliminary approval of a class action settlement are not as stringent as they are in the

second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry. Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

Here, plaintiffs move for certification for the purpose of settlement with Greater Omaha and Agri Stats. Docket No. 456 at 10-11. A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). The plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968). Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a);

5

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

Plaintiffs ask the Court to certify settlement classes under Rule 23(b)(3). Docket No. 456 at 24. Under that provision, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). To certify a settlement class, the court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, all other Rule 23 requirements apply and demand heightened attention in the settlement context because the court generally lacks an opportunity to adjust the class as the case unfolds. *Id.* If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the court must separately evaluate whether the settlement agreement is "fair, reasonable, and

adequate" under Rule 23(e).[3]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, a court will direct notice to all class members who would be bound by the proposed settlement agreement and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the court's preliminary inquiry.  A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

---

[3] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

### III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

#### A.  <u>Agreements</u>

Plaintiffs' motion for preliminary approval of the class settlements with Greater Omaha and Agri Stats seeks certification of a class of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at beef-processing or pork-processing plants in the continental United States from January 1, 2000 until the date of the first preliminary approval of a settlement in this Action . . . February 27, 2024."[4]  Docket No. 456 at 21.

The Greater Omaha settlement provides that Greater Omaha will pay $100,000 into the Settlement Fund, Docket No. 456-3 at 10, § II.A.1, to be "disbursed in accordance with the Plan of Distribution to be approved by the Court."  *Id.* at 18-19, § II.A.9.  The Greater Omaha settlement requires Greater Omaha to cooperate with plaintiffs by producing structured compensation data on members of the class employed by Greater Omaha.  *Id.* at 11-12, § II.A.2.  In exchange, "this Action shall be dismissed in its entirety with prejudice as to Greater Omaha."  *Id.* at 5.

The Agri Stats settlement provides that, in the event Agri Stats resumes publishing pork processing reports in the United States, Agri Stats shall eliminate in such reports specific data fields.  Docket No. 456-4 at 10-13, § II.A.3.  The Agri Stats settlement requires Agri Stats to cooperate with plaintiffs by producing structured data for the Swine Processing and Operations Profits books "from 2008 to through the end of

---

[4] February 27, 2024 is the date of the Court's first preliminary settlement approval order.  *See* Docket No. 306.

the Pork reports in June 2018." *Id.* at 9-10, § II.A.2.  In exchange, "this Action shall be

dismissed in its entirety with prejudice as to Agri Stats." *Id.* at 4.

### B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant

a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P.

23(a)(1).  Some courts have held that numerosity may be presumed after a certain

number; however, the Tenth Circuit has never adopted a presumption of numerosity.

*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling

that a group of eighty-four class members was insufficient to warrant class certification).

Here, plaintiffs state the proposed settlement classes likely include tens of

thousands of people.  Docket No. 456 at 22.  Although plaintiffs do not provide an exact

estimate, the Court finds the number of class members is ascertainable because

identifying class members will not "necessitate delving into individualized or subjective

determination." *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May

5, 2023) (unpublished) (quoting 2 Joseph M. McLaughlin, *McLaughlin on Class Actions*

§ 4:2 (19th ed. updated 2022)).  Given *Trevizo*, the sheer number of class members

does not create a presumption of numerosity; however, given that the Tenth Circuit has

found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel*

*St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed

viable in instances where as few as 17 to 20 persons are identified as the class."), the

Court agrees that joinder of tens of thousands of people would be impracticable and

that the numerosity requirement is met.

### C. Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist. *Devaughn*, 594 F.3d at 1195. Commonality requires that plaintiffs demonstrate the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Even a single common question will satisfy commonality. *Dukes*, 564 U.S. at 359.

Plaintiffs contend that there are "common questions abound, including whether Defendants agreed to restrain wages or exchange wage information, whether the agreements had an impact on members of the Settlement Classes, the relevant market for Plaintiffs' claim under the rule of reason analysis, and the damages amount." Docket No. 456 at 21-22. The Tenth Circuit has acknowledged that "price-fixing affects all market participants, creating an inference of class-wide impact even when prices are individually negotiated." *In re Urethane Antitrust Litigation*, 768 F.3d 1245, 1254 (10th Cir. 2014). Here, a conspiracy to fix wages would affect all employees regardless of individual wage negotiations because plaintiffs allege that defendants' "anticompetitive conduct affected the entire market." *Black v. Occidental Petroleum Corp.*, 69 F.4th

1161, 1182 (10th Cir. 2023).  Therefore, the Court finds that there are questions common to the class.

### D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99. Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation and quotation omitted).  Plaintiffs argue that their claims are typical of the class because all the class members faced the same antitrust violations. Docket No. 456 at 23.  "In conspiracy cases, the plaintiffs' claims are typical of those of the class because the claims all depend on proof of the antitrust violation by the defendants, not on the plaintiffs' individual positions."  *In re Urethane Antitrust Litigation*,

237 F.R.D. 440, 447 (D. Kan. 2006).  The Court finds that plaintiffs bring claims that are typical of the proposed class.

### E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625–26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by Representative Plaintiffs and their counsel.  Representative Plaintiffs state that they "have no material conflict with other Class members – each suffered harm by Defendants' suppression of their wages.  And each named Plaintiff shares an overriding interest in establishing Defendants' liability and maximizing class-wide damages."  Docket No. 456 at 24.  With regard to the first adequacy factor, Representative Plaintiffs' interests are aligned with those of the proposed settlement class because they seek relief for injuries arising out of the same conspiracy and because they were subject to the same harm, namely, anti-competitive wages.  Further, there is nothing in the record to show any conflict of interest between Representative Plaintiffs or counsel and the rest of the class; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel Cohen Milstein Sellers & Toll, PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC have been functioning as interim co-lead counsel for over three years.  *See* Docket No. 128 at 2, ¶ 2 (appointing interim co-lead counsel on January 9, 2023).  Magistrate Judge Hegarty found the interim co-lead counsel had experience handling class actions, antitrust litigation, and the types of claims asserted in this action.  *Id.*, ¶ 3.  There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action, and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because Representative Plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously

13

litigate on behalf of the class, the Court finds that Representative Plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.  *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation

14

omitted).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  In antitrust cases, because price-fixing affects all market participants, a class-wide impact is inferred.  *Beltran v. Interexchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo. 2018) (citing *In re Urethane*, 768 F.3d at 1254).  This presumption can be extended to antitrust cases where plaintiffs allege a conspiracy to lower wages across an entire market.  *Id.*  Plaintiffs must show proof that is common on a class-wide basis of the three elements of an antitrust claim: "(1) a violation of the antitrust laws, (2) that plaintiffs suffered some resulting injury from the violation (also called impact), and (3) the measure of damages."  *In re Urethane*, 237 F.R.D. at 449 (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006)).

The Court agrees with plaintiffs that common questions predominate over the other issues.  *See* Docket No. 456 at 25-26.  Proof of a conspiracy between defendants is a question that goes to the alleged antitrust violation common to the entire class. Evidence of market wages and any depression across the wages of defendants' employees is a common question that goes to the alleged injury.  Although the damages may vary for individuals in the class, the question of what competitive market wages should have been will be common to the class and is enough at this stage to show a common question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to

adjudicate common legal and factual issues.  Additionally, plaintiffs assert that "no other potential Settlement Classes members have filed an analogous antitrust claim against these Defendants."  *See id*. at 26-27.  Thus, given that the class members' claims arise from the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.  Therefore, because class members will receive the same type of relief and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation.  *See Amchem*, 521 U.S. at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise" (citations omitted)).

16

To determine whether a proposed settlement is fair, reasonable, and adequate,
courts consider the following factors: (1) whether the proposed settlement was fairly and
honestly negotiated; (2) whether serious questions of law and fact exist, placing the
ultimate outcome of the litigation in doubt; (3) whether the value of an immediate
recovery outweighs the mere possibility of future relief after protracted and expensive
litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.
*Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts
usually presume that the proposed settlement is fair and reasonable*.  In re Warfarin
Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial
presumption of fairness" to a proposed settlement where: (1) it is the result of arm's
length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the
settlement are experienced in similar litigation; and (4) only a small fraction of the class
objected).

Based on the information available to the Court, the Court notes the following,
which weighs in favor of preliminary approval: (1) the proposed settlement agreements
are the product of significant negotiations and discussion between the parties over
several months, Docket No. 456 at 18; (2) the parties engaged in robust discussion
"represented by sophisticated counsel who have played active roles in many antitrust
cases across the country," *id*.; and (3) there is no evidence that the settlement
agreements were the result of a collusive agreement between the parties.  The Court
therefore finds that the negotiations were conducted fairly and honestly.  Furthermore,
plaintiffs indicate there is serious disagreement by the parties about whether
defendants, including Agri Stats and Greater Omaha, illegally conspired to depress the

17

compensation of workers for defendant meat processors. *Id.* at 19. As a result, the

Court finds that the "serious questions" factor weighs in favor of the proposed

settlement agreements.

Next, the Court must determine whether the value of immediate recovery

outweighs the mere possibility of future relief. This factor weighs in favor of the

proposed settlement. The class will be provided with substantial guaranteed relief, and

these agreements will result in a simpler litigation process for the remaining claims. *Id.*

at 19-20. Given the prospect of shortening what could be prolonged litigation and

providing at least partial guaranteed relief, the Court finds that immediate recovery

outweighs the possibility of future relief. Accordingly, the Court finds this factor weighs

in favor of granting preliminary approval. With regard to the fourth factor, plaintiffs'

counsel has extensive experience in antitrust litigation and states that the settlement

agreements are fair and reasonable. *Id*. at 20. The Court finds this factor weighs in

favor of preliminary approval.

In conclusion, certifying the class will allow plaintiffs to gain immediate resources

to litigate their remaining claims and allow the Court to determine whether there are

other members of the class that challenge the fairness of the parties' proposed

settlement agreement. Should any class member find the terms of the settlement

agreement unfair, he or she may choose not to join the settlement and to litigate

independently or to remain in the case and file objections to the settlement agreement

detailing why it is unfair under the Rule 23 factors. *Cf. Grilli v. Metro. Life Ins. Co., Inc.*,

78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in

denying motion to intervene, based on the court's conclusion that proposed intervenors

could protect their interest either by opting out of the class and litigating separately, or

by remaining in the case and, if they thought the proposed settlement was unfair,

objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that

party opposing settlement agreement could opt-out or file objections).  The Court finds

that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is

sufficient to preliminarily approve the terms of the proposed settlement agreements.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must

direct notice in a reasonable manner to all class members who would be bound by the

proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for

"any class certified under Rule 23(b)(3), the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In addition to the requirements of Rule 23, the Due Process Clause also guarantees

unnamed class members the right to notice of a settlement.  *DeJulius v. New England*

*Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However,

due process does not require that each class member receive actual notice to be bound

by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of

absent class members are satisfied so long as "the best notice practicable [is given]

under the circumstances including individual notice to all members who can be

identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d at

1110 (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the

constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

On October 16, 2025, the Court approved the proposed notice schedule and plan regarding the 2024 settlements, January 15, 2025 settlements, and October 16, 2025 settlements. *See* Docket No. 428 at 19-21. Plaintiffs represent that the "revised, proposed notice documents mirror the notices already approved by this Court, but merely update their contents with notice of these additional settlements" concerning Greater Omaha and Agri Stats. Docket No. 456 at 28. For the reasons discussed in the Court's order approving the notice documents and proposed schedule regarding the 2024 and January 15, 2025 settlements, *see* Docket No. 409, the Court finds that plaintiffs' plan to provide notice is reasonably calculated to apprise absent class members of the action. *See In re Integra*, 262 F.3d at 1111. In light of the proposed notice schedule beginning on March 12, 2026, the Court will approve a notice schedule that extends all deadlines at Docket No. 456 at 40-41 by 50 days. Thus, notice would commence on or before May 1, 2026.

Plaintiffs also seek "a stay of all proceedings against the Greater Omaha and Agri Stats Defendants." Docket No. 456 at 41. Because these defendants have reached a settlement agreement, the Court will stay the proceedings against these defendants.

## V. CLASS COUNSEL

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other

20

complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The settlement agreements list Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC as interim lead counsel. Docket No. 456-3 at 8, ¶ 24; Docket No. 456-4 at 7, ¶ 22. Plaintiffs request that interim lead counsel be appointed as co-lead counsel for the settlement class. Docket No. 456 at 9. The Court finds that interim lead counsel have sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment. Therefore, the Court finds that it is appropriate to appoint Cohen Milstein Sellers & Toll PLLC; Hagens Berman Sobol Shapiro LLP; and Handley Farah & Anderson PLLC as co-lead settlement class counsel.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Settlements with Greater Omaha Packing Co., Inc. and Agri Stats, Inc. and to Direct Notice [Docket No. 456] is **GRANTED**. It is further

**ORDERED** that plaintiffs shall send notice of the Greater Omaha and Agri Stats settlement pursuant to the notice schedule approved by the Court in this order. It is further

**ORDERED** that the case and all related deadlines are **STAYED** as to defendants Greater Omaha Packing Co., Inc. and Agri Stats, Inc. It is further

21

**ORDERED** that the parties shall contact the Court at

brimmer_chambers@cod.uscourts.gov to schedule a final fairness hearing within seven

days of the date of this order.

DATED April 16, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge